1

2

3            UNITED STATES DISTRICT COURT

4            NORTHERN DISTRICT OF CALIFORNIA

5

6

7   SPEEDTRACK, INC.,

8            Plaintiff,                    No. C 06-7336 PJH

9       v.                                **ORDER CONSTRUING
                                          CLAIMS**
10  WAL-MART STORES, INC.,

11           Defendant.

   _____/

12

13       On March 19, 2008, the parties' claim construction hearing to construe the disputed

14  terms of U.S. Patent No. 5,544,360 (the "'360 patent") pursuant to <u>Markman v. Westview</u>

15  <u>Instruments, Inc.</u>, 517 U.S. 370 (1996), came on before this court.  Plaintiff Speedtrack, Inc.

16  ("plaintiff") appeared through their counsel Alan P. Block, Roderick G. Dorman, and Marc

17  Morris.  Defendant Wal-Mart Stores, Inc. and intervenor Endeca Technologies, Inc.

18  (collectively "defendants") appeared through their counsel, Steven M. Bauer.[1]  Having read

19  the parties' papers and carefully considered their arguments and the relevant legal

20  authority, the court hereby rules as follows.

21                              **BACKGROUND**

22       Plaintiff is the assignee and owner of U.S. Patent No. 5,544,360 (the "'360 patent"),

23  which is directed at systems and methods for accessing computer files and data

24  information in data storage systems.  <u>See</u> Revised Joint Claim Construction and

25  Prehearing Statement ("Joint Statement"), Ex. A.  Defendant Wal-Mart Stores, Inc. is a

26  retail corporation with an online retail website that permits visitors to search for and buy a

27

28       _____

         [1]    For purposes of claim construction, Wal-Mart and Endeca have jointly filed their
   papers, and are referred to herein collectively as "defendant."

United States District Court
For the Northern District of California

United States District Court

For the Northern District of California

1   variety of products.  See generally Corrected First Amended Complaint for Patent

2   Infringement, Permanent Injunction, and Damages ("Speedtrack I Complaint"), ¶¶ 4, 10-11.

3   Plaintiff alleges that defendant Wal-Mart's use and maintenance of its website directly and

4   indirectly infringes the '360 patent by permitting visitors to search for products available for

5   sale "by selecting pre-defined categories descriptive of the products."  See id.

6       In April 2007, Endeca Technologies, Inc. filed a complaint in intervention against

7   plaintiff.  Endeca's complaint arose out of plaintiff's allegations against defendant Wal-Mart.

8   Wal-Mart is one of Endeca's customers, and utilizes Endeca's Information Access Platform

9   on its Wal-Mart website in order to allow users to search for products online.  See Endeca's

10  Complaint in Intervention ("Endeca Complaint"), ¶¶ 7-9.  In its complaint in intervention,

11  Endeca alleges that an actual controversy exists over whether its Information Access

12  Platform infringes the '360 patent and whether the '360 patent is invalid.  See id. at ¶¶ 8-9.

13  To that end, Endeca alleges two claims against plaintiff: (1) for a declaratory judgment that

14  Endeca's Information Access Platform does not infringe the '360 patent; and (2) for a

15  declaratory judgment that the '360 patent is invalid.  See id. at ¶¶ 10-18.

16      A.    Background Technology

17      File-searching systems have been employed for years in order to enable users to

18  conduct a variety of searches through large volumes of information (e.g., a standard library

19  card catalog search system).  With the advent of advanced technology, however, file

20  searching systems have been adapted for use in computers, through the use of electronic

21  file searching systems.  To that end, the file-searching system covered by the '360 patent

22  describes a system and method for searching and retrieving data stored in a data storage

23  system of a computer.

24      The inventors of the '360 patent came up with their patented search method in an

25  effort to cure perceived problems associated with the prior art electronic file searching

26  systems.  One of the most significant perceived problems, for example, was the inability of

27  the prior art systems to electronically search for documents that logically fit into more than

28

2

one file folder.

B.    The '360 Patent

The '360 patent issued on August 6, 1996.  The patent contains 21 claims, some of which are method claims, and many of which are dependent claims.  See Joint Statement, Ex A.   For purposes of the instant litigation, plaintiff asserts independent method claims 1 and 20 against defendants, and dependent method claims 2-7, 11-14, and 21.

The parties now seek construction of ten disputed terms and/or phrases.

**DISCUSSION**

A.    Legal Standard

In construing claims, the court must begin with an examination of the claim language itself.  The terms used in the claims are generally given their "ordinary and customary meaning."  See Phillips v. AWH Corp., 415 F.3d 1303, 1312-13 (Fed. Cir. 2005); see also Renishaw PLC v. Marposs Societa' per Azioni, 158 F.3d 1243, 1248 (Fed. Cir. 1998) ("The claims define the scope of the right to exclude; the claim construction inquiry, therefore, begins and ends in all cases with the actual words of the claim.").  This ordinary and customary meaning "is the meaning that the terms would have to a person of ordinary skill in the art in question at the time of the invention...".  Phillips, 415 F.3d at 131.  A patentee is presumed to have intended the ordinary meaning of a claim term in the absence of an express intent to the contrary.  York Products, Inc. v. Central Tractor Farm & Family Ctr., 99 F.3d 1568, 1572 (Fed. Cir. 1996).

Generally speaking, the words in a claim are to be interpreted "in light of the intrinsic evidence of record, including the written description, the drawings, and the prosecution history, if in evidence."  Teleflex, Inc. v. Ficosa North Am. Corp., 299 F.3d 1313, 1324-25 (Fed. Cir. 2002) (citations omitted); see also Medrad, Inc. v. MRI Devices Corp., 401 F.3d 1313, 1319 (Fed. Cir. 2005)(court looks at "the ordinary meaning in the context of the written description and the prosecution history").  "Such intrinsic evidence is the most significant source of the legally operative meaning of disputed claim language."  Vitronics

United States District Court

For the Northern District of California

1   Corp. v. Conceptronic, Inc., 90 F.3d 1576, 1582 (Fed. Cir. 1996).

2        With regard to the intrinsic evidence, the court's examination begins, first, with the

3   claim language. See id. Specifically, "the context in which a claim is used in the asserted

4   claim can be highly instructive." Phillips, 415 F.3d at 1314. As part of that context, the

5   court may also consider the other patent claims, both asserted and unasserted. Id. For

6   example, as claim terms are normally used consistently throughout a patent, the usage of a

7   term in one claim may illuminate the meaning of the same term in other claims. Id. The

8   court may also consider differences between claims to guide in understanding the meaning

9   of particular claim terms.

