# EXHIBIT 1

TO DECLARATION OF ALAN P. BLOCK IN
SUPPORT OF SPEEDTRACK, INC.'S MOTION FOR
SUMMARY ADJUDICATION OF ISSUES PURSUANT
TO RULE 56(D), FED. R. CIV. PRO THAT:
(1) DEFENDANT WAL-MART.COM USA, LLC
DIRECTLY INFRINGED CLAIM 1 OF U.S. PATENT
NO. 5,544,360 UNDER 35 U.S.C. § 271(A); AND
(2) THE OCTOBER 29, 1991 MACWEEK ARTICLE IS
NOT AN INVALIDATING OFFER FOR SALE UNDER
35 U.S.C. § 102(B)

# Richard E. Korf

Professor
Computer Science Department
4532E Boelter Hall
University of California, Los Angeles
Los Angeles, Ca. 90095
(310)206-5383
korf@cs.ucla.edu

## Education

### Carnegie-Mellon University, 1977 - 1983

Ph.D. in computer science, May 1983. Artificial intelligence thesis on "Learning to Solve Problems by Searching for Macro-Operators" under Professor Herbert Simon. M.S. in computer science, Aug 1980.

### Massachusetts Institute of Technology, 1973 - 1977

B.S. in electrical engineering and computer science, June 1977. Bachelor's thesis in computer-aided design under Professor Gerald Sussman.

## Experience

### University of California, Los Angeles, 1985 - present

Professor of Computer Science. Research in problem solving, heuristic search, and planning in artificial intelligence. Teaching includes graduate and undergraduate AI courses, undergraduate computer architecture course, and teaching assistant training seminar. Assistant Professor, 1985-1988; Associate Professor 1988-1995.

### Columbia University, 1983 - 1985

Herbert M. Singer Assistant Professor of Computer Science. Teaching included an honors-level introduction to computer science, digital logic, and a graduate AI course.

## Honors and Awards

Outstanding Senior Program Committee Member, AAAI-2008
  Honorable Mention, IJCAI-JAIR Best Paper Prize, 2007
  Honorable Mention, AAAI Classic Paper Award, 2006
  Lockheed Martin Excellence in Teaching Award, 2005
  Student's Choice Award for Excellence in Teaching, 1996
  Fellow of American Association for Artificial Intelligence, 1994
  UCLA Computer Science Department Distinguished Teaching Award, 1989
  National Science Foundation Presidential Young Investigator Award, 1986
  IBM Faculty Development Award, 1985
  Herbert M. Singer Assistant Professor at Columbia University, 1984

1

Exhibit___1___ Page__17_

# Service

Member, Editorial Board, Artificial Intelligence, 1996-present.

Member, Editorial Board, Journal of Applied Intelligence, 1989-present.

Associate Editor, Journal of Artificial Intelligence Research, 1993-1996.

Associate Editor, IEEE Transactions on Pattern Analysis and Machine Intelligence (TPAMI), 1987-1989.

Member, Editorial Board, Journal of Artificial Intelligence Research, 1993-1998.

Program Co-Chair, National Conference on Artificial Intelligence (AAAI-94), 1994.

Senior Program Committee Member, National Conference on Aritificial Intelligence (AAAI), 2002, 2006, 2007, 2008

Senior Program Committee Member, Constraint Programming 2002.

Program Committee Member, National Conference on Artificial Intelligence (AAAI), 1986, 1987, 1990, 1991, 1992, 1993, 1996, 2000, 2001, 2005,

Program Committee Member, International Conference on Computer Games, 1998, 2000, 2002, 2004, 2006

Program Committee Member, International Conference on Automated Planning and Scheduling (ICAPS), 1996, 1998, 2000, 2003, 2004, 2005, 2006, 2007, 2008

Program Committee Member, Symposium on AI and Mathematics, 1996, 2000, 2002, 2004, 2006, 2008

Program Committee Member, International Conference on Computers and Games, 1998, 2000, 2004, 2006.

Program Commmittee Member, European Conference on AI (ECAI-2002).

Program Committee Member, European Conference on Planning, 1999.

Member, Program Committee, International Joint Conference on Artificial Intelligence (IJCAI), 1989, 1997, 1999.

Councilor of American Association for Artificial Intelligence, 1995-1998.

Member, National Science Foundation Review Panels, 1984, 1986, 1988, 1992, 1993, 1997.

Program Chair, AAAI Symposium on Planning and Search, Stanford, 1989.

Program Committee Member, Workshop on Model Checking and Artificial Intelligence, 2006.

Program Committee Member, Learning and Intelligence Optimization, 2007, 2008.

Program Committee Member, Workshop on Bin Packing and Placement Constraints, 2008

Program Committee Member, First International Symposium on Search Techniques in AI and Robotics, 2008.

Program Committee Member, 11th Ibero-American Conference on Artificial Intelligence, 2008.

Exhibit 1 Page 18

# Publications

1. Korf, R.E., A shape independent theory of space allocation, *Environment and Planning B*, Vol. 4, No. 1, pp. 37-50, July 1977.

2. Korf, R.E., Toward a model of representation changes, *Artificial Intelligence*, Vol. 14, No. 1, pp. 41-78, October 1980.

3. Korf, R.E., Inversion of applicative programs, *Proceedings of the Seventh International Joint Conference on Artificial Intelligence (IJCAI-81)*, Vancouver, Canada, August 1981, pp. 1007-1009.

4. Korf, R.E., Space robotics, technical report No. CMU-RI-TR-82-10, The Robotics Institute, Carnegie-Mellon University, Pittsburgh, Pa., August 1982.

5. Korf, R.E., A program that learns to solve Rubik's Cube, *Proceedings of the National Conference on Artificial Intelligence (AAAI-82)*, Pittsburgh, Pa., August 1982, pp. 164-167.

6. Korf, R.E., A computer science syllabus for gifted pre-college students, *Proceedings of the Fourteenth ACM/SIGCSE Technical Symposium on Computer Science Education*, Orlando, Fla., February 1983, pp. 237-240.

7. Korf, R.E., Operator decomposability: a new type of problem structure, *Proceedings of the National Conference on Artificial Intelligence (AAAI-83)*, Washington, D.C., August, 1983, pp. 206-209.

8. Korf, R.E., Macro-operators: A weak method for learning, *Artificial Intelligence*, Vol. 26, No. 1, pp. 35-77, 1985.

9. Korf, R.E., *Learning to Solve Problems by Searching for Macro-Operators*, Pitman Publishing Ltd, London, 1985.

10. Korf, R.E., Depth-first iterative-deepening: An optimal admissible tree search, *Artificial Intelligence*, Vol. 27, No. 1, pp. 97-109, 1985, reprinted in Chapter 6 of *Expert Systems, A Software Methodology for Modern Applications*, P.G. Raeth (Ed.), IEEE Computer Society Press, Washington D.C., 1990, pp. 380-389.

11. Korf, R.E., An analysis of abstraction in problem solving, *Proceedings of the ACM Technical Symposium on Intelligent Systems*, Gaithersburg, Md., June 1985, pp. 7-9.

12. Korf, R.E., Iterative-deepening-A*: An optimal admissible tree search, *Proceedings of the International Joint Conference on Artificial Intelligence, (IJCAI-85)*, UCLA, August, 1985, pp. 1034-1036.

13. Korf, R.E. Heuristics as invariants and its application to learning, in *Machine Learning: A Guide to Current Research*, T.M. Mitchell, J.G. Carbonell, and R.S. Michalski (Eds.), Kluwer Academic Press, Hingham, Ma., 1986, pp. 161-165.

14. Christensen, J., and R.E. Korf, A unified theory of heuristic evaluation functions and its application to learning, *Proceedings of the National Conference on Artificial Intelligence (AAAI-86)*, Philadelphia, Pa., August 1986, pp. 148-152.

15. Korf, R.E., Search, in the *Encyclopedia of Artificial Intelligence*, Stuart Shaprio (Ed.), John Wiley, New York, 1987, pp. 994-998.

16. Korf, R.E., Heuristics, in the *Encyclopedia of Artificial Intelligence*, Stuart Shaprio (Ed.), John Wiley, New York, 1987, pp. 376-380.

Exhibit ___1___ Page ___19___

17. Korf, R.E., Planning as search: A quantitative approach, *Artificial Intelligence*, Vol. 33, No. 1, 1987, pp. 65-88. Reprinted in Chapter 7 of *Readings in Planning*, J. Allen, J. Hendler, and A. Tate (Eds.), Morgan Kaufmann, San Mateo, Ca. 1990, pp. 566-577.

18. Pearl, J., and R.E. Korf, Search techniques, in *Annual Review of Computer Science*, Vol. 2, Annual Reviews Inc., Palo Alto, Ca., 1987, pp. 451-467.

19. Abramson, B., and R.E. Korf, A model of two-player evaluation functions, *Proceedings of the National Conference on Artificial Intelligence (AAAI-87)*, Seattle, Wash., July, 1987, pp. 90-94.

20. Korf, R.E., Real-time heuristic search: First results, *Proceedings of the National Conference on Artificial Intelligence (AAAI-87)*, Seattle, Wash., July, 1987, pp. 133-138.

21. Korf, R.E., Real-time path planning, in *Proceedings of the DARPA Workshop on Knowledge-Based Planning*, Austin, Tx., Dec. 1987, pp. 30-1:30-8.

22. Korf, R.E., Real-time single-agent search, in *Proceedings of the AAAI Symposium on Computer Games*, Stanford, Ca., March 1988, pp. 1-2.

23. Korf, R.E., Optimal path-finding algorithms, in *Search in Artificial Intelligence*, L.N. Kanal and V. Kumar (Eds.), Springer-Verlag, New York, 1988, pp. 223-267.

24. Korf, R.E., Planning as heuristic search, in *Proceedings of the DARPA Workshop on High Level Vision and Planning*, Rehovot, Israel, April, 1988, pp. 15-21.

25. Korf, R.E., Multi-agent heuristic search, in *Proceedings of the Eighth Annual Workshop on Distributed Artificial Intelligence*, Lake Arrowhead, Ca. May, 1988, pp. 1-5.

26. Korf, R.E., Search in AI: A survey of recent results, in *Exploring Artificial Intelligence*, Howard Shrobe (Ed.) Morgan-Kaufmann, Los Altos, Ca. 1988, pp. 197-237.

27. Korf, R.E., Real-time heuristic search: New results, *Proceedings of the National Conference on Artificial Intelligence (AAAI-88)*, Minneapolis, MN, August, 1988, pp. 139-144.

28. Ferguson, C., and R.E. Korf, Distributed tree search and its application to alpha-beta pruning, *Proceedings of the National Conference on Artificial Intelligence (AAAI-88)*, Minneapolis, MN, August, 1988, pp. 128-132.

29. Powley, C., and R.E. Korf, SIMD and MIMD parallel search, *Proceedings of the AAAI Symposium on Planning and Search*, Stanford, Ca., March 1989, pp. 49-53.

30. Korf, R.E., Generalized game trees, *Proceedings of the International Joint Conference on Artificial Intelligence (IJCAI-89)*, Detroit, Michigan, August 1989, pp. 328-333.

31. Powley, C, and R.E. Korf, Single-agent parallel window search: A summary of results, *Proceedings of the International Joint Conference on Artificial Intelligence (IJCAI-89)*, Detroit, Michigan, August 1989, pp. 36-41.

32. Korf, R.E., Depth-limited real-time search, *Proceedings of the IJCAI-89 Workshop on Real-Time AI Problems*, Detroit, Michigan, August 1989.

33. Powley, C., and R.E. Korf, SIMD parallel search, in *Proceedings of the IJCAI-89 Workshop on Parallel Algorithms for Machine Intelligence*, Detroit, Michigan, August 1989.

34. Korf, R.E., Multi-agent decision trees, *Proceedings of the 9th Distributed Artificial Intelligence Workshop*, Orcas Island, Washington, Sept. 1989, pp. 293-306.

4

Exhibit 1   Page 20

35. Korf, R.E., Real-time heuristic search, *Artificial Intelligence,* Vol. 42, No. 2-3, March 1990, pp. 189-211.

36. Korf, R.E., Real-time search for dynamic planning, in *Proceedings of the AAAI Spring Symposium on Planning in Uncertain, Unpredictable, or Changing Environments,* Stanford, Ca., March 1990, pp. 72-76.

37. Powley, C., C. Ferguson, and R.E. Korf, Parallel heuristic search: Two approaches, in *Parallel Algorithms for Machine Intelligence and Vision,* V. Kumar, P.S. Gopalakrishnan, and L.N. Kanal (Eds.), Springer-Verlag, 1990, pp. 42-65.

38. Korf, R.E., Depth-limited search for real-time problem solving, *The Journal of Real-Time Systems,* Vol. 2, No. 1, May 1990, pp. 7-24.

39. Korf, R.E., Cooperation and competition as utility correlation, in *Proceedings of the AAAI Workshop on Adversarial Reasoning,* Boston, Ma., July, 1990.

40. Korf, R.E., Multi-player alpha-beta pruning, *Artificial Intelligence,* Vol. 48, No. 1, February, 1991, pp. 99-111.

41. Korf, R.E., Best-first search in limited memory, in *UCLA Computer Science Annual,* University of California, Los Angeles, April, 1991, pp. 5-22.

42. Powley, C., and R.E. Korf, Single-agent parallel window search, *IEEE Transactions on Pattern Analysis and Machine Intelligence,* Vol. 13, No. 5, May 1991, pp. 466-477.

43. Korf, R.E., Artificial intelligence as information science, *Information Sciences,* Vol. 57-58, 1991, pp. 131-134.

44. Jefferson, D., R. Collins, C. Cooper, M. Dyer, M. Flowers, R.E. Korf, C. Taylor, and A. Wang, Evolution as a theme in artificial life: The Genesys/Tracker system, in *Artificial Life II,* C. Langton, J.D. Farmer, S. Rasmusen, and C. Taylor (Eds.), Addison-Wesley, 1991, pp. 549-577.

45. Rao, V.N., V. Kumar, and R.E. Korf, Depth-first vs. best-first search, *Proceedings of the National Conference on Artificial Intelligence, (AAAI-91),* Anaheim, Ca. July, 1991, pp. 434-440.

46. Ishida, T., and R.E. Korf, Moving target search, *Proceedings of the International Joint Conference on Artificial Intelligence, (IJCAI-91),* Sydney, Australia, August 1991, pp. 204-210.

47. Powley, C., C. Ferguson, and R.E. Korf, SIMD IDA*: Extended abstract, *Proceedings of the IJCAI-91 Workshop on Parallel Processing for Artificial Intelligence,* Syndey, Australia, August 1991, pp. 161-168.

48. Korf, R.E., Linear-space best-first search: Extended abstract, *Proceedings of the Sixth International Symposium on Computer and Information Sciences,* Antalya, Turkey, October 30, 1991, pp. 581-584.

49. Powley, C., C. Ferguson, and R.E. Korf, Parallel tree search on a SIMD machine, *Proceedings of the Third IEEE Symposium on Parallel and Distributed Processing,* Dallas, Texas, Dec., 1991, pp. 249-256.

50. Korf, R.E., Search, revised version in the *Encyclopedia of Artificial Intelligence, Second Edition,* Stuart Shaprio (Ed.), John Wiley, New York, 1992, pp. 1460-1467.

51. Korf, R.E., Heuristics, revised version in the *Encyclopedia of Artificial Intelligence,*

Exhibit 1 Page 21

*Second Edition*, Stuart Shaprio (Ed.), John Wiley, New York, 1992, pp. 611-615.

52. Korf, R.E., A simple solution to pursuit games, *Proceedings of the 11th International Workshop on Distributed Artificial Intelligence*, Glen Arbor, Mich., Feb. 1992, pp. 183-194.

53. Zhang, W., and R.E. Korf, Parallel heap operations on EREW PRAM: Summary of Results, *Proceedings of the Sixth IEEE International Parallel Processing Symposium*, Beverly Hills, Ca., March 1992, pp. 315-318.

54. Pemberton, J., and R.E. Korf, Incremental planning on graphs with cycles, *Proceedings of the First International Conference on AI Planning Systems (AIPS-92)*, University of Maryland, College Park, Md., June, 1992, pp. 179-188.

55. Korf, R.E., Linear-space best-first search: Summary of results, *Proceedings of the National Conference on Artificial Intelligence (AAAI-92)*, San Jose, Ca., July, 1992, pp. 533-538.

56. Zhang, W., and R.E. Korf, An average-case analysis of branch-and-bound with applications: Summary of results, *Proceedings of the National Conference on Artificial Intelligence (AAAI-92)*, San Jose, Ca., July, 1992, pp. 545-550.

57. Pemberton, J., and R.E. Korf, An incremental search approach to real-time planning and scheduling: Preliminary results, *Proceedings of the the NSF Workshop on Intelligent Dynamic Scheduling for Manufacturing Systems*, Cocoa Beach, Fl., Jan. 1993, pp. 133-144.

58. Wah, B.W., R.E. Korf, et. al., High performance computing and communications for grand challenge applications: Computer vision, speech and natural language processing, and artificial intelligence, *IEEE Transactions on Knowledge and Data Engineering*, Vol. 5, No. 1, Feb. 1993, pp. 138-154.

59. Pemberton, J., and R.E. Korf, An incremental search approach to real-time planning and scheduling: Preliminary results for a scheduling problem, in *Proceedings of the AAAI Spring Symposium on Foundations of Automatic Planning*, Stanford, Ca., March, 1993, pp. 107-111.

60. Powley, C., and R.E. Korf, Parallelization of tree-recursive algorithms on a SIMD Machine, in *Proceedings of the AAAI Spring Symposium on Innovative Applications of Massive Parallelism*, Stanford, Ca., March, 1993, pp. 181-186.

61. Powley, C.N., C. Ferguson, and R.E. Korf, Depth-first heuristic search on a SIMD machine, *Artificial Intelligence*, Vol. 60, No. 2, April, 1993, pp. 199-242.

62. Korf, R.E., Linear-space best-first search, *Artificial Intelligence*, Vol. 62, No. 1, July 1993, pp. 41-78.

63. Taylor, L., and R.E. Korf, Pruning duplicate nodes in depth-first search, in *Proceedings of the National Conference on Artificial Intelligence (AAAI-93)*, Washington D.C., July 1993, pp. 756-761.

64. Zhang, W., and R.E. Korf, Depth-first vs. best-first search: New results, in *Proceedings of the National Conference on Artificial Intelligence (AAAI-93)*, Washington D.C., July 1993, pp. 769-775.

65. Korf, R.E., and D.M. Chickering, Best-first minimax search: First results, *Proceedings of the AAAI Fall Symposium on Games: Planning and Learning*, Raleigh, NC, October 1993, pp. 39-47.

Exhibit ___1___ Page _22_

66. Zhang, W., and R.E. Korf, Parallel heap operations on an EREW PRAM, *Journal of Parallel and Distributed Computing*, Vol. 20, 1994, pp. 248-255.

67. Pemberton, J., and R.E. Korf, An incremental search approach to real-time decision making, in *Proceedings of the AAAI Spring Symposium on Decision-Theoretic Planning*, Stanford, CA, March, 1994.

68. Pemberton, J., and R.E. Korf, Incremental search algorithms for real-time decision making, in *Proceedings of the Second Annual Conference on Planning (AIPS-94)*, Chicago, Ill., July 1994, pp. 140-145.

69. Korf, R.E., J. Pemberton, and W. Zhang, Incremental Random Search Trees, *Proceedings of the AAAI-94 workshop on Experimental Evaluation of Reasoning and Search Methods*, Seattle, WA, July 1994, pp. 15-18.

70. Zhang, W., and R.E. Korf, A unified view of complexity transitions on the travelling salesman problem, *Proceedings of the AAAI-94 workshop on Experimental Evaluation of Reasoning and Search Methods*, Seattle, WA, July 1994, pp. 78-82

71. Korf, R.E., and D.M. Chickering, Best-First Minimax: Othello Results, *Proceedings of the Twelfth National Conference on Artificial Intelligence (AAAI-94)*, Seattle, WA, Aug, 1994, pp. 1365-1370.

72. Korf, R.E., An undergraduate introductory AI course, *Proceedings of the AAAI Fall Symposium on Improving Instruction of Introductory AI*, New Orleans, LA, Nov. 1994, pp. 5-7.

