**EXHIBIT 1**

COPY

ORIGINAL FILED
2009 SEP 23 A 9 40
RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

1   HENNIGAN, BENNETT & DORMAN LLP
    RODERICK G. DORMAN (SBN 96908)
2   dormanr@hbdlawyers.com
    ALAN P. BLOCK (SBN 143783)
3   blocka@hbdlawyers.com
    MARC MORRIS (SBN 183728)
4   morrism@hbdlawyers.com
    865 South Figueroa Street, Suite 2900
5   Los Angeles, California 90017
    Telephone: (213) 694-1200
6   Fax: (213) 694-1234

                                        E-filing
7   Attorneys for Plaintiff
    SpeedTrack, Inc.
8

9               UNITED STATES DISTRICT COURT

10              NORTHERN DISTRICT OF CALIFORNIA
                                                        EDL
11

12  SpeedTrack, Inc.,                 )  Case No. CV 09 4479
                                      )
13              Plaintiff,            )
                                      )
14      vs.                           )
                                      )
15  Amazon.com, Inc.; Costco Wholesale )  COMPLAINT FOR PATENT
    Corporation; 1-800-Flowers.com, Inc.; )  INFRINGEMENT, PERMANENT
16  Barnesandnoble.com, LLC;          )  INJUNCTION, AND DAMAGES
    Barnesandnoble.com, Inc.; The Home Depot, )
17  Inc.; Nike, Inc.; Northern Tool & Equipment )  DEMAND FOR JURY TRIAL
    Catalog Co., Inc.; J & R Electronics, Inc.; )
18  Dell, Inc.; Best Buy Co.; Best Buy.com, LLC; )
    Systemax, Inc.; OfficeMax, Inc.; Macy's, Inc.; )
19  Macys.com, Inc.; Overstock.com, Inc.; )
    Recreational Equipment, Inc.; Value Vision )
20  International, Inc., dba ShopNBC.com; B &H )
    Foto & Electronics Corp.; Hewlett-Packard )
21  Company; Redcats USA, Inc.; Retail )
    Convergence, Inc., dba Smartbargains.com, )
22                                    )
                                      )
23              Defendants.           )
                                      )

24

25      For its complaint against Defendants Amazon.com, Inc. ("Amazon"); Costco Wholesale

26  Corporation ("Costco"); 1-800-Flowers.com, Inc. ("1-800-Flowers"); Barnesandnoble.com, LLC;

27  Barnesandnoble.com, Inc.; The Home Depot, Inc. ("Home Depot"); Nike, Inc. ("Nike"); Northern

28  Tool & Equipment Catalog Co., Inc. ("Northern Tool"); J & R Electronics, Inc. ("J & R"); Dell, Inc.

                                        -1-

Case No.                                      Complaint for Patent Infringement
750977.2

Exhibit 1   Page 5

1 ("Dell"); Best Buy Co. ("Best Buy"); Best Buy.com, LLC ("Best Buy.com"); Systemax, Inc.

2 ("Systemax"); OfficeMax, Inc. ("OfficeMax"); Macy's, Inc. ("Macy's"); Macys.com, Inc.

3 ("Macys.com"); Overstock.com, Inc. ("Overstock"); Recreational Equipment, Inc. ("REI"); Value

4 Vision International, Inc. dba ShopNBC.com ("ShopNBC.com"); B &H Foto & Electronics Corp.

5 ("B & H Foto"); Hewlett-Packard Company ("HP"); Redcats USA, Inc. ("Redcats"); Retail

6 Convergence, Inc. dba Smartbargains.com ("Smartbargains.com") (hereinafter collectively

7 "Defendants"), Plaintiff SpeedTrack, Inc. ("SpeedTrack") alleges as follows:

## JURISDICTION AND VENUE

8

9     1.     This is a civil action arising in part under laws of the United States relating to patents

10 (35 U.S.C. §§ 271, 281, 283, 284, and 285). This court has federal jurisdiction of such federal

11 question claims pursuant to 28 U.S.C. §§ 1331 and 1338(a).

12     2.     Personal jurisdiction as to each defendant is proper in the State of California and in

13 this judicial district. The acts and transactions complained of herein were intentionally carried out

14 by each Defendant on an interactive website by which each defendant conducts substantial amounts

15 of commerce by selling goods within this State and within this judicial district. Each Defendants'

16 contacts with this State and with this judicial district are therefore substantial, continuous, and

17 systematic and each Defendants' acts and transactions were made effective and had harmful effect

18 within this State and within this district. Additionally, Defendants OfficeMax, Best Buy, Costco,

19 Macy's, Barnes and Noble, Home Depot, Nike, and REI, each have regular and established places of

20 business in this State and in this judicial district.

21     3.     Venue is proper under 28 U.S.C. §§ 1391(b) and 1400(b), in that each Defendant

22 resides in this judicial district pursuant to 28 U.S.C. § 1391(c) and in that each Defendant has

23 committed acts of infringement in this judicial district.

## THE PARTIES

24

25     4.     Plaintiff SpeedTrack, Inc. is a corporation duly organized and existing under the laws

26 of the State of California, with its principal place of business at 19713 Yorba Linda Blvd., #197,

27 Yorba Linda, California 92886. SpeedTrack is the owner by assignment of all rights and interests in

28 U.S. Patent No. 5,544,360 ("the '360 patent").

HENNIGAN, BENNETT & DORMAN LLP
LAWYERS
LOS ANGELES, CALIFORNIA

-2-

1     5.     Defendant Amazon.com, Inc. is a corporation duly organized and existing under the

2   laws of the State of Delaware, with a principal place of business at 1200 12th Avenue South, Suite

3   1200, Seattle, Washington 98144-2734.

4     6.     Defendant Costco Wholesale Corporation is a corporation duly organized and

5   existing under the laws of the State of Washington, with a principal place of business at 999 Lake

6   Drive, Issaquah, WA 98027.

7     7.     Defendant 1-800-Flowers.com, Inc. is a corporation duly organized and existing

8   under the laws of the State of Delaware, with a principal place of business at One Old Country

9   Road, Suite 500, Carle Place, New York 11514.

10     8.     Defendant Barnesandnoble.com, LLC is a corporation duly organized and existing

11   under the laws of the State of Delaware, with a principal place of business at 122 Fifth Avenue, New

12   York, New York 10011.

13     9.     Defendant Barnesandnoble.com, Inc. is a corporation duly organized and existing

14   under the laws of the State of Delaware, with a principal place of business at 122 Fifth Avenue, New

15   York, New York 10011.

16     10.     Defendant The Home Depot, Inc. is a corporation duly organized and existing under

17   the laws of the State of Delaware, with a principal place of business at 2455 Paces Ferry Road N.W.

18   Atlanta GA 30339.

19     11.     Defendant Nike, Inc. is a corporation duly organized and existing under the laws of

20   the State of Oregon, with a principal place of business at One Bowerman Drive, Beaverton, Oregon

21   97005.

22     12.     Defendant Northern Tool & Equipment Catalog Co., Inc. is corporation duly

23   organized and existing under the laws of the State of Minnesota, with a principal place of business at

24   2800 Southcross Drive, Burnsville, Minnesota 55306.

25     13.     Defendant J & R Electronics, Inc. is a corporation duly organized and existing under

26   the laws of the State of New York, with a principal place of business at 23 Park Row, New York,

27   New York 10038.

28     14.     Defendant Dell, Inc. is a corporation duly organized and existing under the laws of

HENNIGAN, BENNETT & DORMAN LLP
LAWYERS
LOS ANGELES, CALIFORNIA

-3-

1  the State of Delaware, with a principal place of business at One Dell Way, Round Rock, Texas

2  78682.

3      15.    Defendant Best Buy Co. is a corporation duly organized and existing under the laws

4  of the State of Minnesota, with a principal place of business at 7601 Penn Avenue South, Richfield,

5  Minnesota 55423.

6      16.    Defendant Best Buy.com, LLC is a corporation duly organized and existing under the

7  laws of the State of Delaware, with a place of business at 100 S 5th Str #1075, Minneapolis,

8  Minnesota 55402.

9      17.    Defendant Systemax, Inc. is a corporation duly organized and existing under the laws

10  of the State of Delaware, with a principal place of business at 11 Harbor Park Drive, Port

11  Washington, New York 11050.

12      18.    Defendant OfficeMax, Inc. is a corporation duly organized and existing under the

13  laws of the State of Delaware, with a principal place of business at 263 Shuman Boulevard,

14  Naperville, Illinois.

15      19.    Defendant Macy's, Inc. is a corporation duly organized and existing under the laws

16  of the State of Delaware, with a principal place of business at 151 West 34th Street, New York, New

17  York 10001.

18      20.    Defendant Macys.com, Inc. is a corporation duly organized and existing under the

19  laws of the State of New York, with a principal place of business at 685 Market Street, San

20  Francisco, CA 94105.

21      21.    Defendant Overstock.com, Inc. is a corporation duly organized and existing under the

22  laws of the State of Delaware, with a principal place of business at 6350 South 3000 East, Salt Lake

23  City, Utah 84121.

24      22.    Defendant Recreational Equipment, Inc. is a corporation duly organized and existing

25  under the laws of the State of Washington, with a principal place of business at 6750 S. 228th Street,

26  Kent, Washington 98032.

27      23.    Defendant Value Vision International, Inc., dba ShopNBC.com, is a corporation duly

28  organized and existing under the laws of the State of Minnesota, with a principal place of business at

HENNIGAN, BENNETT & DORMAN LLP
LAWYERS
LOS ANGELES, CALIFORNIA

-4-

1    6740 Shady Oak Road, Eden Prairie, Minnesota 55344-3433.

2          24.    Defendant B & H Foto & Electronics Corp. is a corporation duly organized and

3    existing under the laws of the State of New York, with a principal place of business at 420 9th

4    Avenue, New York, New York 10001-1603.

5          25.    Defendant Hewlett-Packard Company is a corporation duly organized and existing

6    under the laws of the State of Delaware, with a principal place of business at 3000 Hanover Street,

7    Palo Alto, California 94304.

8          26.    Defendant Redcats USA, Inc. is a corporation duly organized and existing under the

9    laws of the State of Delaware, with a principal place of business at 463 Seventh Ave., New York,

10   New York 10018.

11         27.    Defendant Retail Convergence, Inc., dba Smartbargains.com, is a corporation duly

12   organized and existing under the laws of the State of Delaware, with a principal place of business at

13   10 Milk Street, Boston, Massachusetts 02108.

14                       **SPEEDTRACK'S U.S. PATENT NO. 5,544,360**

15         28.    On August 6, 1996, the United States Patent and Trademark Office duly and legally

16   issued United States Letters Patent No. 5,544,360, entitled "METHOD FOR ACCESSING

17   COMPUTER FILES AND DATA, USING LINKED CATEGORIES ASSIGNED TO EACH

18   DATA FILE RECORD ON ENTRY OF THE DATA FILE RECORD," for inventions comprising

19   systems and methods for accessing information in a data storage system.  Plaintiff SpeedTrack is the

20   owner by assignment of the entire right, title, and interest in and to the '360 patent.  (A true and

21   correct copy of the '360 patent is attached hereto as Exhibit 1).

22                            **FIRST CLAIM FOR RELIEF**

23      **Against Defendant Amazon For Infringement Of U.S. Patent No. 5,544,360**

24         29.    Plaintiff incorporates herein by reference the allegations set forth in paragraphs 1-28

25   of this Complaint as though fully set forth herein.

26         30.    Defendant Amazon has been and still is directly infringing claims 1-7, 11-13, and 20-

27   21 of the '360 patent under 35 U.S.C. § 271(a) by making, using, selling, offering to sell, and/or

28   otherwise providing websites on the Internet, such as under the URL http://www.amazon.com,

HENNIGAN, BENNETT & DORMAN LLP
LAWYERS
LOS ANGELES, CALIFORNIA

Case No.
750977.2                                                        Complaint for Patent Infringement

**Exhibit   1   Page   9**

1 | which permit visitors to the websites to search for products available for sale by selecting pre-

2 | defined categories descriptive of the products.

3 |     31.    Upon information and belief, Defendant Amazon has been and still is indirectly

4 | infringing claims 1-7, 11-13, and 20-21 of the '360 patent under 35 U.S.C. § 271(b) by actively

5 | inducing others, including, but not limited to, visitors to its websites who search for products

6 | available for sale on the websites by selecting pre-defined categories descriptive of the products.

7 |     32.    Upon information and belief, Defendant Amazon has been and still is indirectly

8 | infringing claims 1-7, 11-13, and 20-21 of the '360 patent under 35 U.S.C. § 271(c) by providing, to

9 | visitors to its websites, software for use in practicing the patented process(es) of the '360 patent and

10 | constituting a material part of the invention, knowing the same to be especially made or especially

11 | adapted for use in an infringement of the '360 patent, and not a staple article or commodity of

12 | commerce suitable for substantial non-infringing use.

13 |     33.    On information and belief, Defendant Amazon will continue to infringe claims 1-7,

14 | 11-13, and 20-21 of the '360 Patent unless enjoined by this Court.

15 |     34.    On December 20, 2006, Plaintiff sent written notice of the '360 patent and notice of

16 | Plaintiff's infringement allegation to Defendant Amazon.

17 |     35.    Upon information and belief, Defendant Amazon's foregoing acts of infringement

18 | were and continue to be willful.

19 |     36.    As a result of Defendant Amazon's infringement, Plaintiff SpeedTrack has suffered

20 | monetary damages in an amount not yet determined, and will continue to suffer damages in the

21 | future unless Defendant Amazon's infringing activities are enjoined by this Court.

22 |     37.    Unless a preliminary and permanent injunction are issued enjoining Defendant

23 | Amazon and its agents, servants, employees, attorneys, representatives, and all others acting on its

24 | behalf from infringing the '360 patent, Plaintiff will be greatly and irreparably harmed.

25 | **SECOND CLAIM FOR RELIEF**

26 | **Against Defendant Costco For Infringement Of U.S. Patent No. 5,544,360**

27 |     38.    Plaintiff incorporates herein by reference the allegations set forth in paragraphs 1-28

28 | of this Complaint as though fully set forth herein.

-6-

HENNIGAN, BENNETT & DORMAN LLP
LAWYERS
LOS ANGELES, CALIFORNIA

39.     Defendant Costco has been and still is directly infringing claims 1-7, 11-13, and 20-21 of the '360 patent under 35 U.S.C. § 271(a) by making, using, selling, offering to sell, and/or otherwise providing websites on the Internet, such as under the URL http://www.costco.com, which permit visitors to the websites to search for products available for sale by selecting pre-defined categories descriptive of the products.

40.     Upon information and belief, Defendant Costco has been and still is indirectly infringing claims 1-7, 11-13, and 20-21 of the '360 patent under 35 U.S.C. § 271(b) by actively inducing others, including, but not limited to, visitors to its websites who search for products available for sale on the websites by selecting pre-defined categories descriptive of the products.

