Lary Alan Rappaport (SBN 087614)
Joshua J. Pollack (SBN 215922)
PROSKAUER ROSE LLP
2049 Century Park East, Suite 3200
Los Angeles, CA 90067-3206
Telephone: (310) 557-2900
Facsimile: (310) 557-2193
lrappaport@proskauer.com
jpollack@proskauer.com

Steven M. Bauer (admitted *pro hac vice*)
Melissa A. Siegelman (admitted *pro hac vice*)
PROSKAUER ROSE LLP
One International Place, 22nd Floor
Boston, MA 02110
Telephone: (617) 526-9600
Facsimile: (617) 526-9899
sbauer@proskauer.com
msiegelman@proskauer.com

*Attorneys for*
*ENDECA TECHNOLOGIES, INC.*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| SPEEDTRACK, INC.<br><br>　　　　　*Plaintiff*,<br><br>v.<br><br>WAL-MART.COM USA, LLC<br><br>　　　　　*Defendant*. | Case No. 06-cv-07336 PJH<br><br>**ENDECA TECHNOLOGIES, INC.'S REPLY IN SUPPORT OF ITS <u>MOTION TO ENJOIN & DISMISS</u>**<br><br>Before: Hon. Phyllis J. Hamilton |
| ENDECA TECHNOLOGIES, INC.<br><br>　　　　　*Intervenor*,<br><br>v.<br><br>SPEEDTRACK, INC.<br><br>　　　　　*Defendant in Intervention*. | Date:　November 18, 2009<br>Time:　　9:00 a.m.<br><br>Action Filed:　November 29, 2006 |

ENDECA'S REPLY IN SUPPORT OF ITS MOTION TO ENJOIN & DISMISS
NO. C09 4479 PJH

I. **INTRODUCTION**

SpeedTrack has now filed three lawsuits against fifteen Endeca customers, all involving the same Endeca product and the same infringement and invalidity issues. SpeedTrack argues that it has the right to file an endless number of suits against all 600 Endeca customers, so long as it "prevents needless litigation" by seeking to stay these actions.

However, SpeedTrack avoids the key issue here. Every time SpeedTrack files a new lawsuit against another Endeca customer, regardless of whether SpeedTrack then seeks to stay the action, Endeca incurs additional costs, its reputation and good will are irreparably harmed, and the court system has to deal with another case clogging its docket.

SpeedTrack's Opposition does not deny that:

- it explicitly told Endeca's customers that it would not sue them until it resolved its lawsuit with Endeca;

- it breached a written agreement not to sue any additional Endeca customers without providing at least two weeks notice for Endeca to object and file a motion such as this;

- it has no legal right to sue all 600 of Endeca's customers separately; and

- it cannot guarantee that other courts will grant its requests to stay future lawsuits.

In addition, SpeedTrack's legal arguments do not – and cannot – overcome the case law showing that injunctive relief is proper here. Contrary to SpeedTrack's arguments, there is no mandatory rule requiring Endeca to demonstrate its "financial responsibility" for any amount of damages to which SpeedTrack speculates (or wishes) it is entitled. Nor does the law permit duplicative and harassing lawsuits where, as here, the litigation against the manufacturer will be dispositive of the liability issues against its customers.

Moreover, the law is clear that SpeedTrack cannot defeat Endeca's motion without providing any evidence that it would be "substantially prejudiced" by the injunction sought. Although SpeedTrack argues that its ability to recover damages "may be substantially impaired," it fails to provide any evidence showing that an injunction would actually preclude it from

