```
                                             Pages 1 - 15

                  UNITED STATES DISTRICT COURT

                NORTHERN DISTRICT OF CALIFORNIA

Before The Honorable Phyllis J. Hamilton, Judge

Speedtrack, Inc.,             )
                              )
         Plaintiff,           )
                              )
  VS.                         )      NO. C 06-7336 PJH
                              )
Wal-Mart.com USA, LLC,        )
et al.
                              )
         Defendants.          )
_____ )

                              Oakland, California
                              Wednesday, November 18, 2009

                  TRANSCRIPT OF PROCEEDINGS
```

**APPEARANCES**:

For Plaintiffs:
          HENNIGAN, BENNETT & DORMAN LLP
          865 South Figueroa Street - Suite 2900
          Los Angeles, California 90017
    BY:   **RODERICK G. DORMAN**
          **ATTORNEY AT LAW**

For Intervenor Endeca Technologies, Inc.:
          PROSKAUER ROSE LLP
          One International Place
          Boston, Massachusetts  02110
    BY:   **MELISSA A. SIEGELMAN**
          **ATTORNEY AT LAW**


Reported By:      Kelly L. Bryce, CSR No. 13476, RPR
                  Court Reporter Pro Tem

          Computerized Transcription By Eclipse

```
1    Wednesday - November 18, 2009                          9:14 a.m.
2
3              THE CLERK:  Calling Civil Case Number 06-7336,
4    Speedtrack versus Wal-Mart.com.
5              Appearances?
6              MR. DORMAN:  Good morning, Your Honor.  Rod Dorman
7    on behalf of plaintiff/respondent Speedtrack.
8              THE COURT:  Good morning.
9              MS. SIEGELMAN:  Good morning.  Melissa Siegelman on
10   behalf of Endeca Technologies, Inc.
11             THE COURT:  Good morning.
12             All right.  This is a very interesting motion.  And
13   is it Endeca or Endica (phonetic)?
14             MS. SIEGELMAN:  Endeca.
15             THE COURT:  Endeca seems to enjoin Speedtrack from
16   commencing any further lawsuits against Speedtrack's
17   customers --
18             MS. SIEGELMAN:  Endeca's customers.
19             THE COURT:  -- Endeca's customers, and also seeks an
20   order requiring Speedtrack to dismiss just the customers, I
21   assume, of Endeca --
22             MS. SIEGELMAN:  That's right.
23             THE COURT:  -- because there are other defendants --
24             MS. SIEGELMAN:  That's right.
25             THE COURT:  -- in the case pending on Judge White's
```

1   docket.

2   **MS. SIEGELMAN:** And that dismissal would merely be
3   as a sanction because, Your Honor, we believe that these
4   actions in filing a third lawsuit against additional Endeca
5   customers are really an end run around on the Court's two prior
6   orders to not only stay the second customer lawsuit filed
7   against Endeca customers, which was granted last October -- I'm
8   sorry -- October 2007, but also an end run around on the recent
9   order in February 2009 of staying the entire action pending the
10  reexamination of the patent in suit by the PTO.

11  **THE COURT:** As a preliminary matter, there is a stay
12  in effect, and why is this motion that you've brought today not
13  a violation of the stay?

14  **MS. SIEGELMAN:** Your Honor, we believed that this
15  was the proper forum, and we apologize for any procedural
16  inadequacy of our motion.

17  **THE COURT:** Well, you certainly should have sought
18  leave to file a motion notwithstanding the stay. That would
19  have been the proper procedure. But I've read your papers and
20  I'm prepared to go forward with it.

21  Why isn't it simply sufficient -- I looked at the
22  docket on -- of the case on Judge White's docket, and I see
23  that all the parties have agreed in that case, and there are 20
24  parties, have agreed to a stay of that action pending
25  resolution of the primary patent infringement case that's on my

1  docket.  Why isn't that an appropriate way to proceed?
2          **MS. SIEGELMAN:**  There are a few reasons why that's
3  not appropriate.  First, we believe that the mere filing of the
4  lawsuits, and even if Speedtrack is going to voluntarily ask
5  for a stay, is prejudicing or, excuse me, is harming the good
6  will of Endeca, our ability to sell products, our ability to,
7  you know, tell customers that they aren't going to be sued is
8  being harmed.  So we think that the reputation of Endeca is
9  being harmed and will continue to be harmed even if more
10 lawsuits are filed and then stayed.
11         The second is that there's no guarantee that any
12 subsequent lawsuits are actually going to be stayed.  These are
13 stipulations that have been filed on the record in the third
14 lawsuit, but the Court has neither granted them nor is there
15 any guarantee that any future Court would grant any requests to
16 stay litigation.
17         So there's the possibility that we would be
18 proceeding in multiple, you know, cases at the same time when,
19 you know, it's very expensive and it wastes judicial resources
20 given that there's a -- in your own order you recently stated
21 that there's a substantial likelihood that the PTO's
22 reexamination is going to drastically affect the case.
23         So for those two reasons I think that it's not
24 sufficient, and really it's an issue of -- it's a red herring
25 what this whole situation is, is Speedtrack is claiming they're

