1   Lary Alan Rappaport (SBN 087614)
    Joshua J. Pollack (SBN 215922)
2   PROSKAUER ROSE LLP
    2049 Century Park East, Suite 3200
3   Los Angeles, CA 90067-3206
    Telephone: (310) 557-2900
4   Facsimile: (310) 557-2193
    lrappaport@proskauer.com
5   jpollack@proskauer.com
6
    Steven M. Bauer (Admitted *Pro Hac Vice*)
7   Colin G. Cabral (Admitted *Pro Hac Vice*)
    PROSKAUER ROSE LLP
8   One International Place
    Boston, MA 02110
9   Telephone: (617) 526-9600
    Facsimile: (617) 526-9899
10  sbauer@proskauer.com
    ccabral@proskauer.com
11
12  Attorneys for
13  ENDECA TECHNOLOGIES, INC. and WAL-MART.COM USA, LLC*
14  *Additional Counsel Listed on Signature Block

15              **UNITED STATES DISTRICT COURT**

16           **NORTHERN DISTRICT OF CALIFORNIA**

17                 **OAKLAND DIVISION**

18

| | |
|---|---|
| 19  SPEEDTRACK, INC. | Case No. C 06-7336 PJH |
| 20           *Plaintiff*, | **MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT OF NON-INFRINGEMENT OF U.S. PATENT NO. 5,544,360** |
| 21  v. | |
| 22  WAL-MART.COM USA, LLC | |
| 23           *Defendant*. | |
| 24  ENDECA TECHNOLOGIES, INC. | Before: Hon. Phyllis J. Hamilton |
| 25           *Intervenor*, | HEARING DATE: August 10, 2011 TIME:  9:00 a.m. |
| 26  v. | ACTION FILED: November 29, 2006 |
| 27  SPEEDTRACK, INC. | **ORAL ARGUMENT REQUESTED** |
| 28           *Defendant in Intervention*. | |

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## NOTICE OF MOTION AND MOTION

PLEASE TAKE NOTICE that on August 10, 2011, at 9:00 a.m., Wal-Mart.com USA, LLC ("Walmart.com") and Endeca Technologies, Inc. ("Endeca") will move this Court pursuant to Fed. R. Civ. P. 56 and L.R. 56-1 for summary judgment of non-infringement of U.S. Patent No. 5,544,360 ("the '360 Patent"). This Motion is based on this Notice of Motion and Motion, the following Memorandum of Points and Authorities, the Declaration of Colin Cabral ("Cabral Decl.") and the exhibits attached thereto filed herewith, and on such other matters as may have been filed with the Court or will be presented to the Court at the time of the hearing.

Walmart.com and Endeca respectfully request that the Court grant summary judgment that there is no direct or indirect infringement of the '360 Patent by either Walmart.com, or Endeca.

1
2
## <u>TABLE OF CONTENTS</u>

3   TABLE OF AUTHORITIES ............................................................................................ iv

4   MEMORANDUM OF POINTS AND AUTHORITIES .................................................. 1

5   I.        INTRODUCTION ............................................................................................... 1

6   II.       FACTUAL BACKGROUND ............................................................................. 4

7           A.        U.S. Patent No. 5,544,360 ....................................................................... 4

8                   1.        The '360 Patent Requires "Category Descriptions Having No
9                             Predefined Hierarchical Relationship With . . . Each Other" ......................... 4

10                  2.        The '360 Patent Also Requires the Presence of "Category
11                            Descriptions" in a "File Information Directory" or "File Record" ................. 5

12                  3.        The '360 Patent Also Requires that a "Category Description
                              Table" or a "List Having a Plurality of Category Descriptions" Be
13                            Created "Initially" in the Computer System .................................................. 5

14                  4.        In the '360 Patent, a Remote User Defines the "Search Filter" By
15                            Selecting "Category Descriptions" From Pick Lists...................................... 6

16          B.        SpeedTrack Accuses Walmart.com of Direct Infringement and Endeca of
                      Indirect Infringement ............................................................................... 7

17  III.      ARGUMENT ....................................................................................................... 8

18          A.        Walmart.com Does Not Directly Infringe the Asserted Claims of the '360
19                    Patent.......................................................................................................... 8

20                  1.        The "Category Descriptions" Identified by SpeedTrack Have
                              Predefined Hierarchical Relationships with Each Other ............................... 9
21
22                          a.        The Dimension Values in the Walmart.com System Are
                                      Organized Into Hierarchical Tree Structures Containing
23                                    Other Dimension Values............................................................... 10

24                          b.        All Dimension Values Are Organized Logically in a Single,
                                      Global Hierarchy in the Walmart.com System ........................... 12
25
26                  2.        The "File Information Directory" and "File Records" Identified by
                              SpeedTrack Do Not Contain "Information That Includes a Name
27                            that is Descriptive of Something about a Stored File"................................. 15

28

3. The "Category Description Table" and "List Having a Plurality of Category Descriptions" Identified by SpeedTrack Are Not "Initially" Created in the Walmart.com Computer System ........................17

4. Walmart.com Does Not Infringe Claims 1-4, 7, and 11-14 Because Actions by Remote Users Are Required to Create the "Search Filter," and the Users Are Not Under Walmart.com's Direction or Control ................................................................................................19

B. Summary Judgment of No Indirect Infringement Is Appropriate as to Walmart.com Because SpeedTrack No Longer Accuses Walmart.com of Indirect Infringement ....................................................................................21

C. Endeca Does Not Indirectly Infringe the Asserted Claims of the '360 Patent Because SpeedTrack Has Not Offered any Evidence of Specific Intent to Satisfy the Legal Standard for Indirect Infringement ..................22

D. Summary Judgment of No Direct Infringement Is Appropriate as to Endeca Because SpeedTrack Has Not Accused Endeca of Direct Infringement ............................................................................................24

IV. CONCLUSION ............................................................................................25

1

## TABLE OF AUTHORITIES

2

3    CASES

4    *BMC Res., Inc. v. Paymentech, L.P.*,
         498 F.3d 1373 (Fed. Cir. 2007)..............................................................3, 20, 22, 24

5

6    *Celotex Corp. v. Catrett*,
         477 U.S. 317 (1986).........................................................................................8

7    *DSU Med. Corp. v. JMS Co.*,
         471 F.3d 1293, 1304 (Fed. Cir. 2006) ...............................................................22

8

9    *Global Patent Holdings, LLC v. Panthers BRHC LLC*
         586 F. Supp. 2d 1331, 1335-36 (S.D. Fla. 2008),

10        *aff'd* 318 F. App'x 908 (Fed. Cir. 2009).....................................................20, 21

11   *Global-Tech Appliances, Inc. v. SEB S.A.*,
         No. 10-6, 2011 U.S. LEXIS 4022 (May 31, 2011).........................................1, 21

12

13   *Mikkelsen Graphic Eng'g Inc. v. Zund Am., Inc.*,
         No. 07-cv-391, 2011 U.S. Dist. LEXIS 38270 (E.D. Wis. Apr. 7, 2011) ..............23

14

15   *Muniauction, Inc. v. Thomson Corp.*,
         532 F.3d 1318 (Fed. Cir. 2008)...................................................................20, 21

16   *Novartis Corp. v. Ben Venue Laboratories, Inc.*,
         271 F.3d 1043 (Fed. Cir. 2001)........................................................................8

17

18   *TechSearch, L.L.C. v. Intel Corp.*,
         286 F.3d 1360 (Fed. Cir. 2002).........................................................................8

