Lary Alan Rappaport (SBN 087614)
Joshua J. Pollack (SBN 215922)
PROSKAUER ROSE LLP
2049 Century Park East, Suite 3200
Los Angeles, CA 90067-3206
Telephone: (310) 557-2900
Facsimile: (310) 557-2193
lrappaport@proskauer.com
jpollack@proskauer.com

Steven M. Bauer (Admitted *Pro Hac Vice*)
Colin G. Cabral (Admitted *Pro Hac Vice*)
PROSKAUER ROSE LLP
One International Place
Boston, MA 02110
Telephone: (617) 526-9600
Facsimile: (617) 526-9899
sbauer@proskauer.com
ccabral@proskauer.com

Attorneys for
ENDECA TECHNOLOGIES, INC. and WAL-MART.COM USA, LLC*

*Additional Counsel Listed on Signature Block

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**OAKLAND DIVISION**

| | |
|---|---|
| SPEEDTRACK, INC. | Case No. C 06-7336 PJH |
| *Plaintiff,* | |
| v. | **DEFENDANTS' OPPOSITION TO SPEEDTRACK'S MOTION FOR PARTIAL SUMMARY JUDGMENT** |
| WAL-MART.COM USA, LLC | |
| *Defendant.* | Before: Hon. Phyllis J. Hamilton |
| ENDECA TECHNOLOGIES, INC. | HEARING DATE: August 10, 2011 |
| *Intervenor,* | TIME: 9:00 a.m. |
| v. | ACTION FILED: November 29, 2006 |
| SPEEDTRACK, INC. | |
| *Defendant in Intervention.* | |

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ...................................................................................... iii

MEMORANDUM OF POINTS AND AUTHORITIES ..............................................1

I.    INTRODUCTION .........................................................................................1

II.   FACTUAL BACKGROUND ........................................................................4

    A.    The '360 Patent Requires "Category Descriptions Having No Predefined Hierarchical Relationship With . . . Each Other".........................................4

    B.    The '360 Patent Also Requires the Presence of "Category Descriptions" in a "File Information Directory".................................................................5

    C.    The '360 Patent Also Requires that a "Category Description Table" Be Created "Initially" in the Computer System .....................................5

    D.    In the '360 Patent, a Remote User Defines the "Search Filter" By Selecting "Category Descriptions" From Pick Lists.................................6

    E.    The Method of Claim 1 Operates on a Single "Computer System" ...........7

III.  IF THE COURT DENIES DEFENDANTS' MOTION FOR SUMMARY JUDGMENT OF NON-INFRINGEMENT, THEN GENUINE ISSUES OF MATERIAL FACT EXIST AS TO INFRINGEMENT OF CLAIM 1 ..................8

    A.    The "Category Descriptions" Identified by SpeedTrack Have Numerous Predefined Hierarchical Relationships With Each Other.............................8

        1.    The '360 Patent Does Not Allow for Any Hierarchical Relationships Between the "Category Descriptions" ..................9

        2.    But Even if the Claims Prohibit Only a Single Hierarchical Structure Containing Every "Category Description," as SpeedTrack Contends, Walmart.com Would Still Not Infringe .................12

    B.    The "File Information Directory" Identified by SpeedTrack Has No "Information that Includes a Name that Is Descriptive of a Stored File".................13

    C.    The "Category Description Table" Identified by SpeedTrack Is Not "Initially" Created in the Walmart.com System .....................................15

    D.    The Creation of the "Search Filter" Identified by SpeedTrack Requires Action by a Remote User Who Is Not Under Walmart.com's Direction or Control .................17

E.   The Parties Dispute Whether the Accused Technology Operates on a Single "Computer System," and Whether a Person of Ordinary Skill Would Have Understood the Term "Computer System" to Include the Internet ..................................................................................................18

IV.  SPEEDTRACK FAILS TO MEET THE STANDARD FOR SUMMARY JUDGMENT WITH RESPECT TO WALMART.COM'S INVALIDITY DEFENSES..................................................................................................20

A.   SpeedTrack's Motion Is Deficient on the Section 102 Issue, Devoting Only a Single Paragraph to Each Prior Art Reference................................20

B.   A Genuine Dispute Exists as to Whether SpeedTrack's Predecessor Company Made an Invalidating Offer for Sale Prior to the Critical Date of the '360 Patent ..........................................................................................21

C.   A Genuine Dispute Exists as to Whether Certain Claims Are Invalid Under Section 112 Due to a Lack of Enablement or a Failure to Meet the Written Description Requirement...................................................................22

D.   Defendants Have Not Asserted a Defense Under Section 101 of the Patent Act.................................................................................................................25

V.   CONCLUSION..........................................................................................................25

**CASES**

*Ariad Pharms., Inc. v. Eli Lilly & Co.*,
  598 F.3d 1336 (Fed. Cir. 2010) (en banc)........................................................24

*Avante Int'l Tech. Corp. v. Permier Election Solutions Inc.*,
  Case No. 4:06-cv-0978, 2008 U.S. Dist. LEXIS 54080 (E.D. Mo. Jul. 16, 2008) ................25

*BMC Res., Inc. v. Paymentech, L.P.*,
  498 F.3d 1373 (Fed. Cir. 2007)........................................................17

*Global Patent Holdings, LLC v. Panthers BRHC LLC*,
  F. Supp. 2d 1331 (S.D. Fla. 2008) ........................................................18

*In re Wands*,
  858 F.2d 731 (Fed. Cir. 1998)........................................................23

*Linear Techn. Corp. v. Micrel, Inc.*,
  275 F.3d 1040 (Fed. Cir. 2001)........................................................21

*Martek Biosci. Corp. v. Nutrinova, Inc.*,
  579 F.3d 1363 (Fed. Cir. 2009)........................................................23

*Muniauction, Inc. v. Thomson Corp.*,
  532 F.3d 1318 (Fed. Cir. 2008)........................................................17

*Philips Electronics North America Corp. v. Contec Corp.*,
  312 F. Supp.2d 632 (D. Del. 2004)........................................................20

*Scanner Tech. Corp. v. Icos Vision Systems Crop., N.V.*,
  253 F. Supp.2d 624 (S.D.N.Y. 2003)........................................................20

**STATUTES**

35 U.S.C. § 102........................................................20

35 U.S.C. § 112........................................................22

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

SpeedTrack's motion for summary judgment should be denied because it is supported only by a 30-page expert declaration submitted in violation of the Local Rules.  Local Rule 7-5 requires that declarations submitted in support of a motion "contain only facts" and "avoid conclusions and argument."[1]  Yet, most of the statements made in the expert declaration submitted by SpeedTrack ("the Korf Declaration") can only be characterized as argument or conclusion.  Moreover, the declaration includes never-before-seen opinions that were not disclosed in any of the expert reports submitted by SpeedTrack.  In short, SpeedTrack has circumvented the 25-page limit on its motion by including pages of pure argument and new expert opinions in the Korf Declaration.[2]

Turning to the substance of SpeedTrack's motion, it does nothing to establish the absence of genuine issues of material fact.