10        Second, the claims "must [also] be read in view of the specification, of which they

11   are a part." Id. at 1315. When the specification reveals a special definition given to a claim

12   term by the patentee that differs from the meaning it would otherwise possess, the

13   inventor's lexicography governs. Id. at 1316. Indeed, the specification is to be viewed as

14   the "best source" for understanding a technical term, informed as needed by the

15   prosecution history. Id. at 1315. As the Federal Circuit stated in Phillips, the specification

16   is "the single best guide to the meaning of a disputed term," and "acts as a dictionary when

17   it expressly defines terms used in the claims or when it defines terms by implication." 415

18   F. 3d at 1321.

19        Limitations from the specification, such as from the preferred embodiment, cannot

20   be read into the claims absent an express intention to do so. Teleflex, 299 F.3d at 1326

21   ("The claims must be read in view of the specification, but limitations from the specification

22   are not to be read into the claims.") (citations omitted); CCS Fitness, 288 F.3d at 1366 ("a

23   patentee need not describe in the specification every conceivable and possible future

24   embodiment of his invention."); Altiris v. Symantec Corp., 318 F.3d 1363, 1372 (Fed. Cir.

25   2003) ("resort to the rest of the specification to define a claim term is only appropriate in

26   limited circumstances"). To protect against this, the court should not consult the intrinsic

27   evidence until after reviewing the claims in light of the ordinary meaning of the words

28

4

United States District Court

For the Northern District of California

1   themselves.  Texas Digital, 308 F.3d at 1204-05 (to act otherwise "invites a violation of our

2   precedent counseling against importing limitations into the claims") (citations omitted).

3       Finally, as part of the intrinsic evidence analysis, the court "should also consider the

4   patent's prosecution history, if it is in evidence."  Phillips, 415 F.3d at 1317.  The court

5   should take into account, however, that the prosecution history "often lacks the clarity of the

6   specification" and thus is of limited use for claim construction purposes.  Id.

7       In most cases, claims can be resolved based on intrinsic evidence.  See Vitronics,

8   90 F.3d at 1583.  Only if an analysis of the intrinsic evidence fails to resolve any ambiguity

9   in the claim language may the court then rely on extrinsic evidence, such as expert and

10  inventor testimony, dictionaries, and learned treatises.  See Vitronics, 90 F.3d at 1583 ("In

11  those cases where the public record unambiguously describes the scope of the patented

12  invention, reliance on any extrinsic evidence is improper").  However, the court generally

13  views extrinsic evidence as less reliable than the patent and its prosecution history in

14  determining how to read claim terms, and its consideration is within the court's sound

15  discretion.  See Phillips, 415 F.3d at 1318-19.

16      B.      Construction of Disputed Terms and Phrases

17      The parties dispute construction of ten different terms and phrases contained within

18  the claims of the '360 patent, each of which is described in turn below.

19          1.      "category description"

20      The phrase "category description" is found in claims 1-3, 4-5, 7, 11, and 20 of the

21  '360 patent.  See Joint Statement, Ex A.  Plaintiff contends that the phrase should be

22  construed to mean "information that includes a name that is descriptive of something about

23  a stored file."  Defendants contend that "category description" should be construed to mean

24  "information that includes a name defined by the user that is descriptive of something about

25  a stored file."

26      The claim language provides the starting point for analysis of the disputed phrase at

27  issue.  The phrase appears in independent claims 1 and 20, and in several claims that are

28

United States District Court

For the Northern District of California

dependent on these two claims.  Claim 1 describes a method for accessing files in a data storage system of a computer system, the method comprising the initial step of "creating in the computer system a category description table containing a plurality of category descriptions, each category description comprising a descriptive name...".  See Joint Statement, Ex. A at 16:55-65.  Claim 20 describes a similar method for accessing files in a data storage system of a computer system, wherein each file located on the data storage system has a file name, the method comprising the initial step of "defining in the computer system at least one list having a plurality of category descriptions, each category description comprising a descriptive name...".  See id. at 20:1-11.  Thus, the independent claims both refer to a "category description" as something that is comprised of "a descriptive name" – i.e., a name that is descriptive of something.  Any proposed construction must contain this limitation, as it is expressly provided for by the claim language itself.  On this point, the parties both agree, as both their proposed constructions construe "category description" to mean "information that includes a name ... that is descriptive of something about a stored file."

They disagree, however, on whether the "information" that comprises a category description is also limited to include a name that is specifically defined by the user.  Plaintiff asserts that no "user-defined" limitation is permissible, as doing so would contradict the express teachings of the claim language, while defendants contend that such a limitation is clearly implicated by the claim language, as evidenced by the specification and prosecution history.

Ultimately, plaintiff's proposed construction is truer to the claim language.  As noted above, the language of independent claims 1 and 20 clearly defines "category description" with reference to a "descriptive name."  See Joint Statement, Ex. A at 16:55-65.  It contains no direct support, however, for a definition of "category description" that includes a 'user-defined' descriptive name.  See id.  Moreover, subsequent dependent claims add *additional* requirements to the "category description" defined in independent claim 1, which

6

United States District Court

For the Northern District of California

1    requirements *do* reference a user-defined limitation.  Claim 2, for example, states that it

2    covers the method described in claim 1, "wherein each category description *comprises a*

3    *user defined category name and a unique category description identifier created by the*

4    *computer system.*"  <u>See</u> Joint Statement, Ex. A at 17:12-15 (emphasis added); <u>see also id</u>.