73. Ishida, T., and R.E. Korf, Moving Target Search: A realtime search for changing goals, *IEEE Transactions on Pattern Analysis and Machine Intelligence*, Vol. 17, No. 6, June, 1995, pp. 609-619.

74. Korf, R.E., From approximate to optimal algorithms: A case study of number partitioning, *Proceedings of the International Joint Conference on Artificial Intelligence (IJCAI-95)*, Montreal, Canada, Aug. 1995, pp. 266-272.

75. Korf, R.E., Space-efficient search algorithms, *Computing Surveys*, Vol. 27, No. 3, Sept., 1995, pp. 337-339.

76. Korf, R.E., Heuristic evaluation functions in artificial intelligence search algorithms, *Minds and Machines*, Vol. 5, No. 4, Nov. 1995, pp. 489-498.

77. Zhang, W., and R.E. Korf, Performance of linear-space search algorithms, *Artificial Intelligence*, Vol. 79, No. 2, Dec. 1995, pp. 241-292.

78. Zhang, W., and R.E. Korf, A study of complexity transitions on the asymmetric traveling salesman problem, *Artificial Intelligence*, Vol. 81, No. 1-2, March 1996, pp. 223-239.

79. Korf, R.E., and D.M. Chickering, Best-first minimax search, *Artificial Intelligence*, Vol 84, No. 1-2, July 1996, pp. 299-337.

80. Korf, R.E., Improved limited discrepancy search, *Proceedings of the Thirteenth National Conference on Artificial Intelligence (AAAI-96)*, Portland, OR, Aug. 1996, pp. 286-291.

81. Korf, R.E., and L.A. Taylor, Finding optimal solutions to the twenty-four puzzle, *Proceedings of the Thirteenth National Conference on Artificial Intelligence (AAAI-96)*,

7

Exhibit ___1___ Page ___23___

Portland, OR, Aug. 1996, pp. 1202-1207.

82. Korf, R.E., Finding optimal solutions to Rubik's Cube using pattern databases, *Proceedings of the Fourteenth National Conference on Artificial Intelligence (AAAI-97)*, Providence, RI, July, 1997, pp. 700-705, Reprinted in *Games in AI Research*, Jaap ven den Herik and Hiroyuki Iida, Universiteit Maastricht, 1999, pp. 129-141.

83. Korf, R.E., Does Deep Blue use Artificial Intelligence?, , *International Computer Chess Association Journal*, Vol. 20, No. 4, Dec. 1997, pp. 243-245. Also in *Proceedings of the AAAI-97 workshop on "Deep Blue vs. Kasparov: The Significance for Artificial Intelligence"*, Providence, RI, July, 1997, pp. 243-245.

84. Edelkamp, S. and R.E. Korf, The branching factor of regular search spaces, *Proceedings of the National Conference on Artificial Intelligence (AAAI-98)*, Madison, WI, July, 1998, pp. 299-304.

85. Korf, R.E., and M. Reid, Complexity analysis of admissible heuristic search, *Proceedings of the National Conference on Artificial Intelligence (AAAI-98)*, Madison, WI, July, 1998, pp. 305-310.

86. Korf, R.E., Artificial intelligence search algorithms, *Algorithms and Theory of Computation Handbook*, M.J. Atallah (Ed.), CRC Press, Boca Raton, FL, 1998, pp. 36-1 to 36-20.

87. Korf, R.E., A complete anytime algorithm for number partitioning, *Artificial Intelligence*, Vol. 106 No. 2, December 1998, pp. 181-203.

88. Korf, R.E., Heuristic search, in the *Encyclopedia of Cognitive Science*, R. Wilson (Ed.), MIT Press, Cambridge, MA, 1999, pp. 372-373.

89. Korf, R.E., Divide-and-conquer bidirectional search: First results, in *Proceedings of the Sixteenth International Joint Conference on Artificial Intelligence (IJCAI-99)*, Stockholm, Sweden, August 1999, pp. 1184-1189. Also in *Proceedings of the AAAI Spring Symposium on Search Techniques for Problem Solving under Uncertainty and Incomplete Information*, Stanford, Ca. March 1999.

90. Korf, R.E., Sliding-tile puzzles and Rubik's Cube in AI research, *IEEE Intelligent Systems*, Vol. 14, No. 6, November, 1999, pp. 8-12.

91. Korf, R.E., and W. Zhang, Divide-and-conquer frontier search applied to optimal sequence alignment, *Proceedings of the National Conference on Artificial Intelligence (AAAI-2000)*, Austin, TX, August 2000, pp. 910-916.

92. Sturtevant, N., and R. Korf, On pruning techniques for multi-player games, *Proceedings of the National Conference on Artificial Intelligence (AAAI-2000)*, Austin, TX, August 2000, pp. 201-207.

93. Korf, R.E., Recent progress on the design and analysis of admissible heuristic functions, *Proceedings of the National Conference on Artificial Intelligence (AAAI-2000)*, Austin, TX, August 2000, pp. 1165-1170. Also reprinted in *Proceedings of the Symposium on Abstraction, Reformulation, and Approximation (SARA-2000)*, Lecture Notes in Artificial Intelligence, Springer-Verlag, 2000, pp. 45-55.

94. Korf, R.E., M. Reid, and S. Edelkamp, Time complexity of Iterative-Deepening-A*, *Artificial Intelligence*, Vol. 129, No. 1-2, June 2001, pp. 199-218.

8

Exhibit 1 Page 24

95. Zhang, W., R. Dechter, and R.E. Korf, Editorial: Heuristic search in artificial intelligence, *Artificial Intelligence*, Vol. 129, No. 1-2, June 2001, pp. 1-4.

96. Korf, R.E., Artificial Intelligence: Search, in the *International Encyclopedia of the Social and Behavioral Sciences*, N.J. Smelser and P.B. Baltes, (Eds.) Pergamon, Oxford, November 2001, pp. 796-798.

97. Korf, R.E., and A. Felner, Disjoint pattern database heuristics, *Artificial Intelligence*, Vol. 134, No. 1-2, Jan. 2002, pp. 9-22.

98. Korf, R.E., A new algorithm for optimal bin packing, *Proceedings of the National Conference on Artificial Intelligence (AAAI-02)*, Edmonton, Alberta, Canada, July, 2002, pp. 731-736.

99. Korf, R.E., Search, in the *Encyclopedia of Cognitive Science*, Lynn Nadel (Ed.), Macmillan, London, December 2002.

100. Korf, R.E., Search techniques, *Encyclopedia of Information Systems*, Hossein Bidgoli (Ed.), Academic Press, San Diego, CA, 2003, pp. 31-43.

101. Korf, R.E., Optimal rectangle packing: Initial results, *Proceedings of the International Conference on Automated Planning and Scheduling (ICAPS-03)*, Trento, Italy, June 2003, pp. 287-295.

102. Korf, R.E., An improved algorithm for optimal bin packing, *Proceedings of the International Joint Conference on Artificial Intelligence (IJCAI-03)*, Acapulco, Mexico, August 2003, pp. 1252-1258.

103. Hohwald, H., I. Thayer, and R.E. Korf, Comparing best-first search and dynamic programming for optimal multiple sequence alignment, *Proceedings of the International Joint Conference on Artificial Intelligence (IJCAI-03)*, Acapulco, Mexico, August 2003, pp. 1239-1245.

104. Korf, R.E., Delayed duplicate detection: Extended abstract, *Proceedings of the International Joint Conference on Artificial Intelligence (IJCAI-03)*, Acapulco, Mexico, August 2003, pp. 1539-1541.

105. Korf, R.E. Breadth-first frontier search with delayed duplicate detection, *Proceedings of the IJCAI03 Workshop on Model Checking and Artificial Intelligence*, Acapulco, Mexico, August 2003, pp. 87-92.

106. Felner, A., R.E. Korf, and S. Kraus, KBFS: K-Best First Search, *Annals of Mathematics and Artificial Intelligence*, Vol. 39, Sept. 2003, pp. 10-39.

107. Korf, R.E., Optimal Rectangle Packing: New Results, *Proceedings of the International Conference on Automated Planning and Scheduling (ICAPS04)*, Whistler, British Columbia, June 2004, pp. 142-149.

108. Korf, R.E., Best-first frontier search with delayed duplicate detection, *Proceedings of the National Conference on Artificial Intelligence (AAAI-04)*, San Jose, CA, July 2004, pp. 650-657.

109. Felner, A., R. Meshulam, R.C. Holte, and R.E. Korf, Compressing pattern databases, *Proceedings of the National Conference on Artificial Intelligence (AAAI-04)*, San Jose, CA, July 2004, pp. 638-643.

110. Felner, A., R.E. Korf, and S. Hanan, Additive pattern database heuristics, *Journal*

9

Exhibit 1 Page 25

*of Artificial Intelligence Research,* Vol. 22, Nov. 2004, pp. 279-318.

111. Korf, R.E., and P. Schultze, Large-scale, parallel breadth-first search, *Proceedings of the National Conference on Artificial Intelligence (AAAI-05),* Pittsburgh, PA, July, 2005, pp. 1380-1385.

112. Fukunaga, A., and R.E. Korf, Bin-completion algorithms for multicontainer packing and covering problems, *Proceedings of the International Joint Conference on Artificial Intelligence (IJCAI-05),* Edinburgh, Scotland, Aug. 2005, pp. 117-124.

113. Korf, R.E, W. Zhang, I. Thayer, and H. Hohwald, Frontier search, *Journal of the Association for Computing Machinery,* Vol. 52, No. 5, Sept. 2005, pp. 715-748.

114. Korf, R.E., and A. Felner, Recent progress in heuristic search: A case study of the four-peg towers of hanoi problem, *Proceedings of the AAAI-06 Workshop on Heuristic Search, Memory-Based Heuristics, and their Applications,* Boston, MA, July 2006, pp. 1-6.

115. Korf, R.E., and A. Felner, Recent progress in heuristic search: A case study of the four-peg towers of hanoi problem, *Proceedings of the International Joint Conference on Artificial Intelligence (IJCAI-07),* Hyderabad, India, Jan. 2007, pp. 2334-2329.

116. Fukunaga, A., and R.E. Korf, Bin completion algorithms for multicontainer packing, knapsack, and covering problems, *Journal of Artificial Intelligence Research,* Vol. 28, March, 2007, pp. 393-429.

117. Dow, A.P., and R.E. Korf, Best-first search for tree width, *Proceedings of the National Conference on Artificial Intelligence (AAAI-07),* Vancouver, B.C., July, 2007, pp. 1146-1151.

118. Korf, R.E., Analyzing the performance of pattern database heuristics, *Proceedings of the National Conference on Artificial Intelligence (AAAI-07),* Vancouver, B.C., July, 2007, pp. 1164-1170.

119. Felner, A., R.E. Korf, R. Meshulam, and R. Holte, Compressed pattern databases, *Journal of Artificial Intelligence Research,* Vol. 30, October 2007, pp. 213-247.

120. Dow, A.P., and R.E. Korf, Best-first search with maximum edge cost functions, *Proceedings of the Tenth International Symposium on Artificial Intelligence and Mathematics (ISAIM 2008),* Ft. Lauderdale, FL, Jan. 2008.

121. Breyer, T., and R.E. Korf, Recent results from analyzing the performance of heuristic search, *Proceedings of the First International Symposium on Search Techniques in AI and Robotics,* Chicago, IL, July, 2008, pp. 24-31.

122. Korf, R.E., Minimizing disk I/O in two-bit breadth-first search, *Proceedings of the National Conference on Artificial Intelligence (AAAI-08),* Chicago, IL, July, 2008, pp. 317-324.

123. Korf, R.E., M.D. Moffitt, and M.E. Pollack, Optimal rectangle packing, to appear, *Annals of Operations Research,* 2008.

**Exhibit ___ Page 26**

# EXHIBIT 2

TO DECLARATION OF ALAN P. BLOCK IN
SUPPORT OF SPEEDTRACK, INC.'S MOTION FOR
SUMMARY ADJUDICATION OF ISSUES PURSUANT
TO RULE 56(D), FED. R. CIV. PRO THAT:
(1) DEFENDANT WAL-MART.COM USA, LLC
DIRECTLY INFRINGED CLAIM 1 OF U.S. PATENT
NO. 5,544,360 UNDER 35 U.S.C. § 271(A); AND
(2) THE OCTOBER 29, 1991 MACWEEK ARTICLE IS
NOT AN INVALIDATING OFFER FOR SALE UNDER
35 U.S.C. § 102(B)

US005544360A

# United States Patent [19]

## Lewak et al.

[11] Patent Number: 5,544,360

[45] Date of Patent: Aug. 6, 1996

[54] METHOD FOR ACCESSING COMPUTER FILES AND DATA, USING LINKED CATEGORIES ASSIGNED TO EACH DATA FILE RECORD ON ENTRY OF THE DATA FILE RECORD

[75] Inventors: **Jerzy Lewak**, Del Mar; **Slawek Grzechnik**, La Mesa; **Jon Matousek**, San Diego, all of Calif.

[73] Assignee: **Paragon Concepts, Inc.**, Solana Beach, Calif.

[21] Appl. No.: 384,379

[22] Filed: **Feb. 3, 1995**

### Related U.S. Application Data

[63] Continuation of Ser. No. 980,620, Nov. 23, 1992, abandoned.

[51] Int. Cl.⁶ ............................................. G06F 17/30

[52] U.S. Cl. .................... 395/600; 364/253; 364/253.3; 364/282.1; 364/282.3; 364/283.1; 364/283.2; 364/283.3; 364/286.4; 364/286.5

[58] Field of Search .......................... 364/282.1, 282.3, 364/283.1, 283.2, 283.3, 286.4, 286.5

[56] **References Cited**

#### U.S. PATENT DOCUMENTS

| | | | |
|---|---|---|---|
| 5,047,918 | 9/1991 | Schwartz et al. | 364/200 |
| 5,115,504 | 5/1992 | Belove et al. | 395/600 |
| 5,162,992 | 11/1992 | Williams | 364/419 |
| 5,201,047 | 4/1993 | Maki et al. | 395/600 |
| 5,201,048 | 4/1993 | Coulter et al. | 395/600 |
| 5,204,947 | 4/1993 | Bernstein et al. | 395/157 |
| 5,206,949 | 4/1993 | Cochran et al. | 395/600 |
| 5,276,867 | 1/1994 | Kenley et al. | 395/600 |

#### OTHER PUBLICATIONS

Van Kir., "Lotus, Traveling Software Tackle DOS File Management Problems", Apr. 1989, V2R4 p. 35(2) PC-Computing.

PC Tools DOS & Shell/File Manager, 1991, pp. 33–35, (Version 7 For DOS) Central Point Software Inc.

Central Point Software Inc. PC Tools Data Recovery And Systems Utilties, 1991, pp. 95–97 (Ver. 7 For DOS).

Thought Pattern Handbook, By Bananafish Software, Inc., 1991 San Francisco, CA.

*Primary Examiner*—Thomas G. Black
*Assistant Examiner*—Jack M. Choules
*Attorney, Agent, or Firm*—Fish & Richardson P.C.

[57] **ABSTRACT**

A computer filing system for accessing files and data according to user-designated criteria. The system allows the user to define a virtually unlimited number of hybrid folders by describing, using terms of their own selection, the file contents of those files which are to belong to particular hybrid folders. Such hybrid folders can be implemented on top of, and used in addition to, the normal hierarchical structured directory, or they may replace such normal structures entirely. The inventive computer file control system could therefore be used as the basis of a new computer operating system. In the process of search and retrieval, the invention ensures in two ways that the user defines a filter which will always find at least one file. The user is not required to type the key words to search but instead chooses the words from pick lists, making mistyping impossible. As the user builds the search filter definition, categories which would find no data are automatically excluded as pick list possibilities.

**21 Claims, 4 Drawing Sheets**



Exhibit 2 Page 27



FIG. 1
(PRIOR ART)

Exhibit 2 Page 28

# FIG. 2



Exhibit __2__ Page __29__

| FILE_TYPE | CONTENTS | ACTION | NAMES |
|---|---|---|---|
| 000 AGREEMENT | 100 ADDRESSES | 200 ADVANCES | 300 JONES |
| 001 COMPARISON | 101 FEATURES | 201 BETA TESTING | 301 MACQWERTY |
| 002 DOCUMENTATION | 102 INVITATION | 202 BUGS | 302 MACTAG |
| 003 E- MAIL | 103 OFFICE | 203 COMPUTERS | 303 MCARTHY |
| 004 LEGAL | 104 PLAN | 204 DEMOS | 304 NISUS |
| 005 LETTER | 105 PROGRAMMING | 205 EMPLOYEES | 305 PETER |
| 006 LIST | 106 PROMOTION | 206 PATENT | 306 PUP |
| 007 MACRO | 107 REQUEST | 207 RECEIVED | 307 SMITH |
| 008 MEMOS | 108 RESEARCH | 208 REPLY | 308 SOLO WRITER |
| 009 MINUTES | 109 SALES | 209 SENT | 309 TECHFONTS |
| 010 NEWS RELEASE | 110 TELEPHONE #S | 210 TO SEND | 310 THOMPSON |
| • | • | • | • |
| • | • | • | • |
| • | • | • | • |

## FIG. 3

| FILE_NAME | FILE_LOC | DATE/TIME | NO_CATEGORIES | CATEGORY_ARRAY |
|---|---|---|---|---|
| jones.mem | c:\memos | 01-01-80 01:30 | 2 | 008, 300 |
| minutes.1 | f:\wpdocs | 10-10-90 10:10 | 3 | 009, 103, 109 |
| • | • | • | • | • |
| • | • | • | • | • |
| • | • | • | • | • |

## FIG. 4

Exhibit  2   Page  30



FIG. 5

Exhibit  2  Page  31

5,544,360

**1**

## METHOD FOR ACCESSING COMPUTER FILES AND DATA, USING LINKED CATEGORIES ASSIGNED TO EACH DATA FILE RECORD ON ENTRY OF THE DATA FILE RECORD

This is a continuation of application Ser. No. 07/980,620 filed on Nov. 23, 1992, now abandoned.

### NOTICE OF COPYRIGHTS

A portion of the disclosure of this patent document contains material which is subject to copyright protection. The copyright owner has no objection to the facsimile reproduction by any one of the patent disclosure, as it appears in the Patent and Trademark Office patent files or records, but otherwise reserves all copyright rights whatsoever.

### BACKGROUND OF THE INVENTION

1. Field of the Invention

This invention relates generally to computer file control systems, and more specifically to a flexible system for accessing computer files and data therein according to user-designated criteria.

2. Description of Related Art

Many currently-existing computer file control systems employ a hierarchical filing structure. This system emulates commonly-used paper filing systems, but is more general and is capable of more extensive use. Thus, for example, in a paper filing system, a filing cabinet may contain 4 or 5 drawers. Each drawer may contain perhaps a dozen or so hanging files and each file may contain one or two or three file folders. Typically, a hanging file can only hold a very small number of file folders before it becomes unmanageable, so that a new hanging file needs to be started.

A typical computer system organizes data into files (analogous to papers in a paper filing system) and directories (analogous to file folders and hanging files). Indeed, in graphically-oriented computer systems, directories are sometimes known as "folders." Directories may contain other directories (also referred to as subdirectories) and files.

FIG. 1 shows a simplified typical hierarchical tree-type directory structure. This structure is called "tree" because it looks like an upside-down tree, with the base, or "root" of the tree at the top. Subdirectories are often referred to as "branches" of the tree, and files are often referred to as leaves of the tree.

In FIG. 1, the root directory **100** contains a number of subdirectories **102–112** and files **114–122**. The subdirectories **102–112** may contain other subdirectories and files, and so on.

In typical use, directories often contain files having similar kinds of data. Also, the name of the directory is typically selected to be descriptive of the kinds of files and directories therein. For example, a WPDOCS directory **102** might contain wordprocessing documents and directories for holding specific categories of such documents. For example, a LETTERS directory **108** may contain only files which are letters: "LETTER TO AUTO CLUB" **114**, "LETTER TO BOWLING LEAGUE MEMBERS" **116**, "LETTER TO MR. CHISOLM" **118**, "LETTER TO MR. DITHERS" **120**, and "LETTER TO MS. ENGELMAN" **122**. Memos could be stored in a "MEMOS" subdirectory **110**, patent applications in an "APPLICATION" subdirectory **112**, etc.