41.     Upon information and belief, Defendant Costco has been and still is indirectly infringing claims 1-7, 11-13, and 20-21 of the '360 patent under 35 U.S.C. § 271(c) by providing, to visitors to its websites, software for use in practicing the patented process(es) of the '360 patent and constituting a material part of the invention, knowing the same to be especially made or especially adapted for use in an infringement of the '360 patent, and not a staple article or commodity of commerce suitable for substantial non-infringing use.

42.     On information and belief, Defendant Costco will continue to infringe claims 1-7, 11-13, and 20-21 of the '360 Patent unless enjoined by this Court.

43.     On December 20, 2006, Plaintiff sent written notice of the '360 patent and notice of Plaintiff's infringement allegation to Defendant Costco.

44.     Upon information and belief, Defendant Costco's foregoing acts of infringement were and continue to be willful.

45.     As a result of Defendant Costco's infringement, Plaintiff SpeedTrack has suffered monetary damages in an amount not yet determined, and will continue to suffer damages in the future unless Defendant Costco's infringing activities are enjoined by this Court.

46.     Unless a preliminary and permanent injunction are issued enjoining Defendant Costco and its agents, servants, employees, attorneys, representatives, and all others acting on its behalf from infringing the '360 patent, Plaintiff will be greatly and irreparably harmed.

///

-7-

**THIRD CLAIM FOR RELIEF**

**Against Defendant 1-800-Flowers For Infringement Of U.S. Patent No. 5,544,360**

47. Plaintiff incorporates herein by reference the allegations set forth in paragraphs 1-28 of this Complaint as though fully set forth herein.

48. Defendant 1-800-Flowers has been and still is directly infringing claims 1-7, 11-14, and 20-21 of the '360 patent under 35 U.S.C. § 271(a) by making, using, selling, offering to sell, and/or otherwise providing websites on the Internet, such as under the URL http://www.1800flowers.com and http://thepopcornfactory.com, which permit visitors to the websites to search for products available for sale by selecting pre-defined categories descriptive of the products.

49. Upon information and belief, Defendant 1-800-Flowers has been and still is indirectly infringing claims 1-7, 11-14, and 20-21 of the '360 patent under 35 U.S.C. § 271(b) by actively inducing others, including, but not limited to, visitors to its websites who search for products available for sale on the websites by selecting pre-defined categories descriptive of the products.

50. Upon information and belief, Defendant 1-800-Flowers has been and still is indirectly infringing claims 1-7, 11-14, and 20-21 of the '360 patent under 35 U.S.C. § 271(c) by providing, to visitors to its websites, software for use in practicing the patented process(es) of the '360 patent and constituting a material part of the invention, knowing the same to be especially made or especially adapted for use in an infringement of the '360 patent, and not a staple article or commodity of commerce suitable for substantial non-infringing use.

51. On information and belief, Defendant 1-800-Flowers will continue to infringe claims 1-7, 11-14, and 20-21 of the '360 Patent unless enjoined by this Court.

52. On December 20, 2006, Plaintiff sent written notice of the '360 patent and notice of Plaintiff's infringement allegation to Defendant 1-800-Flowers.

53. Upon information and belief, Defendant 1-800-Flowers's foregoing acts of infringement were and continue to be willful.

54. As a result of Defendant 1-800-Flowers's infringement, Plaintiff SpeedTrack has

-8-

HENNIGAN, BENNETT & DORMAN LLP
LAWYERS
LOS ANGELES, CALIFORNIA

1   suffered monetary damages in an amount not yet determined, and will continue to suffer damages in

2   the future unless Defendant 1-800-Flowers's infringing activities are enjoined by this Court.

3      55.   Unless a preliminary and permanent injunction are issued enjoining Defendant 1-800-

4   Flowers and its agents, servants, employees, attorneys, representatives, and all others acting on its

5   behalf from infringing the '360 patent, Plaintiff will be greatly and irreparably harmed.

6   ## FOURTH CLAIM FOR RELIEF

7   ### Against Defendants Barnesandnoble.com, LLC and Barnesandnoble.com, Inc.
    ### For Infringement Of U.S. Patent No. 5,544,360

8

9      56.   Plaintiff incorporates herein by reference the allegations set forth in paragraphs 1-28

10  of this Complaint as though fully set forth herein.

11     57.   Defendants Barnesandnoble.com, LLC and Barnesandnoble.com, Inc. have been and

12  still are directly infringing claims 1-7, 11-13, and 20-21 of the '360 patent under 35 U.S.C. § 271(a)

13  by making, using, selling, offering to sell, and/or otherwise providing websites on the Internet, such

14  as under the URL http://www.bn.com, which permit visitors to the websites to search for products

15  available for sale by selecting pre-defined categories descriptive of the products.

16     58.   Upon information and belief, Defendants Barnesandnoble.com, LLC and

17  Barnesandnoble.com, Inc. have been and still are indirectly infringing claims 1-7, 11-13, and 20-21

18  of the '360 patent under 35 U.S.C. § 271(b) by actively inducing others, including, but not limited

19  to, visitors to its websites who search for products available for sale on the websites by selecting

20  pre-defined categories descriptive of the products.

21     59.   Upon information and belief, Defendants Barnesandnoble.com, LLC and

22  Barnesandnoble.com, Inc. have been and still are indirectly infringing claims 1-7, 11-13, and 20-21

23  of the '360 patent under 35 U.S.C. § 271(c) by providing, to visitors to their websites, software for

24  use in practicing the patented process(es) of the '360 patent and constituting a material part of the

25  invention, knowing the same to be especially made or especially adapted for use in an infringement

26  of the '360 patent, and not a staple article or commodity of commerce suitable for substantial non-

27  infringing use.

28     60.   On information and belief, Defendants Barnesandnoble.com, LLC and

HENNIGAN, BENNETT & DORMAN LLP
LAWYERS
LOS ANGELES, CALIFORNIA

-9-

1    Barnesandnoble.com, Inc. will continue to infringe claims 1-7, 11-13, and 20-21 of the '360 Patent

2    unless enjoined by this Court.

3         61.    On December 20, 2006, Plaintiff sent written notice of the '360 patent and notice of

4    Plaintiff's infringement allegation to Defendant Barnesandnoble.com, Inc.

5         62.    Upon information and belief, Defendants Barnesandnoble.com, LLC's and

6    Barnesandnoble.com, Inc.'s foregoing acts of infringement were and continue to be willful.

7         63.    As a result of Defendants Barnesandnoble.com, LLC's and Barnesandnoble.com,

8    Inc.'s infringement, Plaintiff SpeedTrack has suffered monetary damages in an amount not yet

9    determined, and will continue to suffer damages in the future unless Defendants

10   Barnesandnoble.com, LLC's and Barnesandnoble.com, Inc.'s infringing activities are enjoined by

11   this Court.

12        64.    Unless a preliminary and permanent injunction are issued enjoining Defendants

13   Barnesandnoble.com, LLC and Barnesandnoble.com, Inc. and their agents, servants, employees,

14   attorneys, representatives, and all others acting on its behalf from infringing the '360 patent,

15   Plaintiff will be greatly and irreparably harmed.

### FIFTH CLAIM FOR RELIEF

**Against Defendant Home Depot For Infringement Of U.S. Patent No. 5,544,360**

18        65.    Plaintiff incorporates herein by reference the allegations set forth in paragraphs 1-28

19   of this Complaint as though fully set forth herein.

20        66.    Defendant Home Depot has been and still is directly infringing claims 1-7, 11-13,

21   and 20-21 of the '360 patent under 35 U.S.C. § 271(a) by making, using, selling, offering to sell,

22   and/or otherwise providing websites on the Internet, such as under the URL

23   http://www.homedepot.com, which permit visitors to the websites to search for products available

24   for sale by selecting pre-defined categories descriptive of the products.

25        67.    Upon information and belief, Defendant Home Depot has been and still is indirectly

26   infringing claims 1-7, 11-13, and 20-21 of the '360 patent under 35 U.S.C. § 271(b) by actively

27   inducing others, including, but not limited to, visitors to its websites who search for products

28   available for sale on the websites by selecting pre-defined categories descriptive of the products.

-10-

Case No.
750977.2

Complaint for Patent Infringement

HENNIGAN, BENNETT & DORMAN LLP
LAWYERS
LOS ANGELES, CALIFORNIA

Exhibit 1   Page 14

1    68.    Upon information and belief, Defendant Home Depot has been and still is indirectly

2    infringing claims 1-7, 11-13, and 20-21 of the '360 patent under 35 U.S.C. § 271(c) by providing, to

3    visitors to its websites, software for use in practicing the patented process(es) of the '360 patent and

4    constituting a material part of the invention, knowing the same to be especially made or especially

5    adapted for use in an infringement of the '360 patent, and not a staple article or commodity of

6    commerce suitable for substantial non-infringing use.

7    69.    On information and belief, Defendant Home Depot will continue to infringe claims 1-

8    7, 11-13, and 20-21 of the '360 Patent unless enjoined by this Court.

9    70.    On December 20, 2006, Plaintiff sent written notice of the '360 patent and notice of

10    Plaintiff's infringement allegation to Defendant Home Depot.

11    71.    Upon information and belief, Defendant Home Depot's foregoing acts of

12    infringement were and continue to be willful.

13    72.    As a result of Defendant Home Depot's infringement, Plaintiff SpeedTrack has

14    suffered monetary damages in an amount not yet determined, and will continue to suffer damages in

15    the future unless Defendant Home Depot's infringing activities are enjoined by this Court.

16    73.    Unless a preliminary and permanent injunction are issued enjoining Defendant Home

17    Depot and its agents, servants, employees, attorneys, representatives, and all others acting on its

18    behalf from infringing the '360 patent, Plaintiff will be greatly and irreparably harmed.

19    **SIXTH CLAIM FOR RELIEF**

20    **Against Defendant Nike For Infringement Of U.S. Patent No. 5,544,360**

21    74.    Plaintiff incorporates herein by reference the allegations set forth in paragraphs 1-28

22    of this Complaint as though fully set forth herein.

23    75.    Defendant Nike has been and still is directly infringing claims 1-7, 11-14, and 20-21

24    of the '360 patent under 35 U.S.C. § 271(a) by making, using, selling, offering to sell, and/or

25    otherwise providing websites on the Internet, such as under the URL http://www.nike.com and

26    http://www.nikestore.com, which permit visitors to the websites to search for products available for

27    sale by selecting pre-defined categories descriptive of the products.

28    76.    Upon information and belief, Defendant Nike has been and still is indirectly

-11-

HENNIGAN, BENNETT & DORMAN LLP
LAWYERS
LOS ANGELES, CALIFORNIA

1  infringing claims 1-7, 11-14, and 20-21 of the '360 patent under 35 U.S.C. § 271(b) by actively

2  inducing others, including, but not limited to, visitors to its websites who search for products

3  available for sale on the websites by selecting pre-defined categories descriptive of the products.

77.    Upon information and belief, Defendant Nike has been and still is indirectly

5  infringing claims 1-7, 11-14, and 20-21 of the '360 patent under 35 U.S.C. § 271(c) by providing, to

6  visitors to its websites, software for use in practicing the patented process(es) of the '360 patent and

7  constituting a material part of the invention, knowing the same to be especially made or especially

8  adapted for use in an infringement of the '360 patent, and not a staple article or commodity of

9  commerce suitable for substantial non-infringing use.

78.    On information and belief, Defendant Nike will continue to infringe claims 1-7, 11-

11  14, and 20-21 of the '360 Patent unless enjoined by this Court.

79.    On December 20, 2006, Plaintiff sent written notice of the '360 patent and notice of

13  Plaintiff's infringement allegation to Defendant Nike.

80.    Upon information and belief, Defendant Nike's foregoing acts of infringement were

15  and continue to be willful.

81.    As a result of Defendant Nike's infringement, Plaintiff SpeedTrack has suffered

17  monetary damages in an amount not yet determined, and will continue to suffer damages in the

18  future unless Defendant Nike's infringing activities are enjoined by this Court.

82.    Unless a preliminary and permanent injunction are issued enjoining Defendant Nike

20  and its agents, servants, employees, attorneys, representatives, and all others acting on its behalf

21  from infringing the '360 patent, Plaintiff will be greatly and irreparably harmed.

## SEVENTH CLAIM FOR RELIEF

### Against Defendant Northern Tool For Infringement Of U.S. Patent No. 5,544,360

83.    Plaintiff incorporates herein by reference the allegations set forth in paragraphs 1-28

25  of this Complaint as though fully set forth herein.

84.    Defendant Northern Tool has been and still is directly infringing claims 1-7, 11-13,

27  and 20-21 of the '360 patent under 35 U.S.C. § 271(a) by making, using, selling, offering to sell,

28  and/or otherwise providing websites on the Internet, such as under the URL

-12-

HENNIGAN, BENNETT & DORMAN LLP
LAWYERS
LOS ANGELES, CALIFORNIA

1   http://www.northerntool.com, which permit visitors to the websites to search for products available

2   for sale by selecting pre-defined categories descriptive of the products.

3       85.    Upon information and belief, Defendant Northern Tool has been and still is indirectly

4   infringing claims 1-7, 11-13, and 20-21 of the '360 patent under 35 U.S.C. § 271(b) by actively

5   inducing others, including, but not limited to, visitors to its websites who search for products

6   available for sale on the websites by selecting pre-defined categories descriptive of the products.

7       86.    Upon information and belief, Defendant Northern Tool has been and still is indirectly

8   infringing claims 1-7, 11-13, and 20-21 of the '360 patent under 35 U.S.C. § 271(c) by providing, to

9   visitors to its websites, software for use in practicing the patented process(es) of the '360 patent and

10  constituting a material part of the invention, knowing the same to be especially made or especially

11  adapted for use in an infringement of the '360 patent, and not a staple article or commodity of

12  commerce suitable for substantial non-infringing use.

13      87.    On information and belief, Defendant Northern Tool will continue to infringe claims

14  1-7, 11-13, and 20-21 of the '360 Patent unless enjoined by this Court.

15      88.    On December 20, 2006, Plaintiff sent written notice of the '360 patent and notice of

16  Plaintiff's infringement allegation to Defendant Northern Tool.

17      89.    Upon information and belief, Defendant Northern Tool's foregoing acts of

18  infringement were and continue to be willful.

19      90.    As a result of Defendant Northern Tool's infringement, Plaintiff SpeedTrack has

20  suffered monetary damages in an amount not yet determined, and will continue to suffer damages in

21  the future unless Defendant Northern Tool's infringing activities are enjoined by this Court.

22      91.    Unless a preliminary and permanent injunction are issued enjoining Defendant

23  Northern Tool and its agents, servants, employees, attorneys, representatives, and all others acting

24  on its behalf from infringing the '360 patent, Plaintiff will be greatly and irreparably harmed.

25      **EIGHTH CLAIM FOR RELIEF**

26      **Against Defendant J & R For Infringement Of U.S. Patent No. 5,544,360**

27      92.    Plaintiff incorporates herein by reference the allegations set forth in paragraphs 1-28

28  of this Complaint as though fully set forth herein.