1

1  recovering any damages.  Indeed, SpeedTrack offers no explanation for why it cannot just seek the
2  damages it believes it is entitled to from Endeca in the form of a royalty based Endeca's
3  customers' internet sales.
4       At bottom, this Court has ample authority and discretion to enjoin SpeedTrack's from
5  filing repetitive litigation because an injunction here "would operate to prevent needless litigation
6  without substantial impairment of the patentee's rights…."  *Wilbur v. Superior Concrete*
7  *Accessories*, 217 F. Supp. 600, 601 (N.D. Cal. 1963).
8  **II.  ARGUMENT**
9      **A.  SpeedTrack Incorrectly Argues That An Injunction Would Not
10        Prevent "Needless Litigation."**
11      SpeedTrack makes the bizarre argument that an injunction preventing the filing of more
12 lawsuits against Endeca's customers will *not* avoid "needless litigation."  Docket No. 297
13 (hereinafter "Opp.") at 7.  Indeed, SpeedTrack argues that an injunction is not necessary because *it*
14 is taking steps to "prevent needless litigation" by asking courts to stay every action immediately
15 after it files each suit.  *Id.*
16      However, the filing of repetitive actions – irrespective of whether SpeedTrack seeks to stay
17 them – is needless, because the determination of this case will resolve any liability issues related
18 to Endeca's customers.  Just because SpeedTrack is seeking to stay its most recent action, does not
19 change the fact that it has sued fourteen more Endeca customers without resolving the key
20 infringement and invalidity issues in this action.  Moreover, even if SpeedTrack seeks to stay a
21 new lawsuit, there is no guarantee that the requested stay will be granted.  If Judge White in the
22 most recent action filed, or the presiding judge in any subsequent lawsuit, declines SpeedTrack's
23 request for a stay, Endeca may be forced to litigate the same issues it has already litigated in this
24 case and could be subject to multiple indemnification obligations while the reexamination of the
25 patent-in-suit is still pending and the first two lawsuits are stayed.
26      Without question, SpeedTrack cannot genuinely assert that it has "prevented needless
27 litigation" when it makes clear that it intends to initiate any number of additional lawsuits against
28

Endeca's customers if an injunction is not granted. Arguing that it should be allowed to seek damages from *all* 600 of Endeca's customers individually, SpeedTrack seems to believe that it should be allowed to continue filing identical lawsuits concerning the same patent and the same Endeca technology:

> If the injunction is allowed, SpeedTrack will be unable to seek damages for patent infringement from any of the recently sued Endeca customers, or from any of Endeca's unnamed customers (Endeca represents on its corporate website that it currently has over 600 customers using its technology), thereby causing SpeedTrack to suffer substantial prejudice as … its ability to recover damages against them may be substantially impaired.

Opp at 1-2 (internal citations omitted). It is, therefore, meaningless for SpeedTrack to argue that suing another 600 customers will not create "needless litigation."

For this reason alone, this Court can and should exercise its discretion to enjoin SpeedTrack from threatening or initiating new lawsuits against Endeca's customers. Notably, Endeca's request is not novel, as many districts, including this District, have entered such orders. *Wilbur v. Superior Concrete Accessories*, 217 F. Supp. 600, 601 (N.D. Cal. 1963) (exercising discretion to enjoin new customer suits where it "would operate to prevent needless litigation"); *see also Katz v. Lear Siegler, Inc.*, 909 F.2d 1459, 1464 (Fed. Cir. 1990) (affirming injunction against patentee's filing of additional lawsuits because the first action against the manufacturer would resolve validity and infringement as to its customers).[1]

---

[1] SpeedTrack also argues that Endeca's request to dismiss Endeca's customers from the recent lawsuit is unsupported by the case law. However, this argument is incorrect. Endeca's request is based on the fact that SpeedTrack agreed not to sue these customers without first giving Endeca the opportunity to file this motion. Thus, Endeca merely seeks to put the parties to where they would have been, but for SpeedTrack's breach of an express promise – one upon which Endeca justifiably relied. And, it is well within the discretion of a district court to dismiss subsequently filed suits to prevent needless litigation. *See, e.g.*, *Bergh v. State of Washington*, 535 F.2d 505, 507 (9th Cir. 1976) (upholding dismissal of an action because "[a] court may … in its discretion dismiss a … suit if the same issue is pending in litigation elsewhere"); *Am. Household Prods., Inc. v. Evans Mfg., Inc.*, 139 F. Supp. 2d 1235, 1239 (N.D. Ala. 2001) (dismissing a subsequently filed suit concerning the same issues because it would prevent needless litigation).

### B. SpeedTrack Has Not Demonstrated That It Will be "Substantially Prejudiced" By An Injunction.

SpeedTrack argues that it will suffer "substantial prejudice" if it is enjoined because it will be unable to seek damages for patent infringement from any of the recently sued Endeca customers, or from any of Endeca's "unnamed customers." Opp. at 1-2. Yet, SpeedTrack fails to provide any legal or factual support for its claims.

First, SpeedTrack has not cited to a single case where a court permitted a patentee to initiate multiple new lawsuits against hundreds of additional customers – as SpeedTrack argues it should be permitted to do – just because the patentee claims that an injunction "could" impact the time period for which it *might* be able to recover damages. Opp. at 7. Indeed, SpeedTrack cannot cite to a single case where a court has held that this type of conditional statement was sufficient to show "substantial prejudice." Moreover, SpeedTrack has not even cited to any cases where an injunction was denied based on concrete evidence of a reduction in potential damages.