1   doing this to preserve damages but they took no action, you
2   know, for years after contacting many of these customers and
3   have given no reason why they cannot seek the same damages from
4   Endeca who's the manufacturer whose technology is at issue.
5           **THE COURT:**  Is it their burden or Endeca's burden to
6   establish the ability or responsibility of Endeca in
7   indemnifying customers or establishing Endeca's ability to
8   cover any damages award should infringement be established?
9   Whose burden is that?
10          **MS. SIEGELMAN:**  Your Honor, I haven't looked into
11  that question of whose burden of proof it is.  My sense is
12  that, given the fact that damages discovery in this case was
13  bifurcated until after a determination of liability, that it
14  would be Speedtrack's burden to show that they're substantially
15  prejudiced here by any injunction that would be granted,
16  because here we've shown that we believe that this is needless
17  litigation and that there will be no substantial prejudice.
18          **THE COURT:**  And what about any statute of
19  limitations problems that Speedtrack might face?
20          **MS. SIEGELMAN:**  Again, I think that the issue here
21  is that Speedtrack has claimed that the damages is going to be
22  affected but they haven't given us any reason to support that.
23          The controlling case that I believe this Court
24  should follow, I mean, it's not controlling precedent but I
25  believe it's on point, is *Bechik* -- let me just find the

1    citation here.  I believe Your Honor has a copy of the case.
2           **THE COURT:**  Was it in your papers?
3           **MS. SIEGELMAN:**  Yes.
4           **THE COURT:**  Okay.  Then you've provided the cite.
5           **MS. SIEGELMAN:**  In *Bechik* I believe that the Second
6    Circuit said that unless the patentee can show that substantial
7    harm will occur based on the shift in the damages period
8    because the amount of damages will be drastically affected
9    based on when the majority of the alleged infringing acts
10   occurred, then there is no substantial prejudice.
11          And we believe that's the case here because
12   Speedtrack hasn't provided any information.  Granted, again,
13   there hasn't been any damages discovery, but they didn't even
14   come to us and say in violation of that, you know, letter
15   agreement to seek -- you know, let us know two weeks before
16   they filed, they didn't even come to us and say, "Look, have
17   any of these people that we're planning to file suit against
18   been using your product for more than six years; or do you know
19   whether these customers of yours that we're planning to sue
20   have been getting most of their sales from your product"; or,
21   you know, things like that.
22          And, so, there hasn't been any showing or attempt to
23   show by Speedtrack that this shift in the damages period is
24   actually going to effect any harm.
25          **THE COURT:**  All right.  Mr. Dorman?

1            **MR. DORMAN:** Your Honor, starting -- Rod Dorman --
2    starting with the last point, I don't think there's any dispute
3    on the papers that we are suffering a statutory bar or would be
4    suffering a statutory bar of seeking damages for two of the
5    five Endeca customers that were sued in the most recent case if
6    we hadn't filed suit.
7            I think if you read those papers, Endeca
8    acknowledges that at least two of its customers have been using
9    the allegedly infringing, contributorily infringing software
10   for more than six years, so that all we were trying to do, as
11   we expressed in our letter to Endeca, as we also expressed in
12   our cover letter to the parties, the new defendants, that we
13   were simply trying to preserve damages, that we did not want to
14   proceed, that we wanted to file the suit and immediately stay
15   it.
16           And I can report, as recently as yesterday, that all
17   20 defendants have stipulated to the stay in Judge White's
18   matter and that matter -- that stipulation and proposed order
19   is being submitted to him at this very time.
20           There are fundamental problems with their motion.
21   To listen to Endeca speak, they describe this as an
22   Endeca-specific lawsuit.  And I'd like the Court to focus on
23   the history of this lawsuit and really what this lawsuit is
24   about, because the facts of this case are inapposite to all of
25   the facts of the cases that they cite in the following respect:

1              Here the patentee never sued the manufacturer.  We
2     never sued Endeca.  All of these other cases, the *Bechik*
3     *Products* case, which, by the way, is not the controlling case.
4     I think the Ninth Circuit case, *American Chemical*, is the most
5     pertinent case, which, by the way, references the *Bechik* case.
6              Those were situations where the patentee first sues
7     the manufacturer because, as we all know, multiple people can
8     be infringers and those were device cases where the
9     manufacturer was in a position to respond potentially in the
10    full amount of the damages that are the subject here.
11             We don't have a device patent.  We have a method
12    patent.  We have a very important guided navigation patent
13    that, as we've discussed with you and as you're aware of from
14    the Markman hearings and all and from the inventor speaking to
15    you about it, that when people go on the Internet and they
16    navigate, the contribution of my client to make sure that there
17    is an assured result as they go through a certain guided
18    navigation system is employed by all these retailers and they
19    are the direct infringers.  They are the persons who are making
20    the most money.  They are the persons who we are seeking
21    damages from.
22             Endeca simply provides software that facilitates
23    that kind of conduct.  They have come in and sought to --
24    they've intervened but the intervention is a bare, narrow
25    intervention for the purpose of a declaratory relief

1   intervention claiming to participate in the noninfringement and
2   the invalidity issues.  There is no damages involved.  We have
3   not counterclaimed for damages against Endeca.  This is not a
4   case where we're seeking any damages against Endeca.
5        The other problem that -- the difference between
6   this case, as it's clear from the facts, is that we have not
7   actively pursued prosecution of additional cases in any way
8   that implicate judicial economy concerns.  We're trying to
9   preserve damages.
10       Right out of the box we are telling everybody we're
11  going to stay this case.  Because what I see the process of
12  these cases occurring, is that we're going to go forward in
13  your case.  That matter is going to be resolved.  Substantially
14  all of the infringement and -- all of the infringement and
15  invalidity issues are going to be resolved with respect to
16  that.  That will commend presumably through Magistrate Judge
17  Spero assisting us in settlement to conclude these many
18  matters.  We're prepared to do this expeditiously, et cetera,
19  and we're doing this in an appropriate process.
20       Now their request, their extraordinary request, that
21  my client be enjoined from pursuing other actions, if they need
22  to, to preserve their rights is legally infirm for a host of
23  additional reasons.
24       First, even if this were a case in which the
25  patentee had sued the manufacturer, which it's not, if we look

1   at the relevant, most pertinent decisional authority, *American*
2   *Chemical*, to even be asking for this injunction, it was their
3   burden to come in and say, "Here's the total amount they may be
4   injured by this -- if this injunction is improperly granted.
5   We're in a position to pay for it.  We'll post a bond of 'X'
6   millions of dollars so that they can't afford any harm."
7   There's not even a proposal to do that in any of their papers
8   as they were required to do.
9           Secondly, there is a second monumental problem for
10  Endeca that they don't even address.  They're seeking an
11  injunction.  Three weeks ago the Ninth Circuit changed its
12  rule, the standard of how injunctions are to be issued by all
13  the courts in the Ninth Circuit.  In the *Stormans, Inc.* versus
14  *Selecky* case, which was in response to the 2008 Supreme Court
15  session where the *Winters* case basically found our standard too
16  lenient, that just had the possibility of irreparable injury,
17  now it's likelihood of irreparable injury as well as likelihood
18  as success on the merits.
19          What they had the burden to do, this is their
20  preliminary injunction motion, is to show that they're likely
21  to prevail in this underlying lawsuit.  For them to prevail,
22  they have to prove likelihood of success on infringement,
23  likelihood of success on invalidity.
24          Now, they waited two years before going to the
25  Patent Office with a reexam after we had had a Markman hearing

1   where the Court rejected what I believe to be their tortured
2   proposed constructions.  You made your own decision as to what
3   was legally appropriate, happened to be consistent with what we
4   believe the case to be.  We filed a motion for summary judgment
5   on infringement.  To avoid hearing that, they ran to the Patent
6   Office.  Now they submitted eight different references to the
7   Patent Office claiming that there were substantial questions of
8   patentability.
9           Now, this is important because you're not aware of
10  this.  In the decision by the Patent Office, the initial
11  decision accepting the reexam, they found that there were
12  substantial questions of patentability with respect to four of
13  the eight, but for four of them there were not.  One of the
14  ones they rejected was the Kleinberger reference.
15          **THE COURT:**  The reexam is still pending, isn't it?
16          **MR. DORMAN:**  Yeah.  But what happens, this is how
17  reexams work, it's still pending, but what happens is, when
18  someone makes a petition, an ex parte application for reexam,
19  the Patent Office has to accept it.  It does its own initial
20  review of okay.  Because when it's an ex parte, and this is
21  very important here, the Patent Office only looks at the
22  contentions that the applicant makes concerning patentability;
23  and it says, "These claims, new questions of patentability as
24  to these claims on these particular prior art references."
25          Well, Kleinberger was the only reference that they