19   *Tecsec, Inc. v. IBM*,
         No. 1:10-cv-115, 2011 U.S. Dist. LEXIS 21726 (E.D. Va. Mar. 3, 2011)..............23

20

21   *Wordtech Sys. v. Integrated Network Solutions, Inc.*,
         609 F.3d 1308 (Fed. Cir. 2010).................................................................1, 24

22

23   *Zamora Radio, LLC v. Last.FM, LTD*,
         No. 09-20940, 2010 U.S. Dist. LEXIS 136208 (S.D. Fla. Nov. 5, 2010) ...........21, 23, 24

24

25   STATUTES

26   35 U.S.C. § 271(b).........................................................................................1, 21, 22

27   35 U.S.C. § 271(c) ........................................................................................1, 23, 24

28

1    **MEMORANDUM OF POINTS AND AUTHORITIES**

2  **I.    INTRODUCTION**

3         SpeedTrack alleges that Walmart.com's retail website and, more specifically,

4  Walmart.com's use of Endeca's Navigation Platform software, infringes the '360 Patent.  Endeca's

5  software allows internet retailers, such as Walmart.com, to facilitate navigation of their websites by

6  potential customers.  The technology allows users to follow logical pathways to the products and

7  information they need, either by searching, browsing, or a combination of the two.  The software

8  has made Endeca a leading provider to internet retailers since the company was founded in 1999.

9         SpeedTrack has accused Walmart.com of direct infringement and Endeca of indirect

10  infringement, alleging that Endeca induces infringement under 35 U.S.C. §271(b) and contributes

11  to infringement under 35 U.S.C. §271(c).

12         As a threshold matter, SpeedTrack's allegations of indirect infringement directed against

13  Endeca are deficient as a matter of law.  In *Global-Tech Appliances, Inc. v. SEB S.A.*, the Supreme

14  Court held that knowledge of infringement is required for indirect infringement under Section

15  271(b) of the Patent Act.[1]  The same level of knowledge is also needed for contributory

16  infringement under Section 271(c).[2]  Yet, SpeedTrack has neither alleged, nor cited any evidence to

17  suggest, that Endeca possessed the knowledge required for liability under Sections 271(b) and (c).

18  In fact, Endeca was not even aware of the '360 Patent before SpeedTrack brought this suit against

19  its customer, Walmart.com.  Absent any evidence or allegation that Endeca had knowledge that: (1)

20  it induced acts constituting infringement of the '360 Patent; or (2) its software was especially

21  designed for use in a patented invention, SpeedTrack's indirect infringement claim fails as a matter

22

23

24  [1]    *See* No. 10-6, 2011 U.S. LEXIS 4022, *21 (May 31, 2011) ("[W]e now hold that induced
25  infringement under §271(b) requires knowledge that the induced acts constitute patent
   infringement.").

26  [2]    *See Wordtech Sys. v. Integrated Networks Solutions, Inc.*, 609 F.3d 1308, 1316 (Fed. Cir.
   2010) ("Under 35 U.S.C. § 271(c), a party who sells a component *with knowledge that the*
27  *component is especially designed for use in a patented invention*, and is not a staple article of
   commerce suitable for substantial noninfringing use, is liable as a contributory infringer.")
28  (emphasis added).

of law.  Further, because SpeedTrack has not accused Endeca of direct infringement, the Court should grant Endeca's motion for summary judgment of non-infringement.

The Court should also grant Walmart.com's motion for summary judgment.  The '360 Patent describes a method for finding files stored on a computer (*e.g.* "a file named 'jones.mem' located in the 'c:backslash.memos' subdirectory") by having a user assign and select keywords that are descriptive of those stored files (*e.g.*, "MEMOS" and "JONES").  The patent bears no relation to internet retail websites or the accused technology.  Yet, to keep this case going, SpeedTrack stretches virtually every element of the claims to gin up an argument that it hopes can reach a jury. But there are at least *four* reasons that the patent does not cover the accused technology.

*First*, the claims of the '360 Patent require "category descriptions having no predefined hierarchical relationship . . . with each other."  There is no factual dispute that the "category descriptions" identified by SpeedTrack are organized into hierarchical tree structures and have predefined hierarchical relationships between them.  Indeed, SpeedTrack's expert conceded as much.  Faced with this fact, SpeedTrack now argues that despite the plain language of the claims and the Court's claim construction, the '360 Patent actually *permits* hierarchical relationships between the "category descriptions," prohibiting only a *single hierarchical structure* containing every "category description."  SpeedTrack's position simply has no support in the claims, the written description, or the prosecution history of the '360 Patent.  And, in any event, the "category descriptions" in the Walmart.com system are, in fact, organized into a single, global hierarchy under a "primary dimension."  SpeedTrack has proffered no evidence to counter this indisputable fact.

*Second*, the Court should grant summary judgment of non-infringement because the "file information directory" and "file records" identified by SpeedTrack do not contain "category descriptions," which the Court construed to mean "information that includes a name that is descriptive of something about a stored file."  SpeedTrack has not identified any descriptive names (*e.g.*, "MEMOS") in the accused "file information directory" or "file records;" instead, it points only to a series of numbers.  Put simply, a series of numbers is not "descriptive of something about

a stored file."  Because all of the asserted claims require either a "file information directory," or a "file record" containing "information that includes a name that is descriptive of something about a stored file," Walmart.com does not infringe the '360 Patent.

*Third*, the Court should grant summary judgment because the "category description table" and "list having a plurality of category descriptions" identified by SpeedTrack are not created "initially" in the system, as the claims require.  During the reexamination proceedings, the Patent Office allowed many of the claims (after a number of rejections) because the Examiner was convinced that the ordinary meaning of "initially" involved "existing or occurring *at the beginning*" of the claimed method.  Specifically, the Patent Office stated that because the descriptive keywords (*i.e.*, "category descriptions") in the prior art were derived from pre-existing data in the computer system, the "category description table" in the same art was not created "initially" in the system.  There is no factual dispute that the accused "category descriptions" in the Walmart.com system are also derived from pre-existing data that are fed into the Endeca software.  Under the plain meaning of "initially," Walmart.com does not infringe because the "category description table" and "list having a plurality of category descriptions" identified by SpeedTrack are not created *at the beginning* of the accused process.

*Last,* the Court should grant Walmart.com's motion for summary judgment because, in order for infringement to occur, the law requires that one party must perform or control all of the steps of the accused method.[3]  Here, however, there is no dispute that actions taken by remote users visiting the Walmart.com website are necessary to create the "search filter" required by claims 1-4, 7, and 11-14 of the '360 Patent.  If no users visited the Walmart.com website, there would be no infringement of these claims.  Because SpeedTrack has not alleged, and indeed, cannot allege, that Walmart.com directs or controls the actions of the remote users visiting the Walmart.com website, there can be no direct infringement of claims 1-4, 7, and 11-14.

For at least these reasons, no genuine issue of material fact exists to preclude a finding of summary judgment of non-infringement.

---

[3]     *See BMC Res., Inc. v. Paymentech, L.P.*, 498 F.3d 1373, 1378-80 (Fed. Cir. 2007).