On infringement, Walmart.com has moved for summary judgment of non-infringement of claim 1 on four separate grounds, each of which alone is sufficient for summary judgment in Walmart.com's favor.  First, Walmart.com argued in its motion that the accused technology lacks "category descriptions having no predefined hierarchical relationship . . . with each other."  Walmart.com filed its motion after SpeedTrack's expert conceded that the accused "category descriptions" in the Walmart.com system do, in fact, have predefined hierarchical relationships with each other.

The notion SpeedTrack advances now in its motion – that the '360 Patent somehow "contemplates the potential use of some hierarchical structure" – is not only factually wrong, but it has also been rejected by the Court's claim construction.  Even if SpeedTrack were right, however, Walmart.com would still not infringe because all of the "category descriptions" identified by

---

[1]    Local Rule 7-5(b) reads: "An affidavit or declarations may contain only facts, must conform as much as possible to the requirements of FRCivP 56(e), and must avoid conclusions and argument. Any statement made upon information or belief must specify the basis therefor.  An affidavit or declaration not in compliance with this rule may be stricken in whole or in part."

[2]    Defendants are filing a motion to strike certain paragraphs of Professor Korf's declaration concurrent with this opposition brief.

---

SpeedTrack are organized in a single, global hierarchy under a "primary dimension." Prior to submitting the Korf Declaration, SpeedTrack's expert had not disclosed any opinions challenging Walmart.com's evidence that the primary dimension was the root of a single hierarchy containing all of the accused "category descriptions."[3]

Second, Walmart.com moved for summary judgment on the grounds that the accused technology does not "creat[e] in the computer system a file information directory comprising . . . a set of category descriptions." Claim 1 expressly requires that "each category description compris[e] a descriptive name." And the Court construed the term "category description" to mean "information that includes *a name that is descriptive of something about a stored file*." *See* Docket No. 132, Claim Construction Order, at 25 (emphasis added).

SpeedTrack argues in its motion that this element is met by a list of numbers. *See* Docket No. 324, SpeedTrack's Motion for Summary Judgment ("SpeedTrack Br."), at 12-13. Put simply, these numbers are not "descriptive names," and they are not descriptive of anything about a stored file. Further, SpeedTrack's motion appears to concede that "descriptive names" are not present in the alleged "file information directory." *See* SpeedTrack Br., at 13 (arguing that "the number 429296053 is . . . understood by the computer to *uniquely represent* the brand 'JVC'.") (emphasis added).

Third, Walmart.com moved for summary judgment because the accused technology does not "initially creat[e] in the computer system a category description table containing a plurality of category descriptions." Neither party asked the Court to construe the term "initially." But

---

[3]     In fact, Prof. Korf was aware of the "primary dimension" in the Walmart.com system but deliberately chose not to address it in his expert report on the issue of infringement. *See* Ex. 3, Deposition of Richard Korf ("Korf Tr."), at 132:21-24 ("Q. Were you aware of this Endeca primary dimension at the time you rendered your infringement analysis? A. Yes, I was."); *id.* at 133:3-6 ("Q. I'm asking. Is it true that you didn't mention [the primary dimension] in your report? A. I don't have a specific recollection that I did, but I'm not certain that I didn't."); *see also id.* at 134:11-17 ("Q. And at one point did you believe that the Endeca primary dimension might be the commander in chief of a single hierarchy? A. That was certainly a – that was a question in my mind. I don't believe that – I never believed that was the case, but that was certainly an issue that I had to consider.").

---

dictionaries define the term (with only slight variation) to mean "existing or occurring at the beginning." Consistent with this definition, the Patent Office withdrew its rejection of claim 1 during the reexamination proceedings after the Examiner stated, in no uncertain terms, that simply because something happens *before* another, it does not mean that something happens *initially* in the computer system.

SpeedTrack now argues that the term "initially" means only that step (a) precedes step (b). *See* SpeedTrack Br., at 5-6. But SpeedTrack had the opportunity to argue for this special definition during the claim construction process and chose not to. Either the interpretation of "initially" adopted by the Patent Office applies here and Walmart.com does not infringe claim 1, or the claim is invalid. SpeedTrack cannot have it both ways.

Last, Walmart.com moved for summary judgment on the grounds that the accused technology does not "creat[e] in the computer system a search filter comprising a set of category descriptions." Walmart.com cannot infringe because the actions of a remote user are needed to perform the claimed method, and Walmart.com does not exercise direction or control over the users visiting its website. SpeedTrack concedes that there can be no "search filter" unless a remote user (*i.e.*, potential customer) selects "category descriptions" from the Walmart.com website. *See* SpeedTrack Br., at 18 ("After the end user selects category descriptions presented by the computer system, Walmart.com's software . . . create[s] the actual search filter."). There simply could be no infringement of claim 1 if users did not visit the website and make selections.

In addition, SpeedTrack's motion should be denied because there are genuine factual disputes as to whether the accused technology operates on a single "computer system," as the claims require, and whether a person of ordinary skill would have understood the term "computer system" to include the Internet at the time of filing in 1992. Walmart.com's expert has provided credible opinions on this issue, including, for example, that the mere exchange of data over the Internet does not make Walmart.com's servers and the user's personal computer part of the same "computer system."

On validity, SpeedTrack's motion must also be denied because of genuine factual disputes between the parties. For example, SpeedTrack has moved for summary judgment of no anticipation under 35 U.S.C. § 102. But SpeedTrack devotes only a single paragraph in its motion to each prior art reference.[4] Defendants' expert, on the other hand, has provided detailed reports identifying where each element of the asserted claims can be found in the prior art. At minimum, these opinions create an issue of fact that precludes summary judgment.

SpeedTrack has also moved on defenses brought under Sections 101, 102(b) and 112. Sufficient evidence exists in the record to allow the defenses under Sections 102(b) and 112 to proceed to a jury. With respect to Section 101, Defendants did not assert a defense under this section in their invalidity contentions and do not purport to do so now.

For the reasons set forth in detail below, the Court should deny SpeedTrack motion in its entirety.

## II.   FACTUAL BACKGROUND

### A.   The '360 Patent Requires "Category Descriptions Having No Predefined Hierarchical Relationship With . . . Each Other"

The '360 Patent describes a method for accessing computer files that "allows a user to define categories for files stored in a computer system, and to edit such categories as they are used, to designate all applicable categories for each file, and to link categories in user-definable ways." Exhibit 1, '360 Patent ("Ex. 1"), at Col. 3:66-4:4.[5]

The two independent claims at issue in this case – claims 1 and 20 – describe methods that involve the use of "category descriptions." *See* Ex. 1, '360 Patent, at Col. 16:55-17:11, 20:1-37. The Court has construed the term "category description" to mean "information that includes a name

---

[4]     SpeedTrack has tried to circumvent this Court's 25-page limit by citing to the Korf Declaration, which contains *15 pages* of additional argument on the Section 102 issue. *See* Docket No. 326, Korf Decl., at ¶¶ 53-100. This additional argument should be ignored.

[5]     All exhibits are attached to the Declaration of Colin Cabral, dated July 20, 2011, filed concurrently with this opposition brief.

that is descriptive of something about a stored file." Docket No. 132, Claim Construction Order, at 25.