5    at 18:11-17 (Claim 7)(similar).  As plaintiff correctly points out, the fact that the dependent

6    claims further define "category description," as it was defined in claim 1, with reference to a

7    user-defined category limitation, supports the argument that the phrase – standing alone

8    and as first referenced in claim 1 – should be construed *without* that limitation.  <u>See, e.g.,</u>

9    <u>Phillips</u>, 415 F.3d 1303, 1315 (Fed. Cir. 2005)("the presence of a dependent claim that

10   adds a particular limitation gives rise to a presumption that the limitation in question is not

11   present in the independent claim.").

12       It is true enough, as defendants note, that the specification contains several

13   references to user-defined category descriptions.  <u>See id</u>. at 3:66-4:2 ("the invention allows

14   a user to define categories for files stored in a computer system, and to edit such

15   categories as they are used, to designate all applicable categories for each file, and to link

16   categories in user-definable ways"); <u>id</u>. at 4:58-62 ("The present invention consists of a

17   computer file control system [that] includes a File Category Table ("FCT") and a File

18   Information Directory ("FID") to store information *about user-defined categories* and

19   information linking such categories to specific files."); <u>id</u>. at 5:4-11 ("in the preferred

20   embodiment, the FCT is a table that can be modeled as having a set of columns labeled by

21   category-type, with entries comprising lists of category names or descriptions.  *Each*

22   *category description is a descriptive name defined by the user*")(emphasis added).  This

23   supports, as defendants urge, the notion that the present invention covers a search method

24   that is premised on user-defined category descriptions, which in turn form a part of the

25   process that ultimately allows for a search of specific files.

26       While the specification makes clear that user-defined category descriptions are

27   contemplated by the '360 patent, however, these references are insufficient to demonstrate

28

7

United States District Court

For the Northern District of California

1  that the patent is *limited* to coverage of user-defined category descriptions.  For the claim

2  language – as noted above – distinguishes between category descriptions that are user-

3  defined, and those that are not.  By making this distinction, the claim language itself

4  expressly defines category descriptions in a broader fashion than defendants propose.

5  See, e.g., Phillips, 415 F.3d at 1314 (the usage of a term in one claim may illuminate the

6  meaning of the same term in other claims); see also Renishaw PLC, 158 F.3d at 1248

7  ("The claims define the scope of the right to exclude; the claim construction inquiry,

8  therefore, begins and ends in all cases with the actual words of the claim.").  Thus, it would

9  be improper to allow the user-defined limitation from the specification to trump the clear

10  import of the actual claim language.

11  　　　　Moreover, it is worth noting that the specification does not speak exclusively of user-

12  defined category descriptions.  An alternative description of a preferred embodiment states:

13  "in the preferred embodiment, the user is *provided with* an FCT containing sample category

14  descriptions.  These category descriptions may be changed or deleted, and new categories

15  may be added."  See Joint Statement, Ex. A at 5:28-31 (emphasis added).  The obvious

16  import of this description is that, in at least one preferred embodiment, it is the computer,

17  and not the user, who creates category descriptions.  The specification can thus also be

18  read to support what the claim language in fact evidences:  that the '360 patent covers

19  category descriptions that *may* include more than just a user-defined name.  Namely, they

20  may also include computer-defined names.  As such, the specification does not actually

21  require a user-defined limitation.  See, e.g., Specialty Composites v. Cabot Corp., 845 F.2d

22  981, 987 (Fed. Cir. 1988)("[w]here a specification does not require a limitation, that

23  limitation should not be read from the specification into the claims").

24  　　　　In sum, the claim language prevents a limitation that restricts the definition of

25  "category description" to user-defined names only, and the specification should be read

26  consistently with this broader definition.  The court therefore construes the phrase

27  "category description" as follows:  "**information that includes a name that is descriptive**

28

United States District Court

For the Northern District of California

1   **of something about a stored file**."

2           2.      "category description table"

3           This phrase is found in claims 1, and 4-5 of the '360 patent.  <u>See</u> Joint Statement,

4   Ex. A.  Plaintiff contends that "category description table" should be construed to mean "at

5   least one list containing a plurality of category descriptions."  Defendants contend that

6   "category description table" should be construed to mean "a two-dimensional array, linked

7   list, fixed or variable record length table, etc., that stores information about user-defined

8   categories."

9           Preliminarily, there are two real points of contention between the parties.  First, they

10  dispute the meaning of the term "table," and specifically, whether "table" should be

11  construed as a "list," or as a broader series of possible configurations that include two-

12  dimensional arrays, linked lists, and fixed or variable record length tables.  Second, the

13  parties revisit their initial dispute over inclusion of a user-defined limitation.

14          In some respects, plaintiff's proposed construction makes sense.  Beginning with the

15  claim language, for example, the phrase "category description table" appears in only one

16  independent claim – claim 1 – and two dependent claims, claims 4-5.  Claim 1, in

17  discussing the category description table, states that it contains "a plurality of category

18  descriptions, each category description comprising a descriptive name, the category

19  descriptions having no predefined hierarchical relationship with such list or each other...".

20  <u>See</u> '360 Patent at 16:61-65.  In other words, the "category description table" is made up of

21  a plurality of category descriptions, which category descriptions have no predefined

22  hierarchical relationship with "[the] list" of category descriptions or with each other.  Thus,

23  the claim language itself supports plaintiff's construction of "category description table" as

24  "at least one list containing a plurality of category descriptions."  Claims 4 and 5, which are

25  dependent on claim 1, neither add nor detract from this understanding of "category

26  description table," since neither claim references the phrase in connection with any modifier

27  that adds further clarity to its meaning.

28

                                                9

**United States District Court**
For the Northern District of California

1   The specification also provides some support for plaintiff's construction.  While both

2   parties acknowledge that the specification does not expressly define the entirety of the

3   phrase "category description table" in any one place, they do agree that the specification

4   provides insight as to what is meant by the phrase "table."  The specification's description

5   of Figure 3, for example, describes "an example of a File Category Table ["FCT"] in

6   accordance with the present invention."  See id. at 5:32-33.  Turning to that drawing, Figure

7   3 does, in fact, appear to include "lists" of relevant information – again, an observation that

8   would support plaintiff's proposed construction.