**2**

Custom structures of such directories are created so as to make the storing and retrieval of files convenient. If the number of files to be stored is small and the number of different file kinds is either small or very well defined, this type of file storage structure works well. However, several problems arise when the number of files becomes large, or if the file categories are not well-defined. In such cases, the hierarchical filing structure becomes very cumbersome to use for the following reasons:

1. The tree becomes quite deep, and so it takes more time to get to the end of any branch.

2. It becomes more difficult for the user to decide where to store a particular file.

As a result, finding particular files becomes harder and harder. Frequently, the user is not able to clearly and unambiguously associate a desired file with any one directory. In fact, the user often associates a file with several subdirectories. This happens both when a file is being saved and when it is being retrieved. The same problem arises in paper filing systems. Quite often a document may logically belong within many different folders, with the result that it is difficult to find a desired document once the document has been filed.

Clearly, a hierarchical topic-oriented file structure is too rigid for many applications where information must be organized into files. It has been found that users generally think in terms of overlapping categories or descriptions of file content, rather than in very strictly-defined, non-overlapping topics.

For example, referring now to FIG. 2, a root directory **200** has five subdirectories **202–210**. In this example, subdirectory **202** has three "sub"-subdirectories **212–216**, subdirectory **204** has two "sub"-subdirectories **218–220**, subdirectory **206** has one "sub"-subdirectory **222**, and subdirectory **208** has one "sub"-subdirectory **224**. A file might logically belong in subdirectory **204**, sub-subdirectory **214**, sub-subdirectory **216**, and sub-subdirectory **224**. Similarly, another file might logically belong in subdirectory **206** and subdirectory **208**.

Therefore, what is really needed are "hybrid" logical directories or folders, which contain those files whose content overlaps more than one physical directory. Thus, in the present example, a first hybrid logical directory **226** would contain each file that logically belongs in subdirectory **206** and subdirectory **208**. Similarly, a second hybrid logical directory **228** would contain each file that logically belongs in subdirectory **204**, sub-subdirectory **214**, sub-subdirectory **216**, and sub-subdirectory **224**.

In the typical hierarchical directory structure illustrated in FIG. 1, "hybrid" directories are not possible. Thus, it is very desirable to provide a method for accessing files consonant with the way users think of them, and not limited to how such files are stored in the computer.

Some systems have been developed to overcome the rigidity of typical hierarchial directory structures, but these systems have limitations. In one such method, all the words in a file are indexed and a concordance list associated with each file is created. The user then may search for files by file word content by defining "search filters", which are search terms in logically defined combinations (e.g., a search filter comprising "Smith" AND "tooling" would locate all documents having both the word "Smith" and the word "tooling"). However, this indexing method has the following shortcomings:

1. The words inside a document often do not identify the type of document. For example, a document which is a letter generally does not contain the word "letter".

Exhibit 2  Page 32

5,544,360

**3**

Thus, a search for all documents that are letters will only identify documents which contain the word "letter". Similarly, it is very difficult to identify words which occur in all letters. Furthermore, this technique requires the user to remember precise words appearing in the file. This may be especially difficult for older files for which the user cannot recall the precise contents.

2. In applications where such a method might be most useful, the search is very time consuming. If the number of files is very large, the concordance list also is very large. A partial solution to this has been to have the program continually work in the background updating the concordance list as changes are made in the files. However, this process generally disrupts a user's activity.

3. Many files (such as binary files) contain information which is in a form that is not easily interpreted by the human mind. Such files cannot be stored and retrieved by these methods.

4. In preparing a search filter, a user must type the word or words targeted in the search. In such situations, the user commonly mistypes or use a different inflection, spelling or grouping of the key words. Without using the precise words as they appear in the files, a search has an even lower probability of success.

5. Because a user may change the contents of documents, the index of words must be constantly updated. This process is time consuming and distracting. In contrast, the topical description of a document changes very little, if at all, during its lifetime.

Because of these problems, the above methods are generally used in only "last resort" searches. Thus, the user is left to negotiate the hierarchical directory structure.

Databases and outlining programs also provide methods for data storage, retrieval, or re-organization. Databases may be created using relational techniques. In relational databases, the relationships between data are typically included in the database structure. Searches in a relational database may be made by creating a search of the relations. However, database searches are usually restricted in two ways: by the field of each data element and by the content of each field. In outlining programs and other thought-organization programs, the data is generally required to be hierarchically organized at the time of data entry.

Accordingly, it would be desirable to provide a method for accessing files which provides intuitive access by user-defined topics. Such a solution should provide: easy access to a large number of files and to files having overlapping categories; simple access to files stored in a hierarchical file system without the necessity of sorting through multiple levels; access to files using predefined categories descriptive of the contents of the files; access to files which permits a user to create a search filter of categories of files using precise category names to which the files belong; and a method of accessing files which is unaffected by changes in file contents.

The present invention provides such a method.

SUMMARY OF THE INVENTION

The invention comprises a computer file control system, with a suitable user interface, implemented as a software program, which allows total freedom from the restrictions imposed by hierarchical and other present day computer filing systems.

The invention allows a user to define categories for files stored in a computer system, and to edit such categories as

**4**

they are used, to designate all applicable categories for each file, and to link categories in user-definable ways. The invention further allows a user to be reminded of linked categories.

In the process of search and retrieval, the invention overcomes the problem of search filter definition, ensuring that the user defines a filter which will always find at least one file, thus avoiding wasting time in searching for data that cannot be matched. This is achieved in two ways. First, the user is not required to type the key words to search; instead, the user simply chooses the words from pick lists, making mistyping impossible. Second, as the user builds the search filter definition, categories which would find no data are automatically excluded as pick list possibilities.

More particularly, the invention allows users to define an unlimited number of their own "hybrid folders" by simply describing, using categories the user defines, the file contents of those files which are to belong to each "hybrid folder". This description is dynamic (that is, changeable by the user from time to time), and may be either totally unrestricted or restricted to a particular directory or subdirectory, as the user chooses. Such hybrid folders can be implemented on top of, and used in addition to, the normal hierarchical structured directory, or they may replace such normal structures entirely. The inventive computer file control system could therefore be used as the basis of a new computer operating system.

The details of the preferred embodiment of the present invention are set forth in the accompanying drawings and the description below. Once the details of the invention are known, numerous additional innovations and changes will become obvious to one skilled in the art.

BRIEF DESCRIPTION OF THE DRAWINGS

FIG. 1 is a tree diagram illustrating the organizational structure of a typical prior art computer filing system.

FIG. 2 is a tree diagram illustrating the organizational structure of the computer filing system of the present invention.

FIG. 3 shows an example of a File Category Table in accordance with the present invention.

FIG. 4 shows an example of a File Information Directory in accordance with the present invention.

FIG. 5 shows an example of a Categories Window and File Window in accordance with the present invention.

Like reference numbers refer to like elements in the drawings.

DETAILED DESCRIPTION OF THE
ILLUSTRATED EMBODIMENTS

Throughout this description, the preferred embodiment and examples shown should be considered as exemplars, rather than as limitations on the present invention.

The present invention consists of a computer file control system the includes a File Category Table ("FCT") and a File Information Directory ("FID") to store information about user-defined categories and information linking such categories to specific files. The invention uses the information stored in the FCT and FID to quickly and easily access files in the file system. (The term "file" should be understood to mean any collection of data or information stored on a computer system). In the preferred embodiment, the invention includes a graphical user interface for defining catego-

Exhibit 2 Page 33

5,544,360

5

ries, associating files with particular categories, and defining search filters.

File Category Table Structure

In the preferred embodiment, the FCT is a table that can be modeled as having a set of columns labeled by category-type (e.g., FILE_TYPE, CONTENTS, ACTION, etc.), with entries comprising lists of category names or descriptions (e.g., the FILE_TYPE column might have entries for AGREEMENTS, E-MAIL, MEMOS, NEWSLETTER, etc.). Each category description is a descriptive name defined by the user.

In addition, each category description is preferably associated with a unique identifier (preferably a number, but other identifiers could be used). The identifier is created by the computer (e.g., in sequential order) and used internally to manage the categories. If a user changes the name of a category description, the associated identifier is not changed. However, the invention could be implemented without using identifiers, although changes to category descriptions would then require more maintenance of the FID than with identifiers.

In the preferred embodiment, the identifier is coded so that the initial digit indicates the category type (e.g., "0xx" indicates the first category type, FILE_TYPE). This aspect is not an essential feature of the implementation of the invention, but helps the program determine, without the need of any other data fields, the column of each category description.

In the preferred embodiment, the user is provided with an FCT containing sample category descriptions. These category descriptions may be changed or deleted, and new categories may be added.

FIG. 3 shows an example of a File Category Table in accordance with the present invention. Category types 1 are at the head of each column, and each column entry comprises a category description 2 and an associated identifier 3. Of course, in implementing the invention, the table structure shown can be configured in any desired manner, such as an array, linked list, fixed or variable record length table using sequential or hashed access, etc.

In the preferred embodiment implemented under the Apple Macintosh® System 7 operating system, category descriptions are stored as records of a random access data base file. The preferred name of the file is "FC Categories". Records are accessed by record number, in known fashion. In the preferred embodiment, category descriptions are stored in the following data structure:

```
typedef struct FC_CATEG_REC {
    LONG rec_no;              this record number
    CATEG_SYM sym;           category identifier
    CATEG_NAME name;         category name
    INT list;                list to which the category
                             belongs (0,1,2,...)
    UINT attr;               attributes
    UINT valid;              1 when to be displayed
    LONG file_counter;       how many files use this
                             category
    INT nlinks;              number of links
    CATEG_SYM alinks[10];    category identifiers of
                             linked categories
    UCHAR filler [128]
} FC_CATEG_REC;
```

During initialization of the file control system, category descriptions (of type FTYP, FDES, CUST, NAME) are read into memory and stored in moveable memory blocks (handles). In the preferred embodiment, data about each category list is gathered in a record structure named COLUMN:

6

```
typedef struct COLUMN {
    RESTYPE arestype;        resource type of categories
                             in this list (category type)
    INT a_of_nn;             number of entries in this
                             column-list
    CATEG_RES **zh_to_categs; handle to array of category
                             descriptions (CATEG_RES
                             structures) in this list
    INT start_cat_vals,      range of category identifiers
        max_cat_vals;        in this list
} COLUMN;
```

COLUMN entries are stored in an array having the structure:

COLUMN *columns;

File Information Directory Structure

In the preferred embodiment, the FID is a table that can be modeled as having a set of columns labeled by file name, file location (using direct or indirect addressing), creation and/or last update time and date for the file, number of categories associated with the file, and the identifiers of the categories associated with each file by a user.

Other file attributes may be saved in an entry, as desired. For each file that the user may want to locate at a later time, an entry is created in the FID.

FIG. 4 shows an example of a File Information Directory in accordance with the present invention. Each entry has data fields that correspond to the file name (FILE_NAME) 5, file location (FILE_LOC) 6, file creation time (DATE/ TIME) 7, number of associated categories (NO_CATEGO- RIES) 8, and an array of the identifiers of the associated categories (CATEGORY_ARRAY) 9.

When the invention is used under some operating systems, the location of each file comprises a record entry in the FID. However, in one embodiment run under the Apple Macintosh® System 7 operating system, the FID entry can be associated with a corresponding standard "Alias Record". An Alias Record contains internal system information about the file, allowing the operating system to find the file quickly even if the file has been moved and/or renamed. More particularly, the data for each file categorized by a user is stored in two resource records. One of the records is called a Catalog Entry and is stored as a resource of type 'Catalog Record'. A Catalog Entry resource record contains information describing the file and its associated category identifiers. The other record is of the type 'Alias Record', and is an Alias Record enabling rapid location of the file in the system by the operating system Alias Manager. Both resource records referring to the same file have the same resource identifiers. During initialization of the file control system, the 'Catalog Record' records are read into memory and stored in an array and serve the common purposes of displaying and selecting categorized files. The associated 'Alias Record' reside on a system storage unit (e.g., magnetic disk drive) and are read into memory only in order to locate and open a file.

Catalog entries are stored in a random access data base file with the preferred name "FC Catalog". Aliases are stored in the random access data base file with the preferred name "FC Aliases".

The preferred embodiment, the structure of the 'Catalog Record' is as follows:

```
typedef struct FC_CRP_DISK {
    LONG rec_no;                this record number
    UCHAR fnamep [FNAME_L+1]    file name (Pascal
```


Exhibit 2 Page 34

5,544,360

| | String) (alias) creation time/ date of the file |
|---|---|
| UNSIGNED LONG INT credat; | |
| LONG alias_rec_no | corresponding 'Alias Record' record number |
| INT ncategs; | number of categories describing the file |
| CATEG_SYM acategs [MAX_CAT]; | array of categories identifiers describing the file |
| LONG creator; | |
| LONG type; | |
| UNSIGNED CHAR filler [56]; | |
| } FC_CRP_DISK; | |

CRP records in memory have the same structure. The memory list of CRP records is kept in a moveable block (handle) referred to by:

CRP **hacrp;

Overview of Operation

The invention preferably uses a windows-based graphical user interface for interacting with a user. Such interfaces are common, and include the Macintosh® System 7 operating system from Apple Computer and Microsoft Windows® from Microsoft Corporation.

The invention is activated by running a File Control (FC) Manager program that implements the invention. The FC Manager may be executed ("run") by opening a corresponding file by selecting a menu command and leaving the file open. Other methods known in the art for activating the invention could be used, such as by using a computer mouse to "click" on an icon.

During operation, the FC Manager may be in four states: Inactive, Active, Search Filter Definition, and Categorization. Search Filter Definition is a substate of the Active state. Categorization is generally a substate of the Active state, but in one case, Categorization is a substate of the Inactive state. All states require that the basic data structures described above be initialized. The initialization process initializes all the data structures by allocating memory and reading data from related data files (e.g., the FCT and FID tables, and previously saved "last used" values), in known fashion. After initialization, the FC Manager is set to the Inactive State.

The Active State enables use of the FC Manager to perform such functions as categorizing files, editing the FCT entries, defining a search filter, and locating and opening files.

1. Categorizing Files

Categorization of files in the illustrated embodiment is performed by the user from a Categories Window. In the illustrated embodiment, there are two categorization states—Active and Inactive. In the Active state, a user need only close an uncategorized file to immediately be presented by the FC Manager with the Categories Window. Typically, from within an application, the user will open a file (or, having created a new file, will make the first save to disk), at which time the FC system extension, running as a background process, will detect that action and store the path to the file in common memory. The FC Manager, running as a concurrent process, during "null events" (i.e., periods of inactivity) will retrieve this path from common memory and check the path against a list of already categorized files. If the file has not yet been categorized, the FC Manager will automatically categorize the file with the special category "Uncategorized", and notify the user that there are files to be categorized.

In the Inactive state, to categorize an open file, the user must affirmatively choose a command from a menu, e.g., a "Categorize" command, to run the FC Manager. When in the Inactive state, the user may open a file specifically for the purpose of selecting categories for that file.

In the preferred embodiment, when the FC Manager is running as a background process, each file being closed is submitted to conditional categorization, which means that only uncategorized files undergo the operation. The file being closed is identified and checked to determine whether it already has an entry in the FID. The file is assumed to be already categorized if there is an entry in the FID with the same creation date and path. In this case, no further action is taken. Otherwise, the FC Manager opens the Categories Window and the user is asked to categorize the file.

When the FC Manager opens the Categories Window, the category names stored in the FCT are displayed, Preferably, the Categories Window presents category descriptions in an organized fashion. It has been found that organizing the category names into columns helps the user to locate and select desired categories. In the illustrated embodiment, the category descriptions are displayed alphabetically in columns, with each column having a heading comprising the category type. Preferably, all category descriptions within a heading are related. However, it is often unclear in which column a given category belongs. Accordingly, the column position of a category is not significant. Columns are used for the convenience of the user in finding relevant categories and for no other reason. Further, any desired display of the category descriptions can be used.

FIG. 5 shows an example of a file manager display in accordance with the present invention. A Categories Window 50 is shown on the right side of the display, with a File Window 52 on the left side. Category types 54 are shown at the top of the Categories Window 50, with category descriptions 56 arrayed in columns below the category types 54. A tally 58 is displayed of the number of files matching selected categories, as further described below.

While the Categories Window 50 is displayed, both the category type headings and the column positions of the category descriptions may be edited by the user. In addition, category types may be added or deleted. Further, category descriptions may be edited or deleted, and new category descriptions may be added while in the Categories Window. A user is preferably warned before deleting a category description or category type. After user confirmation of deletion, the category descriptions is removed from the FCT, and all references in the FID entries to that category description are also removed. Implementation of such editing functions is known in the art of data processing, and simply cause the associated FCT and FID records to be updated.

A category description may be moved from one column (category type) to another column. In the preferred embodiment, moving is accomplished by clicking on the category description with the mouse and dragging and dropping the category description in the new column. In the illustrated embodiment, moving a category description between category types changes the category type numeric value, so all associated records in the FID containing the moved category description are checked and modified.

Categories which describe the current file can be selected by the user. This is done, for example, by pointing a computer mouse and "clicking" on each category description to be applied to the file. Preferably, the user may select as many category descriptions as apply to the particular file. After the user has completed category selection for a file, a new entry in the FID is created using the file data associated

Exhibit 2  Page 35

5,544,360

| 9 | 10 |

with the file, and all of the selected category descriptions. When the user has completed category selection, the Categories Window may be closed by the user, or the user may select another file for categorization.

In the preferred embodiment, a selected file that has been categorized may be recategorized using the FC Manager by clicking a "Categorize" button 60. This does not require any further file identification, as the file selected by the user contains the information necessary to perform categorization.

If the user adds more category descriptions while the Categories Window is displayed, the FC Manager also creates appropriate new unique identifier entries and the corresponding category description entries in the FCT. In subsequent references to the category descriptions by the FC Manager, these identifiers are used, the corresponding names of the categories being the way the user "connects" with these identifiers. This means that if the user changes the name of a category description, the associated identifier is not changed, thus maintaining the validity of all prior uses of that identifier in the FID.

As an example, assume a file named "jones.mem" located in the "c:\memos" subdirectory and having the file date/time of "01-01-80 01:30" is categorized by a user under the two category descriptions "MEMOS" and "JONES" (see FIG. 3). The FC Manager would make an entry in the FID table (see FIG. 4) as follows (field names are supplied for convenience):

itself regarded as the data, the invention can be applied to manage a "higher level" category list to manage and access limited portions of the complete category description list. This kind of "multi-level" categorization can be carried to any depth needed. In essence, this approach is another way of organizing lists of category descriptions of the type contemplated by the present invention, adding back some flavor of a hierarchical structure but with the added benefits of precision of input and certainty of existence.

In summary, categorization of a file in accordance with the invention involves the following steps:

1. defining a list of category descriptions;
2. associating one or more category descriptions with a file; and
3. storing a file record containing file identity information, file location information, and the associated category description(s) for the file.

Finding Files

In the process of search and retrieval, the invention overcomes the problem of search filter definition, ensuring that the user defines a filter which will always find at least one file, thus avoiding wasting time in searching for data that cannot be matched. This is achieved in two ways. First, the user is not required to type the key words to search; instead, the user simply chooses the words in random order from pick lists, making mistyping impossible. Second, as the user builds the search filter definition, categories which would

| [FILE_NAME | FILE_LOC | DATE/TIME | NO_CAT. | CAT_ARRAY] |
|---|---|---|---|---|
| jones.mem | c:\memos | 01-01-80 01:30 | 2 | 008, 300 |

The two identifiers "008" and "300" are obtained from the FCT as the identifiers associated with the category descriptions "MEMOS" and "JONES", respectively. If the category description "MEMOS" is later changed to "NOTES", then the FID entry for "jones.mem" would still be linked to the category description "NOTES" by the identifier "008".

In the preferred embodiment, when the user clicks a "Show Usage" command from the Categories Window menu, the FC Manager checks the FID for the number of references to each category description and displays these numbers next to each category description. This feature enables the user to see which category descriptions are frequently used and which are not used at all. The unused or little used category descriptions may then be deleted, and others may be moved around for better accessibility.

If desired, the process of categorizing existing files can be totally or partially automated. After a number of files have been categorized, word patterns in categorized files can be correlated to the category descriptions. This information can be used to automatically assign (or simply suggest) category descriptions to new and existing uncategorized files.