-13-

HENNIGAN, BENNETT & DORMAN LLP
LAWYERS
LOS ANGELES, CALIFORNIA

1    93.    Defendant J & R has been and still is directly infringing claims 1-7, 11-13, and 20-21

2    of the '360 patent under 35 U.S.C. § 271(a) by making, using, selling, offering to sell, and/or

3    otherwise providing websites on the Internet, such as under the URL http://www.jr.com, which

4    permit visitors to the websites to search for products available for sale by selecting pre-defined

5    categories descriptive of the products.

6    94.    Upon information and belief, Defendant J & R has been and still is indirectly

7    infringing claims 1-7, 11-13, and 20-21 of the '360 patent under 35 U.S.C. § 271(b) by actively

8    inducing others, including, but not limited to, visitors to its websites who search for products

9    available for sale on the websites by selecting pre-defined categories descriptive of the products.

10    95.    Upon information and belief, Defendant J & R has been and still is indirectly

11    infringing claims 1-7, 11-13, and 20-21 of the '360 patent under 35 U.S.C. § 271(c) by providing, to

12    visitors to its websites, software for use in practicing the patented process(es) of the '360 patent and

13    constituting a material part of the invention, knowing the same to be especially made or especially

14    adapted for use in an infringement of the '360 patent, and not a staple article or commodity of

15    commerce suitable for substantial non-infringing use.

16    96.    On information and belief, Defendant J & R will continue to infringe claims 1-7, 11-

17    13, and 20-21 of the '360 Patent unless enjoined by this Court.

18    97.    On December 20, 2006, Plaintiff sent written notice of the '360 patent and notice of

19    Plaintiff's infringement allegation to Defendant J & R.

20    98.    Upon information and belief, Defendant J & R's foregoing acts of infringement were

21    and continue to be willful.

22    99.    As a result of Defendant J & R's infringement, Plaintiff SpeedTrack has suffered

23    monetary damages in an amount not yet determined, and will continue to suffer damages in the

24    future unless Defendant J & R's infringing activities are enjoined by this Court.

25    100.   Unless a preliminary and permanent injunction are issued enjoining Defendant J & R

26    and its agents, servants, employees, attorneys, representatives, and all others acting on its behalf

27    from infringing the '360 patent, Plaintiff will be greatly and irreparably harmed.

28    ///

HENNIGAN, BENNETT & DORMAN LLP
LAWYERS
LOS ANGELES, CALIFORNIA

-14-

1

## NINTH CLAIM FOR RELIEF

2

### Against Defendant Dell For Infringement Of U.S. Patent No. 5,544,360

3      101.   Plaintiff incorporates herein by reference the allegations set forth in paragraphs 1-28

4  of this Complaint as though fully set forth herein.

5      102.   Defendant Dell has been and still is directly infringing claims 1-7, 11-13, and 20-21

6  of the '360 patent under 35 U.S.C. § 271(a) by making, using, selling, offering to sell, and/or

7  otherwise providing websites on the Internet, such as under the URL http://www.dell.com, which

8  permit visitors to the websites to search for products available for sale by selecting pre-defined

9  categories descriptive of the products.

10      103.   Upon information and belief, Defendant Dell has been and still is indirectly

11  infringing claims 1-7, 11-13, and 20-21 of the '360 patent under 35 U.S.C. § 271(b) by actively

12  inducing others, including, but not limited to, visitors to its websites who search for products

13  available for sale on the websites by selecting pre-defined categories descriptive of the products.

14      104.   Upon information and belief, Defendant Dell has been and still is indirectly

15  infringing claims 1-7, 11-13, and 20-21 of the '360 patent under 35 U.S.C. § 271(c) by providing, to

16  visitors to its websites, software for use in practicing the patented process(es) of the '360 patent and

17  constituting a material part of the invention, knowing the same to be especially made or especially

18  adapted for use in an infringement of the '360 patent, and not a staple article or commodity of

19  commerce suitable for substantial non-infringing use.

20      105.   On information and belief, Defendant Dell will continue to infringe claims 1-7, 11-

21  13, and 20-21 of the '360 Patent unless enjoined by this Court.

22      106.   On December 20, 2006, Plaintiff sent written notice of the '360 patent and notice of

23  Plaintiff's infringement allegation to Defendant Dell.

24      107.   Upon information and belief, Defendant Dell's foregoing acts of infringement were

25  and continue to be willful.

26      108.   As a result of Defendant Dell's infringement, Plaintiff SpeedTrack has suffered

27  monetary damages in an amount not yet determined, and will continue to suffer damages in the

28  future unless Defendant Dell's infringing activities are enjoined by this Court.

-15-

HENNIGAN, BENNETT & DORMAN LLP
LAWYERS
LOS ANGELES, CALIFORNIA

1    109.   Unless a preliminary and permanent injunction are issued enjoining Defendant Dell

2    and its agents, servants, employees, attorneys, representatives, and all others acting on its behalf

3    from infringing the '360 patent, Plaintiff will be greatly and irreparably harmed.

### TENTH CLAIM FOR RELIEF

**Against Defendants Best Buy and Best Buy.com**
**For Infringement Of U.S. Patent No. 5,544,360**

110.   Plaintiff incorporates herein by reference the allegations set forth in paragraphs 1-28
of this Complaint as though fully set forth herein.

111.   Defendants Best Buy and Best Buy.com have been and still are directly infringing
claims 1-7, 11-13, and 20-21 of the '360 patent under 35 U.S.C. § 271(a) by making, using, selling,
offering to sell, and/or otherwise providing websites on the Internet, such as under the URLs
http://www.bestbuy.com and http://www.espanol.bestbuy.com, , which permit visitors to the
websites to search for products available for sale by selecting pre-defined categories descriptive of
the products.

112.   Upon information and belief, Defendants Best Buy and Best Buy.com have been and
still are indirectly infringing claims 1-7, 11-13, and 20-21 of the '360 patent under 35 U.S.C. §
271(b) by actively inducing others, including, but not limited to, visitors to their websites who
search for products available for sale on the websites by selecting pre-defined categories descriptive
of the products.

113.   Upon information and belief, Defendants Best Buy and Best Buy.com have been and
still are indirectly infringing claims 1-7, 11-13, and 20-21 of the '360 patent under 35 U.S.C. §
271(c) by providing, to visitors to their websites, software for use in practicing the patented
process(es) of the '360 patent and constituting a material part of the invention, knowing the same to
be especially made or especially adapted for use in an infringement of the '360 patent, and not a
staple article or commodity of commerce suitable for substantial non-infringing use.

114.   On information and belief, Defendant Best Buy and Best Buy.com will continue to
infringe claims 1-7, 11-13, and 20-21 of the '360 Patent unless enjoined by this Court.

115.   On December 20, 2006, Plaintiff sent written notice of the '360 patent and notice of

-16-

HENNIGAN, BENNETT & DORMAN LLP
LAWYERS
LOS ANGELES, CALIFORNIA

1 │ Plaintiff's infringement allegation to Defendant Best Buy.

2 │     116.    Upon information and belief, Defendant Best Buy and Best Buy.com's foregoing acts

3 │ of infringement were and continue to be willful.

4 │     117.    As a result of Defendants Best Buy's and Best Buy.com's infringement, Plaintiff

5 │ SpeedTrack has suffered monetary damages in an amount not yet determined, and will continue to

6 │ suffer damages in the future unless Defendants Best Buy's and Best Buy.com's infringing activities

7 │ are enjoined by this Court.

8 │     118.    Unless a preliminary and permanent injunction are issued enjoining Defendant Best

9 │ Buy and Best Buy.com and its agents, servants, employees, attorneys, representatives, and all others

10 │ acting on their behalf from infringing the '360 patent, Plaintiff will be greatly and irreparably

11 │ harmed.

**ELEVENTH CLAIM FOR RELIEF**

**Against Defendant Systemax For Infringement Of U.S. Patent No. 5,544,360**

14 │     119.    Plaintiff incorporates herein by reference the allegations set forth in paragraphs 1-28

15 │ of this Complaint as though fully set forth herein.

16 │     120.    Defendant Systemax has been and still is directly infringing claims 1-7, 11-13, and

17 │ 20-21 of the '360 patent under 35 U.S.C. § 271(a) by making, using, selling, offering to sell, and/or

18 │ otherwise providing websites on the Internet, such as under the URLs http://www.tigerdirect.com,

19 │ http://www.globalcomputer.com, http://www.compusa.com, and http://www.circuitcity.com, which

20 │ permit visitors to the websites to search for products available for sale by selecting pre-defined

21 │ categories descriptive of the products.

22 │     121.    Upon information and belief, Defendant Systemax has been and still is indirectly

23 │ infringing claims 1-7, 11-13, and 20-21 of the '360 patent under 35 U.S.C. § 271(b) by actively

24 │ inducing others, including, but not limited to, visitors to its websites who search for products

25 │ available for sale on the websites by selecting pre-defined categories descriptive of the products.

26 │     122.    Upon information and belief, Defendant Systemax has been and still is indirectly

27 │ infringing claims 1-7, 11-13, and 20-21 of the '360 patent under 35 U.S.C. § 271(c) by providing, to

28 │ visitors to its websites, software for use in practicing the patented process(es) of the '360 patent and

-17-

HENNIGAN, BENNETT & DORMAN LLP
LAWYERS
LOS ANGELES, CALIFORNIA

1  constituting a material part of the invention, knowing the same to be especially made or especially

2  adapted for use in an infringement of the '360 patent, and not a staple article or commodity of

3  commerce suitable for substantial non-infringing use.

4      123.    On information and belief, Defendant Systemax will continue to infringe claims 1-7,

5  11-13, and 20-21 of the '360 Patent unless enjoined by this Court.

6      124.    On December 20, 2006, Plaintiff sent written notice of the '360 patent and notice of

7  Plaintiff's infringement allegation to Defendant Systemax.

8      125.    Upon information and belief, Defendant Systemax's foregoing acts of infringement

9  were and continue to be willful.

10      126.    As a result of Defendant Systemax's infringement, Plaintiff SpeedTrack has suffered

11  monetary damages in an amount not yet determined, and will continue to suffer damages in the

12  future unless Defendant Systemax's infringing activities are enjoined by this Court.

13      127.    Unless a preliminary and permanent injunction are issued enjoining Defendant

14  Systemax and its agents, servants, employees, attorneys, representatives, and all others acting on its

15  behalf from infringing the '360 patent, Plaintiff will be greatly and irreparably harmed.

16  **TWELFTH CLAIM FOR RELIEF**

17  **Against Defendant OfficeMax For Infringement Of U.S. Patent No. 5,544,360**

18      128.    Plaintiff incorporates herein by reference the allegations set forth in paragraphs 1-28

19  of this Complaint as though fully set forth herein.

20      129.    Defendant OfficeMax has been and still is directly infringing claims 1-7, 11-14, and

21  20-21 of the '360 patent under 35 U.S.C. § 271(a) by making, using, selling, offering to sell, and/or

22  otherwise providing websites on the Internet, such as under the URL http://www.officemax.com,

23  which permit visitors to the websites to search for products available for sale by selecting pre-

24  defined categories descriptive of the products.

25      130.    Upon information and belief, Defendant OfficeMax has been and still is indirectly

26  infringing claims 1-7, 11-14, and 20-21 of the '360 patent under 35 U.S.C. § 271(b) by actively

27  inducing others, including, but not limited to, visitors to its websites who search for products

28  available for sale on the websites by selecting pre-defined categories descriptive of the products.

-18-

Case No.
750977.2

Complaint for Patent Infringement

Exhibit __1__ Page __22__

HENNIGAN, BENNETT & DORMAN LLP
LAWYERS
LOS ANGELES, CALIFORNIA

131.   Upon information and belief, Defendant OfficeMax has been and still is indirectly infringing claims 1-7, 11-14, and 20-21 of the '360 patent under 35 U.S.C. § 271(c) by providing, to visitors to its websites, software for use in practicing the patented process(es) of the '360 patent and constituting a material part of the invention, knowing the same to be especially made or especially adapted for use in an infringement of the '360 patent, and not a staple article or commodity of commerce suitable for substantial non-infringing use.

132.   On information and belief, Defendant OfficeMax will continue to infringe claims 1-7, 11-14, and 20-21 of the '360 Patent unless enjoined by this Court.

133.   On December 20, 2006, Plaintiff sent written notice of the '360 patent and notice of Plaintiff's infringement allegation to Defendant OfficeMax.

134.   Upon information and belief, Defendant OfficeMax's foregoing acts of infringement were and continue to be willful.

135.   As a result of Defendant OfficeMax's infringement, Plaintiff SpeedTrack has suffered monetary damages in an amount not yet determined, and will continue to suffer damages in the future unless Defendant OfficeMax's infringing activities are enjoined by this Court.

136.   Unless a preliminary and permanent injunction are issued enjoining Defendant OfficeMax and its agents, servants, employees, attorneys, representatives, and all others acting on its behalf from infringing the '360 patent, Plaintiff will be greatly and irreparably harmed.

## THIRTEENTH CLAIM FOR RELIEF

**Against Defendants Macy's and Macys.com For Infringement Of U.S. Patent No. 5,544,360**

137.   Plaintiff incorporates herein by reference the allegations set forth in paragraphs 1-28 of this Complaint as though fully set forth herein.

138.   Defendants Macy's and Macys.com have been and still are directly infringing claims 1-7, 11-13, and 20-21 of the '360 patent under 35 U.S.C. § 271(a) by making, using, selling, offering to sell, and/or otherwise providing websites on the Internet, such as under the URLs http://www.macys.com, http://www.bloomingdales.com, http://www.macysweddingchannel.com, and http://.www.bloomingdalesweddingchannel.com, which permit visitors to the websites to search for products available for sale by selecting pre-defined categories descriptive of the products.

-19-

HENNIGAN, BENNETT & DORMAN LLP
LAWYERS
LOS ANGELES, CALIFORNIA

1   139. Upon information and belief, Defendant Macy's and Macys.com have been and still

2 are indirectly infringing claims 1-7, 11-13, and 20-21 of the '360 patent under 35 U.S.C. § 271(b) by

3 actively inducing others, including, but not limited to, visitors to their websites who search for

4 products available for sale on the websites by selecting pre-defined categories descriptive of the

5 products.

6   140. Upon information and belief, Defendant Macy's and Macys.com has been and still

7 are indirectly infringing claims 1-7, 11-13, and 20-21 of the '360 patent under 35 U.S.C. § 271(c) by

8 providing, to visitors to their websites, software for use in practicing the patented process(es) of the

9 '360 patent and constituting a material part of the invention, knowing the same to be especially

10 made or especially adapted for use in an infringement of the '360 patent, and not a staple article or

11 commodity of commerce suitable for substantial non-infringing use.

12   141. On information and belief, Defendant Macy's and Macys.com will continue to

13 infringe claims 1-7, 11-13, and 20-21 of the '360 Patent unless enjoined by this Court.