Instead, SpeedTrack misconstrues the holding in *Bechik Products, Inc. v. Flexible Products, Inc.*, 225 F.2d 603 (2d Cir. 1955), by arguing that the case holds that antisuit injunctions are only permitted where there is a "remote" possibility that patent damages "would be rendered unrecoverable as being beyond the statutory period." Opp. at 8. In fact, the Second Circuit determined that "a change in the initial date of the statutory period in which infringements give rise to the recoverability of damages or lost profits" fails to substantially prejudice a patentee *unless* the patentee has shown that the change in the statutory period would preclude it from recovering "damages accruing *in the period of time in which most of the infringement took place*." *Bechik*, 225 F.2d at 607 (emphasis added). Thus, without demonstrating that an injunction would preclude SpeedTrack from recovering damages when most of the infringement occurred, SpeedTrack's claims of prejudice are immaterial.

Indeed, SpeedTrack's assertion of prejudice is based solely on the fact that there is a reexamination pending and two of Endeca's customers may have used the accused technology for six years already. Opp. at 8. Notably, SpeedTrack fails to provide any reason why it cannot just

1  seek to recover a reasonably royalty from Endeca that takes into account the allegedly infringing
2  acts of its customers.
3       Second, even assuming *arguendo* that this Court could find that SpeedTrack might suffer
4  *some* prejudice as a result of an injunction – a fact which Endeca strongly disputes – SpeedTrack
5  has not shown that this prejudice would be "substantial."  In fact, the only prejudice SpeedTrack
6  points to – a *possible* reduction in damages for two of Endeca's customers – cannot be deemed
7  "substantial."  And, if SpeedTrack thought that it would be "substantially prejudiced" by not
8  preserving the damages period, it would not have told Endeca's customers that it intended to first
9  "pursue its claims for patent infringement against the[ ] defendants [in the present action] before
10 litigating, if necessary, against remaining infringers who have not licensed its technology."  *See*
11 Docket Nos. 292.03 & 293.04 (Exhibits C & D to the Declaration of Melissa A. Siegelman, Esq.
12 In Support of Endeca's Motion to Enjoin & Dismiss).
13      Thus, SpeedTrack has failed to provide any legal or factual support whatsoever for its
14 claims that it will be substantially prejudiced by an injunction preventing it from contacting, filing,
15 or prosecuting any additional suits against Endeca's customers.

16/17     **C.**    **SpeedTrack's Inconsistent and Unsupported Arguments Concerning Responsibility for Damages Should Be Rejected.**

18      SpeedTrack's Opposition also makes inconsistent and unsupported arguments with respect
19 to the issue of Endeca's financial responsibility.  First, SpeedTrack argues that an injunction is not
20 warranted because "[t]his is not a case where … an award of damages against the manufacturer
21 fully satisfies the damages claims against the customers."  Opp. at 1.  Yet, SpeedTrack then
22 contradicts itself by arguing that Endeca's motion is "fatally flawed" because Endeca has not
23 offered proof that it is financially responsible for all potential damages that could be awarded
24 against its more than 600 customers.  Irrespective of these conflicting arguments, SpeedTrack has
25 misinterpreted the facts and the law.
26
27
28

### 1. *SpeedTrack's Argument That It Is Exclusively Seeking Damages From Endeca's Customers Is Irrelevant.*

SpeedTrack argues that because it has chosen not to seek damages for direct infringement from Endeca, and is only asserting the '360 patent's method claims against Endeca's customers, there is no reason why it should be prevented from bringing as many lawsuits as it chooses against anyone believed to be a direct infringer. However, this argument is both irrelevant and inaccurate.

As the Northern District of California has held, "[t]he fact that [a manufacturer] is charged with contributory infringement, as distinguished from direct infringement, is *immaterial*. Infringement of a patent is a tort and both contributory and direct infringers are liable as tort-feasors for the infringement." *Wilbur*, 217 F. Supp. at 601-02 (emphasis added). Thus, because Endeca has entered into indemnification agreements with the majority of its customers, there is a high likelihood that Endeca will be responsible for each customer's alleged direct infringement – regardless of whether SpeedTrack sued them for direct or contributory infringement.