1   indicated had a substantial question of patentability with
2   respect to dependent claim four, which we allege they
3   infringed.
4              In the order granting the reexam, the Patent Office
5   rejected Kleinberger as saying it involved no new questions of
6   patentability.  What that means is, we are assuredly coming
7   back --
8              **THE COURT:**  Kleinberger -- excuse me, Kleinberger
9   being some prior art?
10             **MR. DORMAN:**  One of the eight prior art references.
11  That means that claim four will be undisturbed by this
12  reexamination proceeding.  We're going to be back in front of
13  you.  We know that from the initial receipt we got when it was
14  accepted.
15             So there is -- so they have not even -- they can't
16  even show a likelihood of success on the merits with respect to
17  validity what we know from the Patent Office, and they can't
18  show any of these other things that are required for an
19  injunction.
20             The third problem they have is they have no pleading
21  to support the request that they're making.  You know,
22  generally you need pleadings with request for injunctive relief
23  to support injunctive relief.  Well, there's not that here.
24             And the last point that's very problematic is
25  Endeca's motion completely ignores the need to accord

1   appropriate comity to other courts.  When you decided that this
2   third action was not a related case before Judge White -- I
3   mean, I suspect you would be reluctant to order something to
4   occur in his case, and they just ignore that.
5               **THE COURT:**  I would be a little reluctant, yes.
6               **MR. DORMAN:**  So, I mean, this is a stillborn motion
7   that should not have been brought in the first place, and this
8   has all the sense to me about a client that's frustrated and
9   telling the lawyers, "Go in and do whatever you can just to
10  stop this," but there's no legal basis for it.
11              **MS. SIEGELMAN:**  Your Honor, if I may respond.
12              **THE COURT:**  Brief response, yes.
13              **MS. SIEGELMAN:**  A couple of the points.
14  Speedtrack's counsel has cited to the wrong standard for
15  injunctive relief.  This is a different kind of case when
16  you're looking to initiate an injunction to enjoin further
17  suits against a manufacturer's customers, and he does not
18  contest that the technology that Endeca provides is the
19  technology at issue here.  And that standard is not the same
20  standard as Speedtrack's counsel here cites today.  So I think
21  a lot of his points are missing the mark here.
22              And, you know, Speedtrack admits that there were
23  substantial issues of patentability and that's why the reexam
24  is proceeding.  And Your Honor's order of February 2009 clearly
25  states that it's to avoid substantial costs and expenditures,

1   to stop all litigation on this.
2            I think the key point goes right back to the point
3   that we've kept going on and on in about our papers, is that
4   this is just needless litigation.  They have not shown any
5   reason why they can't seek damages from Endeca for the -- you
6   know, make it an argument that reasonable royalty takes into
7   account the online sales of our customers, which is what
8   they're saying the direct damages is in their case against
9   these Endeca customers.
10           So the bottom line is, just because they're saying
11  they're not claiming damages against Endeca doesn't mean, one,
12  it's not affecting our good will to go out and sue our
13  customers; and, two, there isn't any reason why they can't seek
14  the damages from us.
15           **THE COURT:**  Okay.  All right.  I think that the
16  *American Chemical* case is the -- since it's the only Ninth
17  Circuit case you all have cited, it appears it provide the
18  appropriate standard, and I don't find that Endeca has met the
19  standard set forth in that case.
20           Additionally, there's something else quite troubling
21  about Endeca's position.  First of all, as counsel points out,
22  this matter was fully briefed.  The claim construction had
23  already taken place.  It was fully briefed ready for summary
24  judgment.  This case could have potentially been resolved by
25  now, but Endeca went to the Patent and Trademark Office, filed

1   a request for reexamination, and the reason for the delay in
2   this case is solely at the request of your client --
3            **MS. SIEGELMAN:**  Your Honor, that --
4            **THE COURT:**  -- and to the extent that there is
5   damages that flow therefrom by Speedtrack attempting to
6   preserve the rights that the patent laws provide it, Endeca is
7   has some responsibility for the amount of the delay given the
8   request for reexamination.  I don't believe that Speedtrack
9   joined in that request.  I think it was a request of the
10  intervenor Endeca.  So the motion is denied.
11           **MR. DORMAN:**  Thank you, Your Honor.
12           **THE COURT:**  Counsel, I'm going to ask you to prepare
13  an order for my signature.
14           **MR. DORMAN:**  I will, Your Honor.  Thank you.
15               (Proceedings adjourned at 9:34 a.m.)

**CERTIFICATE OF REPORTER**

      I, KELLY BRYCE, Court Reporter for the United States Court, Northern District of California, hereby certify that the foregoing proceedings in C 06-7336 PJH, Speedtrack, Inc. versus Wal-Mart.com USA, Inc., et al., were reported by me, a shorthand reporter, and were thereafter transcribed under my direction into typewriting; that the foregoing is a full, complete and true record of said proceedings as bound by me at the time of filing.

      The validity of the reporter's certification of said transcript may be void upon disassembly and/or removal from the court file.

*Kelly Bryce*

Kelly Bryce, Court Reporter

Monday, January 4, 2010