## II.     FACTUAL BACKGROUND

### A.     U.S. Patent No. 5,544,360

On August 6, 1996, the United States Patent and Trademark Office ("PTO") issued U.S. Patent No. 5,544,360, entitled "Method for accessing computer files and data, using linked categories assigned to each data file record on entry of the data file record."  *See* Exhibit A, '360 Patent ("Ex. A").[4]

The '360 Patent describes a method for accessing computer files that "allows a user to define categories for files stored in a computer system, and to edit such categories as they are used, to designate all applicable categories for each file, and to link categories in user-definable ways." Ex. A, '360 Patent, at Col. 3:66-4:4.

### 1.     The '360 Patent Requires "Category Descriptions Having No Predefined Hierarchical Relationship With . . . Each Other"

The two independent claims at issue in this case – claims 1 and 20 – describe methods that involve the use of "category descriptions." *See* Ex. A, '360 Patent, at Col. 16:55-17:11, 20:1-37. The Court has construed the term "category description" to mean "information that includes a name that is descriptive of something about a stored file."  Docket No. 132, Claim Construction Order, at 25.

Claims 1 and 20 of the '360 Patent require "category descriptions having no predefined hierarchical relationship with such list [of category descriptions] or each other."  *See* Ex. A, '360 Patent, at Col. 16:63-65, 20:10-11.  The Court has construed the term "having no predefined hierarchical relationship" to mean:

> The category descriptions have no predefined hierarchical relationship.  A hierarchical relationship is a relationship that pertains to a hierarchy.  A hierarchy is a structure in which components are ranked into levels of subordination; each component has zero, one, or more subordinates; and no component has more than one superordinate component.

Docket No. 132, Claim Construction Order, at 25.

---

[4]     All exhibits are attached to the Declaration of Colin Cabral, dated July 6, 2011 ("Cabral Decl."), filed concurrently with this motion.

2.      **The '360 Patent Also Requires the Presence of "Category Descriptions"**
**in a "File Information Directory" or "File Record"**

Claim 1 of the '360 Patent requires the creation of a "file information directory"

comprising, among other things, a "set of category descriptions."  Ex. A, '360 Patent, at Col. 16:66-

17:4.  Step (b) of claim 1 reads:

> [T]hereafter creating in the computer system *a file information directory comprising*
> at least one entry corresponding to a file on the data storage system, each entry
> comprising at least a unique file identifier for the corresponding file, and *a set of*
> *category descriptions* selected from the category description table . . .

Ex. A, '360 Patent, at Col. 16:66-17:4 (emphasis added).

Similarly, claim 20 of the '360 Patent requires the storing of a "file record" in the computer

system that contains "at least the file name, file location information, and the associated category

descriptions for the file."  *Id.* at Col. 20:15-17.

3.      **The '360 Patent Also Requires that a "Category Description Table" or a**
**"List Having a Plurality of Category Descriptions" Be Created**
**"Initially" in the Computer System**

Claim 1 of the '360 Patent requires "*initially* creating in the computer system a category

description table . . ." and "*thereafter* creating in the computer system a file information directory .

. . ."  *See* Ex. A, '360 Patent, at Col. 16:55-17:4 (emphasis added).

Similarly, claim 20 requires "*initially* defining in the computer system at least one list

having a plurality of category descriptions" and "*thereafter* accepting user input. . . ."  *See id.* at

Col. 20:7-15 (emphasis added).

During the reexamination proceedings, the Patent Office rejected the majority of the

asserted claims on the grounds that the prior art disclosed the occurrence of step (a) of claim 1

*before* step (b):

> Since the keywords are added to the category description table (keyword file 46)
> *before* the textnumber and list of keynumbers are added to the text-keyword file 48,
> the system of Kleinberger *initially* creates in the computer system a category
> description table containing a plurality of category descriptions and *thereafter*
> creates in the computer system a file information directory comprising at least one
> entry corresponding to a file on the data storage system.

Exhibit B, Excerpt from Reexamination Proceedings, at SPEED 13372 ("Ex. B") (emphasis in original).)  The Examiner later reversed herself, however, using the plain and ordinary meaning of the term "initially" – *i.e.*, "existing or occurring at the beginning" – to distinguish the prior art and withdraw her rejection of the majority of the asserted claims:

> [E]ven though Kleinberger teaches adding the keywords are [sic] to the category description table (keyword file 46) *before* the textnumber and list of keynumbers are added to the key-keyword file 48, this is not the same as initially creating in a [sic] the computer system a category description table containing a plurality of category descriptions.

*Id.* (emphasis in original).  The Examiner continued: "*Moreover, since the keywords [i.e., "category descriptions"] are derived from the text files, (a) the keyword file [i.e., "category description table"] is not initially created in the computer system* and (b) the set of category descriptions for each entry of the file information directory is not selected from the category description table." *Id.* (emphasis added).

### 4.    In the '360 Patent, a Remote User Defines the "Search Filter" By Selecting "Category Descriptions" From Pick Lists

Claims 1 and 20 of the '360 Patent require the creation of a "search filter."  Ex. A, '360 Patent, at Col. 17:5-6, 20:22-24.  The Court has construed the term "search filter" to mean:

> [A] set of one or more category descriptions (depending upon the context of claim 1 or claim 20) and at least one logical operator if there is more than one category description in the search filter that is used to search.

*See* Docket No. 132, Claim Construction Order, at 25.

The written description of the '360 Patent states that the user "defines" or "builds" the "search filter" by selecting one or more category descriptions from pick lists.  *See* Ex. A, '360 Patent, at Abstract ("In the process of search and retrieval, the invention ensures in two ways that *the user defines a filter* which will always find at least one file.") (emphasis added); *id.* at Col. 4:5-12 ("In the process of search and retrieval, the invention overcomes the problem of search filter definition, *ensuring that the user defines a filter* which will always find at least one file . . . [T]he user simply chooses the words from pick lists, making mistyping impossible.") (emphasis added); *id.* at Col. 10:20-23 (same); *id.* at Col. 11:10-11 ("For example, the user may define a search filter

of 'MEMOS AND JONES'."); *id.* at Col. 12:22-24 ("All category descriptions are disabled which, if added to the search filter defined by the user, would result in no matching files."); *id.* at Abstract ("As the user builds the search filter definition, categories which would find no data are automatically excluded as pick list possibilities."); *id.* at Col. 4:12-14 (same); *id.* at Col. 10:27-37 (same).

**B.     SpeedTrack Accuses Walmart.com of Direct Infringement and Endeca of Indirect Infringement**

On March 29, 2007, SpeedTrack served Walmart.com with its "Disclosure of Asserted Claims and Preliminary Infringement Contentions."  Exhibit C, SpeedTrack's Infringement Contentions to Walmart.com ("Ex. C").  On June 8, 2007, SpeedTrack served Endeca with its "Disclosure of Asserted Claims and Preliminary Infringement Contentions".  Exhibit D, SpeedTrack's Infringement Contentions to Endeca ("Ex. D").  Pursuant to an agreement between the parties, SpeedTrack provided Walmart.com and Endeca with a more detailed set of infringement contentions on July 21, 2008, in response to Endeca's Interrogatory No. 1.  Exhibit E, SpeedTrack Response to Interrogatory No. 1 ("Ex. E").

SpeedTrack's infringement contentions accuse Walmart.com of direct infringement with respect to claims 1-4, 7, 11-14, 20 and 21 of the '360 Patent.  *See id.* at 7.  Despite accusing Walmart.com of indirect infringement in its Complaint (*see* Docket No. 1, Complaint, at ¶ 11), SpeedTrack did not include any allegations of indirect infringement against Walmart.com in its infringement contentions.  *See generally* Ex. E, SpeedTrack Response to Interrogatory No. 1.