Claims 1 and 20 of the '360 Patent require "category descriptions having no predefined hierarchical relationship with such list [of category descriptions] or each other." *See* Ex. 1, '360 Patent, at Col. 16:63-65, 20:10-11. The Court has construed the term "having no predefined hierarchical relationship" to mean:

> The category descriptions have no predefined hierarchical relationship. A hierarchical relationship is a relationship that pertains to a hierarchy. A hierarchy is a structure in which components are ranked into levels of subordination; each component has zero, one, or more subordinates; and no component has more than one superordinate component.

Docket No. 132, Claim Construction Order, at 25.

**B.     The '360 Patent Also Requires the Presence of "Category Descriptions" in a "File Information Directory"**

Claim 1 of the '360 Patent requires the creation of a "file information directory" comprising, among other things, a "set of category descriptions." Ex. 1, '360 Patent, at Col. 16:66-17:4. Step (b) of claim 1 reads:

> [T]hereafter creating in the computer system *a file information directory comprising* at least one entry corresponding to a file on the data storage system, each entry comprising at least a unique file identifier for the corresponding file, and *a set of category descriptions* selected from the category description table . . .

*Id.* at Col. 16:66-17:4 (emphasis added). The Court construed the term "file information directory" to mean "a directory comprising information corresponding to at least one file." Docket No. 132, Claim Construction Order, at 25.

**C.     The '360 Patent Also Requires that a "Category Description Table" Be Created "Initially" in the Computer System**

Claim 1 of the '360 Patent requires "*initially* creating in the computer system a category description table . . ." and "*thereafter* creating in the computer system a file information directory . . . ." *See* Ex. 1, '360 Patent, at Col. 16:55-17:4 (emphasis added).

During the reexamination proceedings, the Patent Office rejected the majority of the asserted claims on the grounds that the prior art disclosed the occurrence of step (a) of claim 1 *before* step (b):

> Since the keywords are added to the category description table (keyword file 46) *before* the textnumber and list of keynumbers are added to the text-keyword file 48, the system of Kleinberger *initially* creates in the computer system a category description table containing a plurality of category descriptions and *thereafter* creates in the computer system a file information directory comprising at least one entry corresponding to a file on the data storage system.

Exhibit 2, Excerpt from Reexamination Proceedings, at SPEED 13372 ("Ex. 2") (emphasis in original). The Examiner later reversed herself, however, using the plain and ordinary meaning of the term "initially" – *i.e.*, "existing or occurring at the beginning" – to distinguish the prior art and withdraw her rejection of the majority of the asserted claims:

> [E]ven though Kleinberger teaches adding the keywords are [sic] to the category description table (keyword file 46) *before* the textnumber and list of keynumbers are added to the key-keyword file 48, this is not the same as initially creating in a [sic] the computer system a category description table containing a plurality of category descriptions.

*Id.* (emphasis in original). The Examiner continued: "*Moreover, since the keywords [i.e., "category descriptions"] are derived from the text files, (a) the keyword file [i.e., "category description table"] is not initially created in the computer system* and (b) the set of category descriptions for each entry of the file information directory is not selected from the category description table." *Id.* (emphasis added).

**D.** **In the '360 Patent, a Remote User Defines the "Search Filter" By Selecting "Category Descriptions" From Pick Lists**

Claim 1 of the '360 Patent requires the creation of a "search filter." Ex. 1, '360 Patent, at Col. 17:5-6. The Court has construed the term "search filter" to mean:

> [A] set of one or more category descriptions (depending upon the context of claim 1 or claim 20) and at least one logical operator if there is more than one category description in the search filter that is used to search.

*See* Docket No. 132, Claim Construction Order, at 25.

The '360 Patent states that the user "defines" or "builds" the "search filter" by selecting one or more category descriptions from pick lists. *See* Ex. 1, '360 Patent, at Abstract ("In the process of search and retrieval, the invention ensures in two ways that *the user defines a filter* which will always find at least one file.") (emphasis added); *id.* at Col. 4:5-12 ("In the process of search and retrieval, the invention overcomes the problem of search filter definition, *ensuring that the user defines a filter* which will always find at least one file . . . [T]he user simply chooses the words from pick lists, making mistyping impossible.") (emphasis added); *id.* at Col. 10:20-23 (same); *id.* at Col. 11:10-11 ("For example, the user may define a search filter of 'MEMOS AND JONES'."); *id.* at Col. 12:22-24 ("All category descriptions are disabled which, if added to the search filter defined by the user, would result in no matching files."); *id.* at Abstract ("As the user builds the search filter definition, categories which would find no data are automatically excluded as pick list possibilities."); *id.* at Col. 4:12-14 (same); *id.* at Col. 10:27-37 (same).

### E.     The Method of Claim 1 Operates on a Single "Computer System"

Claim 1 of the '360 Patent requires "[a] method for accessing files in a data storage system of a computer system having means for reading and writing data from the data storage system, displaying information, and accepting user input . . ." Ex. 1, '360 Patent, at Col. 16:55-58. In addition, claim 1 requires "creating in the computer system" a "category description table," a "file information directory," and a "search filter." *Id.* at Col. 16:60-17:11.

The Court construed the term "computer system" to mean "*a computer system*, embodied in either a single computer or a distributed environment, having a hard disk drive, a computer display, and a computer mouse, and equivalents thereto." *See* Docket No. 132, Claim Construction Order, at 22 (emphasis added).

III.    **IF THE COURT DENIES DEFENDANTS' MOTION FOR SUMMARY JUDGMENT OF NON-INFRINGEMENT, THEN GENUINE ISSUES OF MATERIAL FACT EXIST AS TO INFRINGEMENT OF CLAIM 1**

Walmart.com and Endeca need only show that one element of the claims is missing to succeed on summary judgment. By contrast, SpeedTrack must establish that there is no issue of fact with respect to every element of claim 1. In the event the Court does not grant Defendants' motion for summary judgment of non-infringement, SpeedTrack's motion also must be denied for the reasons set forth below.

A.    **The "Category Descriptions" Identified by SpeedTrack Have Numerous Predefined Hierarchical Relationships With Each Other**

Defendants have moved for summary judgment of non-infringement on the grounds that the items SpeedTrack contends are "category descriptions" have predefined hierarchical relationships with each other. *See* Docket No. 322, Defendants' Motion for Summary Judgment of Non-Infringement ("Defendants' Br."), at 9-15. Importantly, SpeedTrack's expert acknowledged during his deposition that the alleged "category descriptions" in the Walmart.com system (*i.e.*, dimension values) have predefined hierarchical relationships with each other. *See*, *e.g.*, Ex. 3, Korf Tr., at 117:9-14 ("Q. Isn't your view that Wal-Mart technology has a number of hierarchical tree structures? A. Some of the dimension values – some of the dimensions in Wal-Mart.com or Endeca are organized into hierarchical tree structures."); *id.* at 121:4-11 ("Q. Would you agree that some category descriptions in the Endeca system have a predefined hierarchical relationship with each other? A. If I were to restrict the scope of -- if I looked at a -- there are subsets of category descriptions in the Endeca system which have a predefined hierarchical relationship.").

Endeca's product literature illustrates the hierarchical relationship between the alleged "category descriptions" in the Walmart.com system. *See* Exhibit 4, Endeca™ Navigation Platform Concepts Guide ("Endeca Concepts Guide") [WMT 28884] ("Ex. 4"), at 27 ("Your Endeca application can have many dimensions, and dimensions can be hierarchical. A dimension is a collection of related dimension values, organized into a tree.").