9   Defendants, however, have correctly pointed out that the specification *also* states

10  that a "table" can be expressed in any desired manner, and is therefore not limited to a

11  "list," as required by plaintiff's construction.  Specifically, the specification further states:  "in

12  implementing the invention, the table structure shown can be configured in any desired

13  manner, such as an array, linked list, fixed or variable record length table using sequential

14  or hashed access, etc."  See id. at 5:36-39 (emphasis added).  Accordingly, the

15  specification teaches that, while a category description table can be defined with reference

16  to a "list," it can *also* be defined with reference to an array, record length table, or

17  structured in any other manner.

18  At first blush, this observation points away from plaintiff's proposed construction and

19  toward defendants, which incorporates the various possibilities for table structure that are

20  clearly contemplated by the specification.  However, defendants' proposed construction

21  ultimately fails to persuade.  This is because, even though their proposed construction is

22  more consistent with the patent's teachings regarding the meaning of "table," defendants'

23  construction also improperly limits a "category description table" to one that contains

24  information about "user-defined categories."  For the reasons already discussed in

25  connection with the term "category description," the court rejects defendants' proposed

26  limitation.

27  In sum, therefore, the court finds that neither of the parties' proposed constructions

28

10

United States District Court

For the Northern District of California

1   is wholly consistent with the intrinsic evidence, and that each side's proposal includes

2   certain limitations that are partly, if not wholly, appropriate.  As such, and further based on

3   the parties' willingness to concede certain points at the hearing on claim construction, the

4   court adopts a modified construction for the phrase "category description table," as follows:

5   "**at least one list or array, configured in any desired manner, or taking any form,**

6   **containing a plurality of category descriptions**."

7                    3.    "file information directory"

8           This phrase is found in claims 1, 5, 7, and 11 of the '360 patent.  See Joint

9   Statement, Ex. A.  Plaintiff contends that no construction of "file information directory" is

10  necessary.  However, should it be construed, the court should construe it to mean "a

11  directory comprising information corresponding to at least one file."  Defendants contend

12  that "file information directory" should be construed to mean "a table that stores information

13  linking user-defined categories to specific files."

14          Starting with the claim language, claim 1 of the patent describes the "file information

15  directory" as "comprising at least one entry corresponding to a file on the data storage

16  system, each entry comprising at least a unique file identifier for the corresponding file, and

17  a set of category descriptions selected from the category description table...".  See Joint

18  Statement, Ex. A at 16:66-17:4.  Dependent claim 5 covers the process by which the file

19  information directory is created, and this process is comprised in part of "creating a new

20  entry in the file information directory; storing in the new entry the file identifier of the

21  selected file; and storing in the new entry the category description identifier of each of the

22  selected category descriptions."  See id. at 17:31-45.  Thus, read in harmony, the claim

23  language makes clear that a file information directory is made up of at least one entry that

24  corresponds to a file, which entry in turn contains a file identifier for the selected file, and

25  category descriptions.  The claim language says nothing about the particular format that the

26  file information directory takes (e.g., a table versus a list), and it says nothing about the

27  purposes for which the information comprising the file information directory will be used

28

**United States District Court**
For the Northern District of California

1  (e.g., for purposes of linking user-defined categories to specific files).  The claim language

2  therefore favors plaintiff's construction.

3       Turning to the specification, it first introduces the description of "file information

4  directory" in a statement describing the present invention as a whole.  The specification

5  states: "The present invention consists of a computer file control system th[at] includes a

6  File Category Table ("FCT") and a File Information Directory ("FID") to store information

7  about user-defined categories and information linking such categories to specific files."

8  See Joint Statement, Ex. A at 4:58-62.  Then, in discussing the structure of the FID, the

9  specification states that "in the preferred embodiment, the FID is a table that can be

10 modeled as having a set of columns labeled by file name, file location [], creation and/or

11 last update time and date for the file," etc.  See id. at 6:17-22.  The specification goes on to

12 describe Figure 4 of the patent, which "shows an example of a File Information Directory in

13 accordance with the present invention."  See id. at 6:26-27.  And turning to Figure 4, there

14 are 5 different columns depicted, all of which contain lists of information about sample files.

15 See Joint Statement, Ex. A at Figure 4.  The information includes file identifying information

16 such as file names, locations, and creation dates, as well as category descriptions.  See id.

17      Thus, while the claim language teaches that a file information directory is made up of

18 at least one entry that corresponds to a file, which entry includes a file identifier and

19 category descriptions, the specification further teaches that in the preferred embodiment,

20 the file information directory is expressed as a "table" that contains particular information

21 about files – including the information about file identifiers and category descriptions.

22      Defendants urge the court, on this basis, to adopt a construction that would define

23 "file information directory" in part as a "table."  However, such a construction is improper.

24 As a matter of law, limitations from the preferred embodiment cannot be read into the

25 claims absent an express intention to do so, and the court can glean no express intention

26 to limit the meaning of file information directory to "table."  Teleflex, 299 F.3d at 1326.

27 Indeed, as discussed above in connection with the prior disputed term, the specification

28

United States District Court

For the Northern District of California

elsewhere explains that a "table" structure "can be configured in any desired manner, such as an array, linked list, fixed or variable record length table...". See id. at 5:36-39. To specifically construe the phrase "file information directory" as a "table," therefore, when the term "table" is in turn defined to include any desired format (some of which may not strictly conform to the obvious structure for a 'table'), is not warranted.

In sum, therefore, while the specification supports the notion that a file information directory *can* be a table, it may not properly be limited to such. Accordingly, defendants' proposed construction is inconsistent with the intrinsic evidence. Plaintiff's proposed construction, by contrast, is consistent with both the claim language and the specification, since it allows the "file information directory" to be defined with reference to the information that it must include under the claim language, but does not limit the definition of "directory" to a particular format. The court therefore adopts plaintiff's proposed construction, and construes the term "file information directory" as: "**a directory comprising information corresponding to at least one file**."