Further, when categorizing a more extensive, broadly based set of files, category descriptions can be grouped into (overlapping) subjects or projects, with a short list of subjects or projects (effectively a top level category set) shown in a separate window (or on a menu). Once a subject or project is chosen, the category descriptions list is shortened to only show those relevant to that subject or project. Taking that idea further, the inventive categorization system can be used recursively. For example, if all the topics in the Library of Congress were categorized, the number of category descriptions needed would be impractically large and unmanageable. If that list of category descriptions were

find no data are automatically excluded as pick list possibilities.

In order for a user to find one or more files, the Search Filter Definition state is invoked by opening the Categories Window to display the existing category descriptions (see FIG. 5). The user initiates definition of a search filter by, for example, clicking the mouse on a "Set Categories" button. The user then selects the pre-defined category descriptions for the files which the user wants to find. In the illustrated embodiment, this is done in the same way as when categorizing a file: the user clicks the mouse on each applicable category description. After each click, the categories listed in the Categories Window are narrowed to show only those other categories which are used with the selected categories for at least one other file. The category descriptions may be selected in any order. Moreover, those category descriptions whose selection would not change the matching file list are disabled (e.g., shown as "grayed"), as further described below.

The selected categories comprise the user's search filter, which is said to define, or "map", a hybrid folder. The search filter is used to search through the FID table entries for files which match the search filter criteria, and hence come within the specified hybrid folder (that is, the search locates those file records in the FID that have identifiers that match the identifiers of the selected categories).

Any search technique may be used to search the FID table entries. For example, the FID entries may be sequentially searched and each identifier value in the CATEGORY_ARRAY field for each entry compared to the identifiers of the category descriptions selected by the user. In an alternative embodiment, a concordance file indexed by identifier value may be constructed from the FID entries, and a search

Exhibit _2_ Page _36_

5,544,360

11

conducted through the concordance file to generate a list of FID entries matching all search filter identifier values.

In addition to selecting category descriptions for the search filter, the user preferably may also group the categories, and relate the groups with logical connectors. Of course, a group may include just one category description. Although current implementations provide for an automatic "AND" conjunction between selected categories, other logical operators may be used, such as an explicit "AND" operator, or the "OR" or "NOT" operators. For example, the user may define a search filter of "MEMOS AND JONES". The FID would be searched for all entries having both the identifiers "008" (for "MEMOS") and "300" (for "JONES"). In the example shown in FIG. 4, this search filter would find at least the document "jones.mem". Although other searching mechanisms allow similar searches, none use methods which ensure certainty of existence.

In the preferred embodiment, the Categories Window display indicates how many files match the present search filter. In the illustrated embodiment, the actual number of files in the hybrid folder is displayed. However, the file names in the hybrid folder could also be displayed for this purpose.

It is expected that the FID will be relatively small for most implementations, which allows for very quick searching. In defining a search filter, the hybrid folder to which it maps should contain a sufficiently small number of files to make accessing a particular file easy. Thus, a user would normally continue to select category descriptions until the defined hybrid folder contains no more than a few (e.g., 10) files.

Once FID entries matching the search filter are located, the corresponding file names in the hybrid folder are preferably displayed in a File Window 52 (see FIG. 5). The user may then select one or more of the displayed file names, which causes the corresponding files to be retrieved from the appropriated storage device and opened (if only one file is in the hybrid folder, selecting the file can be automatic, thereby obviating display of the file name and manual selection). In operation, the selected file names together with their locations from the selected FID entries are passed to the operating system, which opens the files. Because the FID contains the location of all categorized files on disk, it is not necessary to search any other part of the disk, an action which could be very time consuming.

More particularly, in the preferred embodiment, the usual method of opening a file through the FC Manager is double-clicking on the file entry in the File Window. An alternate method is by selecting a file (by clicking on its entry or typing the first few letters of its name) and clicking on an "Open" button. Both methods can allow the opening of multiple files by using multiple selections, as is known in the art. In the preferred embodiment, the opening process consists of the following steps:

1. The selected entry in the File Window points to the corresponding FID entry. Using this pointer, the associated alias record is retrieved.

2. The alias record is passed to the operating system Alias Manager with the order for "Vast resolution". This method is able to find the file very quickly even if it has been renamed and/or moved to another system folder. If the file name has changed, the user is asked to confirm the new name.

3. If a file has been moved (not copied but moved) to another volume after categorization, and the system has been restarted, then one of the system identifiers (the File ID, which unique is within each volume) for the file has been lost. In such cases, the FC manager

12

performs an exhaustive search of all files on all mounted volumes, searching only for files with the identical creation date and time of the subject file. The user is notified of this action.

4. The result of both searches may be a list of possible matches rather than just a single match (for example, if the file was duplicated and renamed). The FC Manager searches this list looking for files with the same name and creation date/time as in the FID entry. If none are found, then the user is presented with a list of matches with full paths found by the Alias Manager and is asked to select one for opening.

5. When a file is selected, with or without the help of the user, the alias record is checked and updated if necessary to account for any change in file name and/or location.

The result of the search process is a set of standard file identifiers, that is file name, volume reference number, and directory identification. These are passed to the opening routines in the operating system.

In the preferred embodiment, a user is prevented from defining an empty hybrid folder. All category descriptions are disabled which, if added to the search filter defined by the user, would result in no matching files. Disabling of category descriptions may by shown in many ways. For example, disabled category descriptions may be given different display attributes, such as being grayed or dimmed. Alternatively, the names of disabled category descriptions may simply not be displayed. As another alternative, the user may inhibit disabling category description list contraction by selecting a "Full Lists" option.

Determining which category descriptions are to be disabled may be accomplished in several ways. For example, in one embodiment, when no categories are selected, those categories whose identifiers are not used with any files are disabled. When one or more enabled categories are selected, the FID is searched for all files which have

FID entries using all of the identifiers of all of the categories presently selected, and a determination is made as to which other categories are also used on those files. These other categories remain enabled for further selection, but all other categories are disabled.

For example, if a search filter initially includes only the category description "MEMOS", the FC Manager searches the FID for entries containing the identifier corresponding to "MEMOS". Suppose the FC Manager finds three matching files, one being categorized with the categories "MEMOS", "URGENT", and "OFFICE", another being categorized with the categories "MEMOS", "SENT", and "E-MAIL", and the third being categorized with the categories "MEMOS", "SENT", and "LETTERS". The FC Manager creates a union of the set of identifiers for all of the categories found. In this example, the union is "MEMOS", "URGENT", "OFFICE", "SENT", "E-MAIL", and "LETTERS". All categories not in this union are disabled.

Stated another way, the FID entries are searched for matches to the most recently selected category description in a first step. As a second step, the category description identifiers in the matching FID entries are used to determine which of the remaining category descriptions are not linked by their identifiers to such entries. For example, if a search filter definition initially includes the category description "MEMOS", the FC Manager searches the FID for entries containing the identifier corresponding to "MEMOS". If, for instance, ten entries were located containing the "MEMOS" identifier, then the FC Manager uses the other identifiers in those ten entries to determine which category descriptions to

Exhibit 2 Page 37

5,544,360

13

disable. For instance, if none of the ten entries contain identifiers for the category descriptions "SALES" or "PATENT", then those two category descriptions would be disabled. The preferred embodiment for disabling unselectable category descriptions has the effect of making disabling cumulative, so that as the user combines more and more category descriptions in the search filter definition, more and more category descriptions will be disabled. The user chooses from an increasingly limited selection of category descriptions, but will always be assured of having at least one file in the defined hybrid folder.

The ability of the invention to suppress or disable category descriptions that will not result in a match allows definition of a logical operation called "AND PERHAPS". This operation represents a conditional "AND", which means the "AND" conjunctive operation unless with the added search term there would be no match, in which case the term is omitted from the search filter. For example, if the search filter is "MEMOS AND PERHAPS JONES", and "MEMOS" alone would have at least one match, but the addition of "JONES" would cause a non-match, then the "JONES" term is automatically excluded, with a message to the user.

Preferably, the user may also include in the search filter a range of file creation dates and/or times. Preferably, the user may select a predefined range, such as "Last 30 Days". In the illustrated embodiment, the default range is "All Dates". Preferably, those predefined date ranges which would result in no matched files if selected would be disabled. It should be understood that, in general computer systems store file creation date/time as a single relative creation time. Therefore, definition of the date range in the search filter would require a date-to-relative time conversion, as is known in the art. In alternative embodiments, other search criteria may be applied, such as file type, creator type, date last modified, or date last accessed.

To summarize, when a user clicks on a previously unselected category description, that category description is highlighted, the category description is added to the search filter definition, the current number of matching files entered in the FID is computed and displayed, each of the remaining category descriptions are evaluated to be displayed or disabled, and the new list of category descriptions is displayed in the Category Window. Generally, as each category description is selected, the list of category descriptions shrinks because of the removal of all category descriptions which, if checked further, would give zero matching files. In addition, the number of files matching the specified category descriptions is immediately shown in the File Window. These actions prevent the user from defining a hybrid folder which contains no files.

Deselecting a previously selected category description invokes the same routines, except that the result is generally an increase in the number of listed category descriptions. Widening or narrowing the date filter has a similar effect on the displayed list of category descriptions.

Preferably, the last search filter and hybrid folder are stored on a storage medium for future use. (Alternatively, the last n, or all, prior search filters and hybrid folders may be stored for future use). Thus, when a user desires to access a file, the user is immediately presented with the hybrid folder as last defined. In many instances, the desired file will be in the last hybrid folder created. To maintain information about the Categories Window and File Window, it is useful to store certain data. In the preferred embodiment, such catalog data is stored in the following record structure:

14

```
typedef struct SelectedFiles {
    INT file_match;              number of files matching the
                                current search filter (i.e., the
                                number of files to be displayed
                                in the File Window)
    INT *a_of_match_inds;       pointer to an array containing
                                indexes to FID entries of files
                                matching the current search filter
    INT file_marked;            number of files selected by the
                                user in the File Window
    INT *a_of_marked;           pointer to an array of indexes to
                                FID entries for the files selected
                                by user
    INT *a_of_rs;               pointer to an array of row
                                numbers in the File Window for
                                selected files (i.e., their
                                positions relative to the
                                window)
    INT from_ind;               starting index for file search
                                in the FID catalog
    INT buttons_on;             indicates whether special File
                                Window buttons are enabled
} SelectedFiles;
```

All three arrays pointed to by the structure members are dynamic, meaning that their size changes according to current needs.

In summary, finding a file in accordance with the invention involves the following steps:

1. defining a search filter of category descriptions from a pre-defined list of category descriptions;
2. searching the category descriptions of each previously stored file record for a logical match to the category descriptions of the defined search filter;
3. optionally, disabling selection of all category descriptions that would not provide a match to the defined search filter; and
4. displaying at least part of the file identity information of all records having category descriptions that logically match the category descriptions of the defined search filter.

Outdated FID

Various events may impact the integrity of the identifiers in the FID, such as changes to any part of the fully qualified file path (volume or drive, directory chain, and file name). Such events include:

1. Moving the file into another directory.
2. Changing the file name.
3. Renaming the directory containing the file.
4. Moving the directory containing the file into a different directory.
5. Moving the file to another volume (disk).
6. Deleting the file.

When the invention is implemented under the Apple Macintosh® System 7 operating system utilizing Alias Records, events 1, 2, 3, and 4 have no impact because the file ID (used to access files) is part of the Alias Record and is not changed unless the file is moved to another volume. Preferably, if the user attempts to open a file for which the name was changed, the user will be notified of that fact and will be asked to confirm that the file is the correct one.

Events 5 and 6 may cause a delay before the file is found (for event 5) or determined to no longer exist (in which case, an error message is returned). In the illustrated embodiment, when either event 5 or 6 occurs, the Alias Record for the file is updated (after user confirmation) in the FID. In this way, the FID is kept current after each access or attempted access.

On systems that do not provide Alias Records, the FID may store the fully qualified file path (volume or drive,

Exhibit 2 Page 38

5,544,360

15

directory chain, and file name) for the file and the file creation date/time. In such a case, a means is preferably provided for finding files which are not at the location indicated in the corresponding FID entry. For example, a search may be made, beginning with the directory closest to the file's original location, using the creation date/time as the search criteria. It has been found that a file with the identical creation date/time (to the nearest second) of the searched file is generally the desired file. However, there may be situations (such as duplicate files) where more than one such file is found. In that case, the file names of the found files are presented to the user, who selects one.

It should be noted that the present invention may be embodied as a replacement for an operating system, thus replacing the hierarchical file structure, or allowing both the hierarchical and the hybrid file structures to be used together. In such an embodiment, features for resolving ambiguities and keeping track of moved or renamed files can be further optimized using the low level access to the disk directories which the operating system controls.

Special Categories

In the preferred embodiment, category descriptions may be further characterized as "standard" or "special". The characterization of a category description may be indicated by setting a flag field in the corresponding FCT record, as provided in the data structure CATEG_RES described above.

The standard category has the attributes as described above. One special category is the "linking" category. A linking category description is linked to other "linked" category descriptions. A linking category provides for the situation when a file is described by one category description, and the file should also be described by a related category description. Such linkage may be indicated in the corresponding CATEG_RES data structure described above, by recording an array of identifiers for linked category descriptions. A category may be both a linking category and a linked category.

As an example of linking and linked categories, a category named "E-Mail" could be defined as a linking category and linked to the category descriptions "Sent", "Received", "Action", "Urgent", and "Reply". Thus, when a file is categorized as "E-Mail", the user would be given an indication (by any convenient method) that the file should also be assigned to one of the linked category descriptions "Sent", "Received", "Action", "Urgent", or "Reply".

Preferably, when the user selects a linking category, the user is reminded to also select from the corresponding linked category descriptions. The linked categories may be indicated in the Categories Window using a distinctive style such as underline or bold, or using a check mark. Alternatively, a dialogue box may be displayed containing the linked category descriptions. If the user fails to select at least one of the linked category descriptions, a warning dialogue is preferably displayed.

If a user desires to delete a linking category, the linked categories are preferably indicated. The user is preferably given the opportunity to select linked categories to delete.

Another special category type can be called "encrypted". An encrypted category requires a password which is used to initiate encryption of all files which have that category. Encrypted files may not be accessed except by first entering the necessary passwords. For example, the user would be asked to enter the password for each such category description selected when creating a search filter. Since the file contents are encrypted, access without the necessary passwords would only reveal unintelligible codes.

16

Since files may be assigned to multiple category descriptions, more than one password may be required to access a file. However, once each password is entered, all files using that password are made accessible through the FC Manager. This method of encrypting files has an advantage over current methods in that once a password is entered, the user may access any number of files without further needing a password. Current methods of protecting individual files usually require entry of a password each time the file needs to be opened.

Many other implementations of these ideas are possible in electronic network information management, electronic mail, or any other data management systems. For example, in a large office or on a public or private electronic network, communication between people can be difficult because of the very large number of people trying to communicate. After a certain point, there is an information overload and it is too time consuming to try to search through all the messages for the few of interest. Using the invention, a category description list could be defined for all possible topics (with constant updating by the network administrator and/or by the users). Each user could then use this list of category descriptions to both post messages and search for messages on topics of interest to the user. The user could also set up sets of search filters for particularly important topics. If any messages were to be posted whose topics matched those search filters, they would be immediately sent to the user.

Accordingly, the present invention provides a method for accessing files which has intuitive access by user-defined topics. More particularly, the invention provides: easy access to a large number of files and to files having overlapping categories; simple access to files stored in a hierarchical file system without the necessity of sorting through multiple levels; access to files using predefined categories descriptive of the contents of the files; access to files which permits a user to create a search filter of categories of files using precise category names to which the files belong, with the assurance that the filter will always find some files (although possibly deleted); and a method of accessing files which is unaffected by changes in file contents.

A number of embodiments of the present invention have been described. Nevertheless, it will be understood that various modifications may be made without departing from the spirit and scope of the invention. For example, although the above description has been made with respect to a single computer system, that term is meant to include distributed data storage environments, such as networked computers. Further, although the above description has contemplated that the "user" is a person, the invention can be readily adapted to interact with another computer as the "user". Accordingly, it is to be understood that the invention is not to be limited by the specific illustrated embodiment, but only by the scope of the appended claims.

We claim:

1. A method for accessing files in a data storage system of a computer system having means for reading and writing data from the data storage system, displaying information, and accepting user input, the method comprising the steps of:

(a) initially creating in the computer system a category description table containing a plurality of category descriptions, each category description comprising a descriptive name, the category descriptions having no predefined hierarchical relationship with such list or each other;

(b) thereafter creating in the computer system a file information directory comprising at least one entry

Exhibit___2___Page___39___

5,544,360

**17**

corresponding to a file on the data storage system, each entry comprising at least a unique file identifier for the corresponding file, and a set of category descriptions selected from the category description table; and

(c) thereafter creating in the computer system a search filter comprising a set of category descriptions, wherein for each category description in the search filter there is guaranteed to be at least one entry in the file information directory having a set of category descriptions matching the set of category descriptions of the search filter.

**2.** A method for accessing files in accordance with claim 1, wherein each category description comprises a user defined category name and a unique category description identifier created by the computer system.

**3.** A method for accessing files in accordance with claim 2, wherein each category description further comprises a category type designation.

**4.** A method for accessing files in accordance with claim 2, wherein the step of creating a category description table comprises the steps of:

(1) accepting user input defining a new category description;

(2) displaying the new category description;

(3) creating a unique category description identifier associated with the new category description; and

(4) storing the new category description and unique category description identifier in the category description table.

**5.** A method for accessing files in accordance with claim 4, wherein the step of creating a file information directory comprises the steps of:

(1) accepting user input selecting a file;

(2) displaying each category description in the category description table;

(3) accepting user input associating the selected file with at least one category description selected by the user from the displayed category descriptions;

(4) creating a new entry in the file information directory;

(5) storing in the new entry the file identifier of the selected file; and

(6) storing in the new entry the category description identifier of each of the selected category descriptions.

**6.** A method for accessing files in accordance with claim 5, wherein the data storage system further includes a file name for each file and the step of selecting a file comprises the steps of:

(1) displaying at least one file name; and

(2) accepting a user selected of a file from the displayed file names.

**7.** A method for accessing files in accordance with claim 1, wherein the step of creating a search filter comprises the steps of:

(1) disabling category descriptions which if added to the search filter would not match the category descriptions of at least one entry in the file information directory;

(2) accepting user input selecting at least one category description as a component of the search filter.

**8.** A method for accessing files in accordance with claim 7, wherein disabled category descriptions are indicated by means of a unique display attribute.

**9.** A method for accessing files in accordance with claim 7, wherein the step of creating a search filter further comprises the steps of;

**18**

(1) relating at least two selected category descriptions with logical operations.

**10.** A method for accessing files in accordance with claim 7, wherein the data storage system includes the time of creation of each file, and the step of creating a search filter further comprises the step of:

(1) accepting user input defining a time range to limit matching to only those entries in the file information directory having creation times in the selected time range.

**11.** A method for accessing files in accordance with claim 7, wherein each category description comprises a user defined category description name and a unique category description identifier created by the computer system, and further including the step of displaying the name of each file in the file information directory having category description identifiers matching the category description identifiers of the category descriptions in the search filter.

**12.** A method for accessing files in accordance with claim 11, further comprising the steps of:

(1) selecting one of the displayed file names; and

(2) opening the file corresponding to the selected file name.

**13.** A method for accessing files in accordance with claim 12, wherein the step of selecting a file name comprises the step of:

(1) accepting user input selecting a file from the displayed file names.

**14.** A method for accessing files in accordance with claim 12 wherein the step of opening a file comprises the step of:

(1) testing if only one file name is displayed, and if so, then opening the file corresponding to that file name.

**15.** A system for accessing files in a data storage system comprising:

(a) a plurality of files in a data storage system;

(b) a plurality of user-defined category descriptions, each category description comprising a descriptive name, the category descriptions having no predefined hierarchical relationship with such list or each other;

(c) file association means for associating at least one file with at least one category description selected from the plurality of previously defined category descriptions;

(d) category description addition means for adding one or more additional category descriptions to the plurality of user-defined category descriptions; and

(e) category linking means for linking at least one linking category description to at least one linked category description, such that if a specific file is associated with a linking category description, the user must also associate that specific file with at least one of the linked category descriptions corresponding to the linking category description.