14   142. On July 23, 2008, Plaintiff sent written notice of the '360 patent and notice of

15 Plaintiff's infringement allegation to Defendant Macy's.

16   143. Upon information and belief, Defendant Macy's and Macys.com's foregoing acts of

17 infringement were and continue to be willful.

18   144. As a result of Defendant Macy's and Macys.com's infringement, Plaintiff

19 SpeedTrack has suffered monetary damages in an amount not yet determined, and will continue to

20 suffer damages in the future unless Defendant Macy's and Macys.com's infringing activities are

21 enjoined by this Court.

22   145. Unless a preliminary and permanent injunction are issued enjoining Defendant

23 Macy's and Macys.com and its agents, servants, employees, attorneys, representatives, and all others

24 acting on its behalf from infringing the '360 patent, Plaintiff will be greatly and irreparably harmed.

25        **FOURTEENTH CLAIM FOR RELIEF**

26    **Against Defendant Overstock For Infringement Of U.S. Patent No. 5,544,360**

27   146. Plaintiff incorporates herein by reference the allegations set forth in paragraphs 1-28

28 of this Complaint as though fully set forth herein.

HENNIGAN, BENNETT & DORMAN LLP
LAWYERS
LOS ANGELES, CALIFORNIA

-20-

HENNIGAN, BENNETT & DORMAN LLP
LAWYERS
LOS ANGELES, CALIFORNIA

1   147. Defendant Overstock has been and still is directly infringing claims 1-7, 11-14, and

2 20-21 of the '360 patent under 35 U.S.C. § 271(a) by making, using, selling, offering to sell, and/or

3 otherwise providing websites on the Internet, such as under the URL http://www.overstock.com and

4 http://cars.overstock.com, which permit visitors to the websites to search for products available for

5 sale by selecting pre-defined categories descriptive of the products.

6   148. Upon information and belief, Defendant Overstock has been and still is indirectly

7 infringing claims 1-7, 11-14, and 20-21 of the '360 patent under 35 U.S.C. § 271(b) by actively

8 inducing others, including, but not limited to, visitors to its websites who search for products

9 available for sale on the websites by selecting pre-defined categories descriptive of the products.

10   149. Upon information and belief, Defendant Overstock has been and still is indirectly

11 infringing claims 1-7, 11-14, and 20-21 of the '360 patent under 35 U.S.C. § 271(c) by providing, to

12 visitors to its websites, software for use in practicing the patented process(es) of the '360 patent and

13 constituting a material part of the invention, knowing the same to be especially made or especially

14 adapted for use in an infringement of the '360 patent, and not a staple article or commodity of

15 commerce suitable for substantial non-infringing use.

16   150. On information and belief, Defendant Overstock will continue to infringe claims 1-7,

17 11-14, and 20-21 of the '360 Patent unless enjoined by this Court.

18   151. On December 20, 2006, Plaintiff sent written notice of the '360 patent and notice of

19 Plaintiff's infringement allegation to Defendant Overstock.

20   152. Upon information and belief, Defendant Overstock's foregoing acts of infringement

21 were and continue to be willful.

22   153. As a result of Defendant Overstock's infringement, Plaintiff SpeedTrack has suffered

23 monetary damages in an amount not yet determined, and will continue to suffer damages in the

24 future unless Defendant Overstock's infringing activities are enjoined by this Court.

25   154. Unless a preliminary and permanent injunction are issued enjoining Defendant

26 Overstock and its agents, servants, employees, attorneys, representatives, and all others acting on its

27 behalf from infringing the '360 patent, Plaintiff will be greatly and irreparably harmed.

28   ///

-21-

Complaint for Patent Infringement

Exhibit ___1___ Page ___25___

1

## FIFTEENTH CLAIM FOR RELIEF

2

### Against Defendant REI For Infringement Of U.S. Patent No. 5,544,360

3      155.    Plaintiff incorporates herein by reference the allegations set forth in paragraphs 1-28

4   of this Complaint as though fully set forth herein.

5      156.    Defendant REI has been and still is directly infringing claims 1-7, 11-13, and 20-21

6   of the '360 patent under 35 U.S.C. § 271(a) by making, using, selling, offering to sell, and/or

7   otherwise providing websites on the Internet, such as under the URL http://www.rei.com, which

8   permit visitors to the websites to search for products available for sale by selecting pre-defined

9   categories descriptive of the products.

10      157.    Upon information and belief, Defendant REI has been and still is indirectly infringing

11   claims 1-7, 11-13, and 20-21 of the '360 patent under 35 U.S.C. § 271(b) by actively inducing

12   others, including, but not limited to, visitors to its websites who search for products available for

13   sale on the websites by selecting pre-defined categories descriptive of the products.

14      158.    Upon information and belief, Defendant REI has been and still is indirectly infringing

15   claims 1-7, 11-13, and 20-21 of the '360 patent under 35 U.S.C. § 271(c) by providing, to visitors to

16   its websites, software for use in practicing the patented process(es) of the '360 patent and

17   constituting a material part of the invention, knowing the same to be especially made or especially

18   adapted for use in an infringement of the '360 patent, and not a staple article or commodity of

19   commerce suitable for substantial non-infringing use.

20      159.    On information and belief, Defendant REI will continue to infringe claims 1-7, 11-

21   13, and 20-21 of the '360 Patent unless enjoined by this Court.

22      160.    On August 8, 2008, Plaintiff sent written notice of the '360 patent and notice of

23   Plaintiff's infringement allegation to Defendant REI.

24      161.    Upon information and belief, Defendant REI's foregoing acts of infringement were

25   and continue to be willful.

26      162.    As a result of Defendant REI's infringement, Plaintiff SpeedTrack has suffered

27   monetary damages in an amount not yet determined, and will continue to suffer damages in the

28   future unless Defendant REI's infringing activities are enjoined by this Court.

-22-

HENNIGAN, BENNETT & DORMAN LLP
LAWYERS
LOS ANGELES, CALIFORNIA

163.    Unless a preliminary and permanent injunction are issued enjoining Defendant REI and its agents, servants, employees, attorneys, representatives, and all others acting on its behalf from infringing the '360 patent, Plaintiff will be greatly and irreparably harmed.

### SIXTEENTH CLAIM FOR RELIEF

**Against Defendant ShopNBC.com For Infringement Of U.S. Patent No. 5,544,360**

164.    Plaintiff incorporates herein by reference the allegations set forth in paragraphs 1-28 of this Complaint as though fully set forth herein.

165.    Defendant ShopNBC.com has been and still is directly infringing claims 1-7, 11-13, and 20-21 of the '360 patent under 35 U.S.C. § 271(a) by making, using, selling, offering to sell, and/or otherwise providing websites on the Internet, such as under the URL http://www.shopnbc.com, which permit visitors to the websites to search for products available for sale by selecting pre-defined categories descriptive of the products.

166.    Upon information and belief, Defendant ShopNBC.com has been and still is indirectly infringing claims 1-7, 11-13, and 20-21 of the '360 patent under 35 U.S.C. § 271(b) by actively inducing others, including, but not limited to, visitors to its websites who search for products available for sale on the websites by selecting pre-defined categories descriptive of the products.

167.    Upon information and belief, Defendant ShopNBC.com has been and still is indirectly infringing claims 1-7, 11-13, and 20-21 of the '360 patent under 35 U.S.C. § 271(c) by providing, to visitors to its websites, software for use in practicing the patented process(es) of the '360 patent and constituting a material part of the invention, knowing the same to be especially made or especially adapted for use in an infringement of the '360 patent, and not a staple article or commodity of commerce suitable for substantial non-infringing use.

168.    On information and belief, Defendant ShopNBC.com will continue to infringe claims 1-7, 11-13, and 20-21 of the '360 Patent unless enjoined by this Court.

169.    On December 20, 2006, Plaintiff sent written notice of the '360 patent and notice of Plaintiff's infringement allegation to Defendant ShopNBC.com.

170.    Upon information and belief, Defendant ShopNBC.com's foregoing acts of

-23-

HENNIGAN, BENNETT & DORMAN LLP
LAWYERS
LOS ANGELES, CALIFORNIA

1  infringement were and continue to be willful.

2      171.   As a result of Defendant ShopNBC.com's infringement, Plaintiff SpeedTrack has

3  suffered monetary damages in an amount not yet determined, and will continue to suffer damages in

4  the future unless Defendant ShopNBC.com's infringing activities are enjoined by this Court.

5      172.   Unless a preliminary and permanent injunction are issued enjoining Defendant

6  ShopNBC.com and its agents, servants, employees, attorneys, representatives, and all others acting

7  on its behalf from infringing the '360 patent, Plaintiff will be greatly and irreparably harmed.

8                        **SEVENTEENTH CLAIM FOR RELIEF**

9        **Against Defendant B & H Foto For Infringement Of U.S. Patent No. 5,544,360**

10     173.   Plaintiff incorporates herein by reference the allegations set forth in paragraphs 1-28

11  of this Complaint as though fully set forth herein.

12     174.   Defendant B & H Foto has been and still is directly infringing claims 1-7, 11-13, and

13  20-21 of the '360 patent under 35 U.S.C. § 271(a) by making, using, selling, offering to sell, and/or

14  otherwise providing websites on the Internet, such as under the URL http://www.bhphotovideo.com,

15  which permit visitors to the websites to search for products available for sale by selecting pre-

16  defined categories descriptive of the products.

17     175.   Upon information and belief, Defendant B & H Foto has been and still is indirectly

18  infringing claims 1-7, 11-13, and 20-21 of the '360 patent under 35 U.S.C. § 271(b) by actively

19  inducing others, including, but not limited to, visitors to its websites who search for products

20  available for sale on the websites by selecting pre-defined categories descriptive of the products.

21     176.   Upon information and belief, Defendant B & H Foto has been and still is indirectly

22  infringing claims 1-7, 11-13, and 20-21 of the '360 patent under 35 U.S.C. § 271(c) by providing, to

23  visitors to its websites, software for use in practicing the patented process(es) of the '360 patent and

24  constituting a material part of the invention, knowing the same to be especially made or especially

25  adapted for use in an infringement of the '360 patent, and not a staple article or commodity of

26  commerce suitable for substantial non-infringing use.

27     177.   On information and belief, Defendant B & H Foto will continue to infringe claims 1-

28  7, 11-13, and 20-21 of the '360 Patent unless enjoined by this Court.

-24-

HENNIGAN, BENNETT & DORMAN LLP
LAWYERS
LOS ANGELES, CALIFORNIA

178.    On July 18, 2008, Plaintiff sent written notice of the '360 patent and notice of Plaintiff's infringement allegation to Defendant B & H Foto.

179.    Upon information and belief, Defendant B & H Foto's foregoing acts of infringement were and continue to be willful.

180.    As a result of Defendant B & H Foto's infringement, Plaintiff SpeedTrack has suffered monetary damages in an amount not yet determined, and will continue to suffer damages in the future unless Defendant B & H Foto's infringing activities are enjoined by this Court.

181.    Unless a preliminary and permanent injunction are issued enjoining Defendant B & H Foto and its agents, servants, employees, attorneys, representatives, and all others acting on its behalf from infringing the '360 patent, Plaintiff will be greatly and irreparably harmed.

### EIGHTEENTH CLAIM FOR RELIEF

### Against Defendant HP For Infringement Of U.S. Patent No. 5,544,360

182.    Plaintiff incorporates herein by reference the allegations set forth in paragraphs 1-28 of this Complaint as though fully set forth herein.

183.    Defendant HP has been and still is directly infringing claims 1-7, 11-13, and 20-21 of the '360 patent under 35 U.S.C. § 271(a) by making, using, selling, offering to sell, and/or otherwise providing websites on the Internet, such as under the URL http://www.hp.com and http://www.hpshopping.com, which permit visitors to the websites to search for products available for sale by selecting pre-defined categories descriptive of the products.

184.    Upon information and belief, Defendant HP has been and still is indirectly infringing claims 1-7, 11-13, and 20-21 of the '360 patent under 35 U.S.C. § 271(b) by actively inducing others, including, but not limited to, visitors to its websites who search for products available for sale on the websites by selecting pre-defined categories descriptive of the products.

185.    Upon information and belief, Defendant HP has been and still is indirectly infringing claims 1-7, 11-13, and 20-21 of the '360 patent under 35 U.S.C. § 271(c) by providing, to visitors to its websites, software for use in practicing the patented process(es) of the '360 patent and constituting a material part of the invention, knowing the same to be especially made or especially adapted for use in an infringement of the '360 patent, and not a staple article or commodity of

-25-

1    commerce suitable for substantial non-infringing use.

2         186.    On information and belief, Defendant HP will continue to infringe claims 1-7, 11-13,

3    and 20-21 of the '360 Patent unless enjoined by this Court.

4         187.    On June 25, 2007, Plaintiff sent written notice of the '360 patent and notice of

5    Plaintiff's infringement allegation to Defendant HP.

6         188.    Upon information and belief, Defendant HP's foregoing acts of infringement were

7    and continue to be willful.

8         189.    As a result of Defendant HP's infringement, Plaintiff SpeedTrack has suffered

9    monetary damages in an amount not yet determined, and will continue to suffer damages in the

10   future unless Defendant HP's infringing activities are enjoined by this Court.

11        190.    Unless a preliminary and permanent injunction are issued enjoining Defendant HP

12   and its agents, servants, employees, attorneys, representatives, and all others acting on its behalf

13   from infringing the '360 patent, Plaintiff will be greatly and irreparably harmed.

14                              **NINETEENTH CLAIM FOR RELIEF**

15          **Against Defendant Redcats For Infringement Of U.S. Patent No. 5,544,360**

16        191.    Plaintiff incorporates herein by reference the allegations set forth in paragraphs 1-28

17   of this Complaint as though fully set forth herein.

18        192.    Defendant Redcats has been and still is directly infringing claims 1-7, 11-13, and 20-

19   21 of the '360 patent under 35 U.S.C. § 271(a) by making, using, selling, offering to sell, and/or

20   otherwise providing websites on the Internet, such as under the URLs http://www.chadwicks.com,

21   http://www.metrostyle.com, http://www.womanwithin.com, http://www.roamans.com,

22   http://www.kingsizedirect.com, http://www.jessicalondon.com, http://www.tgw.com,

23   http://www.bcoutlet.com, http://www.onestopplus.com, http://www.brylanehome.com, and

24   http://www.baseballsavings.com, which permit visitors to the websites to search for products

25   available for sale by selecting pre-defined categories descriptive of the products.

26        193.    Upon information and belief, Defendant Redcats has been and still is indirectly

27   infringing claims 1-7, 11-13, and 20-21 of the '360 patent under 35 U.S.C. § 271(b) by actively

28   inducing others, including, but not limited to, visitors to its websites who search for products

-26-

HENNIGAN, BENNETT & DORMAN LLP
LAWYERS
LOS ANGELES, CALIFORNIA

1    available for sale on the websites by selecting pre-defined categories descriptive of the products.