As such, it is unclear why SpeedTrack believes that Endeca will not be affected by or financially responsible for any adverse determinations of infringement and damages against its customers. Thus, this argument fails to provide any basis to deny Endeca's Motion to Enjoin.

Moreover, there is nothing to stop SpeedTrack from seeking its theory of damages from Endeca. If it thinks it is entitled to a royalty based on the internet sales of Endeca's customers, it can make that argument in its claim against Endeca. All SpeedTrack would then need to do is subpoena sales information from Endeca's customers in support of its damages case – instead of suing them all.

### 2. *SpeedTrack Should Be Enjoined, Regardless of Whether Endeca Claims Financial Responsibility for the Hypothetical Damages Asserted.*

SpeedTrack incorrectly argues that the case law requires Endeca to prove that it is financially responsible for all possible damages in order to obtain the order it seeks here.[2] While

---

[2] SpeedTrack asserts that Ninth Circuit law, and in particular *American Chemical Paint Co. v. Thompson Chemical Corp.*, 244 F.2d 64 (9th Cir. 1957), governs. However, because the "pending motion[] now before the Court implicate[s] such unique, patent-related issues, [] the Federal Circuit has indicated that it applies its own law when determining the proper relationship between a pending infringement action and another suit seeking a declaration

some courts have inquired about a manufacturer's financial responsibility or required the posting of a bond, neither is a requirement for the grant of an injunction. *See, e.g.*, *Sortex Co. of N. Am. v. Mandrel Indus., Inc.*, 226 F. Supp. 995, 1002-03 (W.D. Mich. 1964) (enjoining patentee from prosecuting, filing, or threatening to file additional lawsuits against a manufacturer's customers, but not requiring any demonstration of financial responsibility or the posting of a bond); *see also Katz v. Lear Siegler, Inc.*, 909 F.2d 1459, 1464 (Fed. Cir. 1990) (not requiring the posting of a bond or a showing of financial responsibility).

It is well within this Court's discretion to grant the requested injunction without requiring Endeca to prove it has financial responsibility for millions of dollars in speculative damages. Opp. at 9, n.4; *Xeta, Inc. v. Atex, Inc.*, 852 F.2d 1280, 1282 (Fed. Cir. 1988) ("The decision to grant or deny a preliminary injunction is within the sound discretion of the district court."); *see also G.C. & K.B. Invs., Inc. v. Wilson*, 326 F.3d 1096, 1108 n. 8 (9th Cir. 2003) (holding that an antisuit injunction was a permanent injunction which did not require posting a bond); *Kaepa, Inc. v. Achilles Corp.*, 76 F.3d 624, 628 n. 20 (5th Cir. 1996) ("In holding that the amount of security required pursuant to Rule 65(c) 'is a matter for the discretion of the trial court,' we have ruled that the court 'may elect to require no security at all.'").

In addition, SpeedTrack has not – and cannot – cite to any case where a court has conditioned the grant of an injunction on the rigid and unreasonable standards SpeedTrack proposes. In particular, SpeedTrack would have Endeca post a bond in excess of $50 million, before SpeedTrack has provided *any* basis, other than its lawyers' argument, for this "damages" calculation. Nor can SpeedTrack cite to any case where a court has required a manufacturer to demonstrate financial responsible for more than 600 customers – especially where the patentee fails to even name who these customers are.

---

of rights relating to the validity or non-infringement of a patent." *Am. Household Prods., Inc. v. Evans Mfg., Inc.*, 139 F. Supp. 2d 1235, 1239 (N.D. Ala. 2001) (citing *Serco Services Co. v. Kelley Co.*, 51 F.3d 1037, 1038 (Fed. Cir. 1995); *Genentech, Inc. v. Eli Lilly & Co.*, 998 F.2d 931, 937 (Fed. Cir. 1993); *Wilton v. Seven Falls Co.*, 515 U.S. 277, 288-89 (1995)).

This Court can and should exercise its discretion to enjoin further lawsuits where SpeedTrack has engaged in litigation tactics which appear to be undertaken in bad faith. *See Lucasey Mfg. Corp. v. Anchor Pad Int'l*, 698 F. Supp. at 190, 193-94 (N.D. Cal. 1988) (enjoining patentee from threatening a competitor's customers with infringement suits, where as here, the patentee acted in bad faith by suing and sending demand letters to a manufacturer's customers, but failing to file suit against the manufacturer itself); *see also E. & J. Gallo Winery v. Andina Licores S.A.*, 446 F.3d 984, 989 (9th Cir. 2006) (entering an anti-suit injunction and "restrain[ing] a party subject to its jurisdiction from proceeding . . . in circumstances that are unjust").