By contrast, SpeedTrack's contentions accuse Endeca of indirect infringement with respect to claims 1-4, 7, 11-14, 20 and 21 of the '360 Patent.  *See id.* at 7.  In particular, SpeedTrack contends that "Endeca instructs its customers, including Wal-Mart, as to the use and operation of its Endeca Navigation Platform in many documents."  *See id.*, at Exhibit A, p. 1.  SpeedTrack's contentions do not include any allegations of direct infringement by Endeca.  *See generally id.*

**III.     ARGUMENT**

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

 "[S]ummary judgment of noninfringement may only be granted if, after viewing the alleged facts in the light most favorable to the nonmovant and drawing all justifiable inferences in the nonmovant's favor, there is no genuine issue whether the accused device is encompassed by the patent claims." *Novartis Corp. v. Ben Venue Laboratories, Inc.*, 271 F.3d 1043, 1046 (Fed. Cir. 2001).  "Summary judgment of noninfringement is also appropriate where the patent owner's proof is deficient in meeting an essential part of the legal standard for infringement, because such failure will render all other facts immaterial." *TechSearch, L.L.C. v. Intel Corp.*, 286 F.3d 1360, 1369 (Fed. Cir. 2002).

The facts discussed below are as SpeedTrack alleges them.  The claim construction is as the Court has defined it.  There is no question that the accused technology does not fit the Court's claim construction.

**A.      Walmart.com Does Not Directly Infringe the Asserted Claims of the '360 Patent**

Walmart.com does not directly infringe the asserted claims of the '360 Patent for at least four reasons.

*First*, the accused "category descriptions" (*i.e.*, Endeca dimension values) have predefined hierarchical relationships with each other.

*Second*, the accused "file information directory" (claim 1) and "file records" (claim 20) do not contain "category descriptions," as that term has been construed by this Court.

*Third*, neither the accused "category description table" (claim 1), nor the accused "list having a plurality of category descriptions" (claim 20) is "initially" created in the computer system because the accused "category descriptions" are derived from pre-existing source data.

1    *Last*, there can be no "search filter," as that term is used in claim 1 of the '360 Patent,

2    without the actions of remote users visiting the Walmart.com website, and the users are not subject

3    to Walmart.com's direction or control.

4        For any or all of these reasons, the Court should grant Walmart.com's motion for summary

5    judgment of non-infringement.

6

7    **1.      The "Category Descriptions" Identified by SpeedTrack Have Predefined
              Hierarchical Relationships with Each Other**

8        All asserted claims of the '360 Patent require "category descriptions having no predefined

9    hierarchical relationship . . . with each other." *See* Ex. A, '360 Patent, Claims 1(a), 20(a).  The

10   Court has construed the term "having no predefined hierarchical relationship" to mean:

11

12           The category descriptions have no predefined hierarchical relationship.  A
             hierarchical relationship is a relationship that pertains to a hierarchy.  A hierarchy is
             a structure in which components are ranked into levels of subordination; each

13           component has zero, one, or more subordinates; and no component has more than
             one superordinate component.

14

15   Docket No. 132, Claim Construction Order, at 13-14.

16       SpeedTrack contends that each Endeca "dimension" in the Walmart.com system comprises

17   a list of so-called "category descriptions."  *See* Ex. E, SpeedTrack Response to Interrogatory No. 1,

18   at Exhibit A, p. 2.  SpeedTrack further contends that the individual "dimension values" in each list

19   are the "category descriptions."  *See id.* ("Endeca's so-called 'dimension values' are the '360

20   patent's 'category descriptions.'").  For example, according to SpeedTrack, the Endeca dimension

21   "Brand" includes a number of dimension values (*e.g.*, Braun, Garmin, Little Tikes, etc.) that are

22   "category descriptions."  *See id.* at 2-3.

23       There can be no genuine factual dispute that the accused "category descriptions" in the

24   Walmart.com system have predefined hierarchical relationships with each other.  Endeca's

25   technology specifically organizes the accused "category descriptions" in the Walmart.com system

26   into hierarchical tree structures containing other "category descriptions."  Moreover, *all* of the

27   accused "category descriptions" in the Walmart.com system are organized into single, global

28   hierarchy.

---

a.   **The Dimension Values in the Walmart.com System Are Organized Into Hierarchical Tree Structures Containing Other Dimension Values**

SpeedTrack's expert acknowledged that the "category descriptions" in the Walmart.com system have predefined hierarchical relationships.  *See*, *e.g.*, Exhibit F, Deposition of Richard Korf ("Korf Tr."), dated Dec. 3, 2008 ("Ex. F"), at 117:9-14 ("Q. Isn't your view that Wal-Mart technology has a number of hierarchical tree structures?  A. Some of the dimension values – some of the dimensions in Wal-Mart.com or Endeca are organized into hierarchical tree structures."); *id.* at 121:4-11 ("Q. Would you agree that some category descriptions in the Endeca system have a predefined hierarchical relationship with each other?  A. If I were to restrict the scope of -- if I looked at a -- there are subsets of category descriptions in the Endeca system which have a predefined hierarchical relationship.").

The hierarchical nature of the dimension values in the Walmart.com system could not be clearer.  Endeca dimension values allow internet retailers, such as Walmart.com, to better organize their data by employing a *hierarchical* tagging system.  *See* Exhibit G, Endeca™ Navigation Platform Concepts Guide ("Endeca Concepts Guide") [WMT 28884] ("Ex. G"), at 27 ("Your Endeca application can have many dimensions, and dimensions can be hierarchical.  A dimension is a collection of related dimension values, organized into a tree.").

Endeca's product literature defines the term "dimension values" as follows:

> Dimension values are tags, or labels, you use to classify the records in your data set. *Tagging a record with a dimension value . . . organizes the record within the tree structure of the associated dimension*.

*Id.* at 27 (emphasis added).  Dimension values having more than two levels of subordination are known as "hierarchical dimensions" or "dimension hierarchies."  *See id.* at 36.  An example of a hierarchical dimension is shown below:



*See* Ex. G, Endeca Concepts Guide, at 27.  The dimension root in the above figure ("Wine Type") is the top-most dimension value in the tree structure and is treated and stored in the same manner as the dimension values in the lower levels of subordination (*e.g.*, "Red," "Merlot," etc.).  *See id.* at 29 ("A dimension root always has the same name as its dimension.  By definition, however, a dimension is a collection of dimension values while a dimension root is the first dimension value in the tree."); *see also id.* at 37 ("It is possible for a dimension value to be simultaneously a child of one dimension value and the parent of other dimension values.  Each dimension value, however, can only have one parent.").

Jim Fitzgerald, a senior software engineer at Endeca, provided an example of a hierarchical dimension during his deposition.  Mr. Fitzgerald discussed the "electronics" dimension, which could include dimension values, such as "televisions," "DVD players," and "computers."  *See* Exhibit H, Deposition of Jim Fitzgerald ("Fitzgerald Tr."), dated Jun. 3, 2008 ("Ex. H"), at 97:17-98:2.  Under "televisions," Mr. Fitzgerald testified, additional dimension values could include "LCD televisions," "plasma televisions," "HD televisions," or "black and white" televisions.  *See id.*  A graphical illustration of the hierarchical dimension discussed by Mr. Fitzgerald is shown below:



*See also id.* at 98:3-6 ("Q: In the Endeca – in the Wal-Mart.com implementation of Endeca, is there any hierarchy between and among the various dimensions? A: Yes.").