In fact, the Endeca documentation defines the term "dimension values" as follows:

1
2
> Dimension values are tags, or labels, you use to classify the records in your data set. *Tagging a record with a dimension value . . . organizes the record within the tree structure of the associated dimension*.

3
4
*Id.* at 27 (emphasis added). Dimension values having more than two levels of subordination are
5
known as "hierarchical dimensions" or "dimension hierarchies." *See id.* at 36. An example of a
6
hierarchical dimension is shown below:

7
8

9

10
*See id.* at 27. The dimension root in the above figure ("Wine Type") is the top-most dimension
11
value in the tree structure and is treated and stored in the same manner as the dimension values in
12
the lower levels of subordination (*e.g.*, "Red," "Merlot," etc.). *See id.* at 29 ("A dimension root
13
always has the same name as its dimension. By definition, however, a dimension is a collection of
14
dimension values while a dimension root is the first dimension value in the tree."); *see also id.* at 37
15
("It is possible for a dimension value to be simultaneously a child of one dimension value and the
16
parent of other dimension values. Each dimension value, however, can only have one parent.").

17
### 1. The '360 Patent Does Not Allow for Any Hierarchical Relationships Between the "Category Descriptions"
18
19
The plain language of claim 1 requires "category descriptions having no predefined
20
hierarchical relationship . . . with each other." The Court has construed the term "having no
21
predefined hierarchical relationship" to mean:

22
23
24
> The category descriptions have no predefined hierarchical relationship. A hierarchical relationship is a relationship that pertains to a hierarchy. A hierarchy is a structure in which components are ranked into levels of subordination; each component has zero, one, or more subordinates; and no component has more than one superordinate component.

25
Docket No. 132, Claim Construction Order, at 25. Despite this language, SpeedTrack argues that
26
"[t]he '360 patent expressly contemplates the potential use of some hierarchical structure within the
27
system; it just cannot use a single hierarchical structure." *See* SpeedTrack Br., at 8. This argument
28

has no support in the record, and it constitutes an attempt by SpeedTrack to reopen claim construction, as if the Court had not construed the relevant claim language.

SpeedTrack points only to two sections of the specification to support its argument that the patent allows for "some" hierarchical relationships between the "category descriptions." But these sections make no mention of "category descriptions" ranked into levels of subordination, as the Court's construction of "hierarchy" requires.

First, SpeedTrack points to a section of the specification that describes grouping "category descriptions" into "subjects or projects." In particular, the patent reads:

> [W]hen categorizing a more extensive, broadly based set of files, category descriptions can be grouped into (overlapping) subjects or projects, with a short list of subjects or projects (effectively a top level category set) shown in a separate window (or on a menu). Once a subject or project is chosen, the category descriptions list is shortened to only show those relevant to that subject or project.

Ex. 1, '360 Patent, at Col. 9:56-62. The patent continues:

> This kind of "multi-level" categorization can be carried to any depth needed. In essence, this approach is another way of organizing lists of category descriptions of the type contemplated by the present invention, adding back *some flavor of a hierarchical structure* but with the added benefits of precision of input and certainty of existence.

*Id.* at Col. 10:4-9 (emphasis added).

This discussion, however, does not support the notion that the '360 Patent allows for hierarchy. As a threshold matter, the statement referring to "adding back some flavor" of a hierarchical structure presupposes that there is, in fact, no hierarchy. Moreover, the overlapping "subjects" and "projects" referenced in the specification are used solely to group and organize the "category descriptions" by subject matter; they are not "category descriptions" in and of themselves, as indicated by the fact they are given different names. The only relevant question is whether this example from the specification ranks "category descriptions" into levels of subordination. The answer here is no.

Second, SpeedTrack points to a discussion in the specification regarding the "linking" of related "category descriptions," and argues that it "adds some hierarchy, but does not result in a

single hierarchy." *See* SpeedTrack Br., at 8. Specifically, SpeedTrack cites the following section from the '360 Patent:

> One special category is the "linking" category. A linking category description is linked to other "linked" category descriptions. A linking category provides for the situation when a file is described by one category description, and the file should also be described by a related category description. . . A category may be both a linking category and a linked category.

Ex. 1, '360 Patent, at Col. 15:29-38.

By way of example, the specification explains that "a category 'E-Mail' could be defined as a linking category and linked to the category descriptions 'Sent', 'Received', 'Action', 'Urgent', and 'Reply'." *Id.* at Col. 15:39-42. According to the patent, when a user categorizes a file with "E-Mail," for example, the system would suggest any related category descriptions, including "Sent," "Received," etc. *Id.* at Col. 15:42-46.

The above example, however, is not a "hierarchy" under the Court's construction because the "category descriptions" are not ranked into levels of subordination. Indeed, the user could easily choose "Sent" and "Received" without ever selecting "E-Mail," and without having received any suggestions from the system. Contrary to SpeedTrack's assertion, there is no hierarchy here or anywhere else in the '360 Patent.

Importantly, the applicant made clear during the prosecution of the '360 Patent that he was excluding *any* hierarchical relationships by distinguishing prior art on the grounds that it showed a "hierarchical" relationship between just *two* "category descriptions" (*e.g.*, "Language" → "French"). *See* Exhibit 5, Excerpt from Prosecution History of the '360 Patent ("Ex. 5"), at SPEED 185-186 ("Importantly, [in the prior art] there is also a 'hierarchical' relationship between values and fields. *That is, each value MUST correspond to an associated field type.*") (emphasis added). In short, the applicant told the Patent Office that the prior art did not apply because the relationship between the field ("Language") and field type ("French") *alone* was hierarchical, without reference to the other "category descriptions" in the system. Thus, the inventor himself, in his discussions with the Patent Office, rejected any notion that the claims of the '360 Patent allow for "some"

hierarchical relationships between "category descriptions," so long as the "category descriptions" are not all organized into a single hierarchical structure.

2. **But Even if the Claims Prohibit Only a Single Hierarchical Structure Containing Every "Category Description," as SpeedTrack Contends, Walmart.com Would Still Not Infringe**

The alleged "category descriptions" in the Walmart.com system are organized in a single, global hierarchy, starting with a "primary dimension" called "Endeca." *See* Docket No. 322, Defendants' Br., at 12-15. The purpose of this primary dimension is to allow navigation between "category descriptions" in different Endeca dimensions that would otherwise be unrelated. *See* Exhibit 6, Fitzgerald Tr. ("Ex. 6"), at 101:8-12 ("Q. And the reason – the functional reason for the primary dimension is to allow navigation between and among the different dimensions that are not otherwise related? Isn't that true? A. Yes.")

SpeedTrack proffers no admissible evidence to challenge the existence of the global hierarchy in the Walmart.com system. SpeedTrack instead ignores this unassailable fact, pointing the Court to one file among many in the Walmart.com system, and arguing only that *this one file* does not contain a single hierarchy. More specifically, SpeedTrack argues: "Professor Korf confirms that there is no superordinate component in 'walmart.dimensions.xml' ('Endeca' or otherwise) and that 'Endeca' is not a category description, because it is not descriptive of anything and every product in the Walmart.com system is tagged with it." *See* SpeedTrack Br., at 10.