4.    "having no predefined hierarchical relationship"

This phrase is found in claims 1 and 20 of the '360 patent. See Joint Statement, Ex A. Originally, plaintiff contended that "having no predefined hierarchical relationship" should be construed to mean "the category descriptions are not initially organized into a single, pre-defined tree-type directory structure where every node has a unique parent." Defendants contended that the disputed phrase should be construed to mean "not ranked into levels of subordination and superordination."

At the hearing on claim construction, however, after hearing the parties' arguments in support of their differing constructions, the court requested that the parties attempt to reach agreement as to a jointly proposed construction. On March 26, the parties duly submitted a stipulated proposed construction to the court. Having reviewed that jointly proposed construction, the court hereby adopts it, and construes the phrase "having no predefined hierarchical relationship" as follows: "**The category descriptions have no**

13

**United States District Court**
For the Northern District of California

1   **predefined hierarchical relationship.  A hierarchical relationship is a relationship that**

2   **pertains to a hierarchy.  A hierarchy is a structure in which components are ranked**

3   **into levels of subordination; each component has zero, one, or more subordinates;**

4   **and no component has more than one superordinate component.**"

5             5.    "search filter"

6        This phrase is found in claims 1, 7, 11, and 20 of the '360 patent.  <u>See</u> Joint

7   Statement, Ex. A.  Plaintiff contends that "search filter" should be construed to mean "a set

8   of one or more category descriptions (depending upon the context of claim 1 or claim 20)

9   and at least one logical operator if there is more than one category description in the

10  search filter that is used to search."  Defendants contend that "search filter" should be

11  construed to mean, for claim 1, "a program that takes as an input two or more category

12  descriptions chosen by the user to locate files" and for claim 20, "a program that takes as

13  an input at least one category description chosen by the user to locate files."

14       Beginning with the claim language, claim 1 refers to a "search filter" as "comprising a

15  set of category descriptions..." and claim 20 refers to a "search filter of at least one

16  category description selected from at least one displayed defined list."  <u>See</u> Joint

17  Statement, Ex. A at 17:5-11; 20:22-24.  Thus, depending on the claim, a "search filter" will

18  include at least one (but can include more) category description(s).  <u>See also id</u>. at 10:41-

19  43; 10:54-55.  On this point, at least, both parties' proposed constructions are acceptable,

20  as both account for the fact that the claim language requires at least one category

21  description, depending on which claim is at issue.

22       As to a further definition for what a search filter is, the specification answers this

23  question directly.  It states that search filters are "search terms in logically defined

24  combinations...".  <u>See id</u>. at 2:58-53 ("the user then may search for files by file word content

25  by defining "search filters, *which are search terms in logically defined*

26  *combinations*")(emphasis added); <u>see also id</u>. at 11:3-10 ("In addition to selecting category

27  descriptions for the search filter, the user preferably may also group the categories, and

28

**United States District Court**
For the Northern District of California

1   relate the groups with logical connectors").  Thus, any proposed construction of "search

2   filter" should also incorporate the requirement that search terms are to be "logically

3   defined."[2]  See Phillips, 415 F.3d at 1316 (when the specification reveals a special

4   definition given to a claim term by the patentee that differs from the meaning it would

5   otherwise possess, the inventor's lexicography governs).  Of the two competing

6   constructions before the court, however, only plaintiff's incorporates this requirement, by

7   including the limitation that the search filter include a "logical operator" if more than one

8   category description is utilized.  Defendants' proposed construction, by contrast, appears to

9   ignore the specification's express definition entirely.

10          Defendants' proposed construction also suffers from other deficiencies.  Most

11  significantly, defendants' construction of "search filter" as a "program" finds no support in

12  either the claim language or the specification.  Indeed, defendants have cited no authority

13  in either source.  Rather, defendants' insertion of the word "program" is taken from two

14  technical dictionaries that define "filter" alone to mean "program," and "device or program,"

15  respectively.  See Cabral Decl., Ex. C at 171 (emphasis added).  In the court's view,

16  however, reliance on the technical dictionary definition of "filter" alone to import a "program"

17  limitation into the broader phrase "search filter" is misguided – particularly since at least

18  one of the dictionary terms relied on by defendants is inconclusive as to whether "filter"

19  means a program or a device, and since defendants have not cited to any portion of the

20  claim language or specification that supports the "program" limitation.[3]

21          Defendants have also, in the court's view, once again improperly inserted a user-

22

23          [2]       Defendants correctly point out that the above definition for "search filter" is
    contained within the specification's discussion of the prior art and pre-existing data retrieval
24  systems, see Joint Statement, Ex. A at 2:58-53.  However, while this is true, it does not change
    the fact that in the midst of such discussion, the patentees included their own definition for
25  what a "search filter" is.

26          [3]       At the hearing, defendants' counsel indicated that defendants are amenable to
    taking the word "program" out and replacing it with either "device" or "software feature."
27  However, this change does nothing to remedy the issue, for it still seeks to import into the
    phrase "search filter" a limitation that finds no support in the claim language or specification.

28

**United States District Court**
For the Northern District of California

1   definition limitation into their proposed construction.  Defendants' construction requires that

2   the category descriptions comprising the search filter must be "chosen by the user."  As

3   has already been discussed herein, however, the claim language and specification do not

4   permit a construction that would limit category descriptions to those that are chosen by the

5   user.  In their briefing and at the hearing, defendants attempted to articulate with a bit more

6   precision that their construction is one that emphasizes, not so much that the category

7   descriptions themselves must be user-defined (which is their position with respect to the

8   first disputed term at issue), but that with respect to the actual search filter, it is the user

9   who actually defines the search filter.  Defendants rely on the specification as evidence of

10  this.  See Joint Statement, Ex. A at 4:5-14; 10:40-46; 10:54-55; 13:25-26.  However, while

11  defendants are correct that the specification refers to the user's role in defining the search

12  filter, this is a separate and distinct inquiry from what the "search filter" itself *is*.  In other

13  words, instead of arguing the plain and ordinary meaning of the phrase itself, defendants

14  seek to add a limitation regarding the term's *function*.  This argument, though, is one that is

15  better left to the infringement stage of the litigation, where defendants can more

16  appropriately argue that the Information Access Platform they utilize does not read upon

17  the claim terms, as construed herein.