**16.** A system for accessing files in a data storage system as set forth in claim 15, further including a linking reminder activated upon associating a specific file with a linking category description, such that the linking reminder provides an indication to the user that the user must associate that file with at least one of the linked category descriptions corresponding to the linking category description.

**17.** A system for accessing files in a data storage system as set forth in claim 15, further including password-controlled file encryption means for encrypting at least one of the plurality of files, such that if a specific file is encrypted, associating that file with a category requires provision by the user of a password, and any access to that file requires provision by the user of a password.

Exhibit 2 Page 40

5,544,360

**19**

**18.** A system for accessing files in a data storage system of a computer system having means for reading and writing data from the data storage system, displaying information, and accepting user input, wherein each file located on the data storage system has a file name, the system comprising:

(a) means for initially defining in the computer system at least one list having a plurality of category descriptions, each category description comprising a descriptive name, the category descriptions having no predefined hierarchical relationship with such list or each other;

(b) means for thereafter accepting user input associating with a file at least one category description from at least one defined list;

(c) means for storing in the data storage system a file record containing at least the file name, file location information, and the associated category descriptions for the file;

(d) means for displaying from each defined list, as selectable items, only those category descriptions associated with at least one file;

(e) means for accepting user positional input defining a search filter of at least one category description selected from at least one displayed defined list;

(f) means for automatically disabling, in the computer system, selectability of all other category descriptions in each displayed list that do not have associated files which are also associated with the category descriptions of the defined search filter;

(g) means for searching in the computer system the category descriptions of each stored file record for a logical match to the category descriptions of the defined search filter;

(h) means for displaying the file names of all file records having category descriptions that logically match each category description of the defined search filter.

**19.** The system for accessing files of claim **18,** further including:

(a) means for accepting user input selecting at least one file from the displayed file names;

(b) means for accessing each selected file on the data storage system using the file location information from the file record associated with each corresponding selected file.

**20**

**20.** A method for accessing files in a data storage system of a computer system having means for reading and writing data from the data storage system, displaying information, and accepting user input, wherein each file located on the data storage system has a file name, the method comprising the steps of:

(a) initially defining in the computer system at least one list having a plurality of category descriptions, each category description comprising a descriptive name, the category descriptions having no predefined hierarchical relationship with such list or each other;

(b) thereafter accepting user input associating with a file at least one category description from at least one defined list;

(c) storing in the data storage system a file record containing at least the file name, file location information, and the associated category descriptions for the file;

(d) displaying from each defined list, as selectable items, only those category descriptions associated with at least one file;

(e) accepting user positional input defining a search filter of at least one category description selected from at least one displayed defined list;

(f) automatically disabling, in the computer system, selectability of all other category descriptions in each displayed list that do not have associated files which are also associated with the category descriptions of the defined search filter;

(g) searching in the computer system the category descriptions of each stored file record for a logical match to the category descriptions of the defined search filter;

(h) displaying the file names of all file records having category descriptions that logically match each category description of the defined search filter.

**21.** The method for accessing files of claim **20,** further including the steps of:

(a) accepting user input selecting at least one file from the displayed file names;

(b) accessing each selected file on the data storage system using the file location information from the file record associated with each corresponding selected file.

* * * * *

Exhibit 2 Page 41

# EXHIBIT 3

TO DECLARATION OF ALAN P. BLOCK IN
SUPPORT OF SPEEDTRACK, INC.'S MOTION FOR
SUMMARY ADJUDICATION OF ISSUES PURSUANT
TO RULE 56(D), FED. R. CIV. PRO THAT:
(1) DEFENDANT WAL-MART.COM USA, LLC
DIRECTLY INFRINGED CLAIM 1 OF U.S. PATENT
NO. 5,544,360 UNDER 35 U.S.C. § 271(A); AND
(2) THE OCTOBER 29, 1991 MACWEEK ARTICLE IS
NOT AN INVALIDATING OFFER FOR SALE UNDER
35 U.S.C. § 102(B)

# REDACTED

## DESIGNATED CONFIDENTIAL BY
## DEFENDANT AND/OR INTERVENOR
## PURSUANT TO PROTECTIVE ORDER.
## FILED UNDER SEAL

# EXHIBIT 4

TO DECLARATION OF ALAN P. BLOCK IN
SUPPORT OF SPEEDTRACK, INC.'S MOTION FOR
SUMMARY ADJUDICATION OF ISSUES PURSUANT
TO RULE 56(D), FED. R. CIV. PRO THAT:
(1) DEFENDANT WAL-MART.COM USA, LLC
DIRECTLY INFRINGED CLAIM 1 OF U.S. PATENT
NO. 5,544,360 UNDER 35 U.S.C. § 271(A); AND
(2) THE OCTOBER 29, 1991 MACWEEK ARTICLE IS
NOT AN INVALIDATING OFFER FOR SALE UNDER
35 U.S.C. § 102(B)

1

2

3                    UNITED STATES DISTRICT COURT

4                    NORTHERN DISTRICT OF CALIFORNIA

5

6

7   SPEEDTRACK, INC.,

8            Plaintiff,                        No. C 06-7336 PJH

9   v.                                         **ORDER CONSTRUING
                                               CLAIMS**
10  WAL-MART STORES, INC.,

11           Defendant.
    _____/

12

13        On March 19, 2008, the parties' claim construction hearing to construe the disputed

14  terms of U.S. Patent No. 5,544,360 (the "'360 patent") pursuant to Markman v. Westview

15  Instruments, Inc., 517 U.S. 370 (1996), came on before this court.  Plaintiff Speedtrack, Inc.

16  ("plaintiff") appeared through their counsel Alan P. Block, Roderick G. Dorman, and Marc

17  Morris.  Defendant Wal-Mart Stores, Inc. and intervenor Endeca Technologies, Inc.

18  (collectively "defendants") appeared through their counsel, Steven M. Bauer.[1]  Having read

19  the parties' papers and carefully considered their arguments and the relevant legal

20  authority, the court hereby rules as follows.

21                              **BACKGROUND**

22        Plaintiff is the assignee and owner of U.S. Patent No. 5,544,360 (the "'360 patent"),

23  which is directed at systems and methods for accessing computer files and data

24  information in data storage systems.  See Revised Joint Claim Construction and

25  Prehearing Statement ("Joint Statement"), Ex. A.  Defendant Wal-Mart Stores, Inc. is a

26  retail corporation with an online retail website that permits visitors to search for and buy a

27

28  _____

         [1]      For purposes of claim construction, Wal-Mart and Endeca have jointly filed their
    papers, and are referred to herein collectively as "defendant."

Exhibit  4   Page  46

*(left margin)* **United States District Court**
For the Northern District of California

United States District Court

For the Northern District of California

1   variety of products.  See generally Corrected First Amended Complaint for Patent

2   Infringement, Permanent Injunction, and Damages ("Speedtrack I Complaint"), ¶¶ 4, 10-11.

3   Plaintiff alleges that defendant Wal-Mart's use and maintenance of its website directly and

4   indirectly infringes the '360 patent by permitting visitors to search for products available for

5   sale "by selecting pre-defined categories descriptive of the products."  See id.

6        In April 2007, Endeca Technologies, Inc. filed a complaint in intervention against

7   plaintiff.  Endeca's complaint arose out of plaintiff's allegations against defendant Wal-Mart.

8   Wal-Mart is one of Endeca's customers, and utilizes Endeca's Information Access Platform

9   on its Wal-Mart website in order to allow users to search for products online.  See Endeca's

10  Complaint in Intervention ("Endeca Complaint"), ¶¶ 7-9.  In its complaint in intervention,

11  Endeca alleges that an actual controversy exists over whether its Information Access

12  Platform infringes the '360 patent and whether the '360 patent is invalid.  See id. at ¶¶ 8-9.

13  To that end, Endeca alleges two claims against plaintiff: (1) for a declaratory judgment that

14  Endeca's Information Access Platform does not infringe the '360 patent; and (2) for a

15  declaratory judgment that the '360 patent is invalid.  See id. at ¶¶ 10-18.

16       A.    Background Technology

17       File-searching systems have been employed for years in order to enable users to

18  conduct a variety of searches through large volumes of information (e.g., a standard library

19  card catalog search system).  With the advent of advanced technology, however, file

20  searching systems have been adapted for use in computers, through the use of electronic

21  file searching systems.  To that end, the file-searching system covered by the '360 patent

22  describes a system and method for searching and retrieving data stored in a data storage

23  system of a computer.

24       The inventors of the '360 patent came up with their patented search method in an

25  effort to cure perceived problems associated with the prior art electronic file searching

26  systems.  One of the most significant perceived problems, for example, was the inability of

27  the prior art systems to electronically search for documents that logically fit into more than

28

2

Exhibit   4   Page   47

1    one file folder.

2        B.    The '360 Patent

3        The '360 patent issued on August 6, 1996.  The patent contains 21 claims, some of

4    which are method claims, and many of which are dependent claims.  <u>See</u> Joint Statement,

5    Ex A.   For purposes of the instant litigation, plaintiff asserts independent method claims 1

6    and 20 against defendants, and dependent method claims 2-7, 11-14, and 21.

7        The parties now seek construction of ten disputed terms and/or phrases.

8                                     **DISCUSSION**

9        A.    Legal Standard

10       In construing claims, the court must begin with an examination of the claim language

11   itself.  The terms used in the claims are generally given their "ordinary and customary

12   meaning."  <u>See Phillips v. AWH Corp.</u>, 415 F.3d 1303, 1312-13 (Fed. Cir. 2005); <u>see also</u>

13   <u>Renishaw PLC v. Marposs Societa' per Azioni</u>, 158 F.3d 1243, 1248 (Fed. Cir. 1998) ("The

14   claims define the scope of the right to exclude; the claim construction inquiry, therefore,

15   begins and ends in all cases with the actual words of the claim.").  This ordinary and

16   customary meaning "is the meaning that the terms would have to a person of ordinary skill

17   in the art in question at the time of the invention...".  <u>Phillips</u>, 415 F.3d at 131.  A patentee is

18   presumed to have intended the ordinary meaning of a claim term in the absence of an

19   express intent to the contrary.  <u>York Products, Inc. v. Central Tractor Farm & Family Ctr.</u>,

20   99 F.3d 1568, 1572 (Fed. Cir. 1996).

21       Generally speaking, the words in a claim are to be interpreted "in light of the intrinsic

22   evidence of record, including the written description, the drawings, and the prosecution

23   history, if in evidence."  <u>Teleflex, Inc. v. Ficosa North Am. Corp.</u>, 299 F.3d 1313, 1324-25

24   (Fed. Cir. 2002) (citations omitted); <u>see also Medrad, Inc. v. MRI Devices Corp.</u>, 401 F.3d

25   1313, 1319 (Fed. Cir. 2005)(court looks at "the ordinary meaning in the context of the

26   written description and the prosecution history").  "Such intrinsic evidence is the most

27   significant source of the legally operative meaning of disputed claim language."  <u>Vitronics</u>

28

3

Exhibit  4  Page  48

United States District Court
For the Northern District of California

1   Corp. v. Conceptronic, Inc., 90 F.3d 1576, 1582 (Fed. Cir. 1996).

2   With regard to the intrinsic evidence, the court's examination begins, first, with the

3   claim language. See id. Specifically, "the context in which a claim is used in the asserted

4   claim can be highly instructive." Phillips, 415 F.3d at 1314. As part of that context, the

5   court may also consider the other patent claims, both asserted and unasserted. Id. For

6   example, as claim terms are normally used consistently throughout a patent, the usage of a

7   term in one claim may illuminate the meaning of the same term in other claims. Id. The

8   court may also consider differences between claims to guide in understanding the meaning

9   of particular claim terms.

10   Second, the claims "must [also] be read in view of the specification, of which they

11   are a part." Id. at 1315. When the specification reveals a special definition given to a claim

12   term by the patentee that differs from the meaning it would otherwise possess, the

13   inventor's lexicography governs. Id. at 1316. Indeed, the specification is to be viewed as

14   the "best source" for understanding a technical term, informed as needed by the

15   prosecution history. Id. at 1315. As the Federal Circuit stated in Phillips, the specification

16   is "the single best guide to the meaning of a disputed term," and "acts as a dictionary when

17   it expressly defines terms used in the claims or when it defines terms by implication." 415

18   F. 3d at 1321.

19   Limitations from the specification, such as from the preferred embodiment, cannot

20   be read into the claims absent an express intention to do so. Teleflex, 299 F.3d at 1326

21   ("The claims must be read in view of the specification, but limitations from the specification

22   are not to be read into the claims.") (citations omitted); CCS Fitness, 288 F.3d at 1366 ("a

23   patentee need not describe in the specification every conceivable and possible future

24   embodiment of his invention."); Altiris v. Symantec Corp., 318 F.3d 1363, 1372 (Fed. Cir.

25   2003) ("resort to the rest of the specification to define a claim term is only appropriate in

26   limited circumstances"). To protect against this, the court should not consult the intrinsic

27   evidence until after reviewing the claims in light of the ordinary meaning of the words

28

1  themselves. <u>Texas Digital</u>, 308 F.3d at 1204-05 (to act otherwise "invites a violation of our

2  precedent counseling against importing limitations into the claims") (citations omitted).

3        Finally, as part of the intrinsic evidence analysis, the court "should also consider the

4  patent's prosecution history, if it is in evidence." <u>Phillips</u>, 415 F.3d at 1317.  The court

5  should take into account, however, that the prosecution history "often lacks the clarity of the

6  specification" and thus is of limited use for claim construction purposes. <u>Id</u>.

7        In most cases, claims can be resolved based on intrinsic evidence. <u>See Vitronics</u>,

8  90 F.3d at 1583.  Only if an analysis of the intrinsic evidence fails to resolve any ambiguity

9  in the claim language may the court then rely on extrinsic evidence, such as expert and

10  inventor testimony, dictionaries, and learned treatises. <u>See Vitronics</u>, 90 F.3d at 1583 ("In

11  those cases where the public record unambiguously describes the scope of the patented

12  invention, reliance on any extrinsic evidence is improper").  However, the court generally

13  views extrinsic evidence as less reliable than the patent and its prosecution history in

14  determining how to read claim terms, and its consideration is within the court's sound

15  discretion. <u>See Phillips</u>, 415 F.3d at 1318-19.

16      B.    Construction of Disputed Terms and Phrases

17        The parties dispute construction of ten different terms and phrases contained within

18  the claims of the '360 patent, each of which is described in turn below.

19        1.    "category description"

20        The phrase "category description" is found in claims 1-3, 4-5, 7, 11, and 20 of the

21  '360 patent. <u>See</u> Joint Statement, Ex A.  Plaintiff contends that the phrase should be

22  construed to mean "information that includes a name that is descriptive of something about

23  a stored file."  Defendants contend that "category description" should be construed to mean

24  "information that includes a name defined by the user that is descriptive of something about

25  a stored file."

26        The claim language provides the starting point for analysis of the disputed phrase at

27  issue.  The phrase appears in independent claims 1 and 20, and in several claims that are

28

United States District Court
For the Northern District of California

United States District Court

For the Northern District of California

1   dependent on these two claims.  Claim 1 describes a method for accessing files in a data

2   storage system of a computer system, the method comprising the initial step of "creating in

3   the computer system a category description table containing a plurality of category

4   descriptions, each category description comprising a descriptive name...".  See Joint

5   Statement, Ex. A at 16:55-65.  Claim 20 describes a similar method for accessing files in a

6   data storage system of a computer system, wherein each file located on the data storage

7   system has a file name, the method comprising the initial step of "defining in the computer

8   system at least one list having a plurality of category descriptions, each category

9   description comprising a descriptive name...".  See id. at 20:1-11.  Thus, the independent

10   claims both refer to a "category description" as something that is comprised of "a

11   descriptive name" – i.e., a name that is descriptive of something.  Any proposed

12   construction must contain this limitation, as it is expressly provided for by the claim

13   language itself.  On this point, the parties both agree, as both their proposed constructions

14   construe "category description" to mean "information that includes a name ... that is

15   descriptive of something about a stored file."

16        They disagree, however, on whether the "information" that comprises a category

17   description is also limited to include a name that is specifically defined by the user.  Plaintiff

18   asserts that no "user-defined" limitation is permissible, as doing so would contradict the

19   express teachings of the claim language, while defendants contend that such a limitation is

20   clearly implicated by the claim language, as evidenced by the specification and prosecution

21   history.

22        Ultimately, plaintiff's proposed construction is truer to the claim language.  As noted

23   above, the language of independent claims 1 and 20 clearly defines "category description"

24   with reference to a "descriptive name."  See Joint Statement, Ex. A at 16:55-65.  It contains

25   no direct support, however, for a definition of "category description" that includes a 'user-

26   defined' descriptive name.  See id.  Moreover, subsequent dependent claims add *additional*

27   requirements to the "category description" defined in independent claim 1, which

28

6

Exhibit 4 Page 51

1   requirements *do* reference a user-defined limitation.  Claim 2, for example, states that it

2   covers the method described in claim 1, "wherein each category description *comprises a*

3   *user defined category name and a unique category description identifier created by the*

4   *computer system*."  See Joint Statement, Ex. A at 17:12-15 (emphasis added); see also id.

5   at 18:11-17 (Claim 7)(similar).  As plaintiff correctly points out, the fact that the dependent

6   claims further define "category description," as it was defined in claim 1, with reference to a

7   user-defined category limitation, supports the argument that the phrase – standing alone

8   and as first referenced in claim 1 – should be construed *without* that limitation.  See, e.g.,

9   Phillips, 415 F.3d 1303, 1315 (Fed. Cir. 2005)("the presence of a dependent claim that

10  adds a particular limitation gives rise to a presumption that the limitation in question is not

11  present in the independent claim.").

12       It is true enough, as defendants note, that the specification contains several

13  references to user-defined category descriptions.  See id. at 3:66-4:2 ("the invention allows

14  a user to define categories for files stored in a computer system, and to edit such

15  categories as they are used, to designate all applicable categories for each file, and to link

16  categories in user-definable ways"); id. at 4:58-62 ("The present invention consists of a

17  computer file control system [that] includes a File Category Table ("FCT") and a File

18  Information Directory ("FID") to store information *about user-defined categories* and

19  information linking such categories to specific files."); id. at 5:4-11 ("in the preferred

20  embodiment, the FCT is a table that can be modeled as having a set of columns labeled by

21  category-type, with entries comprising lists of category names or descriptions.  *Each*

22  *category description is a descriptive name defined by the user*")(emphasis added).  This

23  supports, as defendants urge, the notion that the present invention covers a search method

24  that is premised on user-defined category descriptions, which in turn form a part of the

25  process that ultimately allows for a search of specific files.

26       While the specification makes clear that user-defined category descriptions are

27  contemplated by the '360 patent, however, these references are insufficient to demonstrate

28

<div align="left" style="writing-mode: vertical-lr;">**United States District Court**
For the Northern District of California</div>

7

Exhibit 4 Page 52

1   that the patent is *limited* to coverage of user-defined category descriptions.  For the claim

2   language -- as noted above -- distinguishes between category descriptions that are user-

3   defined, and those that are not.  By making this distinction, the claim language itself

4   expressly defines category descriptions in a broader fashion than defendants propose.

5   See, e.g., Phillips, 415 F.3d at 1314 (the usage of a term in one claim may illuminate the

6   meaning of the same term in other claims); see also Renishaw PLC, 158 F.3d at 1248

7   ("The claims define the scope of the right to exclude; the claim construction inquiry,

8   therefore, begins and ends in all cases with the actual words of the claim.").  Thus, it would

9   be improper to allow the user-defined limitation from the specification to trump the clear

10   import of the actual claim language.

11       Moreover, it is worth noting that the specification does not speak exclusively of user-

12   defined category descriptions.  An alternative description of a preferred embodiment states:

13   "in the preferred embodiment, the user is *provided with* an FCT containing sample category

14   descriptions.  These category descriptions may be changed or deleted, and new categories

15   may be added."  See Joint Statement, Ex. A at 5:28-31 (emphasis added).  The obvious

16   import of this description is that, in at least one preferred embodiment, it is the computer,

17   and not the user, who creates category descriptions.  The specification can thus also be

18   read to support what the claim language in fact evidences:  that the '360 patent covers

19   category descriptions that *may* include more than just a user-defined name.  Namely, they

20   may also include computer-defined names.  As such, the specification does not actually

21   require a user-defined limitation.  See, e.g., Specialty Composites v. Cabot Corp., 845 F.2d

22   981, 987 (Fed. Cir. 1988)("[w]here a specification does not require a limitation, that

23   limitation should not be read from the specification into the claims").