2         194.    Upon information and belief, Defendant Redcats has been and still is indirectly

3    infringing claims 1-7, 11-13, and 20-21 of the '360 patent under 35 U.S.C. § 271(c) by providing, to

4    visitors to its websites, software for use in practicing the patented process(es) of the '360 patent and

5    constituting a material part of the invention, knowing the same to be especially made or especially

6    adapted for use in an infringement of the '360 patent, and not a staple article or commodity of

7    commerce suitable for substantial non-infringing use.

8         195.    On information and belief, Defendant Redcats will continue to infringe claims 1-7,

9    11-13, and 20-21 of the '360 Patent unless enjoined by this Court.

10        196.    On August 21, 2008, Plaintiff sent written notice of the '360 patent and notice of

11   Plaintiff's infringement allegation to Defendant Redcats.

12        197.    Upon information and belief, Defendant Redcats's foregoing acts of infringement

13   were and continue to be willful.

14        198.    As a result of Defendant Redcats's infringement, Plaintiff SpeedTrack has suffered

15   monetary damages in an amount not yet determined, and will continue to suffer damages in the

16   future unless Defendant Redcats's infringing activities are enjoined by this Court.

17        199.    Unless a preliminary and permanent injunction are issued enjoining Defendant

18   Redcats and its agents, servants, employees, attorneys, representatives, and all others acting on its

19   behalf from infringing the '360 patent, Plaintiff will be greatly and irreparably harmed.

20                          **TWENTIETH CLAIM FOR RELIEF**

21   **Against Defendant Smartbargains.com For Infringement Of U.S. Patent No. 5,544,360**

22        200.    Plaintiff incorporates herein by reference the allegations set forth in paragraphs 1-28

23   of this Complaint as though fully set forth herein.

24        201.    Defendant Smartbargains.com has been and still is directly infringing claims 1-7, 11-

25   13, and 20-21 of the '360 patent under 35 U.S.C. § 271(a) by making, using, selling, offering to sell,

26   and/or otherwise providing websites on the Internet, such as under the URL

27   http://www.smartbargains.com, which permit visitors to the websites to search for products

28   available for sale by selecting pre-defined categories descriptive of the products.

-27-

HENNIGAN, BENNETT & DORMAN LLP
LAWYERS
LOS ANGELES, CALIFORNIA

202.     Upon information and belief, Defendant Smartbargains.com has been and still is indirectly infringing claims 1-7, 11-13, and 20-21 of the '360 patent under 35 U.S.C. § 271(b) by actively inducing others, including, but not limited to, visitors to its websites who search for products available for sale on the websites by selecting pre-defined categories descriptive of the products.

203.     Upon information and belief, Defendant Smartbargains.com has been and still is indirectly infringing claims 1-7, 11-13, and 20-21 of the '360 patent under 35 U.S.C. § 271(c) by providing, to visitors to its websites, software for use in practicing the patented process(es) of the '360 patent and constituting a material part of the invention, knowing the same to be especially made or especially adapted for use in an infringement of the '360 patent, and not a staple article or commodity of commerce suitable for substantial non-infringing use.

204.     On information and belief, Defendant Smartbargains.com will continue to infringe claims 1-7, 11-13, and 20-21 of the '360 Patent unless enjoined by this Court.

205.     On December 20, 2006, Plaintiff sent written notice of the '360 patent and notice of Plaintiff's infringement allegation to Defendant Smartbargains.com.

206.     Upon information and belief, Defendant Smartbargains.com's foregoing acts of infringement were and continue to be willful.

207.     As a result of Defendant Smartbargains.com's infringement, Plaintiff SpeedTrack has suffered monetary damages in an amount not yet determined, and will continue to suffer damages in the future unless Defendant Smartbargains.com's infringing activities are enjoined by this Court.

208.     Unless a preliminary and permanent injunction are issued enjoining Defendant Smartbargains.com and its agents, servants, employees, attorneys, representatives, and all others acting on its behalf from infringing the '360 patent, Plaintiff will be greatly and irreparably harmed.

///

///

///

///

///

HENNIGAN, BENNETT & DORMAN LLP
LAWYERS
LOS ANGELES, CALIFORNIA

-28-

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff SpeedTrack, Inc. prays for judgment against each Defendant as follows:

(1)  For a judicial determination and declaration that each Defendant has directly infringed, and continues to directly infringe the claims of United States Letters Patent No. 5,544,360 identified above as to each Defendant;

(2)  For a judicial determination and declaration that each Defendant has induced, and continues to induce, the infringement of the claims of United States Letters Patent No. 5,544,360 identified above as to each Defendant;

(3)  For a judicial determination and declaration that each Defendant has contributed to, and continues to contribute to, the infringement of the claims of United States Letters Patent No. 5,544,360 identified above as to each Defendant;

(4)  For a judicial determination and decree that each Defendants' infringement of United States Letters Patent No. 5,544,360 has been, and continues to be, willful and deliberate;

(5)  For a judicial determination and decree that each Defendant and its respective subsidiaries, officers, agents, servants, employees, licensees, and all other persons or entities acting or attempting to act in active concert or participation with them or acting on their behalf, be preliminarily and permanently enjoined from further infringement of the '360 Patent;

(6)  For a judicial decree that orders each Defendant to account for and pay to SpeedTrack all damages caused to SpeedTrack by reason of each Defendant's infringement pursuant to 35 U.S.C. Section 284, including enhanced damages under 35 U.S.C. Section 285;

(7)  For an award of damages according to proof at trial;

(8)  For a judicial declaration that this case is exceptional under 35 U.S.C. Section 285 and that Defendants be ordered to pay SpeedTrack's costs, expenses, and reasonable attorney's fees pursuant to 35 U.S.C. Sections 284 and 285;

(9)  For a judicial order awarding to SpeedTrack pre-judgment and post-judgment interest on the damages caused to it by each Defendants' infringement; and

///

-29-

HENNIGAN, BENNETT & DORMAN LLP
LAWYERS
LOS ANGELES, CALIFORNIA

1    (10)    For any such other and further relief as the Court may deem just and proper under the

2  circumstances.

3  DATED:  September 22, 2009                    HENNIGAN, BENNETT & DORMAN LLP

4

5                                               By:_____
                                                    Roderick G. Dorman
6                                                   Alan P. Block
                                                    Marc Morris
7
                                                Attorneys for Plaintiff
8                                               SpeedTrack, Inc.

9                              **Demand for Jury Trial**

10    Plaintiff hereby demands a jury trial pursuant to Rule 38 of the Federal Rules of Civil

11  Procedure as to all issues so triable.

12  DATED:  September 22, 2009                    HENNIGAN, BENNETT & DORMAN LLP

13

14                                              By:_____
                                                    Roderick G. Dorman
15                                                  Alan P. Block
                                                    Marc Morris
16
                                                Attorneys for Plaintiff
17                                              SpeedTrack, Inc.

18

19

20

21

22

23

24

25

26

27

28

-30-

# EXHIBIT 1

Exhibit 1 Page 35

US005544360A

# United States Patent [19]

## Lewak et al.

| [11] | Patent Number: | 5,544,360 |
|---|---|---|
| [45] | Date of Patent: | Aug. 6, 1996 |

[54] **METHOD FOR ACCESSING COMPUTER FILES AND DATA, USING LINKED CATEGORIES ASSIGNED TO EACH DATA FILE RECORD ON ENTRY OF THE DATA FILE RECORD**

[75] Inventors: **Jerzy Lewak**, Del Mar; **Slawek Grzechnik**, La Mesa; **Jon Matousek**, San Diego, all of Calif.

[73] Assignee: **Paragon Concepts, Inc.**, Solana Beach, Calif.

[21] Appl. No.: **384,379**

[22] Filed: **Feb. 3, 1995**

### Related U.S. Application Data

[63] Continuation of Ser. No. 980,620, Nov. 23, 1992, abandoned.

[51] Int. Cl.$^6$ ............................................ G06F 17/30
[52] U.S. Cl. .................. 395/600; 364/253; 364/253.3; 364/282.1; 364/282.3; 364/283.1; 364/283.2; 364/283.3; 364/286.4; 364/286.5
[58] Field of Search ........................ 364/282.1, 282.3, 364/283.1, 283.2, 283.3, 286.4, 286.5

[56] **References Cited**

#### U.S. PATENT DOCUMENTS

| 5,047,918 | 9/1991 | Schwartz et al. | 364/200 |
|---|---|---|---|
| 5,115,504 | 5/1992 | Belove et al. | 395/600 |
| 5,162,992 | 11/1992 | Williams | 364/419 |
| 5,201,047 | 4/1993 | Maki et al. | 395/600 |
| 5,201,048 | 4/1993 | Coulter et al. | 395/600 |
| 5,204,947 | 4/1993 | Bernstein et al. | 395/157 |
| 5,206,949 | 4/1993 | Cochran et al. | 395/600 |

| 5,276,867 | 1/1994 | Kenley et al. | 395/600 |
|---|---|---|---|

#### OTHER PUBLICATIONS

Van Kir., "Lotus, Traveling Software Tackle DOS File Management Problems", Apr. 1989, V2R4 p. 35(2) PC-Computing.
PC Tools DOS & Shell/File Manager, 1991, pp. 33–35, (Version 7 For DOS) Central Point Software Inc.
Central Point Software Inc. PC Tools Data Recovery And Systems Utilities, 1991, pp. 95–97 (Ver. 7 For DOS).
Thought Pattern Handbook, By Bananafish Software, Inc., 1991 San Francisco, CA.

*Primary Examiner*—Thomas G. Black
*Assistant Examiner*—Jack M. Choules
*Attorney, Agent, or Firm*—Fish & Richardson P.C.

[57] **ABSTRACT**

A computer filing system for accessing files and data according to user-designated criteria. The system allows the user to define a virtually unlimited number of hybrid folders by describing, using terms of their own selection, the file contents of those files which are to belong to particular hybrid folders. Such hybrid folders can be implemented on top of, and used in addition to, the normal hierarchical structured directory, or they may replace such normal structures entirely. The inventive computer file control system could therefore be used as the basis of a new computer operating system. In the process of search and retrieval, the invention ensures in two ways that the user defines a filter which will always find at least one file. The user is not required to type the key words to search but instead chooses the words from pick lists, making mistyping impossible. As the user builds the search filter definition, categories which would find no data are automatically excluded as pick list possibilities.

**21 Claims, 4 Drawing Sheets**



Exhibit 1 Page 31

Exhibit 1 Page 36



**FIG. 1**
**(PRIOR ART)**

Exhibit _1_ Page _32_

Exhibit _1_ Page _37_

**U.S. Patent**            Aug. 6, 1996        Sheet 2 of 4              5,544,360

# FIG. 2



Exhibit __1__ Page 33

Exhibit __1__ Page __38__

**U.S. Patent**          Aug. 6, 1996          Sheet 3 of 4          **5,544,360**

| FILE_TYPE | CONTENTS | ACTION | NAMES |
|---|---|---|---|
| 000 AGREEMENT | 100 ADDRESSES | 200 ADVANCES | 300 JONES |
| 001 COMPARISON | 101 FEATURES | 201 BETA TESTING | 301 MACQWERTY |
| 002 DOCUMENTATION | 102 INVITATION | 202 BUGS | 302 MACTAG |
| 003 E- MAIL | 103 OFFICE | 203 COMPUTERS | 303 MCARTHY |
| 004 LEGAL | 104 PLAN | 204 DEMOS | 304 NISUS |
| 005 LETTER | 105 PROGRAMMING | 205 EMPLOYEES | 305 PETER |
| 006 LIST | 106 PROMOTION | 206 PATENT | 306 PUP |
| 007 MACRO | 107 REQUEST | 207 RECEIVED | 307 SMITH |
| 008 MEMOS | 108 RESEARCH | 208 REPLY | 308 SOLO WRITER |
| 009 MINUTES | 109 SALES | 209 SENT | 309 TECHFONTS |
| 010 NEWS RELEASE | 110 TELEPHONE #'S | 210 TO SEND | 310 THOMPSON |
| • | • | • | • |
| • | • | • | • |
| • | • | • | • |

## FIG. 3

| FILE_NAME | FILE_LOC | DATE/TIME | NO_CATEGORIES | CATEGORY_ARRAY |
|---|---|---|---|---|
| jones.mem | c:\memos | 01-01-80 01:30 | 2 | 008, 300 |
| minutes.1 | f:\wpdocs | 10-10-90 10:10 | 3 | 009, 103, 109 |
| • | • | • | • | • |
| • | • | • | • | • |
| • | • | • | • | • |

## FIG. 4

Exhibit __1__ Page __34__

Exhibit __1__ Page __39__



FIG. 5

Exhibit __1__ Page __35__

Exhibit __1__ Page __40__

5,544,360

| 1 | 2 |

**METHOD FOR ACCESSING COMPUTER
FILES AND DATA, USING LINKED
CATEGORIES ASSIGNED TO EACH DATA
FILE RECORD ON ENTRY OF THE DATA
FILE RECORD**

This is a continuation of application Ser. No. 07/980,620 filed on Nov. 23, 1992, now abandoned.

NOTICE OF COPYRIGHTS

A portion of the disclosure of this patent document contains material which is subject to copyright protection. The copyright owner has no objection to the facsimile reproduction by any one of the patent disclosure, as it appears in the Patent and Trademark Office patent files or records, but otherwise reserves all copyright rights whatsoever.

BACKGROUND OF THE INVENTION

1. Field of the Invention

This invention relates generally to computer file control systems, and more specifically to a flexible system for accessing computer files and data therein according to user-designated criteria.

2. Description of Related Art

Many currently-existing computer file control systems employ a hierarchical file structure. This system emulates commonly-used paper filing systems, but is more general and is capable of more extensive use. Thus, for example, in a paper filing system, a filing cabinet may contain 4 or 5 drawers. Each drawer may contain perhaps a dozen or so hanging files and each file may contain two or three file folders. Typically, a hanging file can only hold a very small number of file folders before it becomes unmanageable, so that a new hanging file needs to be started.

A typical computer system organizes data into files (analogous to papers in a paper filing system) and directories (analogous to file folders and hanging files). Indeed, in graphically-oriented computer systems, directories are sometimes known as "folders." Directories may contain other directories (also referred to as subdirectories) and files.

FIG. 1 shows a simplified typical hierarchical tree-type directory structure. This structure is called "tree" because it looks like an upside-down tree, with the base, or "root" of the tree at the top. Subdirectories are often referred to as "branches" of the tree, and files are often referred to as leaves of the tree.

In FIG. 1, the root directory 100 contains a number of subdirectories 102–112 and files 114–122. The subdirectories 102–112 may contain other subdirectories and files, and so on.

In typical use, directories often contain files having similar kinds of data. Also, the name of the directory is typically selected to be descriptive of the kinds of files and directories therein. For example, a WPDOCS directory 102 might contain wordprocessing documents and directories for holding specific categories of such documents. For example, a LETTERS directory 108 may contain only files which are letters: "LETTER TO AUTO CLUB" 114, "LETTER TO BOWLING LEAGUE MEMBERS" 116, "LETTER TO MR. CHISOLM" 118, "LETTER TO MR. DITHERS" 120, and "LETTER TO MS. ENGELMAN" 122. Memos could be stored in a "MEMOS" subdirectory 110, patent applications in an "APPLICATION" subdirectory 112, etc.