### D. SpeedTrack Improperly Disregards the Severe Prejudice Endeca Will Suffer Absent An Injunction.

Finally, contrary to SpeedTrack's suggestion that Endeca only argues it will be "inconvenienced" by additional customer suits, the real issue here is that, absent an injunction, SpeedTrack's continued harassment will continue to result in irreparable harm. SpeedTrack *agreed* not to file this lawsuit without advance notice, and it did it anyway. Now, Endeca's good will in the marketplace has been damaged and will continue to be damaged with each new litigation filed and each additional customer threatened or sued. *See* Docket No. [-] (Kelleher Declaration). Endeca cannot sell its product to new customers without exposing them to the threat of a lawsuit by SpeedTrack. *Id.* And, because SpeedTrack has already sued fifteen Endeca customers, it is a real possibility that potential customers will decide not to purchase products from Endeca at all.

In short, the law is clear that this Court can and should grant the requested injunctive relief, preventing SpeedTrack from bringing additional lawsuits against Endeca's customers until the conclusion of the reexamination of the patent-in-suit.

## III. CONCLUSION

For the foregoing reasons, Endeca respectfully requests that this Court enjoin SpeedTrack from contacting, initiating, or prosecuting any further lawsuits against Endeca's customers until the resolution of this action, including the dismissal of Endeca's customers from the recently filed

1  lawsuit captioned *SpeedTrack, Inc. v. Amazon.com, Inc. et al.*, Civ. No. 09 4479 (N.D. Cal.) (filed
2  September 23, 2009).

3
4  DATED: November 4, 2009                       PROSKAUER ROSE LLP
                                                 STEVEN M. BAUER (admitted *pro hac vice*)
5                                                LARY ALAN RAPPAPORT
                                                 JOSHUA J. POLLACK
6                                                MELISSA A. SIEGELMAN (admitted *pro hac vice*)

7
8                                                 */s/ Steven M. Bauer*
                                                    STEVEN M. BAUER
9
                                                  Attorneys for,
10                                                ENDECA TECHNOLOGIES, INC.

11

12
                           **DECLARATION PURSUANT TO**
13                **GENERAL ORDER NO. 45, X(B) – ELECTRONIC CASE FILING**

14         The undersigned hereby attests that he has obtained the concurrence in the filing of this
15  document from each signatory whose ECF User ID and Password is not utilized in the electronic
16  filing of this document.
17         I declare under penalty of perjury under the laws of the United States of America that the
18  foregoing is true and correct.
19         Executed on November 4, 2009 at Boston, Massachusetts.
20                                                   */s/ Melissa A. Siegelman*
21
22
23
24
25
26
27
28

# PROOF OF SERVICE

STATE OF MASSACHUSETTS, COUNTY OF SUFFOLK

I declare that: I am employed in the county of Suffolk, Massachusetts. I am over the age of eighteen years and not a party to the within cause; my business address is One International Place, 22nd Floor, Boston, MA 02110.

On November 4, 2009, I served the forgoing document, described as **ENDECA TECHNOLOGIES, INC.'S REPLY IN SUPPORT OF ITS MOTION TO ENJOIN & DISMISS AND ENDECA'S PROPOSED ORDER GRANTING ITS MOTION TO ENJOIN & DISMISS** on the interested parties in this action by transmitting *via* United States District Court for the Northern District of California Electronic Case Filing Program the document(s) listed above by uploading the electronic files for each of the above-listed documents on this date.

I further declare that I caused a Courtesy Copy of the above-described document to be transmitted to the party below on November 4, 2009, for delivery intended on November 5, 2009, in accordance with Section VI(G) of General Order 45 of United States District Court for the Northern District of California and Standing Order of the Court (Hamilton, J.):

Chambers of the Honorable Phyllis J. Hamilton
c/o Clerk, U.S.D.C., Oakland Division
Attn:  Regarding SpeedTrack Litigation (Case No. C06-7336)
1301 Clay Street, Suite 400 S
Oakland, CA 94612-5212

Executed on November 4, 2009 at Boston, Massachusetts.

                                                        */s/ Melissa A. Siegelman*