Given all of this, SpeedTrack is left with the argument that the '360 Patent actually *allows* for hierarchical relationships between the "category descriptions," prohibiting only a single hierarchical structure that includes every "category description" in the system:

> There is no *single structure* in the "category description table" contained in "walmart.dimensions.xml" in which all of the "category descriptions" contained in the "category description table" are ranked into levels of subordination. Accordingly, the "category descriptions" contained in "walmart.dimensions.xml" have no predefined hierarchical relationship as required by the claims.

Ex. E, SpeedTrack Response to Interrogatory No. 1, at Exhibit A, p. 3 (emphasis added).

But there is no support in the patent for SpeedTrack's narrow reading. In fact, during the prosecution of the '360 Patent, the applicant made clear that he was excluding *any* hierarchical relationships by distinguishing prior art on the grounds that it showed a "hierarchical" relationship between just *two* "category descriptions" (*e.g.*, "Language" → "French"). *See* Exhibit I, Excerpt from Prosecution History of the '360 Patent ("Ex. I"), at SPEED 185-186 ("Importantly, [in the prior art] there is also a 'hierarchical' relationship between values and fields. *That is, each value MUST correspond to an associated field type*.") (emphasis added). In short, the applicant told the Patent Office that the prior art did not apply because the relationship between the field ("Language") and field type ("French") *alone* was hierarchical, without reference to the other "category descriptions" in the system. Thus, the inventor himself, in his discussions with the Patent Office, rejected any notion that the claims of the '360 Patent allow for hierarchical relationships between "category descriptions," so long as they are not all organized into a single hierarchical structure.

### b. All Dimension Values Are Organized Logically in a Single, Global Hierarchy in the Walmart.com System

Despite that the claim language, on its face, precludes a finding of infringement, Walmart.com does not infringe even under SpeedTrack's post-*Markman* construction – namely, that the claims prohibit only a single hierarchical structure containing every "category description." This is because all dimension values in the Walmart.com system are organized into a global hierarchy starting with a "primary dimension," named "Endeca," at the top of the hierarchical tree structure.

Endeca's software assigns primary and secondary designations to every dimension in the Walmart.com system in a file named "walmart.dimensions_refs.xml." *See* Exhibit J, "walmart.dimensions_refs.xml" [WMT 31058] ("Ex. J"). The "top" dimension listed in this file

("Endeca") is the primary dimension; all other dimensions in the Walmart.com system are designated as secondary dimensions.[5]  *See id.* at 1.  The documentation that accompanies Endeca's Guided Navigation software defines the term "primary dimension" to require that "[a]ll Endeca records must be tagged with *at least one dimension value from the primary dimension*."  Exhibit K, Glossary [WMT 28884] ("Ex. K"), at 21 (emphasis added).  Similarly, the definition for "secondary dimension" states that "[a]ll Endeca records must be tagged with *at least one dimension value from the primary dimension*, but may be tagged with any number of values from a secondary dimension (including zero)."  *Id.* at 26.

        The purpose of this primary dimension in the Walmart.com system is to allow navigation between dimension values in different dimensions that would otherwise not be related.  *See* Ex. H, Fitzgerald Tr., at 101:8-12 ("Q: And the reason – the functional reason for the primary dimension is to allow navigation between and among the different dimensions that are not otherwise related? Isn't that true? A: Yes."); *id.* at 101:21-25 ("Q: And the reason that you couldn't have that data set is because there is no hierarchical relationship between the dimensions *absent this primary dimension*; is that right? A: Yes.") (emphasis added).  Such navigation between the dimension values in different dimensions is represented graphically below:

_____

[5]        For clarity, the first several lines of the "walmart.dimensions_refs.xml" file  are reproduced below:

        <DIMENSION_REF HIDDEN="TRUE" NAME="Endeca" TYPE="PRIMARY"/>
        <DIMENSION_REF HIDDEN="FALSE" NAME="Price" TYPE="SECONDARY"/>
        <DIMENSION_REF HIDDEN="FALSE" NAME="Actor" TYPE="SECONDARY"/>
        <DIMENSION_REF HIDDEN="FALSE" NAME="Brand" TYPE="SECONDARY"/>
        . . . .



SpeedTrack has not raised any genuine factual dispute regarding whether the Endeca dimension values in the Walmart.com system are organized in a global hierarchy under the primary dimension.  SpeedTrack's contentions simply turn a blind eye to this global hierarchy and ignore the file in the Walmart.com system that subordinates all dimension values to the primary dimension.  *See* Ex. E, SpeedTrack Response to Interrogatory No. 1, at Exhibit A, p. 3. Importantly, SpeedTrack's expert does not deny the existence of the primary dimension.  *See* Ex. F, Korf Tr., at 132:21-24 ("Q. Were you aware of this Endeca primary dimension at the time you rendered your infringement analysis?  A. Yes, I was.").  But he followed SpeedTrack's lead and ignored the file that creates the global hierarchy in the Walmart.com system.  *Id.* at 133:3-6 ("Q. I'm asking.  Is it true that you didn't mention [the primary dimension] in your report?  A. I don't have a specific recollection that I did, but I'm not certain that I didn't.").

SpeedTrack's approach to this issue is wrong.  SpeedTrack focuses on a single file in the Walmart.com system – "walmart.dimensions.xml" –  and argues that *this* file does not include a single hierarchical structure containing every "category description."  *See* Ex. E, SpeedTrack Response to Interrogatory No. 1, at Exhibit A, p. 3.  But the claims of the '360 Patent preclude hierarchical relationships between the "category descriptions," regardless of how and where such relationships are created.  *See*, *e.g.*, Ex. A, '360 Patent, at claim 20 ("initially defining in the

computer system at least one list having a plurality of category descriptions, each category description comprising a descriptive name, *the category descriptions having no predefined hierarchical relationship with such list or each other*") (emphasis added).

In sum, no genuine factual dispute exists regarding the lack of direct infringement by Walmart.com because the dimension values in the Walmart.com system have numerous relationships with each other that pertain to a hierarchy.  And SpeedTrack cannot avoid summary judgment under some alternative interpretation of the claims because *every* dimension value in the Walmart.com system is organized logically in a single, global hierarchy under the primary dimension.

For these reasons, Walmart.com respectfully requests that the Court grant its motion for summary judgment of no direct infringement.

> **2.   The "File Information Directory" and "File Records" Identified by SpeedTrack Do Not Contain "Information That Includes a Name that is Descriptive of Something about a Stored File"**

All of the asserted claims require either: (1) a "file information directory" comprising a set of "category descriptions;" or (2) a "file record" containing multiple "category descriptions."  For example, step (b) of independent claim 1 requires:

> [C]reating in the computer system *a file information directory comprising* at least one entry corresponding to a file on the data storage system, each entry comprising . . . *a set of category descriptions* selected from the category description table."

Ex. A, '360 Patent, at Col. 16:66-17:4 (emphasis added).  Similarly, step (c) of independent claim 20 requires "storing in the data storage system *a file record containing* at least the file name, file location information, and *the associated category descriptions for the file*."  *Id.* at Col. 20:15-17 (emphasis added).

The Court construed "category descriptions" to mean "information that includes a name that is descriptive of something about a stored file."  *See* Docket 132, Claim Construction Order, at 5-9.