But there is *nothing* in Professor Korf's expert reports to rebut Defendants' evidence of a single hierarchy under the "primary dimension" in the Walmart.com system. In fact, Prof, Korf deliberately left out any discussion of the primary dimension from his expert report on infringement. *See* Ex. 3, Korf Tr., at 132:21-24 ("Q. Were you aware of this Endeca primary dimension at the time you rendered your infringement analysis? A. Yes, I was."); *id.* at 133:3-6 ("Q. I'm asking. Is it true that you didn't mention [the primary dimension] in your report? A. I don't have a specific recollection that I did, but I'm not certain that I didn't."). Yet, the Korf Declaration, submitted in support of SpeedTrack's motion, contains never-before-seen opinions regarding the primary dimension in the Walmart.com system. *See* Docket No. 326, Korf Decl., at

¶¶ 24-27. Because these opinions were not disclosed in Prof. Korf's expert reports, or at any time during expert discovery, they are untimely and should simply be ignored.[6]

The danger of even considering these new arguments – where there has been no discovery of Prof. Korf or his views – is that SpeedTrack and its expert simply turn a blind eye to the file in the Walmart.com system that creates the global hierarchy and subordinates all "category descriptions" to the primary dimension – namely, the "walmart.dimensions_refs.xml" file.[7] Regardless of whether the primary dimension ("Endeca") is a "category description," the fact that all of the "category descriptions" in the Walmart.com system are ranked into levels of subordination and organized into a single hierarchical structure is undeniable.

Because the Walmart.com system does not meet the element "category descriptions having no predefined hierarchical relationship . . . with each other," the Court should grant Defendants' motion for summary judgment of non-infringement and deny SpeedTrack's motion.

**B.** **The "File Information Directory" Identified by SpeedTrack Has No "Information that Includes a Name that Is Descriptive of a Stored File"**

Claim 1 of the '360 Patent includes the elements "each category description comprising a descriptive name" and "creating in the computer system a file information directory comprising… a set of category descriptions selected from the category description table." Ex. 1, '360 Patent, at Col. 16:62-63, 16:66-17:4.

Defendants have moved for summary judgment of non-infringement of claim 1 of the '360 Patent on the grounds that the "file information directory" identified by SpeedTrack does not

_____

[6] Defendants are moving to strike any new opinions in Professor Korf's declaration that were not included in his expert reports. The motion will be filed concurrently with this opposition brief.

[7] The first several lines of that file are copied below:

```
<DIMENSION_REF HIDDEN="TRUE" NAME="Endeca" TYPE="PRIMARY"/>
<DIMENSION_REF HIDDEN="FALSE" NAME="Price" TYPE="SECONDARY"/>
<DIMENSION_REF HIDDEN="FALSE" NAME="Actor" TYPE="SECONDARY"/>
<DIMENSION_REF HIDDEN="FALSE" NAME="Brand" TYPE="SECONDARY"/>
. . . .
```

Exhibit 7, "walmart.dimensions_refs.xml," at 1 (emphasis added).

contain "a set of category descriptions."  *See* Docket No. 322, Defendants' Br., at 15-16.  The

Court construed the term "category description" to mean "information that includes *a name that is*

*descriptive of something about a stored file*."  *See* Docket No. 132, Claim Construction Order, at 25

(emphasis added).

SpeedTrack contends that the following list of numbers constitutes a set of "category

descriptions:"

<DVAL_ID DIMENSION_ID="500569" ID="**4293426806**"/>
<DVAL_ID DIMENSION_ID="500501" ID="**4293763268**"/>
<DVAL_ID DIMENSION_ID="500957" ID="**4293786120**"/>
<DVAL_ID DIMENSION_ID="500500" ID="**4294296053**"/>

SpeedTrack Br., at 12 (emphasis added).  But the information that SpeedTrack points to (shown

above) does not include any descriptive names, as required by the claim and the Court's

construction.  Indeed, SpeedTrack's motion appears to concede that the accused "file information

directory" in the Walmart.com system does not include any descriptive names at all.

Faced with the fact that these numbers are not descriptive of anything, SpeedTrack argues

that the numbers *represent* "category descriptions."  *See*, *e.g.*, SpeedTrack Br., at 13 ("The unique

identifier in the file information directory is defined by the system in the category description table

to represent the descriptive name of the category description . . .").  But this is not the same as

actually *being* information that includes a descriptive name.  At most, they are unique identifiers

that correspond to descriptive names, in the same way a unique social security number corresponds

to a person.

The distinction between descriptive names and unique identifiers is an important one.

Claim 2 of the '360 Patent, which depends from claim 1, requires that each "category description"

be comprised of "a user defined category name" *and* "a unique category description identifier

created by the computer system."  *See* Ex. 1, '360 Patent, at Col. 17:12-15.  Similarly, the

specification illustrates the distinction between descriptive names and numerical identifiers:

> [E]ach category description is preferably associated with a unique identifier
> (preferably a number, but other identifiers could be used). The identifier is created

by the computer (e.g., in sequential order) and used internally to manage the categories. If a user changes the name of a category description, the associated identifier is not changed.

*Id.* at Col. 5:12-16.

Because the Walmart.com system does not meet the element "creating in the computer system a file information directory comprising . . . a set of category descriptions," the Court should grant Defendants' motion for summary judgment of non-infringement and deny SpeedTrack's motion.

C.      **The "Category Description Table" Identified by SpeedTrack Is Not "Initially" Created in the Walmart.com System**

Claim 1 of the '360 Patent requires "*initially* creating in the computer system a category description table containing a plurality of category descriptions . . . ." and "*thereafter* creating in the computer system a file information directory . . . ." *See* Ex. 1, '360 Patent, at Col. 16:55-17:4 (emphasis added).

The parties did not ask the Court to construe the term "initially" during the *Markman* proceedings, meaning the term has its ordinary meaning. Numerous dictionaries define the term (with only minor variations) to mean "existing or occurring at the beginning." *See* Docket No. 322, Defendants' Br., at 18. Under this definition, Walmart.com does not infringe.

SpeedTrack argues in its motion that the term "initially" in claim 1 has a special meaning – namely, that it "only requires that he category description table be created *before* the file information directory of step (b) and the search filter of step (c) of claim 1." Docket No. 326, Korf Decl., at ¶ 14 (emphasis added); *see also* SpeedTrack Br., at 5-6. But this definition comes from nowhere.

In fact, during the reexamination proceedings, the Patent Office rejected claim 1 of the '360 Patent, at first assuming that the term "initially" meant "before," as SpeedTrack now contends. The Examiner stated:

Since the keywords are added to the category description table (keyword file 46) *before* the textnumber and list of keynumbers are added to the text-keyword file 48, the system of Kleinberger *initially* creates in the computer system a category

description table containing a plurality of category descriptions and *thereafter* creates in the computer system a file information directory comprising at least one entry corresponding to a file on the data storage system.

*See* Ex. 2, Excerpt from Reexamination Proceedings, at SPEED 13372 (emphasis in original).