18          To the extent plaintiff also objects to defendants' proposed construction because it

19  requires that a search filter "locate files," the court finds that defendants have again

20  improperly sought to limit the phrase at issue in accordance with its function, rather than in

21  accordance with its ordinary meaning as disclosed by the specification.  Moreover, even if

22  the court were to find that this limitation *is* generally supported by the claim language and

23  specification, defendants' proposed construction remains deficient for the reasons

24  expressed above.

25          In sum, the court finds that plaintiff's construction is most consistent with the intrinsic

26  evidence.  As such, the court hereby construes the phrase "search filter" to mean: "**a set**

27  **of one or more category descriptions (depending upon the context of claim 1 or**

28

16

United States District Court

For the Northern District of California

1 **claim 20) and at least one logical operator if there is more than one category**

2 **description in the search filter that is used to search**."

3         6.    "file"

4     This phrase is found in claims 1-7, 11-14, and 20-21 of the '360 patent.  In all

5 claims, the phrase is used in a variety of references, including: "a method of accessing

6 files," "selecting one of the displayed <u>file</u> names;" "opening the <u>file</u> corresponding to the

7 selected <u>file</u> name," etc.  <u>See generally</u> Joint Statement, Ex. A at 16:54-20:44.  Plaintiff

8 contends that "file" should be construed to mean "any collection of data or information

9 stored on a computer system."  Defendants contend that "file" should be construed to mean

10 "any collection of data or information stored on a computer system as a unit."

11     Preliminarily, the parties' proposed constructions are identical, with the exception of

12 defendants' addition of the phrase "as a unit."  Defendants contend that this additional

13 phrase is needed in order to clarify the fact that a "file" does not relate to just a single

14 record or piece of information stored anywhere on a computer, but rather, refers to a set of

15 records, or a collection of information, which must necessarily be treated together as a

16 single unit.  For support, defendants invoke several technical dictionaries.

17     Fortunately, the intrinsic evidence resolves the parties' dispute in a straightforward

18 manner, for this is an instance in which the patentees acted as their own lexicographers, by

19 expressly defining the term "file" in the patent specification.  Specifically, the patentees

20 noted, "[t]he term 'file' should be understood to mean any collection of data or information

21 stored on a computer system."  <u>See</u> '360 Patent at 4:64-66.  Under the ordinary rules of

22 claim interpretation, this definition governs, notwithstanding defendants' reliance on

23 technical dictionary definitions to prove that those dictionary definitions (which include the

24 additional "as a unit" limitation, apply).  <u>See, e.g., Phillips</u>, 415 F.3d at 1316 (when the

25 specification reveals a special definition given to a claim term by the patentee that differs

26 from the meaning it would otherwise possess, the inventor's lexicography governs.).

27 Accordingly, plaintiff's proposed construction – which sets forth the same definition

28

United States District Court

For the Northern District of California

1  provided in the specification – controls here.

2      Defendants, moreover, fail to identify anything in the claim language or specification

3  that warrants inclusion of the "as a unit" limitation.  The only intrinsic evidence they rely on

4  is a statement made by plaintiff's attorney during prosecution of the '360 patent, to the

5  effect that the present invention "is not directed to generating queries or data sets for a

6  database, but is a method for accessing files in a data storage system."  See Notice of

7  Errata re Defendants' Responsive Claim Construction Brief, Ex. B1 at SPEED 000143.

8  This single reference, however, does not constitute a disavowal of the special definition

9  given to the term "file" within the specification.  Moreover, as plaintiff points out in its reply,

10 the statement that defendants rely on was used in connection with the patentees' efforts to

11 distinguish the present invention from the prior art and specifically, to distinguish the

12 present method for "accessing files" from the prior art's "query by example" system in which

13 users build queries for a database.  See id.  While the two methods were distinguished,

14 however, there was nothing in the distinction that indisputably leads to defendants'

15 conclusion that a "file" must be construed as a collection of data or information stored on a

16 computer system "as a unit."

17     Accordingly, and based on all the above, the court adopts plaintiff's proposed

18 construction, and construes "file" as:  "**any collection of data or information stored on a**

19 **computer system**."

20         7.  "such list"

21     This phrase is found in claims 1 and 20 of the '360 patent.  See Joint Statement, Ex.

22 A.  The parties' only dispute, however, is whether "such list," as used in claim 1 of the '360

23 patent, is indefinite.  Defendants assert that it is, since there is no antecedent basis for the

24 phrase, while plaintiff argues to the contrary, and contends that the phrase should be

25 construed to refer to a "category description table."

26     The relevant test for indefiniteness is not simply whether an antecedent basis is

27 lacking with respect to the disputed claim language, but whether a person skilled in the art

28

could reasonably ascertain the meaning of "such list" as used in the claim language.  See, e.g., Energizer Holdings, Inc. v. Int'l Trade Com'n, 435 F.3d 1366, 1370 (Fed Cir. 2006)("[t]he definiteness inquiry 'focuses on whether those skilled in the art would understand the scope of the claim when the claim is read in light of the rest of the specification'"); Bancorp Servs., L.L.C. v. Hartford Life Ins. Co., 359 F.3d 1367, 1371 (Fed. Cir. 2004)("In ruling on a claim of patent indefiniteness, a court must determine whether those skilled in the art would understand what is claimed when the claim is read in light of the specification").

Applying this test here, the court concludes that a person skilled in the art could reasonably ascertain the meaning of "such list," as used in the language of claim 1.  Claim 1 covers, in part, a "category description table" which contains "a plurality of category descriptions... the category descriptions having no predefined hierarchical relationship with such list or each other...".  See Joint Statement, Ex. A at 16:60-65.  The reasonable inference that a person of ordinary skill in the art would likely make is that "such list" refers to the "category description table," which is comprised of a plurality of category descriptions.  Not only does the language of claim 1 itself logically suggest as much, but as plaintiff notes, the language of claim 20 also supports this inference, as it more directly refers to a "list having a plurality of category descriptions."  See id. at 20:7-9.  The specification also supports this inference, since it refers to a category description table as a "list" of category descriptions, among other possible configurations.  See id. at 5:36-39.