24       In sum, the claim language prevents a limitation that restricts the definition of

25   "category description" to user-defined names only, and the specification should be read

26   consistently with this broader definition.  The court therefore construes the phrase

27   "category description" as follows:  **"information that includes a name that is descriptive**

28

United States District Court

For the Northern District of California

8

Exhibit 4 Page 53

1  **of something about a stored file**."

2          2.     "category description table"

3        This phrase is found in claims 1, and 4-5 of the '360 patent. <u>See</u> Joint Statement,

4  Ex. A. Plaintiff contends that "category description table" should be construed to mean "at

5  least one list containing a plurality of category descriptions." Defendants contend that

6  "category description table" should be construed to mean "a two-dimensional array, linked

7  list, fixed or variable record length table, etc., that stores information about user-defined

8  categories."

9        Preliminarily, there are two real points of contention between the parties. First, they

10  dispute the meaning of the term "table," and specifically, whether "table" should be

11  construed as a "list," or as a broader series of possible configurations that include two-

12  dimensional arrays, linked lists, and fixed or variable record length tables. Second, the

13  parties revisit their initial dispute over inclusion of a user-defined limitation.

14        In some respects, plaintiff's proposed construction makes sense. Beginning with the

15  claim language, for example, the phrase "category description table" appears in only one

16  independent claim – claim 1 – and two dependent claims, claims 4-5. Claim 1, in

17  discussing the category description table, states that it contains "a plurality of category

18  descriptions, each category description comprising a descriptive name, the category

19  descriptions having no predefined hierarchical relationship with such list or each other...".

20  <u>See</u> '360 Patent at 16:61-65. In other words, the "category description table" is made up of

21  a plurality of category descriptions, which category descriptions have no predefined

22  hierarchical relationship with "[the] list" of category descriptions or with each other. Thus,

23  the claim language itself supports plaintiff's construction of "category description table" as

24  "at least one list containing a plurality of category descriptions." Claims 4 and 5, which are

25  dependent on claim 1, neither add nor detract from this understanding of "category

26  description table," since neither claim references the phrase in connection with any modifier

27  that adds further clarity to its meaning.

28

United States District Court
For the Northern District of California

Exhibit _4_ Page _54_

United States District Court

For the Northern District of California

1    The specification also provides some support for plaintiff's construction.  While both

2    parties acknowledge that the specification does not expressly define the entirety of the

3    phrase "category description table" in any one place, they do agree that the specification

4    provides insight as to what is meant by the phrase "table."  The specification's description

5    of Figure 3, for example, describes "an example of a File Category Table ["FCT"] in

6    accordance with the present invention."  See id. at 5:32-33.  Turning to that drawing, Figure

7    3 does, in fact, appear to include "lists" of relevant information – again, an observation that

8    would support plaintiff's proposed construction.

9    Defendants, however, have correctly pointed out that the specification *also* states

10    that a "table" can be expressed in any desired manner, and is therefore not limited to a

11    "list," as required by plaintiff's construction.  Specifically, the specification further states:  "in

12    implementing the invention, the table structure shown can be configured in any desired

13    manner, such as an array, linked list, fixed or variable record length table using sequential

14    or hashed access, etc."  See id. at 5:36-39 (emphasis added).  Accordingly, the

15    specification teaches that, while a category description table can be defined with reference

16    to a "list," it can *also* be defined with reference to an array, record length table, or

17    structured in any other manner.

18    At first blush, this observation points away from plaintiff's proposed construction and

19    toward defendants, which incorporates the various possibilities for table structure that are

20    clearly contemplated by the specification.  However, defendants' proposed construction

21    ultimately fails to persuade.  This is because, even though their proposed construction is

22    more consistent with the patent's teachings regarding the meaning of "table," defendants'

23    construction also improperly limits a "category description table" to one that contains

24    information about "user-defined categories."  For the reasons already discussed in

25    connection with the term "category description," the court rejects defendants' proposed

26    limitation.

27    In sum, therefore, the court finds that neither of the parties' proposed constructions

28

10

Exhibit  4  Page 55

1   is wholly consistent with the intrinsic evidence, and that each side's proposal includes

2   certain limitations that are partly, if not wholly, appropriate.  As such, and further based on

3   the parties' willingness to concede certain points at the hearing on claim construction, the

4   court adopts a modified construction for the phrase "category description table," as follows:

5   **"at least one list or array, configured in any desired manner, or taking any form,**

6   **containing a plurality of category descriptions."**

7                       3.      "file information directory"

8           This phrase is found in claims 1, 5, 7, and 11 of the '360 patent.  See Joint

9   Statement, Ex. A.  Plaintiff contends that no construction of "file information directory" is

10  necessary.  However, should it be construed, the court should construe it to mean "a

11  directory comprising information corresponding to at least one file."  Defendants contend

12  that "file information directory" should be construed to mean "a table that stores information

13  linking user-defined categories to specific files."

14          Starting with the claim language, claim 1 of the patent describes the "file information

15  directory" as "comprising at least one entry corresponding to a file on the data storage

16  system, each entry comprising at least a unique file identifier for the corresponding file, and

17  a set of category descriptions selected from the category description table...".  See Joint

18  Statement, Ex. A at 16:66-17:4.  Dependent claim 5 covers the process by which the file

19  information directory is created, and this process is comprised in part of "creating a new

20  entry in the file information directory; storing in the new entry the file identifier of the

21  selected file; and storing in the new entry the category description identifier of each of the

22  selected category descriptions."  See id. at 17:31-45.  Thus, read in harmony, the claim

23  language makes clear that a file information directory is made up of at least one entry that

24  corresponds to a file, which entry in turn contains a file identifier for the selected file, and

25  category descriptions.  The claim language says nothing about the particular format that the

26  file information directory takes (e.g., a table versus a list), and it says nothing about the

27  purposes for which the information comprising the file information directory will be used

28

United States District Court
For the Northern District of California

Exhibit  4  Page 56

United States District Court

For the Northern District of California

1   (e.g., for purposes of linking user-defined categories to specific files).  The claim language

2   therefore favors plaintiff's construction.

3         Turning to the specification, it first introduces the description of "file information

4   directory" in a statement describing the present invention as a whole.  The specification

5   states: "The present invention consists of a computer file control system th[at] includes a

6   File Category Table ("FCT") and a File Information Directory ("FID") to store information

7   about user-defined categories and information linking such categories to specific files."

8   See Joint Statement, Ex. A at 4:58-62.  Then, in discussing the structure of the FID, the

9   specification states that "in the preferred embodiment, the FID is a table that can be

10  modeled as having a set of columns labeled by file name, file location [], creation and/or

11  last update time and date for the file," etc.  See id. at 6:17-22.  The specification goes on to

12  describe Figure 4 of the patent, which "shows an example of a File Information Directory in

13  accordance with the present invention."  See id. at 6:26-27.  And turning to Figure 4, there

14  are 5 different columns depicted, all of which contain lists of information about sample files.

15  See Joint Statement, Ex. A at Figure 4.  The information includes file identifying information

16  such as file names, locations, and creation dates, as well as category descriptions.  See id.

17        Thus, while the claim language teaches that a file information directory is made up of

18  at least one entry that corresponds to a file, which entry includes a file identifier and

19  category descriptions, the specification further teaches that in the preferred embodiment,

20  the file information directory is expressed as a "table" that contains particular information

21  about files – including the information about file identifiers and category descriptions.

22        Defendants urge the court, on this basis, to adopt a construction that would define

23  "file information directory" in part as a "table."  However, such a construction is improper.

24  As a matter of law, limitations from the preferred embodiment cannot be read into the

25  claims absent an express intention to do so, and the court can glean no express intention

26  to limit the meaning of file information directory to "table."  Teleflex, 299 F.3d at 1326.

27  Indeed, as discussed above in connection with the prior disputed term, the specification

28

Exhibit   4   Page 57

United States District Court
For the Northern District of California

1    elsewhere explains that a "table" structure "can be configured in any desired manner, such

2    as an array, linked list, fixed or variable record length table...". See id. at 5:36-39. To

3    specifically construe the phrase "file information directory" as a "table," therefore, when the

4    term "table" is in turn defined to include any desired format (some of which may not strictly

5    conform to the obvious structure for a 'table'), is not warranted.

6        In sum, therefore, while the specification supports the notion that a file information

7    directory *can* be a table, it may not properly be limited to such.  Accordingly, defendants'

8    proposed construction is inconsistent with the intrinsic evidence.  Plaintiff's proposed

9    construction, by contrast, is consistent with both the claim language and the specification,

10   since it allows the "file information directory" to be defined with reference to the information

11   that it must include under the claim language, but does not limit the definition of "directory"

12   to a particular format.  The court therefore adopts plaintiff's proposed construction, and

13   construes the term "file information directory" as: **a directory comprising information**

14   **corresponding to at least one file.**"

15           4.    "having no predefined hierarchical relationship"

16       This phrase is found in claims 1 and 20 of the '360 patent.  See Joint Statement, Ex

17   A.  Originally, plaintiff contended that "having no predefined hierarchical relationship"

18   should be construed to mean "the category descriptions are not initially organized into a

19   single, pre-defined tree-type directory structure where every node has a unique parent."

20   Defendants contended that the disputed phrase should be construed to mean "not ranked

21   into levels of subordination and superordination."

22       At the hearing on claim construction, however, after hearing the parties' arguments

23   in support of their differing constructions, the court requested that the parties attempt to

24   reach agreement as to a jointly proposed construction.  On March 26, the parties duly

25   submitted a stipulated proposed construction to the court.  Having reviewed that jointly

26   proposed construction, the court hereby adopts it, and construes the phrase "having no

27   predefined hierarchical relationship" as follows: **The category descriptions have no**

28

Exhibit 4 Page 58

1  predefined hierarchical relationship.  A hierarchical relationship is a relationship that
2  pertains to a hierarchy.  A hierarchy is a structure in which components are ranked
3  into levels of subordination; each component has zero, one, or more subordinates;
4  and no component has more than one superordinate component."

5          5.      "search filter"

6          This phrase is found in claims 1, 7, 11, and 20 of the '360 patent.  <u>See</u> Joint
7  Statement, Ex. A. Plaintiff contends that "search filter" should be construed to mean "a set
8  of one or more category descriptions (depending upon the context of claim 1 or claim 20)
9  and at least one logical operator if there is more than one category description in the
10 search filter that is used to search."  Defendants contend that "search filter" should be
11 construed to mean, for claim 1, "a program that takes as an input two or more category
12 descriptions chosen by the user to locate files" and for claim 20, "a program that takes as
13 an input at least one category description chosen by the user to locate files."

14         Beginning with the claim language, claim 1 refers to a "search filter" as "comprising a
15 set of category descriptions..." and claim 20 refers to a "search filter of at least one
16 category description selected from at least one displayed defined list."  <u>See</u> Joint
17 Statement, Ex. A at 17:5-11; 20:22-24.  Thus, depending on the claim, a "search filter" will
18 include at least one (but can include more) category description(s).  <u>See also id.</u> at 10:41-
19 43; 10:54-55.  On this point, at least, both parties' proposed constructions are acceptable,
20 as both account for the fact that the claim language requires at least one category
21 description, depending on which claim is at issue.

22         As to a further definition for what a search filter is, the specification answers this
23 question directly.  It states that search filters are "search terms in logically defined
24 combinations...".  <u>See id.</u> at 2:58-53 ("the user then may search for files by file word content
25 by defining "search filters, *which are search terms in logically defined*
26 *combinations*")(emphasis added); <u>see also id.</u> at 11:3-10 ("In addition to selecting category
27 descriptions for the search filter, the user preferably may also group the categories, and
28

United States District Court
For the Northern District of California

Exhibit  4  Page 59

United States District Court

For the Northern District of California

1    relate the groups with logical connectors"). Thus, any proposed construction of "search

2    filter" should also incorporate the requirement that search terms are to be "logically

3    defined."[2] See Phillips, 415 F.3d at 1316 (when the specification reveals a special

4    definition given to a claim term by the patentee that differs from the meaning it would

5    otherwise possess, the inventor's lexicography governs). Of the two competing

6    constructions before the court, however, only plaintiff's incorporates this requirement, by

7    including the limitation that the search filter include a "logical operator" if more than one

8    category description is utilized. Defendants' proposed construction, by contrast, appears to

9    ignore the specification's express definition entirely.

10        Defendants' proposed construction also suffers from other deficiencies. Most

11   significantly, defendants' construction of "search filter" as a "program" finds no support in

12   either the claim language or the specification. Indeed, defendants have cited no authority

13   in either source. Rather, defendants' insertion of the word "program" is taken from two

14   technical dictionaries that define "filter" alone to mean "program," and "device or program,"

15   respectively. See Cabral Decl., Ex. C at 171 (emphasis added). In the court's view,

16   however, reliance on the technical dictionary definition of "filter" alone to import a "program"

17   limitation into the broader phrase "search filter" is misguided – particularly since at least

18   one of the dictionary terms relied on by defendants is inconclusive as to whether "filter"

19   means a program or a device, and since defendants have not cited to any portion of the

20   claim language or specification that supports the "program" limitation.[3]

21        Defendants have also, in the court's view, once again improperly inserted a user-

22

23   _____

24   [2]   Defendants correctly point out that the above definition for "search filter" is contained within the specification's discussion of the prior art and pre-existing data retrieval systems, see Joint Statement, Ex. A at 2:58-53. However, while this is true, it does not change the fact that in the midst of such discussion, the patentees included their own definition for what a "search filter" is.

25

26   [3]   At the hearing, defendants' counsel indicated that defendants are amenable to taking the word "program" out and replacing it with either "device" or "software feature." However, this change does nothing to remedy the issue, for it still seeks to import into the phrase "search filter" a limitation that finds no support in the claim language or specification.

27

28

Exhibit 4   Page 60

**United States District Court**
For the Northern District of California

1   definition limitation into their proposed construction.  Defendants' construction requires that

2   the category descriptions comprising the search filter must be "chosen by the user."  As

3   has already been discussed herein, however, the claim language and specification do not

4   permit a construction that would limit category descriptions to those that are chosen by the

5   user.  In their briefing and at the hearing, defendants attempted to articulate with a bit more

6   precision that their construction is one that emphasizes, not so much that the category

7   descriptions themselves must be user-defined (which is their position with respect to the

8   first disputed term at issue), but that with respect to the actual search filter, it is the user

9   who actually defines the search filter.  Defendants rely on the specification as evidence of

10  this.  See Joint Statement, Ex. A at 4:5-14; 10:40-46; 10:54-55; 13:25-26.  However, while

11  defendants are correct that the specification refers to the user's role in defining the search

12  filter, this is a separate and distinct inquiry from what the "search filter" itself *is*.  In other

13  words, instead of arguing the plain and ordinary meaning of the phrase itself, defendants

14  seek to add a limitation regarding the term's *function*.  This argument, though, is one that is

15  better left to the infringement stage of the litigation, where defendants can more

16  appropriately argue that the Information Access Platform they utilize does not read upon

17  the claim terms, as construed herein.

18         To the extent plaintiff also objects to defendants' proposed construction because it

19  requires that a search filter "locate files," the court finds that defendants have again

20  improperly sought to limit the phrase at issue in accordance with its function, rather than in

21  accordance with its ordinary meaning as disclosed by the specification.  Moreover, even if

22  the court were to find that this limitation *is* generally supported by the claim language and

23  specification, defendants' proposed construction remains deficient for the reasons

24  expressed above.

25         In sum, the court finds that plaintiff's construction is most consistent with the intrinsic

26  evidence.  As such, the court hereby construes the phrase "search filter" to mean:  **"a set**

27  **of one or more category descriptions (depending upon the context of claim 1 or**

28

Exhibit __4__ Page _61_

**United States District Court**
For the Northern District of California

1   **claim 20) and at least one logical operator if there is more than one category**

2   **description in the search filter that is used to search."**

3        6.    "file"

4       This phrase is found in claims 1-7, 11-14, and 20-21 of the '360 patent.  In all

5   claims, the phrase is used in a variety of references, including: "a method of accessing

6   <u>files</u>," "selecting one of the displayed <u>file</u> names;" "opening the <u>file</u> corresponding to the

7   selected <u>file</u> name," etc.  <u>See generally</u> Joint Statement, Ex. A at 16:54-20:44.  Plaintiff

8   contends that "file" should be construed to mean "any collection of data or information

9   stored on a computer system."  Defendants contend that "file" should be construed to mean

10   "any collection of data or information stored on a computer system as a unit."

11       Preliminarily, the parties' proposed constructions are identical, with the exception of

12   defendants' addition of the phrase "as a unit."  Defendants contend that this additional

13   phrase is needed in order to clarify the fact that a "file" does not relate to just a single

14   record or piece of information stored anywhere on a computer, but rather, refers to a set of

15   records, or a collection of information, which must necessarily be treated together as a

16   single unit.  For support, defendants invoke several technical dictionaries.

17       Fortunately, the intrinsic evidence resolves the parties' dispute in a straightforward

18   manner, for this is an instance in which the patentees acted as their own lexicographers, by

19   expressly defining the term "file" in the patent specification.  Specifically, the patentees

20   noted, "[t]he term 'file' should be understood to mean any collection of data or information

21   stored on a computer system."  <u>See</u> '360 Patent at 4:64-66.  Under the ordinary rules of

22   claim interpretation, this definition governs, notwithstanding defendants' reliance on

23   technical dictionary definitions to prove that those dictionary definitions (which include the

24   additional "as a unit" limitation, apply).  <u>See, e.g., Phillips</u>, 415 F.3d at 1316 (when the

25   specification reveals a special definition given to a claim term by the patentee that differs

26   from the meaning it would otherwise possess, the inventor's lexicography governs.).

27   Accordingly, plaintiff's proposed construction – which sets forth the same definition

28

Exhibit _4_ Page _62_

United States District Court

For the Northern District of California

1    provided in the specification – controls here.

2        Defendants, moreover, fail to identify anything in the claim language or specification

3    that warrants inclusion of the "as a unit" limitation.  The only intrinsic evidence they rely on

4    is a statement made by plaintiff's attorney during prosecution of the '360 patent, to the

5    effect that the present invention "is not directed to generating queries or data sets for a

6    database, but is a method for accessing files in a data storage system."  <u>See</u> Notice of

7    Errata re Defendants' Responsive Claim Construction Brief, Ex. B1 at SPEED 000143.

8    This single reference, however, does not constitute a disavowal of the special definition

9    given to the term "file" within the specification.  Moreover, as plaintiff points out in its reply,

10   the statement that defendants rely on was used in connection with the patentees' efforts to

11   distinguish the present invention from the prior art and specifically, to distinguish the

12   present method for "accessing files" from the prior art's "query by example" system in which

13   users build queries to a database.  <u>See id.</u>  While the two methods were distinguished,

14   however, there was nothing in the distinction that indisputably leads to defendants'

15   conclusion that a "file" must be construed as a collection of data or information stored on a

16   computer system "as a unit."

17       Accordingly, and based on all the above, the court adopts plaintiff's proposed

18   construction, and construes "file" as:  **"any collection of data or information stored on a**

19   **computer system."**

20       7.  "such list"

21       This phrase is found in claims 1 and 20 of the '360 patent.  <u>See</u> Joint Statement, Ex.

22   A.  The parties' only dispute, however, is whether "such list," as used in claim 1 of the '360

23   patent, is indefinite.  Defendants assert that it is, since there is no antecedent basis for the

24   phrase, while plaintiff argues to the contrary, and contends that the phrase should be

25   construed to refer to a "category description table."

26       The relevant test for indefiniteness is not simply whether an antecedent basis is

27   lacking with respect to the disputed claim language, but whether a person skilled in the art

28

Exhibit ___4___ Page __63__

United States District Court
For the Northern District of California

1    could reasonably ascertain the meaning of "such list" as used in the claim language. <u>See,</u>

2    <u>e.g.,</u> <u>Energizer Holdings, Inc. v. Int'l Trade Com'n</u>, 435 F.3d 1366, 1370 (Fed Cir.