Custom structures of such directories are created so as to make the storing and retrieval of files convenient. If the number of files to be stored is small and the number of different file kinds is either small or very well defined, this type of file storage structure works well. However, several problems arise when the number of files becomes large, or if the file categories are not well-defined. In such cases, the hierarchical filing structure becomes very cumbersome to use for the following reasons:

1. The tree becomes quite deep, and so it takes more time to get to the end of any branch.

2. It becomes more difficult for the user to decide where to store a particular file.

As a result, finding particular files becomes harder and harder. Frequently, the user is not able to clearly and unambiguously associate a desired file with any one directory. In fact, the user often associates a file with several subdirectories. This happens both when a file is being saved and when it is being retrieved. The same problem arises in paper filing systems. Quite often a document may logically belong within many different folders, with the result that it is difficult to find a desired document once the document has been filed.

Clearly, a hierarchical topic-oriented file structure is too rigid for many applications where information must be organized into files. It has been found that users generally think in terms of overlapping categories or descriptions of file content, rather than in very strictly-defined, non-overlapping topics.

For example, referring now to FIG. 2, a root directory 200 has five subdirectories 202–210. In this example, subdirectory 202 has three "sub"-subdirectories 212–216, subdirectory 204 has two "sub"-subdirectories 218–220, subdirectory 206 has one "sub"-subdirectory 222, and subdirectory 208 has one "sub"-subdirectory 224. A file might logically belong in subdirectory 204, sub-subdirectory 214, sub-subdirectory 216, and sub-subdirectory 224. Similarly, another file might logically belong in subdirectory 206 and subdirectory 208.

Therefore, what is really needed are "hybrid" logical directories or folders, which contain those files whose content overlaps more than one physical directory. Thus, in the present example, a first hybrid logical directory 226 would contain each file that logically belongs in subdirectory 206 and subdirectory 208. Similarly, a second hybrid logical directory 228 would contain each file that logically belongs in subdirectory 204, sub-subdirectory 214, sub-subdirectory 216, and sub-subdirectory 224.

In the typical hierarchical directory structure illustrated in FIG. 1, "hybrid" directories are not possible. Thus, it is very desirable to provide a method for accessing files consonant with the way users think of them, and not limited to how such files are stored in the computer.

Some systems have been developed to overcome the rigidity of typical hierarchical directory structures, but these systems have limitations. In one such method, all the words in a file are indexed and a concordance list associated with each file is created. The user then may search for files by file word content by defining "search filters", which are search terms in logically defined combinations (e.g., a search filter comprising "Smith" AND "tooling" would locate all documents having both the word "Smith" and the word "tooling"). However, this indexing method has the following shortcomings:

1. The words inside a document often do not identify the type of document. For example, a document which is a letter generally does not contain the word "letter".

Exhibit __1__ Page __36__

Exhibit __l__ Page __41__

5,544,360

**3**

Thus, a search for all documents that are letters will only identify documents which contain the word "letter". Similarly, it is very difficult to identify words which occur in all letters. Furthermore, this technique requires the user to remember precise words appearing 5 in the file. This may be especially difficult for older files for which the user cannot recall the precise contents.

2. In applications where such a method might be most useful, the search is very time consuming. If the number of files is very large, the concordance list also 10 is very large. A partial solution to this has been to have the program continually work in the background updating the concordance list as changes are made in the files. However, this process generally disrupts a user's activity. 15

3. Many files (such as binary files) contain information which is in a form that is not easily interpreted by the human mind. Such files cannot be stored and retrieved by these methods.

4. In preparing a search filter, a user must type the word 20 or words targeted in the search. In such situations, the user commonly mistypes or use a different inflection, spelling or grouping of the key words. Without using the precise words as they appear in the files, a search has an even lower probability of success. 25

5. Because a user may change the contents of documents, the index of words must be constantly updated. This process is time consuming and distracting. In contrast, the topical description of a document changes very 30 little, if at all, during its lifetime.

Because of these problems, the above methods are generally used in only "last resort" searches. Thus, the user is left to negotiate the hierarchical directory structure.

Databases and outlining programs also provide methods 35 for data storage, retrieval, or re-organization. Databases may be created using relational techniques. In relational databases, the relationships between data are typically included in the database structure. Searches in a relational database may be made by creating a search of the relations. However, 40 database searches are usually restricted in two ways: by the field of each data element and by the content of each field. In outlining programs and other thought-organization programs, the data is generally required to be hierarchically organized at the time of data entry. 45

Accordingly, it would be desirable to provide a method for accessing files which provides intuitive access by user-defined topics. Such a solution should provide: easy access to a large number of files and to files having overlapping categories; simple access to files stored in a hierarchical file 50 system without the necessity of sorting through multiple levels; access to files using predefined categories descriptive of the contents of the files; access to files which permits a user to create a search filter of categories of files using precise category names to which the files belong; and a 55 method of accessing files which is unaffected by changes in file contents.

The present invention provides such a method.

## SUMMARY OF THE INVENTION

The invention comprises a computer file control system, 60 with a suitable user interface, implemented as a software program, which allows total freedom from the restrictions imposed by hierarchical and other present day computer filing systems.

The invention allows a user to define categories for files 65 stored in a computer system, and to edit such categories as

**4**

they are used, to designate all applicable categories for each file, and to link categories in user-definable ways. The invention further allows a user to be reminded of linked categories.

In the process of search and retrieval, the invention overcomes the problem of search filter definition, ensuring that the user defines a filter which will always find at least one file, thus avoiding wasting time in searching for data that cannot be matched. This is achieved in two ways. First, the user is not required to type the key words to search; instead, the user simply chooses the words from pick lists, making mistyping impossible. Second, as the user builds the search filter definition, categories which would find no data are automatically excluded as pick list possibilities.

More particularly, the invention allows users to define an unlimited number of their own "hybrid folders" by simply describing, using categories the user defines, the file contents of those files which are to belong to each "hybrid folder". This description is dynamic (that is, changeable by the user from time to time), and may be either totally unrestricted or restricted to a particular directory or sub-directory, as the user chooses. Such hybrid folders can be implemented on top of, and used in addition to, the normal hierarchical structured directory, or they may replace such normal structures entirely. The inventive computer file control system could therefore be used as the basis of a new computer operating system.

The details of the preferred embodiment of the present invention are set forth in the accompanying drawings and the description below. Once the details of the invention are known, numerous additional innovations and changes will become obvious to one skilled in the art.

## BRIEF DESCRIPTION OF THE DRAWINGS

FIG. 1 is a tree diagram illustrating the organizational structure of a typical prior art computer filing system.

FIG. 2 is a tree diagram illustrating the organizational structure of the computer filing system of the present invention.

FIG. 3 shows an example of a File Category Table in accordance with the present invention.

FIG. 4 shows an example of a File Information Directory in accordance with the present invention.

FIG. 5 shows an example of a Categories Window and File Window in accordance with the present invention.

Like reference numbers refer to like elements in the drawings.

## DETAILED DESCRIPTION OF THE ILLUSTRATED EMBODIMENTS

Throughout this description, the preferred embodiment and examples shown should be considered as exemplars, rather than as limitations on the present invention.

The present invention consists of a computer file control system that includes a File Category Table ("FCT") and a File Information Directory ("FID") to store information about user-defined categories and information linking such categories to specific files. The invention uses the information stored in the FCT and FID to quickly and easily access files in the file system. (The term "file" should be understood to mean any collection of data or information stored on a computer system). In the preferred embodiment, the invention includes a graphical user interface for defining catego-

Exhibit _1_ Page _37_

Exhibit _1_ Page _42_

5,544,360

5

ries, associating files with particular categories, and defining search filters.

File Category Table Structure

In the preferred embodiment, the FCT is a table that can be modeled as having a set of columns labeled by category-type (e.g., FILE_TYPE, CONTENTS, ACTION, etc.), with entries comprising lists of category names or descriptions (e.g., the FILE_TYPE column might have entries for AGREEMENTS, E-MAIL, MEMOS, NEWSLETTER, etc.). Each category description is a descriptive name defined by the user.

In addition, each category description is preferably associated with a unique identifier (preferably a number, but other identifiers could be used). The identifier is created by the computer (e.g., in sequential order) and used internally to manage the categories. If a user changes the name of a category description, the associated identifier is not changed. However, the invention could be implemented without using identifiers, although changes to category descriptions would then require more maintenance of the FID than with identifiers.

In the preferred embodiment, the identifier is coded so that the initial digit indicates the category type (e.g., "0xx" indicates the first category type, FILE_TYPE). This aspect is not an essential feature of the implementation of the invention, but helps the program determine, without the need of any other data fields, the column of each category description.

In the preferred embodiment, the user is provided with an FCT containing sample category descriptions. These category descriptions may be changed or deleted, and new categories may be added.

FIG. 3 shows an example of a File Category Table in accordance with the present invention. Category types 1 are at the head of each column, and each column entry comprises a category description 2 and an associated identifier 3. Of course, in implementing the invention, the table structure shown can be configured in any desired manner, such as an array, linked list, fixed or variable record length table using sequential or hashed access, etc.

In the preferred embodiment implemented under the Apple Macintosh® System 7 operating system, category descriptions are stored as records of a random access data base file. The preferred name of the file is "FC Categories". Records are accessed by record number, in known fashion. In the preferred embodiment, category descriptions are stored in the following data structure:

```
typedef struct FC_CATEG_REC {
  LONG rec_no;              this record number
  CATEG_SYM sym;            category identifier
  CATEG_NAME name;          category name
  INT list;                 list to which the category
                            belongs (0,1,2,...)
  UINT attr;                attributes
  UINT valid;               1 when to be displayed
  LONG file_counter;        how many files use this
                            category
  INT nlinks;               number of links
  CATEG_SYM aliases[10];    category identifiers of
                            linked categories
  UCHAR filler [128]
} FC_CATEG_REC;
```

During initialization of the file control system, category descriptions (of type FTYP, FDES, CUST, NAME) are read into memory and stored in moveable memory blocks (handles). In the preferred embodiment, data about each category list is gathered in a record structure named COLUMN:

6

```
typedef struct COLUMN {
  RESTYPE arestype;         resource type of categories
                            in this list (category type)
  INT a_of_an;              number of entries in this
                            column-list
  CATEG_RES **ah_to_categs;  handle to array of category
                            descriptions (CATEG_RES
                            structures) in this list
  INT start_cat_vals,
      max_cat_vals;         range of category identifiers
} COLUMN;                   in this list
```

COLUMN entries are stored in an array having the structure:

COLUMN *columns;

File Information Directory Structure

In the preferred embodiment, the FID is a table that can be modeled as having a set of columns labeled by file name, file location (using direct or indirect addressing), creation and/or last update time and date for the file, number of categories associated with the file, and the identifiers of the categories associated with each file by a user.

Other file attributes may be saved in an entry, as desired. For each file that the user may want to locate at a later time, an entry is created in the FID.

FIG. 4 shows an example of a File Information Directory in accordance with the present invention. Each entry has data fields that correspond to the file name (FILE_NAME) 5, file location (FILE_LOC) 6, file creation time (DATE/TIME) 7, number of associated categories (NO_CATEGORIES) 8, and an array of the identifiers of the associated categories (CATEGORY_ARRAY) 9.

When the invention is used under some operating systems, the location of each file comprises a record entry in the FID. However, in one embodiment run under the Apple Macintosh® System 7 operating system, the FID entry can be associated with a corresponding standard "Alias Record". An Alias Record contains internal system information about the file, allowing the operating system to find the file quickly even if the file has been moved and/or renamed. More particularly, the data for each file categorized by a user is stored in two resource records. One of the records is called a Catalog Entry and is stored as a resource of type 'Catalog Record'. A Catalog Entry resource record contains information describing the file and its associated category identifiers. The other record is of the type 'Alias Record', and is an Alias Record enabling rapid location of the file in the system by the operating system Alias Manager. Both resource records referring to the same file have the same resource identifiers. During initialization of the file control system, the 'Catalog Record' records are read into memory and stored in an array and serve the common purposes of displaying and selecting categorized files. The associated 'Alias Record' reside on a system storage unit (e.g., magnetic disk drive) and are read into memory only in order to locate and open a file.

Catalog entries are stored in a random access data base file with the preferred name "FC Catalog". Aliases are stored in the random access data base file with the preferred name "FC Aliases".

The preferred embodiment, the structure of the 'Catalog Record' is as follows:

```
typedef struct FC_CRP_DISK {
  LONG rec_no;              this record number
  UCHAR fname[FNAME_L+1]    file name (Pascal)
```

Exhibit _1_ Page _38_

Exhibit _1_ Page_43_

5,544,360

**7**
-continued

| | |
|---|---|
| UNSIGNED LONG INT credat; | String) (alias) creation time/ date of the file |
| LONG alias_rec_no | corresponding 'Alias Record' record number |
| INT ncategs; | number of categories describing the file |
| CATEG_SYM acategs [MAX_CAT]; | array of categories identifiers describing the file |
| LONG creator; | |
| LONG type; | |
| UNSIGNED CHAR filler [56]; | |
| } FC_CRP_DISK; | |

CRP records in memory have the same structure. The memory list of CRP records is kept in a moveable block (handle) referred to by:

CRP **hacrp;

Overview of Operation

The invention preferably uses a windows-based graphical user interface for interacting with a user. Such interfaces are common, and include the Macintosh® System 7 operating system from Apple Computer and Microsoft Windows® from Microsoft Corporation.

The invention is activated by running a File Control (FC) Manager program that implements the invention. The FC Manager may be executed ("run") by opening a corresponding file by selecting a menu command and leaving the file open. Other methods known in the art for activating the invention could be used, such as by using a computer mouse to "click" on an icon.

During operation, the FC Manager may be in four states: Inactive, Active, Search Filter Definition, and Categorization. Search Filter Definition is a substate of the Active state. Categorization is generally a substate of the Active state, but in one case, Categorization is a substate of the Inactive state. All states require that the basic data structures described above be initialized. The initialization process initializes all the data structures by allocating memory and reading data from related data files (e.g., the FCT and FID tables, and previously saved "last used" values), in known fashion. After initialization, the FC Manager is set to the Inactive State.

The Active State enables use of the FC Manager to perform such functions as categorizing files, editing the FCT entries, defining a search filter, and locating and opening files.

1. Categorizing Files

Categorization of files in the illustrated embodiment is performed by the user from a Categories Window. In the illustrated embodiment, there are two categorization states—Active and Inactive. In the Active state, a user need only close an uncategorized file to immediately be presented by the FC Manager with the Categories Window. Typically, from within an application, the user will open a file (or, having created a new file, will make the first save to disk), at which time the FC system extension, running as a background process, will detect that action and store the path to the file in common memory. The FC Manager, running as a concurrent process, during "null events" (i.e., periods of inactivity) will retrieve this path from common memory and check the path against a list of already categorized files. If the file has not yet been categorized, the FC Manager will automatically categorize the file with the special category "Uncategorized", and notify the user that there are files to be categorized.