The information that SpeedTrack contends meets this element,[6] however, does not include any descriptive names; instead, it consists only of a series of numerical identifiers, as shown below.

```
<DVAL_ID DIMENSION_ID="125875" ID="138119"/>
<DVAL_ID DIMENSION_ID="500579" ID="500580"/>
<DVAL_ID DIMENSION_ID="500000" ID="500590"/>
<DVAL_ID DIMENSION_ID="500000" ID="500620"/>
<DVAL_ID DIMENSION_ID="500691" ID="500695"/>
<DVAL_ID DIMENSION_ID="500698" ID="500702"/>
<DVAL_ID DIMENSION_ID="501059" ID="501062"/>
<DVAL_ID DIMENSION_ID="500568" ID="4292811764"/>
<DVAL_ID DIMENSION_ID="500569" ID="4293426806"/>
<DVAL_ID DIMENSION_ID="500501" ID="4293763268"/>
<DVAL_ID DIMENSION_ID="500957" ID="4293786120"/>
<DVAL_ID DIMENSION_ID="500500" ID="4294296053"/>
```

*See* Ex. E, SpeedTrack Response to Interrogatory No. 1, at Exhibit A, pp. 4-5, 32 (emphasis added). This information cannot meet the Court's construction because it does not include "a name that is descriptive of something about a stored file."

The distinction between descriptive names and numerical identifiers is an important one. Claim 2 of the '360 Patent, which depends from claim 1, requires that "each category description comprises *a user defined category name and a unique category description identifier* created by the computer system." *See* Ex. A, '360 Patent, at Col. 17:12-15 (emphasis added); *see also* Ex. E, SpeedTrack Response to Interrogatory No. 1, at Exhibit A, p. 22 (stating SpeedTrack's contentions for claim 2 and distinguishing between descriptive names and unique numerical identifiers).

Because the "walmart-sgmt0.records.binary" file does not include "information that includes a name that is descriptive of something about a stored file," there can be no genuine dispute that the accused "file information directory" and "file records" in this case lack "category descriptions" under the Court's definition. This issue is therefore dispositive, and summary judgment of no direct infringement is appropriate.

---

[6]     SpeedTrack contends that the "walmart-sgmt0.records.binary" file in the Walmart.com system contains both the "file information directory" of claim 1 and the "file records" of claim 20. *See, e.g.*, Ex. E, SpeedTrack Response to Interrogatory No. 1, at Exhibit A, pp. 4, 31-33.

1

2

### 3.      The "Category Description Table" and "List Having a Plurality of Category Descriptions" Identified by SpeedTrack Are Not "Initially" Created in the Walmart.com Computer System

3

4

All of the asserted claims require "initially" creating (or defining) a table (or list) of

5

"category descriptions."  Claim 1 of the '360 Patent requires "*initially* creating in the computer

6

system a category description table . . ." and "*thereafter* creating in the computer system a file

7

information directory . . . ."  *See* Ex. A, '360 Patent, at Col. 16:55-17:4 (emphasis added).

8

Similarly, claim 20 requires "*initially* defining in the computer system at least one list having a

9

plurality of category descriptions" and "*thereafter* accepting user input. . . ."  *See id.* at Col. 20:7-15

10

(emphasis added).

11

In its infringement contentions, SpeedTrack interpreted the term "initially" to mean simply

12

that step (a) of independent claims 1 and 20 occurred *before* step (b).  *See* Ex. E, SpeedTrack

13

Response to Interrogatory No. 1, at Exhibit A, p. 5 ("'Walmart-sgmt0.records.binary' could not

have been in existence prior to 'walmart.dimensions.xml' having been produced.").

14

Using SpeedTrack's definition, Endeca put the patent into reexamination, pointing out that

15

the prior art similarly disclosed the creation of descriptive keywords *before* the creation of a "file

16

information directory."  During the reexamination proceedings, the Patent Office rejected the

17

majority of the asserted claims, at first assuming that the term "initially" meant "before," as

18

SpeedTrack has advocated.  The Examiner explained:

19

20

> Since the keywords are added to the category description table (keyword file 46) *before* the textnumber and list of keynumbers are added to the text-keyword file 48, the system of Kleinberger *initially* creates in the computer system a category description table containing a plurality of category descriptions and *thereafter* creates in the computer system a file information directory comprising at least one entry corresponding to a file on the data storage system.

21

22

23

*See* Ex. B, Excerpt from Reexamination Proceedings, at SPEED 13372 (emphasis in original).

24

When SpeedTrack pressed for allowance of the claims, however, the Examiner reversed

25

herself.  Relying on the plain and ordinary meaning of "initially," rather than SpeedTrack's

26

definition asserted in this case, the Examiner stated that simply because something happens *before*

27

another does not mean that something happens *initially* in the computer system:

28

---

[E]ven though Kleinberger teaches adding the keywords are [sic] to the category description table (keyword file 46) *before* the textnumber and list of keynumbers are added to the key-keyword file 48, **this is not the same as initially creating in a [sic] the computer system a category description table containing a plurality of category descriptions**.

*Id.* (bold emphasis added).  The Examiner continued: "*Moreover, since the keywords [i.e., "category descriptions"] are derived from the text files, (a) the keyword file [i.e., "category description table"] is not initially created in the computer system* and (b) the set of category descriptions for each entry of the file information directory is not selected from the category description table." *Id.* (emphasis added).

The parties did not ask the Court to construe the term "initially" prior to the reexamination proceedings.  And because the '360 Patent does not assign a special meaning to the term "initially," the plain and ordinary meaning of the term must apply here.  Dictionaries define the term, with only slight variation, to mean "existing or occurring at the beginning."  *See* Exhibit L, Webster's Ninth New Collegiate Dictionary (1986) (defining "initial" to mean "of or relating to the beginning; incipient"); Exhibit M, Webster's II New College Dictionary (1999) (defining "initial" to mean "happening or being at the very beginning: first"); Exhibit N, Encarta World English Dictionary (1999) (defining "initial" to mean "coming at the start; coming first, or present at the beginning of an event or process" and defining "initially" to mean "at first or to begin with"); Exhibit O, Oxford American Dictionary of Current English (1999) (defining "initial" to mean "of, existing, or occurring at the beginning"); Exhibit P, Oxford Concise English Dictionary (1999) (defining "initial" to mean "existing or occurring at the beginning"); Exhibit Q, American Heritage 4th ed. (2002) (defining "initial" to mean "of, relating to, or occurring at the beginning; first").

Like the prior art that served as the focus of the reexamination proceedings, the accused "category descriptions" in this case are derived from pre-existing source data.  Prior to the creation of the accused "category description table" of claim 1(a) and the "list having a plurality of category descriptions" of claim 20(a), the Endeca software extracts source data from an Oracle database maintained by Walmart.com.  *See* Ex. H, Fitzgerald Tr., at 33:22-34:3 ("Q.  Well, let me ask you this: You talked about a data extract.  What is the data being extracted from, if you know?  A.  The data is being extracted from an Oracle database.  Q.  And that's an Oracle database that's

maintained by Wal-Mart.com, is that right?  A. Yes."); *see also id.* at 91:19-24 ("Q.  Does the data or information that eventually flows into the Endeca Navigation Platform, does that all begin with an extraction from the Wal-Mart Oracle database?  A. The data that is read into the [Endeca] Forge process is from the Wal-Mart Oracle database.").  In fact, this pre-existing source data is maintained by Walmart.com in several databases, including an Oracle database.  *See* Exhibit R, Rule 30(b)(6) Deposition of Walmart.com ("Walmart.com 30(b)(6) Depo."), dated Aug. 5, 2008 ("Ex. R"), at 9:22-10:1 ("Q. You said that – I think you said that the information about products is contained in several different databases at Wal-Mart.com; is that right?  A. Information about products is distributed between multiple databases."); *see also id.* at 15:16-23 ("Q. There are Oracle databases storing product information; correct?  A. That's correct.  Q. Okay.  Then there are some other databases that are not Oracle databases that also contain product information, as we sit here today; is that right? A. That's correct.").).