However, when SpeedTrack pressed for allowance of the claims, the Examiner reversed herself, finding that simply because something happens *before* another does not mean that something happens *initially* in the computer system:

[E]ven though Kleinberger teaches adding the keywords are [sic] to the category description table (keyword file 46) *before* the textnumber and list of keynumbers are added to the key-keyword file 48, **this is not the same as initially creating in a [sic] the computer system a category description table containing a plurality of category descriptions**.

*Id.* (bold emphasis added). The Examiner continued: "*Moreover, since the keywords [i.e., "category descriptions"] are derived from the text files, (a) the keyword file [i.e., "category description table"] is not initially created in the computer system* and (b) the set of category descriptions for each entry of the file information directory is not selected from the category description table." *Id.* (emphasis added).

The only way SpeedTrack can succeed on its motion is if the Court agrees that there is no question of fact with respect to *every* argument SpeedTrack makes – including that the term "initially" only requires that step (a) of claim 1 occur *before* step (b). But if the term, in fact, has this special meaning, claim 1 (and many of its dependent claims) would be invalid because the prior art that was the focus of the reexamination proceedings disclosed step (a) before step (b). The Examiner only allowed claim 1 after applying the ordinary meaning of "initially."

The accused software operates in the same manner as the prior art, in that it only creates "category descriptions" after extracting source data from an Oracle database. *See* Ex. 6, Fitzgerald Tr., at 33:22-34:3 ("Q. Well, let me ask you this: You talked about a data extract. What is the data being extracted from, if you know? A. The data is being extracted from an Oracle database. Q. And that's an Oracle database that's maintained by Wal-Mart.com, is that right? A. Yes."); *see also id.* at 91:19-24 ("Q. Does the data or information that eventually flows into the Endeca Navigation Platform, does that all begin with an extraction from the Wal-Mart Oracle database? A.

The data that is read into the [Endeca] Forge process is from the Wal-Mart Oracle database."). This database is analogous to the "text files" discussed by the Patent Office during the reexamination proceedings. *See* Ex. 2, Excerpt from Reexamination Proceedings, at SPEED 13372 ("[S]ince the keywords [i.e., "category descriptions"] are derived from the text files [in the prior art] . . . the keyword file [i.e., "category description table"] is not initially created in the computer system . . .").

SpeedTrack cannot have it both ways. Either "initially" means "before" and claim 1 is invalid, or the plain and ordinary of the term applies and Walmart.com does not infringe. Because the creation of the source data and the extraction process in the Walmart.com system take place prior to the creation of the alleged "category description table," this table is not *initially* created in the computer system.

D.    **The Creation of the "Search Filter" Identified by SpeedTrack Requires Action by a Remote User Who Is Not Under Walmart.com's Direction or Control**

Claim 1 requires "creating in the computer system a search filter comprising a set of category descriptions . . . ." Ex. 1, '360 Patent, at Col. 17:5-6. In the accused technology, an independent remote user creates the "search filter" required by step (c) of claim 1. The Federal Circuit says that in such an event, there can be no infringement as a matter of law unless one party exercises direction or control over the entire process. *See Muniauction, Inc. v. Thomson Corp.*, 532 F.3d 1318, 1329 (Fed. Cir. 2008), *cert. denied*, 129 S.Ct. 1585 (2009) ("[W]here the actions of multiple parties combine to perform every step of a claimed method, the claim is directly infringed only if one party exercises 'control or direction' over the entire process such that every step is attributable to the controlling party, i.e., the 'mastermind.'"); *see also BMC Res., Inc. v. Paymentech, L.P.*, 498 F.3d 1373, 1380 (Fed. Cir. 2007).

SpeedTrack seeks to avoid this "divided infringement" problem by arguing that Walmart.com, and not the remote user, creates the "search filter" in the computer system. *See* SpeedTrack Br., at 14-18. But SpeedTrack concedes that there would be no "search filter" without a remote user selecting a set of "category descriptions" from his or her personal computer. *See id.*

at 18 ("After the end user selects category descriptions presented by the computer system, Walmart.com's software . . . create[s] the actual search filter."). Indeed, if no remote users visited the Walmart.com website and made selections, there could be no infringement of claim 1. *See Global Patent Holdings, LLC v. Panthers BRHC LLC*, F. Supp. 2d 1331, 1335-36 (S.D. Fla. 2008), *aff'd* 318 F. App'x 908 (Fed. Cir. 2009) (dismissing an infringement claim because the patent-in-suit required two individuals or entities to complete all of the method's steps, noting "[i]f no person ever visited the Defendant's website, then Plaintiff's patent would never be infringed.").[8]

Because SpeedTrack does not and, indeed, cannot allege that Walmart.com directs or controls the remote users visiting the accused website, Walmart.com cannot infringe claim 1 or any of its dependent claims.

**E.      The Parties Dispute Whether the Accused Technology Operates on a Single "Computer System," and Whether a Person of Ordinary Skill Would Have Understood the Term "Computer System" to Include the Internet**

Claim 1 of the '360 Patent requires "[a] method for accessing files in a data storage system of a computer system . . ." and "creating in the computer system" a "category description table," "file information directory," and "search filter." Ex. 1, '360 Patent, at Col. 16:55-17:11. The Court construed the term "computer system" to mean "*a computer system*, embodied in either a single computer or a distributed environment, having a hard disk drive, a computer display, and a computer mouse, and equivalents thereto." *See* Docket No. 132, Claim Construction Order, at 22 (emphasis added).

There is a question of fact as to whether the accused technology operates on a single "computer system," as required by claim 1. SpeedTrack contends that the Walmart.com servers and the personal computers of individual users visiting the Walmart.com website form a *single* "computer system." SpeedTrack made the following argument in its motion:

---

[8]      That claim 1 of the '360 Patent requires third-party action is perhaps best illustrated by its contrast with claim 20. Claim 20 includes the element "accepting user positional input defining a search filter of at least one category description selected from at least displayed defined list." Ex. 1, '360 Patent, at Col. 20:22-24, in contrast to claim 1, which requires the *creation* of a "search filter," no third-party action is required to *accept* the user input that defines the "search filter."

---

Walmart.com's "computer system" operates in a distributed environment and consists of at least: (i) the Walmart.com web servers, (ii) the Walmart.com computers or servers running the Endeca software, and (iii) the Walmart.com data storage system . . . In addition, when a Walmart.com customer is accessing the Walmart.com website, they do so via a computer, which becomes part of a distributed environment during the interaction . . . Collectively, these computers and servers constitute a computer system having means for reading and writing data from the data storage system, displaying information, and accepting user input as described in the Preamble [of claim 1].

SpeedTrack's Br., at 4-5.

Importantly, Defendants' expert, Don Turnbull, has provided credible expert opinion that the mere exchange of data between two computers over the Internet does not make them part of the same "computer system." *See* Declaration of Don Turnbull, dated Jul. 20, 2011 ("Turnbull Decl."), at ¶ 12 ("[A]ny computer operated by a remote user visiting the Walmart.com site would be a separate 'computer system' under the Court's definition because it is comprised of a separate hard disk, computer display, and computer mouse."). Dr. Turnbull has noted that Walmart.com cannot access data stored on a remote user's hard drive, and that users visiting the Walmart.com website cannot access proprietary information stored on Walmart.com's servers. *Id.* at ¶ 13. Indeed, the patent does not discuss how the method of claim 1 would work in a system having separate and distinct areas for data storage, where significant amounts of data and information are not available to the entire system. *See id.* For these reasons, there exists a genuine factual dispute as to whether the accused technology constitutes *one* "computer system."