Defendants seize on the specification's description of multiple possible configurations for a category description table, and argue that in view of the possibilities, no one skilled in the art could reasonably ascertain that the reference to category description table in claim 1 could refer to "such list."  But this argument is somewhat of a red herring. For the specification's references to possible configurations for a "category description table" do not alter the fact that a person skilled in the art would reasonably conclude that, in the claim language, "such list" refers to "category description table" in the first instance.

19

**United States District Court**

For the Northern District of California

1    Rather, defendants' objection really goes to the argument that, assuming "such list" is

2    construed to mean "category description table," a "category description table" should not be

3    limited to just a "list" – a point that goes in turn to the proper construction to be given the

4    phrase "category description table" (not "such list"), and which was raised and resolved

5    elsewhere herein.

6        In sum, therefore, the court concludes that "such list" is not indefinite for lack of an

7    antecedent basis.  The court therefore adopts plaintiff's construction and construes "such

8    list" as:  "**a category description table**."

9            8.    "means for reading and writing data from the data storage system,

10                displaying information, and accepting user input"

11       This phrase is found in claims 1 and 20 of the '360 patent.  See Joint Statement, Ex.

12   A.  Originally, plaintiff contended that no construction is necessary, but that if the court

13   does construe the language, it should be construed as "a computer system, embodied in

14   either a single computer or a distributed environment, such as networked computers,

15   having a hard disk drive (including device drivers) and all equivalent structures, a computer

16   display and all equivalent structures, and a computer mouse (including device drivers) and

17   all equivalent structures."  Defendants, by contrast, contended that the disputed phrase

18   should be construed to mean "a computer system, embodied in a single computer having a

19   hard disk drive, a computer display, and a computer mouse."

20       At the hearing, however, the parties stated that they had narrowed their dispute, and

21   now present somewhat modified proposed constructions.  Namely, plaintiff now contends

22   that the phrase at issue should be construed as "a computer system, embodied in either a

23   single computer or a distributed environment, having a hard disk drive, a computer display,

24   and a computer mouse, and equivalents thereto."   Defendants largely agree with this

25   modified construction, except that they would omit the construction's reference to "either"

26   and "or a distributed environment."  The only issue now before the court is thus whether the

27   disputed term should be construed to cover a single computer system, or in addition to a

28

United States District Court

For the Northern District of California

1    single computer system, a distributed environment such as networked computers.

2         Preliminarily, the court is at somewhat of a loss as to how the disputed term relates

3    to the issue that the parties have placed before the court – i.e., whether the patent covers a

4    single computer system or a distributed environment, as well.  The parties initially argued

5    that the disputed term is a means-plus-function phrase, which must be construed

6    accordingly.  However, the "having means" phrase at issue does not obviously invoke a

7    dispute over the question of single computer system v. network.  Moreover, the phrase is

8    not even a proper means-plus-function phrase.  The disputed term is located in the

9    preamble to Claims 1 and 20, which both go on to recite a step by step method that gives

10   life to the claimed "method for accessing files in a data storage system of a computer

11   system...".  See, e.g., Joint Statement, Ex. A at 16:54-17:12.   In the court's view, the brief

12   portion of the preamble that the parties have chosen to dispute here does not actually

13   constitute or explain any claim limitations that are elsewhere developed and explained in

14   the body of the claims.  As such, the disputed phrase cannot properly be used to construe

15   any relevant claim limitations.  See, e.g., Altiris, Inc. v. Symantec Corp., 318 F.3d 1363,

16   1371 (Fed. Cir. 2003)(noting that "[i]t is well settled that if the body of the claim sets out the

17   complete invention, and the preamble is not necessary to give life, meaning and vitality to

18   the claim, then the preamble is of no significance to claim construction because it cannot

19   be said to constitute or explain a claim limitation").  In sum, the court is not convinced that

20   the disputed language is a proper claim limitation in the first place, let alone one that can be

21   construed as a means-plus-function limitation.  See, e.g., Biomedino, LLC v. Waters

22   Technologies Corp., 490 F.3d 946, 950 (Fed Cir. 2007).

23        Indeed, the court finds that, although not expressly stated as such, what the parties

24   are really seeking is a construction of the straightforward phrase "computer system."  This

25   phrase can readily be found in the claim language.  See Joint Statement, Ex. A at 16:60

26   (language of Claim 1, subsection (a)).  Since the parties' arguments make clear – even if

27   their Joint Statement does not – that both parties seek construction of the meaning of

28

21

**United States District Court**

For the Northern District of California

1    "computer phrase," and in the interests of finality, the court proceeds to construe it.

2         The specification clearly refers to the present invention as one that covers computer

3    networks, in addition to single computer systems.  See, e.g, '360 Patent at 16:10-15 ("Many

4    other implementations of these ideas are possible... [f]or example, in a large office *or on a*

5    *public or private electronic network*, communication between people can be difficult....

6    *Using the invention*, a category description list could be defined for all possible topics (with

7    constant updating *by the network administrator*...))(emphasis added); see id. at 16:41-47

8    ("A number of embodiments of the present invention have been described.  Nevertheless, it

9    will be understood that various modifications may be made without departing from the spirit

10   and scope of the invention.  For example, although the above description has been made

11   with respect to a single computer system, that term is meant to include distributed data

12   storage environments, *such as networked computers*")(emphasis added).  Defendants, by

13   contrast, have submitted no adequate response to these teachings from the specification.

14   Nor has the court found anything else in the intrinsic evidence (or elsewhere) that

15   persuades it that the above language should not be given effect.

16        In sum, based upon the re-focused disputed term proposed at the hearing, the court

17   construes the phrase "computer system" as: "**a computer system, embodied in either a**

18   **single computer or a distributed environment, having a hard disk drive, a computer**

19   **display, and a computer mouse, and equivalents thereto**."