3    2006)("[t]he definiteness inquiry 'focuses on whether those skilled in the art would

4    understand the scope of the claim when the claim is read in light of the rest of the

5    specification'"); <u>Bancorp Servs., L.L.C. v. Hartford Life Ins. Co.</u>, 359 F.3d 1367, 1371 (Fed.

6    Cir. 2004)("In ruling on a claim of patent indefiniteness, a court must determine whether

7    those skilled in the art would understand what is claimed when the claim is read in light of

8    the specification").

9          Applying this test here, the court concludes that a person skilled in the art could

10   reasonably ascertain the meaning of "such list," as used in the language of claim 1.  Claim

11   1 covers, in part, a "category description table" which contains "a plurality of category

12   descriptions... the category descriptions having no predefined hierarchical relationship with

13   such list or each other...".  <u>See</u> Joint Statement, Ex. A at 16:60-65.  The reasonable

14   inference that a person of ordinary skill in the art would likely make is that "such list" refers

15   to the "category description table," which is comprised of a plurality of category

16   descriptions.  Not only does the language of claim 1 itself logically suggest as much, but as

17   plaintiff notes, the language of claim 20 also supports this inference, as it more directly

18   refers to a "list having a plurality of category descriptions." <u>See id.</u> at 20:7-9.  The

19   specification also supports this inference, since it refers to a category description table as a

20   "list" of category descriptions, among other possible configurations. <u>See id.</u> at 5:36-39.

21         Defendants seize on the specification's description of multiple possible

22   configurations for a category description table, and argue that in view of the possibilities, no

23   one skilled in the art could reasonably ascertain that the reference to category description

24   table in claim 1 could refer to "such list."  But this argument is somewhat of a red herring.

25   For the specification's references to possible configurations for a "category description

26   table" do not alter the fact that a person skilled in the art would reasonably conclude that, in

27   the claim language, "such list" refers to "category description table" in the first instance.

28

Exhibit___4___ Page 64

United States District Court
For the Northern District of California

1   Rather, defendants' objection really goes to the argument that, assuming "such list" is

2   construed to mean "category description table," a "category description table" should not be

3   limited to just a "list" – a point that goes in turn to the proper construction to be given the

4   phrase "category description table" (not "such list"), and which was raised and resolved

5   elsewhere herein.

6       In sum, therefore, the court concludes that "such list" is not indefinite for lack of an

7   antecedent basis.  The court therefore adopts plaintiff's construction and construes "such

8   list" as:  **a category description table**."

9       8.       "means for reading and writing data from the data storage system,

10               displaying information, and accepting user input"

11       This phrase is found in claims 1 and 20 of the '360 patent.  See Joint Statement, Ex.

12   A.  Originally, plaintiff contended that no construction is necessary, but that if the court

13   does construe the language, it should be construed as "a computer system, embodied in

14   either a single computer or a distributed environment, such as networked computers,

15   having a hard disk drive (including device drivers) and all equivalent structures, a computer

16   display and all equivalent structures, and a computer mouse (including device drivers) and

17   all equivalent structures."  Defendants, by contrast, contended that the disputed phrase

18   should be construed to mean "a computer system, embodied in a single computer having a

19   hard disk drive, a computer display, and a computer mouse."

20       At the hearing, however, the parties stated that they had narrowed their dispute, and

21   now present somewhat modified proposed constructions.  Namely, plaintiff now contends

22   that the phrase at issue should be construed as "a computer system, embodied in either a

23   single computer or a distributed environment, having a hard disk drive, a computer display,

24   and a computer mouse, and equivalents thereto."   Defendants largely agree with this

25   modified construction, except that they would omit the construction's reference to "either"

26   and "or a distributed environment."  The only issue now before the court is thus whether the

27   disputed term should be construed to cover a single computer system, or in addition to a

28

Exhibit   4   Page  65

United States District Court
For the Northern District of California

1   single computer system, a distributed environment such as networked computers.

2          Preliminarily, the court is at somewhat of a loss as to how the disputed term relates

3   to the issue that the parties have placed before the court – i.e., whether the patent covers a

4   single computer system or a distributed environment, as well.  The parties initially argued

5   that the disputed term is a means-plus-function phrase, which must be construed

6   accordingly.  However, the "having means" phrase at issue does not obviously invoke a

7   dispute over the question of single computer system v. network.  Moreover, the phrase is

8   not even a proper means-plus-function phrase.  The disputed term is located in the

9   preamble to Claims 1 and 20, which both go on to recite a step by step method that gives

10  life to the claimed "method for accessing files in a data storage system of a computer

11  system...".  See, e.g., Joint Statement, Ex. A at 16:54-17:12.  In the court's view, the brief

12  portion of the preamble that the parties have chosen to dispute here does not actually

13  constitute or explain any claim limitations that are elsewhere developed and explained in

14  the body of the claims.  As such, the disputed phrase cannot properly be used to construe

15  any relevant claim limitations.  See, e.g., Altiris, Inc. v. Symantec Corp., 318 F.3d 1363,

16  1371 (Fed. Cir. 2003)(noting that "[i]t is well settled that if the body of the claim sets out the

17  complete invention, and the preamble is not necessary to give life, meaning and vitality to

18  the claim, then the preamble is of no significance to claim construction because it cannot

19  be said to constitute or explain a claim limitation").  In sum, the court is not convinced that

20  the disputed language is a proper claim limitation in the first place, let alone one that can be

21  construed as a means-plus-function limitation.  See, e.g., Biomedino, LLC v. Waters

22  Technologies Corp., 490 F.3d 946, 950 (Fed Cir. 2007).

23         Indeed, the court finds that, although not expressly stated as such, what the parties

24  are really seeking is a construction of the straightforward phrase "computer system."  This

25  phrase can readily be found in the claim language.  See Joint Statement, Ex. A at 16:60

26  (language of Claim 1, subsection (a)).  Since the parties' arguments make clear -- even if

27  their Joint Statement does not – that both parties seek construction of the meaning of

28

Exhibit __4__ Page 66

**United States District Court**
For the Northern District of California

1   "computer phrase," and in the interests of finality, the court proceeds to construe it.

2       The specification clearly refers to the present invention as one that covers computer

3   networks, in addition to single computer systems. <u>See, e.g.</u> '360 Patent at 16:10-15 ("Many

4   other implementations of these ideas are possible... [f]or example, in a large office *or on a*

5   *public or private electronic network*, communication between people can be difficult....

6   *Using the invention*, a category description list could be defined for all possible topics (with

7   constant updating *by the network administrator*...))(emphasis added); <u>see id.</u> at 16:41-47

8   ("A number of embodiments of the present invention have been described.  Nevertheless, it

9   will be understood that various modifications may be made without departing from the spirit

10   and scope of the invention.  For example, although the above description has been made

11   with respect to a single computer system, that term is meant to include distributed data

12   storage environments, *such as networked computers*")(emphasis added).  Defendants, by

13   contrast, have submitted no adequate response to these teachings from the specification.

14   Nor has the court found anything else in the intrinsic evidence (or elsewhere) that

15   persuades it that the above language should not be given effect.

16       In sum, based upon the re-focused disputed term proposed at the hearing, the court

17   construes the phrase "computer system" as: "**a computer system, embodied in either a**

18   **single computer or a distributed environment, having a hard disk drive, a computer**

19   **display, and a computer mouse, and equivalents thereto.**"

20         9.    "user"

21       This phrase is found in claims 1-2, 4-7, 11, 13, and 20-21 of the '360 patent. <u>See</u>

22   Joint Statement, Ex. A.  Plaintiff contends that "user" should be construed as "one that uses

23   – may be a person or another computer," and defendants contend that "user" should be

24   construed as "a person that defines categories, associates files with particular categories,

25   and defines the search filter."

26       Defendants are correct that much of the specification refers to "a user," which most

27   logically refers to a natural person. <u>See</u> Joint Statement, Ex. A at 3:66-4:2 ("The invention

28

Exhibit ___4___ Page _6 7_

United States District Court

For the Northern District of California

1   allows a user to define categories for files stored in a computer system..."); id. at 4:7-8 ("the

2   user defines a filter which will always find at least one file"); id. at 4:9-15 (repeated

3   references to steps taken by "the user"). Defendants are further correct that, in doing so,

4   the specification clearly contemplates that a "user" defines category descriptions, can

5   associate files with category descriptions, and can further define search filters. However,

6   the specification also states that the claimed invention covers embodiments that *do not* limit

7   the definition of user to a person. For as plaintiff points out, the specification states: "it will

8   be understood that various modifications may be made without departing from the spirit *and*

9   *scope of the invention*.... although the above description has contemplated that the 'user' is

10   a person, the invention can be readily adapted to interact *with another computer as the*

11   *'user.'*" See id. at 16:41-50 (emphasis added). In other words, the specification clearly

12   states that the scope of the claim language should be interpreted to include not just natural

13   persons, but also computers, who may under the appropriate circumstances be considered

14   "users."

15          Moreover, while defendants have understandably relied on Z4 Techs., Inc. v.

16   Microsoft Corp., 507 F.3d 1340, 1348 (Fed. Cir. 2007), in support of their position, this case

17   is not ultimately helpful to them. It is true enough that in Z4, the Federal Circuit expressly

18   found that the term "user" did not include "computers" and had to be limited to "persons"

19   only. See id. However, the case is distinguishable from the facts here. The governing

20   claim language in Z4, for example, contained a side by side recitation of "user" and

21   "computer" as distinct entities. See id. (In the claim recitations at issue, "the 'user' and the

22   'computer' are 'distinct entities'"). Here, the claim language contains no such mutually

23   exclusive distinction. Indeed, even the claim language that references both "a user defined

24   category name and a unique category description identifier created by the computer

25   system" – e.g., as in claim 2 – does not, in the court's view, alter this conclusion. See, e.g.,

26   Joint Statement, Ex. A at 17:12-15. This is because, using plaintiff's construction here,

27   claim 2 should be read as referring to the fact that the *category names* can be defined

28

Exhibit 4 Page 6 8

1   either by a person or computer, while the category description *identifier* (e.g., the file

2   location info) is created solely by the computer.

3        In sum, for all the above reasons, the court adopts plaintiff's construction and

4   construes the phrase "user" as:  **"one that uses – may be a person or another**

5   **computer."**

6            10.   "creating in the computer system"

7       This phrase is found in claim 1, and referenced by dependent claims 4, 5, and 7 of

8   the '360 patent.  See Joint Statement, Ex. A.  Plaintiff contends that "creating in the

9   computer system" does not need to be construed, but that if the court does construe it, it

10   should be construed as "bringing into existence in the computer system."  Defendants

11   contend that "creating in the computer system" is indefinite.  The crux of the parties' dispute

12   is really whether, even assuming that plaintiff's construction is adopted, the claim term (or

13   the proposed construction) is indefinite, due to the language's failure to state who or what

14   actually does the "creating" to which the claim refers.

15        The court is not persuaded that the phrase at issue is indefinite.  Construing the

16   claim language consistently with the proper construction to be given to the phrase "user,"

17   the claim language's use of the phrases "initially creating in the computer system,"

18   "thereafter creating in the computer system a file information directory...," and thereafter

19   creating in the computer system a search filter..." – i.e., the three steps covered in claim 1 –

20   refer to steps that are undertaken by either a computer, or a natural user.  See Joint

21   Statement, Ex. A at 16:60-17:11.  Regardless whether undertaken by a computer or natural

22   user, however, the end result is that the various steps are doing something that "brings into

23   existence," or more accurately, produces certain functions within the computer system.  As

24   such, the court finds that the disputed claim language is reasonably understandable to a

25   person skilled in the art and is not indefinite.

26        The court does find, however, that a slight modification of plaintiff's proposed

27   construction would be most consistent with the phrase at issue's ordinary meaning.

28

United States District Court
For the Northern District of California

United States District Court
For the Northern District of California

1    Accordingly, the court construes the phrase "creating in the computer system" as:

2    **"producing in the computer system."**

3        C.    Conclusion

4        In accordance with the foregoing, and for the reasons discussed above, the court

5    construes the parties' disputed terms as follows:

6        1.    "category description" means "information that includes a name that is

7        descriptive of something about a stored file."

8        2.    "category description table" means "at least one list or array, configured in

9        any desired manner, or taking any form, containing a plurality of category

10       descriptions."

11       3.    "file information directory" means "a directory comprising information

12       corresponding to at least one file."

13       4.    "having no predefined hierarchical relationship" means "the category

14       descriptions have no predefined hierarchical relationship.  A hierarchical

15       relationship is a relationship that pertains to a hierarchy.  A hierarchy is a

16       structure in which components are ranked into levels of subordination; each

17       component has zero, one, or more subordinates; and no component has

18       more than one superordinate component."

19       5.    "search filter" means "a set of one or more category descriptions (depending

20       upon the context of claim 1 or claim 20) and at least one logical operator if

21       there is more than one category description in the search filter that is used to

22       search."

23       6.    "file" means "any collection of data or information stored on a computer

24       system."

25       7.    "such list" means "a category description table."

26       8.    "means for reading and writing data from the data storage system, displaying

27       information, and accepting user input" is not properly before the court for

28

Exhibit__4__ Page__70__

1    construction, the parties having instead re-focused their arguments and

2    sought construction of the phrase "computer system."  "Computer system"

3    means "a computer system, embodied in either a single computer or a

4    distributed environment, having a hard disk drive, a computer display, and a

5    computer mouse, and equivalents thereto."

6    9.    "user" means "one that uses – may be a person or another computer."

7    10.    "creating in the computer system" means "producing in the computer system."

8

9

10

11    **IT IS SO ORDERED.**

12    Dated: June 18, 2008

13                                                  _____
                                                    PHYLLIS J. HAMILTON
14                                                  United States District Judge

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Exhibit___4___Page__71_

# EXHIBIT 5A

TO DECLARATION OF ALAN P. BLOCK IN
SUPPORT OF SPEEDTRACK, INC.'S MOTION FOR
SUMMARY ADJUDICATION OF ISSUES PURSUANT
TO RULE 56(D), FED. R. CIV. PRO THAT:
(1) DEFENDANT WAL-MART.COM USA, LLC
DIRECTLY INFRINGED CLAIM 1 OF U.S. PATENT
NO. 5,544,360 UNDER 35 U.S.C. § 271(A); AND
(2) THE OCTOBER 29, 1991 MACWEEK ARTICLE IS
NOT AN INVALIDATING OFFER FOR SALE UNDER
35 U.S.C. § 102(B)

# REDACTED

## DESIGNATED CONFIDENTIAL BY DEFENDANT AND/OR INTERVENOR PURSUANT TO PROTECTIVE ORDER. FILED UNDER SEAL

# EXHIBIT 5B

TO DECLARATION OF ALAN P. BLOCK IN
SUPPORT OF SPEEDTRACK, INC.'S MOTION FOR
SUMMARY ADJUDICATION OF ISSUES PURSUANT
TO RULE 56(D), FED. R. CIV. PRO THAT:
(1) DEFENDANT WAL-MART.COM USA, LLC
DIRECTLY INFRINGED CLAIM 1 OF U.S. PATENT
NO. 5,544,360 UNDER 35 U.S.C. § 271(A); AND
(2) THE OCTOBER 29, 1991 MACWEEK ARTICLE IS
NOT AN INVALIDATING OFFER FOR SALE UNDER
35 U.S.C. § 102(B)

# REDACTED

**DESIGNATED CONFIDENTIAL BY
DEFENDANT AND/OR INTERVENOR
PURSUANT TO PROTECTIVE ORDER.
FILED UNDER SEAL**

# EXHIBIT 5C

TO DECLARATION OF ALAN P. BLOCK IN
SUPPORT OF SPEEDTRACK, INC.'S MOTION FOR
SUMMARY ADJUDICATION OF ISSUES PURSUANT
TO RULE 56(D), FED. R. CIV. PRO THAT:
(1) DEFENDANT WAL-MART.COM USA, LLC
DIRECTLY INFRINGED CLAIM 1 OF U.S. PATENT
NO. 5,544,360 UNDER 35 U.S.C. § 271(A); AND
(2) THE OCTOBER 29, 1991 MACWEEK ARTICLE IS
NOT AN INVALIDATING OFFER FOR SALE UNDER
35 U.S.C. § 102(B)

# REDACTED

## DESIGNATED CONFIDENTIAL BY
## DEFENDANT AND/OR INTERVENOR
## PURSUANT TO PROTECTIVE ORDER.
## FILED UNDER SEAL

# EXHIBIT 5D

TO DECLARATION OF ALAN P. BLOCK IN
SUPPORT OF SPEEDTRACK, INC.'S MOTION FOR
SUMMARY ADJUDICATION OF ISSUES PURSUANT
TO RULE 56(D), FED. R. CIV. PRO THAT:
(1) DEFENDANT WAL-MART.COM USA, LLC
DIRECTLY INFRINGED CLAIM 1 OF U.S. PATENT
NO. 5,544,360 UNDER 35 U.S.C. § 271(A); AND
(2) THE OCTOBER 29, 1991 MACWEEK ARTICLE IS
NOT AN INVALIDATING OFFER FOR SALE UNDER
35 U.S.C. § 102(B)

# REDACTED

## DESIGNATED CONFIDENTIAL BY
## DEFENDANT AND/OR INTERVENOR
## PURSUANT TO PROTECTIVE ORDER.
## FILED UNDER SEAL

# EXHIBIT 6A

TO DECLARATION OF ALAN P. BLOCK IN
SUPPORT OF SPEEDTRACK, INC.'S MOTION FOR
SUMMARY ADJUDICATION OF ISSUES PURSUANT
TO RULE 56(D), FED. R. CIV. PRO THAT:
(1) DEFENDANT WAL-MART.COM USA, LLC
DIRECTLY INFRINGED CLAIM 1 OF U.S. PATENT
NO. 5,544,360 UNDER 35 U.S.C. § 271(A); AND
(2) THE OCTOBER 29, 1991 MACWEEK ARTICLE IS
NOT AN INVALIDATING OFFER FOR SALE UNDER
35 U.S.C. § 102(B)

# REDACTED

## DESIGNATED CONFIDENTIAL BY
## DEFENDANT AND/OR INTERVENOR
## PURSUANT TO PROTECTIVE ORDER.
## FILED UNDER SEAL

# EXHIBIT 6B

TO DECLARATION OF ALAN P. BLOCK IN
SUPPORT OF SPEEDTRACK, INC.'S MOTION FOR
SUMMARY ADJUDICATION OF ISSUES PURSUANT
TO RULE 56(D), FED. R. CIV. PRO THAT:
(1) DEFENDANT WAL-MART.COM USA, LLC
DIRECTLY INFRINGED CLAIM 1 OF U.S. PATENT
NO. 5,544,360 UNDER 35 U.S.C. § 271(A); AND
(2) THE OCTOBER 29, 1991 MACWEEK ARTICLE IS
NOT AN INVALIDATING OFFER FOR SALE UNDER
35 U.S.C. § 102(B)

# REDACTED

**DESIGNATED CONFIDENTIAL BY
DEFENDANT AND/OR INTERVENOR
PURSUANT TO PROTECTIVE ORDER.
FILED UNDER SEAL**

# EXHIBIT 6C

TO DECLARATION OF ALAN P. BLOCK IN
SUPPORT OF SPEEDTRACK, INC.'S MOTION FOR
SUMMARY ADJUDICATION OF ISSUES PURSUANT
TO RULE 56(D), FED. R. CIV. PRO THAT:
(1) DEFENDANT WAL-MART.COM USA, LLC
DIRECTLY INFRINGED CLAIM 1 OF U.S. PATENT
NO. 5,544,360 UNDER 35 U.S.C. § 271(A); AND
(2) THE OCTOBER 29, 1991 MACWEEK ARTICLE IS
NOT AN INVALIDATING OFFER FOR SALE UNDER
35 U.S.C. § 102(B)

# REDACTED

## DESIGNATED CONFIDENTIAL BY
## DEFENDANT AND/OR INTERVENOR
## PURSUANT TO PROTECTIVE ORDER.
## FILED UNDER SEAL

# EXHIBIT 7A

TO DECLARATION OF ALAN P. BLOCK IN
SUPPORT OF SPEEDTRACK, INC.'S MOTION FOR
SUMMARY ADJUDICATION OF ISSUES PURSUANT
TO RULE 56(D), FED. R. CIV. PRO THAT:
(1) DEFENDANT WAL-MART.COM USA, LLC
DIRECTLY INFRINGED CLAIM 1 OF U.S. PATENT
NO. 5,544,360 UNDER 35 U.S.C. § 271(A); AND
(2) THE OCTOBER 29, 1991 MACWEEK ARTICLE IS
NOT AN INVALIDATING OFFER FOR SALE UNDER
35 U.S.C. § 102(B)