**8**

In the Inactive state, to categorize an open file, the user must affirmatively choose a command from a menu, e.g., a "Categorize" command, from the FC Manager. When in the Inactive state, the user may open a file specifically for the purpose of selecting categories for that file.

In the preferred embodiment, when the FC Manager is running as a background process, each file being closed is submitted to conditional categorization, which means that only uncategorized files undergo the operation. The file being closed is identified and checked to determine whether it already has an entry in the FID. The file is assumed to be already categorized if there is an entry in the FID with the same creation date and path. In this case, no further action is taken. Otherwise, the FC Manager opens the Categories Window and the user is asked to categorize the file.

When the FC Manager opens the Categories Window, the category names stored in the FCT are displayed, Preferably, the Categories Window presents category descriptions in an organized fashion. It has been found that organizing the category names into columns helps the user to locate and select desired categories. In the illustrated embodiment, the category descriptions are displayed alphabetically in columns, with each column having a heading comprising the category type. Preferably, all category descriptions within a heading are related. However, it is often unclear in which column a given category belongs. Accordingly, the column position of a category is not significant. Columns are used for the convenience of the user in finding relevant categories and for no other reason. Further, any desired display of the category descriptions can be used.

FIG. 5 shows an example of a file manager display in accordance with the present invention. A Categories Window 50 is shown on the right side of the display, with a File Window 52 on the left side. Category types 54 are shown at the top of the Categories Window 50, with category descriptions 56 arrayed in columns below the category types 54. A tally 58 is displayed of the number of files matching selected categories, as further described below.

While the Categories Window 50 is displayed, both the category type headings and the column positions of the category descriptions may be edited by the user. In addition, category types may be added or deleted. Further, category descriptions may be edited or deleted, and new category descriptions may be added while in the Categories Window. A user is preferably warned before deleting a category description or category type. After user confirmation of deletion, the category descriptions is removed from the FCT, and all references in the FID entries to that category description are also removed. Implementation of such editing functions is known in the art of data processing, and simply cause the associated FCT and FID records to be updated.

A category description may be moved from one column (category type) to another column. In the preferred embodiment, moving is accomplished by clicking on the category description with the mouse and dragging and dropping the category description in the new column. In the illustrated embodiment, moving a category description between category types changes the category type numeric value, so all associated records in the FID containing the moved category description are checked and modified.

Categories which describe the current file can be selected by the user. This is done, for example, by pointing a computer mouse and "clicking" on each category description to be applied to the particular file. Preferably, the user may select as many category descriptions as apply to the particular file. After the user has completed category selection for a file, a new entry in the FID is created using the file data associated

Exhibit ___1___ Page___39___

Exhibit___1___ Page___4-4___

5,544,360

| 9 | 10 |

with the file, and all of the selected category descriptions. When the user has completed category selection, the Categories Window may be closed by the user, or the user may select another file for categorization.

In the preferred embodiment, a selected file that has been categorized may be recategorized using the FC Manager by clicking a "Categorize" button 60. This does not require any further file identification, as the file selected by the user contains the information necessary to perform categorization.

If the user adds more category descriptions while the Categories Window is displayed, the FC Manager also creates appropriate new unique identifier entries and the corresponding category description entries in the FCT. In subsequent references to the category descriptions by the FC Manager, these identifiers are used, the corresponding names of the categories being the way the user "connects" with these identifiers. This means that if the user changes the name of a category description, the associated identifier is not changed, thus maintaining the validity of all prior uses of that identifier in the FID.

As an example, assume a file named "jones.mem" located in the "c:\memos" subdirectory and having the file date/time of "01-01-80 01:30" is categorized by a user under the two category descriptions "MEMOS" and "JONES" (see FIG. 3). The FC Manager would make an entry in the FID table (see FIG. 4) as follows (field names are supplied for convenience):

| [FILE_NAME | FILE_LOC | DATE/TIME | NO_CAT. | CAT_ARRAY] |
|------------|----------|-----------|---------|-----------|
| jones.mem | c:\memos | 01-01-80 01:30 | 2 | 008, 300 |

The two identifiers "008" and "300" are obtained from the FCT as the identifiers associated with the category descriptions "MEMOS" and "JONES", respectively. If the category description "MEMOS" is later changed to "NOTES", then the FID entry for "jones.mem" would still be linked to the category description "NOTES" by the identifier "008".

In the preferred embodiment, when the user clicks a "Show Usage" command from the Categories Window menu, the FC Manager checks the FID for the number of references to each category description and displays these numbers next to each category description. This feature enables the user to see which category descriptions are frequently used and which are not used at all. The unused or little used category descriptions may then be deleted, and others may be moved around for better accessibility.

If desired, the process of categorizing existing files can be totally or partially automated. After a number of files have been categorized, word patterns in categorized files can be correlated to the category descriptions. This information can be used to automatically assign (or simply suggest) category descriptions to new and existing uncategorized files.

Further, when categorizing a more extensive, broadly based set of files, category descriptions can be grouped into (overlapping) subjects or projects, with a short list of subjects or projects (effectively a top level category set) shown in a separate window (or on a menu). Once a subject or project is chosen, the category descriptions list is shortened to only show those relevant to that subject or project. Taking that idea further, the inventive categorization system can be used recursively. For example, if all the topics in the Library of Congress were categorized, the number of category descriptions needed would be impractically large and unmanageable. If that list of category descriptions were

itself regarded as the data, the invention can be applied to manage a "higher level" category list to manage and access limited portions of the complete category description list. This kind of "multi-level" categorization can be carried to any depth needed. In essence, this approach is another way of organizing lists of category descriptions of the type contemplated by the present invention, adding back some flavor of a hierarchical structure but with the added benefits of precision of input and certainty of existence.

In summary, categorization of a file in accordance with the invention involves the following steps:

1. defining a list of category descriptions;

2. associating one or more category descriptions with a file; and

3. storing a file record containing file identity information, file location information, and the associated category description(s) for the file.

Finding Files

In the process of search and retrieval, the invention overcomes the problem of search filter definition, ensuring that the user defines a filter which will always find at least one file, thus avoiding wasting time in searching for data that cannot be matched. This is achieved in two ways. First, the user is not required to type the key words to search; instead, the user simply chooses the words in random order from pick lists, making mistyping impossible. Second, as the user builds the search filter definition, categories which would find no data are automatically excluded as pick list possibilities.

In order for a user to find one or more files, the Search Filter Definition state is invoked by opening the Categories Window to display the existing category descriptions (see FIG. 5). The user initiates definition of a search filter by, for example, clicking the mouse on a "Set Categories" button. The user then selects the pre-defined category descriptions for the files which the user wants to find. In the illustrated embodiment, this is done in the same way as when categorizing a file: the user clicks the mouse on each applicable category description. After each click, the categories listed in the Categories Window are narrowed to show only those other categories which are used with the selected categories for at least one other file. The category descriptions may be selected in any order. Moreover, those category descriptions whose selection would not change the matching file list are disabled (e.g., shown as "grayed"), as further described below.

The selected categories comprise the user's search filter, which is said to define, or "map", a hybrid folder. The search filter is used to search through the FID table entries for files which match the search filter criteria, and hence come within the specified hybrid folder (that is, the search locates those file records in the FID that have identifiers that match the identifiers of the selected categories).

Any search technique may be used to search the FID table entries. For example, the FID entries may be sequentially searched and each identifier value in the CATEGORY_ARRAY field for each entry compared to the identifiers of the category descriptions selected by the user. In an alternative embodiment, a concordance file indexed by identifier value may be constructed from the FID entries, and a search

Exhibit __1__   Page __40__

Exhibit __1__   Page __45__

5,544,360

| 11 | 12 |

conducted through the concordance file to generate a list of FID entries matching all search filter identifier values.

In addition to selecting category descriptions for the search filter, the user preferably may also group the categories, and relate the groups with logical connectors. Of course, a group may include just one category description. Although current implementations provide for an automatic "AND" conjunction between selected categories, other logical operators may be used, such as an explicit "AND" operator, or the "OR" or "NOT" operators. For example, the user may define a search filter of "MEMOS AND JONES". The FID would be searched for all entries having both the identifiers "008" (for "MEMOS") and "300" (for "JONES"). In the example shown in FIG. 4, this search filter would find at least the document "jones.mem". Although other searching mechanisms allow similar searches, none use methods which ensure certainty of existence.

In the preferred embodiment, the Categories Window display indicates how many files match the present search filter. In the illustrated embodiment, the actual number of files in the hybrid folder is displayed. However, the file names in the hybrid folder could also be displayed for this purpose.

It is expected that the FID will be relatively small for most implementations, which allows for very quick searching. In defining a search filter, the hybrid folder to which it maps should contain a sufficiently small number of files to make accessing a particular file easy. Thus, a user would normally continue to select category descriptions until the defined hybrid folder contains no more than a few (e.g., 10) files.

Once FID entries matching the search filter are located, the corresponding file names in the hybrid folder are preferably displayed in a File Window 52 (see FIG. 5). The user may then select one or more of the displayed file names, which causes the corresponding files to be retrieved from the appropriated storage device and opened (if only one file is in the hybrid folder, selecting the file can be automatic, thereby obviating display of the file name and manual selection). In operation, the selected file names together with their locations from the selected FID entries are passed to the operating system, which opens the files. Because the FID contains the location of all categorized files on disk, it is not necessary to search any other part of the disk, an action which could be very time consuming.

More particularly, in the preferred embodiment, the usual method of opening a file through the FC Manager is double-clicking on the file entry in the File Window. An alternate method is by selecting a file (by clicking on its entry or typing the first few letters of its name) and clicking on an "Open" button. Both methods can allow the opening of multiple files by using multiple selections, as is known in the art. In the preferred embodiment, the opening process consists of the following steps:

1. The selected entry in the File Window points to the corresponding FID entry. Using this pointer, the associated alias record is retrieved.

2. The alias record is passed to the operating system Alias Manager with the order for "Vast resolution". This method is able to find the file very quickly even if it has been renamed and/or moved to another system folder. If the file name has changed, the user is asked to confirm the new name.

3. If a file has been moved (not copied but moved) to another volume after categorization, and the system has been restarted, then one of the system identifiers (the File ID, which unique is within each volume) for the file has been lost. In such cases, the FC manager

performs an exhaustive search of all files on all mounted volumes, searching only for files with the identical creation date and time of the subject file. The user is notified of this action.

4. The result of both searches may be a list of possible matches rather than just a single match (for example, if the file was duplicated and renamed). The FC Manager searches this list looking for files with the same name and creation date/time as in the FID entry. If none are found, then the user is presented with a list of matches with full paths found by the Alias Manager and is asked to select one for opening.

5. When a file is selected, with or without the help of the user, the alias record is checked and updated if necessary to account for any change in file name and/or location.

The result of the search process is a set of standard file identifiers, that is file name, volume reference number, and directory identification. These are passed to the opening routines in the operating system.

In the preferred embodiment, a user is prevented from defining an empty hybrid folder. All category descriptions are disabled which, if added to the search filter defined by the user, would result in no matching files. Disabling of category descriptions may by shown in many ways. For example, disabled category descriptions may be given different display attributes, such as being grayed or dimmed. Alternatively, the names of disabled category descriptions may simply not be displayed. As another alternative, the user may inhibit disabling category description list contraction by selecting a "Full Lists" option.

Determining which category descriptions are to be disabled may be accomplished in several ways. For example, in one embodiment, when no categories are selected, those categories whose identifiers are not used with any files are disabled. When one or more enabled categories are selected, the FID is searched for all files which have

FID entries using all of the identifiers of all of the categories presently selected, and a determination is made as to which other categories are also used on those files. These other categories remain enabled for further selection, but all other categories are disabled.

For example, if a search filter initially includes only the category description "MEMOS", the FC Manager searches the FID for entries containing the identifier corresponding to "MEMOS". Suppose the FC Manager finds three matching files, one being categorized with the categories "MEMOS", "URGENT", and "OFFICE", another being categorized with the categories "MEMOS", "SENT", and "E-MAIL", and the third being categorized with the categories "MEMOS", "SENT", and "LETTERS". The FC Manager creates a union of the set of identifiers for all of the categories found. In this example, the union is "MEMOS", "URGENT", "OFFICE", "SENT", "E-MAIL", and "LETTERS". All categories not in this union are then disabled.

Stated another way, the FID entries are searched for matches to the most recently selected category description in a first step. As a second step, the category description identifiers in the matching FID entries are used to determine which of the remaining category descriptions are not linked by their identifiers to such entries. For example, if a search filter definition initially includes the category description "MEMOS", the FC Manager searches the FID for entries containing the identifier corresponding to "MEMOS". If, for instance, ten entries were located containing the "MEMOS" identifier, then the FC Manager uses the other identifiers in those ten entries to determine which category descriptions to

Exhibit 1 Page 41

Exhibit 1 Page 46

5,544,360

13

disable. For instance, if none of the ten entries contain identifiers for the category descriptions "SALES" or "PATENT", then those two category descriptions would be disabled. The preferred embodiment for disabling unselectable category descriptions has the effect of making disabling cumulative, so that as the user combines more and more category descriptions in the search filter definition, more and more category descriptions will be disabled. The user chooses from an increasingly limited selection of category descriptions, but will always be assured of having at least one file in the defined hybrid folder.

The ability of the invention to suppress or disable category descriptions that will not result in a match allows definition of a logical operation called "AND PERHAPS". This operation represents a conditional "AND", which means the "AND" conjunctive operation unless with the added search term there would be no match, in which case the term is omitted from the search filter. For example, if the search filter is "MEMOS AND PERHAPS JONES", and "MEMOS" alone would have at least one match, but the addition of "JONES" would cause a non-match, then the "JONES" term is automatically excluded, with a message to the user.

Preferably, the user may also include in the search filter a range of file creation dates and/or times. Preferably, the user may select a predefined range, such as "Last 30 Days". In the illustrated embodiment, the default range is "All Dates". Preferably, those predefined date ranges which would result in no matched files if selected would be disabled. It should be understood that, in general computer systems store file creation date/time as a single relative creation time. Therefore, definition of the date range in the search filter would require a date-to-relative time conversion, as is known in the art. In alternative embodiments, other search criteria may be applied, such as file type, creator type, date last modified, or date last accessed.

To summarize, when a user clicks on a previously unselected category description, that category description is highlighted, the category description is added to the search filter definition, the current number of matching files entered in the FID is computed and displayed, each of the remaining category descriptions are evaluated to be displayed or disabled, and the new list of category descriptions is displayed in the Category Window. Generally, as each category description is selected, the list of category descriptions shrinks because of the removal of all category descriptions which, if checked further, would give zero matching files. In addition, the number of files matching the specified category descriptions is immediately shown in the File Window. These actions prevent the user from defining a hybrid folder which contains no files.