Because the Endeca dimension values are derived from pre-existing source data in the Walmart.com system, the accused "category description table" and "list having a plurality of category descriptions" are neither created, nor in existence *at the beginning* of the accused process. Indeed, this was the same logic used by the Patent Office to distinguish the prior art from the '360 Patent during the reexamination proceedings.

SpeedTrack has proffered no expert opinion or other evidence that Walmart.com infringes the '360 Patent under the plain and ordinary meaning of the term "initially."  Accordingly, there is no genuine factual dispute to preclude summary judgment of non-infringement.

### 4. Walmart.com Does Not Infringe Claims 1-4, 7, and 11-14 Because Actions by Remote Users Are Required to Create the "Search Filter," and the Users Are Not Under Walmart.com's Direction or Control

Claim 1(c) requires "creating in the computer system a search filter comprising a set of category descriptions . . . ."  Ex. A, '360 Patent, at Col. 17:5-6.  The parties agree that this step cannot be performed without remote users visiting the Walmart.com website and selecting the accused "category descriptions."  *See* Ex. E, SpeedTrack Response to Interrogatory No. 1, at Exhibit A, p. 8 ("[T]he customer or potential customer is able to narrow his or her search by

successively inputting 'category descriptions' previously produced (as described above) to permit Wal-Mart's 'computer system' to create a 'search filter.'").  There is no dispute that the "creating… a search filter" element requires user conduct, and that the '360 Patent would never be infringed if remote users did not visit Walmart.com's website.

Direct infringement requires a single party to perform every step of a claimed method.  *See BMC Res.*, 498 F.3d at 1380.  Indeed, "where the actions of multiple parties combine to perform every step of a claimed method, the claim is directly infringed only if one party exercises 'control or direction' over the entire process such that every step is attributable to the controlling party, i.e., the 'mastermind.'"  *Muniauction, Inc. v. Thomson Corp.*, 532 F.3d 1318, 1329 (Fed. Cir. 2008), *cert. denied*, 129 S.Ct. 1585 (2009).  Moreover, the Federal Circuit noted that other courts "faced with a divided infringement theory have also generally refused to find liability where one party did not control or direct each step of the patented process."  *BMC Res.*, 498 F.3d at 1380.

SpeedTrack seeks to avoid a divided infringement problem by alleging that Walmart.com, and not the remote user, creates the "search filter" in the computer system, as required by step (c) of claim 1.  But two important facts are indisputable: (1) there could be no "search filter" without a remote user selecting the accused "category descriptions" at his or her own computer; and (2) SpeedTrack has not alleged that Walmart.com exercises direction or control over the remote users (*i.e.*, customers) visiting the Walmart.com website.  *See generally* Ex. E, SpeedTrack Response to Interrogatory No. 1, at Exhibit A, pp. 5-22.

A number of cases decided after *BMC Res.* have disposed of direct infringement claims under the same or similar circumstances.  In *Global Patent Holdings, LLC v. Panthers BRHC LLC*, for example, the district court relied on the Federal Circuit's decisions in *BMC Res.* and *Muniauction* to dismiss an infringement claim, where the patent-in-suit required two individuals or entities to complete all of the method's steps – namely, a remote user and the website server.  586 F. Supp. 2d 1331, 1335-36 (S.D. Fla. 2008), *aff'd* 318 F. App'x 908 (Fed. Cir. 2009).  The court in *Global Patent Holdings* found that "the patented process cannot start until the remote user visits [the defendant]'s website," and that the plaintiff did not allege that these remote users were under

the defendant's direction or control. *Id.* at 1335. The same exact reasoning applies here – except that in this case, the patented process cannot *end* until the remote user visits the accused website and selects "category descriptions." As in the *Global Patent Holdings* case, "[i]f no person ever visited the Defendant's website, then Plaintiff's patent would never be infringed." *Id.* at 1335.[7]

Now faced with the same issue presented in *Global Patent Holdings*, this court should grant Walmart.com's motion for summary judgment of no direct infringement. Here, the parties agree that user conduct is necessary to perform the "creating . . . a search filter" element of claim 1. Because SpeedTrack has not alleged that Walmart.com exercises direction or control over the remote users visiting the accused website, there can be no genuine dispute of material fact regarding the lack of direct infringement by Walmart.com. *See Muniauction*, 532 F.3d at 1330 ("That [Defendant] controls access to its system and instructs bidder on its use is not sufficient to incur liability for direct infringement."); *see also id.* ("[Defendant] neither performed every step of the claimed methods nor had another party perform steps on its behalf, and [Plaintiff] has identified no legal theory under which [Defendant] might be vicariously liable for the actions of the bidders.").

**B.    Summary Judgment of No Indirect Infringement Is Appropriate as to Walmart.com Because SpeedTrack No Longer Accuses Walmart.com of Indirect Infringement**

At the beginning of the case, SpeedTrack accused Walmart.com of indirect infringement. *See* Docket No. 1, Complaint, at ¶ 11 ("Defendant Wal-Mart has been and still is indirectly infringing the '360 patent under 35 U.S.C. § 271(b) by actively inducing others, including but not limited to, visitors to its website who search for products available for sale on the website by selecting pre-defined categories descriptive of the products."). However, SpeedTrack no longer alleges indirect infringement by Walmart.com. In fact, SpeedTrack's infringement contentions do

---

[7]    Similarly, in *Zamora Radio, LLC v. Last.FM, LTD*, a patent case that concerned certain internet radio products, the court granted summary judgment of non-infringement because: (1) no single entity performed the steps of the asserted claims; and (2) the defendant did not exercise direction or control over the users visiting the accused website. No. 09-20940, 2010 U.S. Dist. LEXIS 136208, **38-40 (S.D. Fla. Nov. 5, 2010).

not include any allegations of indirect infringement directed at Walmart.com.  *See generally* Ex. E, SpeedTrack Response to Interrogatory No. 1, at Exhibit A.  Therefore, the Court should grant summary judgment of no indirect infringement by Walmart.com.

### C. Endeca Does Not Indirectly Infringe the Asserted Claims of the '360 Patent Because SpeedTrack Has Not Offered any Evidence of Specific Intent to Satisfy the Legal Standard for Indirect Infringement

SpeedTrack has accused Endeca of infringing the '360 Patent indirectly under Sections 271(b) and (c) of the Patent Act.  Importantly, however, SpeedTrack's infringement contentions do not include any evidence or allegation that Endeca had the required intent to actively induce or contribute to infringement of the '360 Patent.

In *Global-Tech Appliances, Inc., et al. v. SEB S.A.*, the Supreme Court held that "induced infringement under §271(b)[8] requires knowledge that the induced acts constitute patent infringement."  2011 U.S. LEXIS 4022, at *21.  Prior to the Supreme Court's recent decision in *Global-Tech*, the Federal Circuit had held that "[t]he plaintiff has the burden of showing that the alleged infringer's actions induced infringing acts and that he knew or should have known his actions would induce actual infringements." *DSU Med. Corp. v. JMS Co.,* 471 F.3d 1293, 1304 (Fed. Cir.2006) (*en banc*) (citations and quotations omitted).