There also exists a genuine factual dispute as to whether the term "computer system" in the '360 Patent includes the Internet. Here again, Dr. Turnbull has provided credible expert opinion regarding the knowledge of a person of ordinary skill at the time of filing. *See id.* at ¶ 11 ("The Web was neither well-known, nor readily available at the time of the invention. Indeed, technical computer dictionaries from the late 1980s and early 1990s do not include entries for the words 'World Wide Web' or 'Internet.'"). In addition, Dr. Turnbull has pointed out that the specification of the '360 Patent only describes use of the alleged invention on a personal computer and, in its broadest sense, an office network environment. *Id.* at ¶ 10. Notably, the '360 Patent makes no mention of the Internet or the World Wide Web, and technical computer dictionaries published near

the filing date of the '360 Patent do not include entries for the terms "Internet" or "World Wide Web."  *See* Exhibit 8, IEEE Computer Dictionary, at 114, 216.

## IV.  SPEEDTRACK FAILS TO MEET THE STANDARD FOR SUMMARY JUDGMENT WITH RESPECT TO WALMART.COM'S INVALIDITY DEFENSES

### A.  SpeedTrack's Motion Is Deficient on the Section 102 Issue, Devoting Only a Single Paragraph to Each Prior Art Reference

SpeedTrack has moved for summary judgment of no anticipation of claims 1 and 20 of the '360 Patent under 35 U.S.C. § 102.  But SpeedTrack's motion only devotes a single paragraph to each prior art reference at issue.  *See* SpeedTrack Br., at 22-23; *cf.* Docket No. 326, Korf Decl., at ¶¶ 53-100 (including 15 pages of argument on the Section 102 issue).  By referring this Court to a 30-page expert declaration for detailed argument in support of its motion, SpeedTrack has violated Local Rules 7-2 (setting a 25-page limit for motions) and 7-5 (stating that supporting declarations may contain only facts and must avoid argument and conclusions).

Whether Defendants can meet their burden of proving invalidity under Section 102 is a question of fact for the jury to decide.  By its motion, SpeedTrack has only shown that its expert disagrees with the opinions of Defendants' expert.  Defendants' expert has provided detailed expert opinions concerning where each element of the asserted claims can be found in the six prior art references at issue.  *See* Turnbull Decl., at ¶¶ 4-8; *see also Philips Electronics North America Corp. v. Contec Corp.*, 312 F. Supp.2d 632, 636 (D. Del. 2004) ("[T]here are genuine issues of material fact, due to competing expert opinions, as to what is disclosed and claimed by the [prior art].  Therefore, summary judgment as to whether claims 1, 3, and 4 of the [patent-in-suit] are anticipated by the [prior art] is inappropriate."); *Scanner Tech. Corp. v. Icos Vision Systems Crop., N.V.*, 253 F. Supp.2d 624, 634 (S.D.N.Y. 2003) (denying summary judgment on the issue of validity, noting "[t]he credibility of competing expert witnesses is a matter for the jury, and not a matter to be decided on summary judgment.").

## B. A Genuine Dispute Exists as to Whether SpeedTrack's Predecessor Company Made an Invalidating Offer for Sale Prior to the Critical Date of the '360 Patent

SpeedTrack has also moved for summary judgment on Defendants' "on-sale" defense. To prevail on this defense, Defendants must prove that "there was a definite sale or offer for sale of the claimed invention prior to the critical date, defined as one year prior to the U.S. filing date to which the application was entitled." *Linear Techn. Corp. v. Micrel, Inc.*, 275 F.3d 1040, 1047 (Fed. Cir. 2001). There is more than sufficient evidence on this issue to go to the jury.

SpeedTrack's predecessor company, Paragon Concepts, Inc., published a product announcement for its Nisus Compact software in MacWEEK on October 29, 1991. *See* Exhibit 9, MacWEEK Article. There is no dispute that the Nisus Compact software incorporated the claimed method described in the '360 Patent, and that product was first introduced in January 1992. *See* Exhibit 10, Deposition of Jerzy Lewak ("Lewak Tr.") ("Ex. 10"), at 37:14-38:2 ("Q. Does [the search feature that is the subject of the '360 Patent] have a name then that I can use to refer to it back then? A. We can call it GIA. . . Q. And what does that stand for? A. Guided Information Access."); *id.* at 100:3-6 ("Q. Well, was the Nisus Compact that was introduced in January of '92, did it include the GIA technology? A. Yes."). Moreover, SpeedTrack concedes that this product announcement issued more than one year prior to the filing date of the '360 Patent. SpeedTrack Br., at 18 ("The October 29, 1991 article was published more than one year before November 23, 1992 when the '360 patent application was filed . . . .").

SpeedTrack argues in its motion that "[t]he MacWeek article [alone] does not evidence a commercial offer for sale for the Nisus Compact product." *Id.* at 19. But Defendants will argue at trial that this product announcement, combined with other evidence related to the beta testing and distribution of the software in question, *collectively*, proves that an invalidating offer for sale was made prior to the critical date of the '360 Patent. Specifically, SpeedTrack's founder, Jerzy Lewak, could not recall at his deposition whether the patented technology was beta tested outside the company before it was released in January 1992. *See* Ex. 10, Lewak Tr., at 101:11-14 ("Q. You have no knowledge as to whether [Nisus Compact] was beta tested before January 1992, outside of

the company? A. I do not know; that's right."). And despite that SpeedTrack's predecessor had distributors for its software, Mr. Lewak could not remember the distributors' names or whether any distributors were lined up prior to the release of the software in January 1992. Mr. Lewak testified:

> Q. So separate from individuals who just would buy one unit, did you have any distributors of the Nisus Compact?
>
> A. Yes.
>
> Q. Who were they?
>
> A. Again, I don't remember the distributors' names, but there were distributors, yes.
>
> Q. Did You have those distributors lined up before the Mac World Show in January 1992?
>
> A. I don't remember that.

*See id.* at 95:11-20. SpeedTrack may not think there is enough for Defendants to prove invalidity under Section 102(b), but there is enough to allow the question to proceed to a jury to form its own view of the weight of the evidence.

> C. **A Genuine Dispute Exists as to Whether Certain Claims Are Invalid Under Section 112 Due to a Lack of Enablement or a Failure to Meet the Written Description Requirement**

SpeedTrack has also moved for summary judgment on Defendants' defenses under 35 U.S.C. § 112. Notably, these defenses relate only to one element from claim 14 of the '360 Patent: "testing if only one file name is displayed, and if so, then opening the file corresponding to that file name."[9]

The specification says nothing about how one can test if only one file name is displayed, or how one opens the file corresponding to that name. In fact, the specification of the '360 Patent

---
[9] Defendants' invalidity contentions also include the following element from claim 1: "for each category description in the search filter there is guaranteed to be at least one entry in the file information directory having a set of category descriptions matching the set of category descriptions of the search filter." Defendants no longer contend that this element renders the claims invalid under Section 112.

does not include the word "test" or any variation thereof; the word only appears in claim 14. Put simply, there is no written description or enabling disclosure to support this element.