20             9.    "user"

21        This phrase is found in claims 1-2, 4-7, 11, 13, and 20-21 of the '360 patent.  See

22   Joint Statement, Ex. A.  Plaintiff contends that "user" should be construed as "one that uses

23   – may be a person or another computer," and defendants contend that "user" should be

24   construed as "a person that defines categories, associates files with particular categories,

25   and defines the search filter."

26        Defendants are correct that much of the specification refers to "a user," which most

27   logically refers to a natural person.  See Joint Statement, Ex. A at 3:66-4:2 ("The invention

28

United States District Court

For the Northern District of California

allows a user to define categories for files stored in a computer system..."); id. at 4:7-8 ("the user defines a filter which will always find at least one file"); id. at 4:9-15 (repeated references to steps taken by "the user"). Defendants are further correct that, in doing so, the specification clearly contemplates that a "user" defines category descriptions, can associate files with category descriptions, and can further define search filters. However, the specification also states that the claimed invention covers embodiments that *do not* limit the definition of user to a person. For as plaintiff points out, the specification states: "it will be understood that various modifications may be made without departing from the spirit *and scope of the invention*.... although the above description has contemplated that the 'user' is a person, the invention can be readily adapted to interact *with another computer as the 'user."* See id. at 16:41-50 (emphasis added). In other words, the specification clearly states that the scope of the claim language should be interpreted to include not just natural persons, but also computers, who may under the appropriate circumstances be considered "users."

Moreover, while defendants have understandably relied on Z4 Techs., Inc. v. Microsoft Corp., 507 F.3d 1340, 1348 (Fed. Cir. 2007), in support of their position, this case is not ultimately helpful to them. It is true enough that in Z4, the Federal Circuit expressly found that the term "user" did not include "computers" and had to be limited to "persons" only. See id. However, the case is distinguishable from the facts here. The governing claim language in Z4, for example, contained a side by side recitation of "user" and "computer" as distinct entities. See id. (In the claim recitations at issue, "the 'user' and the 'computer' are 'distinct entities'"). Here, the claim language contains no such mutually exclusive distinction. Indeed, even the claim language that references both "a user defined category name and a unique category description identifier created by the computer system" – e.g., as in claim 2 – does not, in the court's view, alter this conclusion. See, e.g., Joint Statement, Ex. A at 17:12-15. This is because, using plaintiff's construction here, claim 2 should be read as referring to the fact that the *category names* can be defined

United States District Court

For the Northern District of California

1    either by a person or computer, while the category description *identifier* (e.g., the file

2    location info) is created solely by the computer.

3        In sum, for all the above reasons, the court adopts plaintiff's construction and

4    construes the phrase "user" as:  "**one that uses – may be a person or another**

5    **computer**."

6                    10.    "creating in the computer system"

7        This phrase is found in claim 1, and referenced by dependent claims 4, 5, and 7 of

8    the '360 patent.  <u>See</u> Joint Statement, Ex. A.  Plaintiff contends that "creating in the

9    computer system" does not need to be construed, but that if the court does construe it, it

10   should be construed as "bringing into existence in the computer system."  Defendants

11   contend that "creating in the computer system" is indefinite.  The crux of the parties' dispute

12   is really whether, even assuming that plaintiff's construction is adopted, the claim term (or

13   the proposed construction) is indefinite, due to the language's failure to state who or what

14   actually does the "creating" to which the claim refers.

15       The court is not persuaded that the phrase at issue is indefinite.  Construing the

16   claim language consistently with the proper construction to be given to the phrase "user,"

17   the claim language's use of the phrases "initially creating in the computer system,"

18   "thereafter creating in the computer system a file information directory...," and thereafter

19   creating in the computer system a search filter..." – i.e., the three steps covered in claim 1 –

20   refer to steps that are undertaken by either a computer, or a natural user.  <u>See</u> Joint

21   Statement, Ex. A at 16:60-17:11.  Regardless whether undertaken by a computer or natural

22   user, however, the end result is that the various steps are doing something that "brings into

23   existence," or more accurately, produces certain functions within the computer system.  As

24   such, the court finds that the disputed claim language is reasonably understandable to a

25   person skilled in the art and is not indefinite.

26       The court does find, however, that a slight modification of plaintiff's proposed

27   construction would be most consistent with the phrase at issue's ordinary meaning.

28

                                        24

1   Accordingly, the court construes the phrase "creating in the computer system" as:

2   "**producing in the computer system**."

3           C.      Conclusion

4           In accordance with the foregoing, and for the reasons discussed above, the court

5   construes the parties' disputed terms as follows:

6           1.      "category description" means "information that includes a name that is

7                   descriptive of something about a stored file."

8           2.      "category description table" means  "at least one list or array, configured in

9                   any desired manner, or taking any form, containing a plurality of category

10                  descriptions."

11          3.      "file information directory" means "a directory comprising information

12                  corresponding to at least one file."

13          4.      "having no predefined hierarchical relationship" means "the category

14                  descriptions have no predefined hierarchical relationship.  A hierarchical

15                  relationship is a relationship that pertains to a hierarchy.  A hierarchy is a

16                  structure in which components are ranked into levels of subordination; each

17                  component has zero, one, or more subordinates; and no component has

18                  more than one superordinate component."

19          5.      "search filter" means "a set of one or more category descriptions (depending

20                  upon the context of claim 1 or claim 20) and at least one logical operator if

21                  there is more than one category description in the search filter that is used to

22                  search."

23          6.      "file" means "any collection of data or information stored on a computer

24                  system."

25          7.      "such list" means "a category description table."

26          8.      "means for reading and writing data from the data storage system, displaying

27                  information, and accepting user input" is not properly before the court for

28

25

construction, the parties having instead re-focused their arguments and sought construction of the phrase "computer system."  "Computer system" means "a computer system, embodied in either a single computer or a distributed environment, having a hard disk drive, a computer display, and a computer mouse, and equivalents thereto."

9.    "user" means "one that uses – may be a person or another computer."

10.   "creating in the computer system" means "producing in the computer system."

**IT IS SO ORDERED.**

Dated: June 18, 2008

_____
PHYLLIS J. HAMILTON
United States District Judge

United States District Court

For the Northern District of California

26