# REDACTED

## DESIGNATED CONFIDENTIAL BY DEFENDANT AND/OR INTERVENOR PURSUANT TO PROTECTIVE ORDER. FILED UNDER SEAL

# EXHIBIT 7B

TO DECLARATION OF ALAN P. BLOCK IN
SUPPORT OF SPEEDTRACK, INC.'S MOTION FOR
SUMMARY ADJUDICATION OF ISSUES PURSUANT
TO RULE 56(D), FED. R. CIV. PRO THAT:
(1) DEFENDANT WAL-MART.COM USA, LLC
DIRECTLY INFRINGED CLAIM 1 OF U.S. PATENT
NO. 5,544,360 UNDER 35 U.S.C. § 271(A); AND
(2) THE OCTOBER 29, 1991 MACWEEK ARTICLE IS
NOT AN INVALIDATING OFFER FOR SALE UNDER
35 U.S.C. § 102(B)

# REDACTED

## DESIGNATED CONFIDENTIAL BY
## DEFENDANT AND/OR INTERVENOR
## PURSUANT TO PROTECTIVE ORDER.
## FILED UNDER SEAL

# EXHIBIT 7C

TO DECLARATION OF ALAN P. BLOCK IN
SUPPORT OF SPEEDTRACK, INC.'S MOTION FOR
SUMMARY ADJUDICATION OF ISSUES PURSUANT
TO RULE 56(D), FED. R. CIV. PRO THAT:
(1) DEFENDANT WAL-MART.COM USA, LLC
DIRECTLY INFRINGED CLAIM 1 OF U.S. PATENT
NO. 5,544,360 UNDER 35 U.S.C. § 271(A); AND
(2) THE OCTOBER 29, 1991 MACWEEK ARTICLE IS
NOT AN INVALIDATING OFFER FOR SALE UNDER
35 U.S.C. § 102(B)

# REDACTED

## DESIGNATED CONFIDENTIAL BY
## DEFENDANT AND/OR INTERVENOR
## PURSUANT TO PROTECTIVE ORDER.
## FILED UNDER SEAL

# EXHIBIT 8A

TO DECLARATION OF ALAN P. BLOCK IN
SUPPORT OF SPEEDTRACK, INC.'S MOTION FOR
SUMMARY ADJUDICATION OF ISSUES PURSUANT
TO RULE 56(D), FED. R. CIV. PRO THAT:
(1) DEFENDANT WAL-MART.COM USA, LLC
DIRECTLY INFRINGED CLAIM 1 OF U.S. PATENT
NO. 5,544,360 UNDER 35 U.S.C. § 271(A); AND
(2) THE OCTOBER 29, 1991 MACWEEK ARTICLE IS
NOT AN INVALIDATING OFFER FOR SALE UNDER
35 U.S.C. § 102(B)

# REDACTED

## DESIGNATED CONFIDENTIAL BY
## DEFENDANT AND/OR INTERVENOR
## PURSUANT TO PROTECTIVE ORDER.
## FILED UNDER SEAL

# EXHIBIT 8B

TO DECLARATION OF ALAN P. BLOCK IN
SUPPORT OF SPEEDTRACK, INC.'S MOTION FOR
SUMMARY ADJUDICATION OF ISSUES PURSUANT
TO RULE 56(D), FED. R. CIV. PRO THAT:
(1) DEFENDANT WAL-MART.COM USA, LLC
DIRECTLY INFRINGED CLAIM 1 OF U.S. PATENT
NO. 5,544,360 UNDER 35 U.S.C. § 271(A); AND
(2) THE OCTOBER 29, 1991 MACWEEK ARTICLE IS
NOT AN INVALIDATING OFFER FOR SALE UNDER
35 U.S.C. § 102(B)

# REDACTED

## DESIGNATED CONFIDENTIAL BY
## DEFENDANT AND/OR INTERVENOR
## PURSUANT TO PROTECTIVE ORDER.
## FILED UNDER SEAL

# EXHIBIT 9A

TO DECLARATION OF ALAN P. BLOCK IN
SUPPORT OF SPEEDTRACK, INC.'S MOTION FOR
SUMMARY ADJUDICATION OF ISSUES PURSUANT
TO RULE 56(D), FED. R. CIV. PRO THAT:
(1) DEFENDANT WAL-MART.COM USA, LLC
DIRECTLY INFRINGED CLAIM 1 OF U.S. PATENT
NO. 5,544,360 UNDER 35 U.S.C. § 271(A); AND
(2) THE OCTOBER 29, 1991 MACWEEK ARTICLE IS
NOT AN INVALIDATING OFFER FOR SALE UNDER
35 U.S.C. § 102(B)

# REDACTED

## DESIGNATED CONFIDENTIAL BY
DEFENDANT AND/OR INTERVENOR
PURSUANT TO PROTECTIVE ORDER.
FILED UNDER SEAL

# EXHIBIT 9B

TO DECLARATION OF ALAN P. BLOCK IN
SUPPORT OF SPEEDTRACK, INC.'S MOTION FOR
SUMMARY ADJUDICATION OF ISSUES PURSUANT
TO RULE 56(D), FED. R. CIV. PRO THAT:
(1) DEFENDANT WAL-MART.COM USA, LLC
DIRECTLY INFRINGED CLAIM 1 OF U.S. PATENT
NO. 5,544,360 UNDER 35 U.S.C. § 271(A); AND
(2) THE OCTOBER 29, 1991 MACWEEK ARTICLE IS
NOT AN INVALIDATING OFFER FOR SALE UNDER
35 U.S.C. § 102(B)

# REDACTED

**DESIGNATED CONFIDENTIAL BY
DEFENDANT AND/OR INTERVENOR
PURSUANT TO PROTECTIVE ORDER.
FILED UNDER SEAL**

# EXHIBIT 9C

TO DECLARATION OF ALAN P. BLOCK IN
SUPPORT OF SPEEDTRACK, INC.'S MOTION FOR
SUMMARY ADJUDICATION OF ISSUES PURSUANT
TO RULE 56(D), FED. R. CIV. PRO THAT:
(1) DEFENDANT WAL-MART.COM USA, LLC
DIRECTLY INFRINGED CLAIM 1 OF U.S. PATENT
NO. 5,544,360 UNDER 35 U.S.C. § 271(A); AND
(2) THE OCTOBER 29, 1991 MACWEEK ARTICLE IS
NOT AN INVALIDATING OFFER FOR SALE UNDER
35 U.S.C. § 102(B)

# REDACTED

## DESIGNATED CONFIDENTIAL BY DEFENDANT AND/OR INTERVENOR PURSUANT TO PROTECTIVE ORDER. FILED UNDER SEAL

# EXHIBIT 9D

TO DECLARATION OF ALAN P. BLOCK IN
SUPPORT OF SPEEDTRACK, INC.'S MOTION FOR
SUMMARY ADJUDICATION OF ISSUES PURSUANT
TO RULE 56(D), FED. R. CIV. PRO THAT:
(1) DEFENDANT WAL-MART.COM USA, LLC
DIRECTLY INFRINGED CLAIM 1 OF U.S. PATENT
NO. 5,544,360 UNDER 35 U.S.C. § 271(A); AND
(2) THE OCTOBER 29, 1991 MACWEEK ARTICLE IS
NOT AN INVALIDATING OFFER FOR SALE UNDER
35 U.S.C. § 102(B)

# REDACTED

## DESIGNATED CONFIDENTIAL BY
## DEFENDANT AND/OR INTERVENOR
## PURSUANT TO PROTECTIVE ORDER.
## FILED UNDER SEAL

# EXHIBIT 10

TO DECLARATION OF ALAN P. BLOCK IN
SUPPORT OF SPEEDTRACK, INC.'S MOTION FOR
SUMMARY ADJUDICATION OF ISSUES PURSUANT
TO RULE 56(D), FED. R. CIV. PRO THAT:
(1) DEFENDANT WAL-MART.COM USA, LLC
DIRECTLY INFRINGED CLAIM 1 OF U.S. PATENT
NO. 5,544,360 UNDER 35 U.S.C. § 271(A); AND
(2) THE OCTOBER 29, 1991 MACWEEK ARTICLE IS
NOT AN INVALIDATING OFFER FOR SALE UNDER
35 U.S.C. § 102(B)

# REDACTED

## DESIGNATED CONFIDENTIAL BY
## DEFENDANT AND/OR INTERVENOR
## PURSUANT TO PROTECTIVE ORDER.
## FILED UNDER SEAL

# EXHIBIT 11

TO DECLARATION OF ALAN P. BLOCK IN
SUPPORT OF SPEEDTRACK, INC.'S MOTION FOR
SUMMARY ADJUDICATION OF ISSUES PURSUANT
TO RULE 56(D), FED. R. CIV. PRO THAT:
(1) DEFENDANT WAL-MART.COM USA, LLC
DIRECTLY INFRINGED CLAIM 1 OF U.S. PATENT
NO. 5,544,360 UNDER 35 U.S.C. § 271(A); AND
(2) THE OCTOBER 29, 1991 MACWEEK ARTICLE IS
NOT AN INVALIDATING OFFER FOR SALE UNDER
35 U.S.C. § 102(B)

# REDACTED

## DESIGNATED CONFIDENTIAL BY DEFENDANT AND/OR INTERVENOR PURSUANT TO PROTECTIVE ORDER. FILED UNDER SEAL

# EXHIBIT 12A

TO DECLARATION OF ALAN P. BLOCK IN
SUPPORT OF SPEEDTRACK, INC.'S MOTION FOR
SUMMARY ADJUDICATION OF ISSUES PURSUANT
TO RULE 56(D), FED. R. CIV. PRO THAT:
(1) DEFENDANT WAL-MART.COM USA, LLC
DIRECTLY INFRINGED CLAIM 1 OF U.S. PATENT
NO. 5,544,360 UNDER 35 U.S.C. § 271(A); AND
(2) THE OCTOBER 29, 1991 MACWEEK ARTICLE IS
NOT AN INVALIDATING OFFER FOR SALE UNDER
35 U.S.C. § 102(B)

# REDACTED

# DESIGNATED CONFIDENTIAL BY
# DEFENDANT AND/OR INTERVENOR
# PURSUANT TO PROTECTIVE ORDER.
# FILED UNDER SEAL

# EXHIBIT 12B

TO DECLARATION OF ALAN P. BLOCK IN
SUPPORT OF SPEEDTRACK, INC.'S MOTION FOR
SUMMARY ADJUDICATION OF ISSUES PURSUANT
TO RULE 56(D), FED. R. CIV. PRO THAT:
(1) DEFENDANT WAL-MART.COM USA, LLC
DIRECTLY INFRINGED CLAIM 1 OF U.S. PATENT
NO. 5,544,360 UNDER 35 U.S.C. § 271(A); AND
(2) THE OCTOBER 29, 1991 MACWEEK ARTICLE IS
NOT AN INVALIDATING OFFER FOR SALE UNDER
35 U.S.C. § 102(B)

# REDACTED

## DESIGNATED CONFIDENTIAL BY
## DEFENDANT AND/OR INTERVENOR
## PURSUANT TO PROTECTIVE ORDER.
## FILED UNDER SEAL

# EXHIBIT 13

TO DECLARATION OF ALAN P. BLOCK IN
SUPPORT OF SPEEDTRACK, INC.'S MOTION FOR
SUMMARY ADJUDICATION OF ISSUES PURSUANT
TO RULE 56(D), FED. R. CIV. PRO THAT:
(1) DEFENDANT WAL-MART.COM USA, LLC
DIRECTLY INFRINGED CLAIM 1 OF U.S. PATENT
NO. 5,544,360 UNDER 35 U.S.C. § 271(A); AND
(2) THE OCTOBER 29, 1991 MACWEEK ARTICLE IS
NOT AN INVALIDATING OFFER FOR SALE UNDER
35 U.S.C. § 102(B)

# REDACTED

## DESIGNATED CONFIDENTIAL BY
## DEFENDANT AND/OR INTERVENOR
## PURSUANT TO PROTECTIVE ORDER.
## FILED UNDER SEAL

# EXHIBIT 14

TO DECLARATION OF ALAN P. BLOCK IN
SUPPORT OF SPEEDTRACK, INC.'S MOTION FOR
SUMMARY ADJUDICATION OF ISSUES PURSUANT
TO RULE 56(D), FED. R. CIV. PRO THAT:
(1) DEFENDANT WAL-MART.COM USA, LLC
DIRECTLY INFRINGED CLAIM 1 OF U.S. PATENT
NO. 5,544,360 UNDER 35 U.S.C. § 271(A); AND
(2) THE OCTOBER 29, 1991 MACWEEK ARTICLE IS
NOT AN INVALIDATING OFFER FOR SALE UNDER
35 U.S.C. § 102(B)

# REDACTED

## DESIGNATED CONFIDENTIAL BY
## DEFENDANT AND/OR INTERVENOR
## PURSUANT TO PROTECTIVE ORDER.
## FILED UNDER SEAL

# EXHIBIT 15

TO DECLARATION OF ALAN P. BLOCK IN
SUPPORT OF SPEEDTRACK, INC.'S MOTION FOR
SUMMARY ADJUDICATION OF ISSUES PURSUANT
TO RULE 56(D), FED. R. CIV. PRO THAT:
(1) DEFENDANT WAL-MART.COM USA, LLC
DIRECTLY INFRINGED CLAIM 1 OF U.S. PATENT
NO. 5,544,360 UNDER 35 U.S.C. § 271(A); AND
(2) THE OCTOBER 29, 1991 MACWEEK ARTICLE IS
NOT AN INVALIDATING OFFER FOR SALE UNDER
35 U.S.C. § 102(B)

# REDACTED

## DESIGNATED CONFIDENTIAL BY DEFENDANT AND/OR INTERVENOR PURSUANT TO PROTECTIVE ORDER. FILED UNDER SEAL

# EXHIBIT 16A

TO DECLARATION OF ALAN P. BLOCK IN
SUPPORT OF SPEEDTRACK, INC.'S MOTION FOR
SUMMARY ADJUDICATION OF ISSUES PURSUANT
TO RULE 56(D), FED. R. CIV. PRO THAT:
(1) DEFENDANT WAL-MART.COM USA, LLC
DIRECTLY INFRINGED CLAIM 1 OF U.S. PATENT
NO. 5,544,360 UNDER 35 U.S.C. § 271(A); AND
(2) THE OCTOBER 29, 1991 MACWEEK ARTICLE IS
NOT AN INVALIDATING OFFER FOR SALE UNDER
35 U.S.C. § 102(B)

# REDACTED

## DESIGNATED CONFIDENTIAL BY
## DEFENDANT AND/OR INTERVENOR
## PURSUANT TO PROTECTIVE ORDER.
## FILED UNDER SEAL

# EXHIBIT 16B

TO DECLARATION OF ALAN P. BLOCK IN SUPPORT OF SPEEDTRACK, INC.'S MOTION FOR SUMMARY ADJUDICATION OF ISSUES PURSUANT TO RULE 56(D), FED. R. CIV. PRO THAT: (1) DEFENDANT WAL-MART.COM USA, LLC DIRECTLY INFRINGED CLAIM 1 OF U.S. PATENT NO. 5,544,360 UNDER 35 U.S.C. § 271(A); AND (2) THE OCTOBER 29, 1991 MACWEEK ARTICLE IS NOT AN INVALIDATING OFFER FOR SALE UNDER 35 U.S.C. § 102(B)

# REDACTED

# DESIGNATED CONFIDENTIAL BY DEFENDANT AND/OR INTERVENOR PURSUANT TO PROTECTIVE ORDER. FILED UNDER SEAL

# EXHIBIT 17

TO DECLARATION OF ALAN P. BLOCK IN
SUPPORT OF SPEEDTRACK, INC.'S MOTION FOR
SUMMARY ADJUDICATION OF ISSUES PURSUANT
TO RULE 56(D), FED. R. CIV. PRO THAT:
(1) DEFENDANT WAL-MART.COM USA, LLC
DIRECTLY INFRINGED CLAIM 1 OF U.S. PATENT
NO. 5,544,360 UNDER 35 U.S.C. § 271(A); AND
(2) THE OCTOBER 29, 1991 MACWEEK ARTICLE IS
NOT AN INVALIDATING OFFER FOR SALE UNDER
35 U.S.C. § 102(B)

# REDACTED

## DESIGNATED CONFIDENTIAL BY
## DEFENDANT AND/OR INTERVENOR
## PURSUANT TO PROTECTIVE ORDER.
## FILED UNDER SEAL

# EXHIBIT 18

TO DECLARATION OF ALAN P. BLOCK IN
SUPPORT OF SPEEDTRACK, INC.'S MOTION FOR
SUMMARY ADJUDICATION OF ISSUES PURSUANT
TO RULE 56(D), FED. R. CIV. PRO THAT:
(1) DEFENDANT WAL-MART.COM USA, LLC
DIRECTLY INFRINGED CLAIM 1 OF U.S. PATENT
NO. 5,544,360 UNDER 35 U.S.C. § 271(A); AND
(2) THE OCTOBER 29, 1991 MACWEEK ARTICLE IS
NOT AN INVALIDATING OFFER FOR SALE UNDER
35 U.S.C. § 102(B)

10/29/91 MacWEEK 6
1991 WLNR 3310332

MacWEEK
COPYRIGHT 1991 Ziff Davis Publishing

October 29, 1991

Volume 5; Issue 37

Paragon caters to PowerBook buyers with slimmed-down **Nisus** Compact. ( **Paragon**
Concepts Inc.'s **Nisus** Compact word processor for Apple's PowerBooks) (product
announcement)
Said, Carolyn

By Carolyn Said

Las Vegas -- Those lightweight Mac PowerBooks will need similarly trim software,
and **Paragon Concepts** Inc. is eager to oblige. The company announced last week **Nisus**
Compact, a new version of its **Nisus** word processor designed especially for the
PowerBooks.

Priced at $150, compared with **Nisus**' $395 price tag, **Nisus** Compact retains most of
the full-fledged version's word processing capabilities but has fewer graphics and
page-layout features, Paragon said.

**Nisus** Compact, due to ship this year, will address the special needs of PowerBook
users in several ways, Paragon said. The program minimizes its access of the hard
disk to conserve battery power. It will run on less than 300 Kbytes of RAM, compared
with the 1 Mbyte recommended for **Nisus**, and weighs in at about 350 Kbytes vs. 800
Kbytes forNisus Compact will incorporate a new way to help keep files organized and
accessible. When users create a file, they can check off several categories to which
it belongs, which will simplify finding the file at a later date.

The program also incorporates a new "fuzzy" text-search feature that will allow
users to find items with only partial details.

**Nisus** Compact files will be cross-compatible with **Nisus** 3.06 files. As in **Nisus**,
the compact version will use a file format that allows any other application to read
the text portion of files.

**Paragon Concepts** Inc. is at 990 Highland Drive, Suite 312, Solana Beach, Calif.
92075. Phone (619) 481-1477; fax (619) 481-6154.

---- INDEX REFERENCES ----

INDUSTRY:  (Semiconductor Applications (1SE81); Electronics (1EL16); Semiconductor
(1SE88); Semiconductors in Broadband & Multimedia (1SE69))

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.


EXHIBIT
13
Matousek 11/3/07

Exhibit 18  Page 193

REGION:  (USA (1US73); Americas (1AM92); North America (1NO39))

Language:  EN

OTHER INDEXING:  (KBYTES; PARAGON CONCEPTS INC; RAM)  (Carolyn; Compact; Nisus;
Nisus Compact; Paragon)  ( (Apple Macintosh) )  (Nisus Compact (Word processing
software); Apple Macintosh PowerBook (Notebook computer) (Product introduction; Com-
puter programs))  (Computers and Office Automation (CMPT))

COMPANY TERMS: PARAGON CONCEPTS INC (Product introduction)

PRODUCT: Prepackaged software

SIC: 7372

Word Count: 298
10/29/91 MACWEEK 6

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Exhibit __18__ Page __194__