Deselecting a previously selected category description invokes the same routines, except that the result is generally an increase in the number of listed category descriptions. Widening or narrowing the date filter has a similar effect on the displayed list of category descriptions.

Preferably, the last search filter and hybrid folder are stored on a storage medium for future use. (Alternatively, the last n, or all, prior search filters and hybrid folders may be stored for future use.) Thus, when a user desires to access a file, the user is immediately presented with the hybrid folder as last defined. In many instances, the desired file will be in the last hybrid folder created. To maintain information about the Categories Window and File Window, it is useful to store certain data. In the preferred embodiment, such catalog data is stored in the following record structure:

14

```
typedef struct SelectedFiles {
    INT file__match;            number of files matching the
                                current search filter (i.e., the
                                number of files to be displayed
                                in the File Window)
    INT *a_of__match_inds;      pointer to an array containing
                                indexes to FID entries of files
                                matching the current search filter
    INT file__marked;           number of files selected by the
                                user in the File Window
    INT *a_of__marked;          pointer to an array of indexes to
                                FID entries for the files selected
                                by user
    INT *a_of__rs;              pointer to an array of row
                                numbers in the File Window for
                                selected files (i.e., their
                                positions relative to the
                                window)
    INT from__ind;              starting index for file search
                                in the FID catalog
    INT buttons__on;            indicates whether special File
                                Window buttons are enabled
} SelectedFiles;
```

All three arrays pointed to by the structure members are dynamic, meaning that their size changes according to current needs.

In summary, finding a file in accordance with the invention involves the following steps:

1. defining a search filter of category descriptions from a pre-defined list of category descriptions;

2. searching the category descriptions of each previously stored file record for a logical match to the category descriptions of the defined search filter;

3. optionally, disabling selection of all category descriptions that would not provide a match to the defined search filter; and

4. displaying at least part of the file identity information of all records having category descriptions that logically match the category descriptions of the defined search filter.

Outdated FID

Various events may impact the integrity of the identifiers in the FID, such as changes to any part of the fully qualified file path (volume or drive, directory chain, and file name). Such events include:

1. Moving the file into another directory.

2. Changing the file name.

3. Renaming the directory containing the file.

4. Moving the directory containing the file into a different directory.

5. Moving the file to another volume (disk).

6. Deleting the file.

When the invention is implemented under the Apple Macintosh® System 7 operating system utilizing Alias Records, events 1, 2, 3, and 4 have no impact because the file ID (used to access files) is part of the Alias Record and is not changed unless the file is moved to another volume. Preferably, if the user attempts to open a file for which the name was changed, the user will be notified of that fact and will be asked to confirm that the file is the correct one.

Events 5 and 6 may cause a delay before the file is found (for event 5) or determined to no longer exist (for event 6, in which case, an error message is returned). In the illustrated embodiment, when either event 5 or 6 occurs, the Alias Record for the file is updated (after user confirmation) in the FID. In this way, the FID is kept current after each access or attempted access.

On systems that do not provide Alias Records, the FID may store the fully qualified file path (volume or drive,



Exhibit 1 Page 42

Exhibit 1 Page 47

5,544,360

<table>
<tr><td>15</td><td>16</td></tr>
</table>

directory chain, and file name) for the file and the file creation date/time. In such a case, a means is preferably provided for finding files which are not at the location indicated in the corresponding FID entry. For example, a search may be made, beginning with the directory closest to the file's original location, using the creation date/time as the search criteria. It has been found that a file with the identical creation date/time (to the nearest second) of the searched file is generally the desired file. However, there may be situations (such as duplicate files) where more than one such file is found. In that case, the file names of the found files are presented to the user, who selects one.

It should be noted that the present invention may be embodied as a replacement for an operating system, thus replacing the hierarchical file structure, or allowing both the hierarchical and the hybrid file structures to be used together. In such an embodiment, features for resolving ambiguities and keeping track of moved or renamed files can be further optimized using the low level access to the disk directories which the operating system controls.

Special Categories

In the preferred embodiment, category descriptions may be further characterized as "standard" or "special". The characterization of a category description may be indicated by setting a flag field in the corresponding FCT record, as provided in the data structure CATEG_RES described above.

The standard category has the attributes as described above. One special category is the "linking" category. A linking category description is linked to other "linked" category descriptions. A linking category provides for the situation when a file is described by one category description, and the file should also be described by a related category description. Such linkage may be indicated in the corresponding CATEG_RES data structure described above, by recording an array of identifiers for linked category descriptions. A category may be both a linking category and a linked category.

As an example of linking and linked categories, a category named "E-Mail" could be defined as a linking category and linked to the category descriptions "Sent", "Received", "Action", "Urgent", and "Reply". Thus, when a file is categorized as "E-Mail", the user would be given an indication (by any convenient method) that the file should also be assigned to one of the linked category descriptions "Sent", "Received", "Action", "Urgent", or "Reply".

Preferably, when the user selects a linking category, the user is reminded to also select from the corresponding linked category descriptions. The linked categories may be indicated in the Categories Window using a distinctive style such as underline or bold, or using a check mark. Alternatively, a dialogue box may be displayed containing the linked category descriptions. If the user fails to select at least one of the linked category descriptions, a warning dialogue is preferably displayed.

If a user desires to delete a linking category, the linked categories are preferably indicated. The user is preferably given the opportunity to select linked categories to delete.

Another special category type can be called "encrypted". An encrypted category requires a password which is used to initiate encryption of all files which have that category. Encrypted files may not be accessed except by first entering the necessary passwords. For example, the user would be asked to enter the password for each such category description selected when creating a search filter. Since the file contents are encrypted, access without the necessary passwords would only reveal unintelligible codes.

Since files may be assigned to multiple category descriptions, more than one password may be required to access a file. However, once each password is entered, all files using that password are made accessible through the FC Manager. This method of encrypting files has an advantage over current methods in that once a password is entered, the user may access any number of files without further needing a password. Current methods of protecting individual files usually require entry of a password each time the file needs to be opened.

Many other implementations of these ideas are possible in electronic network information management, electronic mail, or any other data management systems. For example, in a large office or on a public or private electronic network, communication between people can be difficult because of the very large number of people trying to communicate. After a certain point, there is an information overload and it is too time consuming to try to search through all the messages for the few of interest. Using the invention, a category description list could be defined for all possible topics (with constant updating by the network administrator and/or by the users). Each user could then use this list of category descriptions to both post messages and search for messages on topics of interest to the user. The user could also set up sets of search filters for particularly important topics. If any messages were to be posted whose topics matched those search filters, they would be immediately sent to the user.

Accordingly, the present invention provides a method for accessing files which has intuitive access by user-defined topics. More particularly, the invention provides: easy access to a large number of files and to files having overlapping categories; simple access to files stored in a hierarchical file system without the necessity of sorting through multiple levels; access to files using predefined categories descriptive of the contents of the files; access to files which permits a user to create a search filter of categories of files using precise category names to which the files belong, with the assurance that the filter will always find some files (although possibly deleted); and a method of accessing files which is unaffected by changes in file contents.

A number of embodiments of the present invention have been described. Nevertheless, it will be understood that various modifications may be made without departing from the spirit and scope of the invention. For example, although the above description has been made with respect to a single computer system, that term is meant to include distributed data storage environments, such as networked computers. Further, although the above description has contemplated that the "user" is a person, the invention can be readily adapted to interact with another computer as the "user". Accordingly, it is to be understood that the invention is not to be limited by the specific illustrated embodiment, but only by the scope of the appended claims.

We claim:

1. A method for accessing files in a data storage system of a computer system having means for reading and writing data from the data storage system, displaying information, and accepting user input, the method comprising the steps of:

(a) initially creating in the computer system a category description table containing a plurality of category descriptions, each category description comprising a descriptive name, the category descriptions having no predefined hierarchical relationship with such list or each other;

(b) thereafter creating in the computer system a file information directory comprising at least one entry

Exhibit __1__ Page __43__

Exhibit __1__ Page __48__

5,544,360

**17**

corresponding to a file on the data storage system, each entry comprising at least a unique file identifier for the corresponding file, and a set of category descriptions selected from the category description table; and

(c) thereafter creating in the computer system a search filter comprising a set of category descriptions, wherein for each category description in the search filter there is guaranteed to be at least one entry in the file information directory having a set of category descriptions matching the set of category descriptions of the search filter.

2. A method for accessing files in accordance with claim 1, wherein each category description comprises a user defined category name and a unique category description identifier created by the computer system.

3. A method for accessing files in accordance with claim 2, wherein each category description further comprises a category type designation.

4. A method for accessing files in accordance with claim 2, wherein the step of creating a category description table comprises the steps of:

(1) accepting user input defining a new category description;

(2) displaying the new category description;

(3) creating a unique category description identifier associated with the new category description; and

(4) storing the new category description and unique category description identifier in the category description table.

5. A method for accessing files in accordance with claim 4, wherein the step of creating a file information directory comprises the steps of:

(1) accepting user input selecting a file;

(2) displaying each category description in the category description table;

(3) accepting user input associating the selected file with at least one category description selected by the user from the displayed category descriptions;

(4) creating a new entry in the file information directory;

(5) storing in the new entry the file identifier of the selected file; and

(6) storing in the new entry the category description identifier of each of the selected category descriptions.

6. A method for accessing files in accordance with claim 5, wherein the data storage system further includes a file name for each file and the step of selecting a file comprises the steps of:

(1) displaying at least one file name; and

(2) accepting a user selected of a file from the displayed file names.

7. A method for accessing files in accordance with claim 1, wherein the step of creating a search filter comprises the steps of:

(1) disabling category descriptions which if added to the search filter would not match the category descriptions of at least one entry in the file information directory;

(2) accepting user input selecting at least one category description as a component of the search filter.

8. A method for accessing files in accordance with claim 7, wherein disabled category descriptions are indicated by means of a unique display attribute.

9. A method for accessing files in accordance with claim 7, wherein the step of creating a search filter further comprises the steps of:

**18**

(1) relating at least two selected category descriptions with logical operations.

10. A method for accessing files in accordance with claim 7, wherein the data storage system includes the time of creation of each file, and the step of creating a search filter further comprises the step of:

(1) accepting user input defining a time range to limit matching to only those entries in the file information directory having creation times in the selected time range.

11. A method for accessing files in accordance with claim 7, wherein each category description comprises a user defined category description name and a unique category description identifier created by the computer system, and further including the step of displaying the name of each file in the file information directory having category description identifiers matching the category description identifiers of the category descriptions in the search filter.

12. A method for accessing files in accordance with claim 11, further comprising the steps of:

(1) selecting one of the displayed file names; and

(2) opening the file corresponding to the selected file name.

13. A method for accessing files in accordance with claim 12, wherein the step of selecting a file name comprises the step of:

(1) accepting user input selecting a file from the displayed file names.

14. A method for accessing files in accordance with claim 12 wherein the step of opening a file comprises the step of:

(1) testing if only one file name is displayed, and if so, then opening the file corresponding to that file name.

15. A system for accessing files in a data storage system comprising:

(a) a plurality of files in a data storage system;

(b) a plurality of user-defined category descriptions, each category description comprising a descriptive name, the category descriptions having no predefined hierarchical relationship with such list or each other;

(c) file association means for associating at least one file with at least one category description selected from the plurality of previously defined category descriptions;

(d) category description addition means for adding one or more additional category descriptions to the plurality of user-defined category descriptions; and

(e) category linking means for linking at least one linking category description to at least one linked category description, such that if a specific file is associated with a linking category description, the user must also associate that specific file with at least one of the linked category descriptions corresponding to the linking category description.

16. A system for accessing files in a data storage system as set forth in claim 15, further including a linking reminder activated upon associating a specific file with a linking category description, such that the linking reminder provides an indication to the user that the user must associate that file with at least one of the linked category descriptions corresponding to the linking category description.

17. A system for accessing files in a data storage system as set forth in claim 15, further including password-controlled file encryption means for encrypting at least one of the plurality of files, such that if a specific file is encrypted, associating that file with a category requires provision by the user of a password, and any access to that file requires provision by the user of a password.

Exhibit ___1___ Page__44__

Exhibit ___1___ Page__49__

5,544,360

<table>
<tr><td>19</td><td>20</td></tr>
</table>

**18.** A system for accessing files in a data storage system of a computer system having means for reading and writing data from the data storage system, displaying information, and accepting user input, wherein each file located on the data storage system has a file name, the system comprising:

(a) means for initially defining in the computer system at least one list having a plurality of category descriptions, each category description comprising a descriptive name, the category descriptions having no pre-defined hierarchical relationship with such list or each other;

(b) means for thereafter accepting user input associating with a file at least one category description from at least one defined list;

(c) means for storing in the data storage system a file record containing at least the file name, file location information, and the associated category descriptions for the file;

(d) means for displaying from each defined list, as selectable items, only those category descriptions associated with at least one file;

(e) means for accepting user positional input defining a search filter of at least one category description selected from at least one displayed defined list;

(f) means for automatically disabling, in the computer system, selectability of all other category descriptions in each displayed list that do not have associated files which are also associated with the category descriptions of the defined search filter;

(g) means for searching in the computer system the category descriptions of each stored file record for a logical match to the category descriptions of the defined search filter;

(h) means for displaying the file names of all file records having category descriptions that logically match each category description of the defined search filter.

**19.** The system for accessing files of claim **18,** further including:

(a) means for accepting user input selecting at least one file from the displayed file names;

(b) means for accessing each selected file on the data storage system using the file location information from the file record associated with each corresponding selected file.

**20.** A method for accessing files in a data storage system of a computer system having means for reading and writing data from the data storage system, displaying information, and accepting user input, wherein each file located on the data storage system has a file name, the method comprising the steps of:

(a) initially defining in the computer system at least one list having a plurality of category descriptions, each category description comprising a descriptive name, the category descriptions having no predefined hierarchical relationship with such list or each other;

(b) thereafter accepting user input associating with a file at least one category description from at least one defined list;

(c) storing in the data storage system a file record containing at least the file name, file location information, and the associated category descriptions for the file;

(d) displaying from each defined list, as selectable items, only those category descriptions associated with at least one file;

(e) accepting user positional input defining a search filter of at least one category description selected from at least one displayed defined list;

(f) automatically disabling, in the computer system, selectability of all other category descriptions in each displayed list that do not have associated files which are also associated with the category descriptions of the defined search filter;

(g) searching in the computer system the category descriptions of each stored file record for a logical match to the category descriptions of the defined search filter;

(h) displaying the file names of all file records having category descriptions that logically match each category description of the defined search filter.

**21.** The method for accessing files of claim **20,** further including the steps of:

(a) accepting user input selecting at least one file from the displayed file names;

(b) accessing each selected file on the data storage system using the file location information from the file record associated with each corresponding selected file.

\* \* \* \* \*

Exhibit 1 Page 47

Exhibit 1 Page 50