SpeedTrack's claim for infringement by inducement fails as a matter of law because SpeedTrack has not cited any evidence (or even alleged) that Endeca had knowledge of infringement, or that Endeca was willfully blind or deliberately indifferent to the risk of infringement.  *See generally* Ex. E, SpeedTrack Response to Interrogatory No. 1, at Exhibit A.  Moreover, SpeedTrack has not cited any evidence that Endeca had pre-suit knowledge of the '360 Patent.  SpeedTrack contends only that Endeca became aware of the patent-in-suit "after SpeedTrack filed this lawsuit against Wal-Mart." *Id.* at 1, 29.  This allegation, by itself, is not sufficient to support a claim under Section 271(b).  *See BMC Res.*, 498 F.3d at 1381 ("[I]ndirect liability requires evidence of 'specific intent' to induce infringement.").

---

[8]     Section 271(b) reads: "Whoever actively induces infringement of a patent shall be liable as an infringer."

In *Zamora Radio, LLC v. Last.FM, Ltd. et al.*, a patent case concerning internet radio products, the district court granted summary judgment of no induced infringement under similar circumstances.  2010 U.S. Dist. LEXIS 136208.  In particular, the court based its decision on the fact that the plaintiff had proffered no evidence that the defendants "intended to encourage infringement by [the defendants]' customers or anyone else."  *Id.* at *41.  The court further noted that, like SpeedTrack, the plaintiff "offered no evidence that [the defendants] had any pre-suit knowledge of the [patent-in-suit]."  *Id.*

Similarly, in *Tecsec, Inc. v. IBM*, the court granted summary judgment of no induced infringement because the plaintiff failed to present evidence that the defendant had the required intent to actively induce or cause infringement.  No. 1:10-cv-115, 2011 U.S. Dist. LEXIS 21726, *48 (E.D. Va. Mar. 3, 2011).  The court in *Tecsec* wrote: "On this record, there is no evidence that [the defendant] had the required intent to actively induce or cause infringement, and as a matter of law, summary judgement [sic] of no induced infringement is appropriate."  *See id.*; *see also Mikkelsen Graphic Eng'g Inc. v. Zund Am., Inc.*, No. 07-cv-391, 2011 U.S. Dist. LEXIS 38270, *36 (E.D. Wis. Apr. 7, 2011) (granting summary judgment of no indirect infringement pre-*Global-Tech*, noting that "[the plaintiff] has not pointed to evidence from which a reasonable trier of fact could conclude that [the defendant] either knew that sales of [the accused product] would infringe or was deliberately indifferent to the risk that such sales would infringe.").

Like the plaintiffs in *Zamora Radio* and *Tecsec*, SpeedTrack has not come forward with any evidence that Endeca had knowledge of infringement or intended to encourage infringement of the patent-in-suit.  Therefore, no genuine issue of material fact exists with respect to the lack of infringement by Endeca under 35 U.S.C. §271(b).

SpeedTrack's claim of contributory infringement under 35 U.S.C. §271(c) also fails as a matter of law.   Section 271(c) reads:

> Whoever offers to sell or sells within the United States or imports into the United States a component of a patented machine, manufacture, combination, or composition, or a material or apparatus for use in practicing a patented process, constituting a material part of the invention, *knowing the same to be especially made or especially adapted for use in an infringement of such patent*, and not a staple

article or commodity of commerce suitable for substantial noninfringing use, shall
be liable as a contributory infringer.

35 U.S.C. § 271(c) (emphasis added).

To support a claim for contributory infringement under Section 271(c), the patent holder

must demonstrate knowledge by the alleged infringer that a component was especially designed for

use in a patented invention. *See Wordtech Sys.*, 609 F.3d at 1316 ("Under 35 U.S.C. § 271(c), a

party who sells a component *with knowledge that the component is especially designed for use in a*

*patented invention*, and is not a staple article of commerce suitable for substantial noninfringing

use, is liable as a contributory infringer.") (emphasis added); *BMC Res.*, 498 F.3d at 1381

("Another form of indirect infringement, contributory infringement under §271(c), also requires a

mens rea (knowledge) . . .").

Here, SpeedTrack has offered no evidence that Endeca had knowledge that the alleged

combination for which Endeca's software was especially designed was both patented and infringed.

*See generally* Ex. E, SpeedTrack Response to Interrogatory No. 1, at Exhibit A. Again,

SpeedTrack contends only that Endeca became aware of the '360 Patent "after SpeedTrack filed

this lawsuit against Wal-Mart." *Id.* at 1, 29. This is not sufficient to support a claim of

contributory infringement under Section 271(c). *See Zamora Radio*, 2010 U.S. Dist. LEXIS

136208, at **41-42 ("Here, Plaintiff proffered no evidence that Rhapsody knew about the [patent-

in-suit] before this case was filed, or intended to contribute to the infringement of the [patent-in-

suit]. Thus, Defendants are also entitled to summary judgment of no contributory infringement.").

**D.     Summary Judgment of No Direct Infringement Is Appropriate as to Endeca
          Because SpeedTrack Has Not Accused Endeca of Direct Infringement**

Endeca's complaint in intervention seeks declaratory judgment that Endeca does not

infringe the '360 Patent either directly, or indirectly. *See* Docket No. 64, Endeca's Complaint in

Intervention, at ¶ 11. Yet, SpeedTrack did not accuse Endeca of direct infringement of the '360

Patent. *See* Docket No. 77, SpeedTrack's Counterclaim, at ¶¶ 5-10. Moreover, SpeedTrack's

infringement contentions do not include any evidence of direct infringement by Endeca. *See*

*generally* Ex. E, SpeedTrack Response to Interrogatory No. 1, at Exhibit A.  Therefore, the Court should grant summary judgment of no direct infringement by Endeca.

**IV.   CONCLUSION**

For the reasons set forth above, Walmart.com and Endeca respectfully request that the Court grant summary judgment of non-infringement.  In particular, Walmart.com and Endeca request that the Court grant summary judgment of no direct infringement and no indirect infringement with respect to each party.


DATED: July 6, 2011                              PROSKAUER ROSE LLP
                                                 Lary Alan Rappaport
                                                 Joshua J. Pollack
                                                 Steven M. Bauer (admitted *pro hac vice*)
                                                 Colin G. Cabral (admitted *pro hac vice*)


                                       By:    /s/ Steven M. Bauer
                                                 Steven M. Bauer

                                                 Attorneys for Defendants
                                                 ENDECA TECHNOLOGIES, INC.
                                                 and WAL-MART.COM USA, LLC


                                                 FARELLA BRAUN &MARTEL LLP
                                                 Roderick M. Thompson
                                                 Andrew Leibnitz

                                                 Attorneys for Defendant,
                                                 WAL-MART.COM USA, LLC

**PROOF OF SERVICE**

STATE OF MASSACHUSETTS, COUNTY OF SUFFOLK

I declare that: I am employed in the county of Suffolk, Massachusetts.  I am over the age of eighteen years and not a party to the within cause; my business address is Proskauer Rose LLP, One International Place, Boston, MA 02110.

On July 6, 2011, I served the forgoing document, described as MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT OF NON-INFRINGEMENT on the interested parties in this action by transmitting via United States District Court for the Northern District of California Electronic Case Filing Program the document(s) listed above by uploading the electronic files for each of the above-listed documents on this date.


  /s/ Colin Cabral
Colin Cabral