On enablement, the question is whether one skilled in the art would have to undertake undue experimentation to test whether a single file name is displayed, and if so, to open the file that corresponds to that name. *Martek Biosci. Corp. v. Nutrinova, Inc.*, 579 F.3d 1363, 1378 (Fed. Cir. 2009) ("To meet the enablement requirement, the specification of a patent must teach those skilled in the art how to make and use the full scope of the claimed invention without undue experimentation.") (internal quotations omitted). The Federal Circuit has observed that "[w]hether undue experimentation is needed is not a single, simple factual determination, but rather is a conclusion reached by weighing many factual considerations." *In re Wands*, 858 F.2d 731, 737 (Fed. Cir. 1998). The relevant factors include: "(1) the quantity of experimentation necessary, (2) the amount of direction or guidance presented, (3) the presence or absence of working examples, (4) the nature of the invention, (5) the state of the prior art, (6) the relative skill of those in the art, (7) the predictability or unpredictability of the art, and (8) the breadth of the claims." *Id.*

The balance of relevant factors listed above weigh in favor of a finding claim 14 invalid due to a lack of enablement. There can be no dispute that the specification of the '360 Patent provides no direction or guidance with respect to the limitation of claim 14, or that patent provides no working examples in support of this limitation. *See generally* Ex. 1, '360 Patent. Without any guidance from the patent, the "experimentation" necessary would be substantial and involve writing/debugging computer code to test for the number of file names displayed after a user selects each "category description," and to automatically open the "file" corresponding to the last remaining "file name" in the display.

The quantity of experimentation is only enhanced by the breadth of SpeedTrack's application of the claims and, in particular, the terms "file" and "computer system." Indeed, Defendants' expert has opined that SpeedTrack's interpretation of "file" to include any and all information, regardless of how and whether it is collected, is not consistent with the plain and

ordinary meaning of the term.[10]  *See* Turnbull Decl., at ¶ 14 ("I have been asked to apply

SpeedTrack's interpretation of 'file,' which, in my view, is a very broad and irregular use of the

term.").  Defendants' expert has also opined regarding the breadth of SpeedTrack's application of

the term "computer system," which also deviates from the term's ordinary meaning.  *See*, *e.g.*, *id.* at

¶ 9 (noting that despite the fact that the specification only describes the alleged invention on a

single computer system and office network environment, "SpeedTrack's position is that the term

'computer system' in the '360 Patent can include any and every computer system in the world with

access to the Internet.").

       In addition to addressing the breadth of the claims (factor 8), Defendants' expert has

provided opinions regarding the nature of the invention (factor 4), the state of the prior art (factor

5), and the relative skill of those in the art (factor 6).  *See id.* at ¶¶ 15-17.  And last, SpeedTrack

attempted to distinguish its invention from the prior art by arguing that its features added additional

complexity, thereby challenging the notion that the results of prior art combinations were

predictable (factor 7).  *See* Exhibit 11, Excerpt from Reexamination Proceedings (Applicant

Remarks), at SPEED 13385, 13388-89 ("The rejection only reasons that the references can be

combined because the results of the computer programming arts are generally predictable, which

does not explain why a person of ordinary skill in the art would make the combination.").

       On written description, the Federal Circuit has confirmed that Section 112 contains a

written-description requirement that is separate from enablement.  *Ariad Pharms., Inc. v. Eli Lilly

& Co.*, 598 F.3d 1336, 1344-48 (Fed. Cir. 2010) (en banc).  The Federal Circuit has also explained

that the written-description requirement "requires that the specification objectively demonstrate that

the applicant actually invented – was in possession – of the claimed subject matter."  *Id.* at 1349.

       As noted above, the specification of the '360 Patent contains no description related to the

limitations present in claim 14.  And in its motion, SpeedTrack has proffered no evidence that the

'360 Patent satisfies the written description requirement; nor does SpeedTrack explain why the

evidence relied on by Defendants (such as that referenced above) is inadequate to create a genuine

---

[10]     The Court accepted SpeedTrack's construction of "file" to mean "any collection of data or
information stored on a computer system."

issue of material fact. Accordingly, there is a genuine issue of fact as to whether claim 14 meets the written description requirement, and SpeedTrack's motion for summary judgment should be denied. *See Avante Int'l Tech. Corp. v. Permier Election Solutions Inc.*, Case No. 4:06-cv-0978, 2008 U.S. Dist. LEXIS 54080, **22-35 (E.D. Mo. Jul. 16, 2008) (denying plaintiff's motion for summary judgment of validity for satisfying the written description requirement of Section 112, and indeed granting summary judgment of invalidity, noting, "[t]here is nothing in the specifications to support the [disputed claim element].").

### D. Defendants Have Not Asserted a Defense Under Section 101 of the Patent Act

Defendants have not asserted a defense of invalidity under 35 U.S.C. § 101 in this case. For this reason, SpeedTrack's motion should be denied as it does not relate to a disputed issue.

## V. CONCLUSION

For the reasons set forth above, Walmart.com and Endeca respectfully request that the Court deny SpeedTrack's motion for partial summary judgment.

DATED: July 20, 2011

PROSKAUER ROSE LLP
Lary Alan Rappaport
Joshua J. Pollack
Steven M. Bauer (admitted *pro hac vice*)
Colin G. Cabral (admitted *pro hac vice*)

By:  /s/ Steven M. Bauer
        Steven M. Bauer

Attorneys for Defendants
ENDECA TECHNOLOGIES, INC.
and WAL-MART.COM USA, LLC

FARELLA BRAUN &MARTEL LLP
Roderick M. Thompson
Andrew Leibnitz

Attorneys for Defendant,
WAL-MART.COM USA, LLC

|    |                                                                                   |
|----|-----------------------------------------------------------------------------------|
| 1  | **PROOF OF SERVICE**                                                               |
| 2  | STATE OF MASSACHUSETTS, COUNTY OF SUFFOLK                                          |
| 3  | I declare that: I am employed in the county of Suffolk, Massachusetts.  I am over the age of |
| 4  | eighteen years and not a party to the within cause; my business address is Proskauer Rose LLP, |
| 5  | One International Place, Boston, MA 02110.                                         |
| 6  | On July 20, 2011, I served the forgoing document, described as DEFENDANTS'         |
| 7  | OPPOSITION TO SPEEDTRACK'S MOTION FOR PARTIAL SUMMARY JUDGMENT on                  |
| 8  | the interested parties in this action by transmitting via United States District Court for the |
| 9  | Northern District of California Electronic Case Filing Program the document(s) listed above by |
| 10 | uploading the electronic files for each of the above-listed documents on this date. |
| 11 |                                                                                   |
| 12 |    /s/ Colin Cabral                                                 |
| 13 | Colin Cabral                                                                       |
| 14 |                                                                                   |
| 15 |                                                                                   |
| 16 |                                                                                   |
| 17 |                                                                                   |
| 18 |                                                                                   |
| 19 |                                                                                   |
| 20 |                                                                                   |
| 21 |                                                                                   |
| 22 |                                                                                   |
| 23 |                                                                                   |
| 24 |                                                                                   |
| 25 |                                                                                   |
| 26 |                                                                                   |
| 27 |                                                                                   |
| 28 |                                                                                   |