1    HENNIGAN DORMAN LLP
     Roderick G. Dorman (SBN 96908)
2    dormanr@hdlitigation.com
     Alan P. Block (SBN 143783)
3    blocka@hdlitigation.com
     Marc Morris (SBN 183728)
4    morrism@hdlitigation.com
     865 South Figueroa Street, Suite 2900
5    Los Angeles, California 90017
     Telephone: (213) 694-1200
6    Fax: (213) 694-1234

7    Attorneys for Plaintiff, SPEEDTRACK, INC.

8

                    UNITED STATES DISTRICT COURT
9
                   NORTHERN DISTRICT OF CALIFORNIA
10
                          OAKLAND DIVISION
11

12   SPEEDTRACK, INC.,                    )   Case No. 06-CV-07336-PJH
                                          )
13             Plaintiff,                 )   **PLAINTIFF SPEEDTRACK, INC.'S**
                                          )   **OPPOSITION TO DEFENDANTS'**
14        vs.                             )   **MOTION FOR SUMMARY JUDGMENT**
                                          )   **OF NON-INFRINGEMENT OF U.S.**
15   WAL-MART STORES, INC., THE HERTZ     )   **PATENT NO. 5,544,360**
     CORPORATION, MAGELLAN               )
16   NAVIGATION, INC. and TOYOTA          )
     MOTOR SALES, U.S.A., INC.,           )
17                                        )   **Date:   August 10, 2011**
               Defendants.                )   **Time:   9:00 am**
18   _____        )   **Ctrm:  No. 3, Hon. Phyllis J. Hamilton**
                                          )
19   ENDECA TECHNOLOGIES, INC.,           )
                                          )
20             Intervenor,                )
                                          )
21        vs.                             )
                                          )
22   SPEEDTRACK, INC.,                    )
                                          )
23             Defendant-in-Intervention  )
               and Counterclaimant.       )
24   _____        )
                                          )
25

26

27

28

**TABLE OF CONTENTS**

**Page**

I.  INTRODUCTION ...................................................................................1

II. WALMART.COM AND ENDECA HAVE NOT PROVEN THAT THE
    ACCUSED METHOD DOES NOT INFRINGE THE CLAIMS OF THE
    '360 PATENT ........................................................................................1

    A.  Walmart.com's Accused System Meets the "Non-Hierarchical"
        Limitation of Step (a) of Claim 1 and Step (a) of Claim 20 ....................1

        1.  The File "walmart.dimensions.xml" is the "Category
            Description Table" of Claim 1 and the List of Claim 20 in the
            Walmart.com System .................................................................2

        2.  Endeca's Employees Admit That, in the Walmart.com
            System, There is no Hierarchy Between Dimension Values
            (i.e., Category Descriptions) in Different Dimensions (i.e.,
            Category Types) ........................................................................4

        3.  Attorney Argument is Not Evidence and Cannot Support
            Summary Judgment ...................................................................6

        4.  The Court's Construction Defining Hierarchy as a Single
            Structure is Fully Supported by the Specification ........................8

        5.  There is no Single, Global Hierarchy Structure of Category
            Descriptions in Walmart.com Having the So-Called "Endeca"
            Dimension as the Root ............................................................10

    B.  Walmart.Com's File Information Directory Meets the Claim
        Limitations of Containing Category Descriptions................................14

        1.  Walmart.com and Endeca are Judicially Estopped From
            Contending that Inclusion of a Unique Identifier in the File
            Information Directory Does Not Meet the Claim
            Requirements When Endeca Caused the Patent Office to Take
            Action by Previously Asserting the Opposite Position ..................14

        2.  In the Walmart.com System the Numeric Identifier and the
            Descriptive Name Mean the Same Thing.  A Unique
            Numerical Identifier is the Category Description in the File
            Information Directory in a Preferred Embodiment ......................17

    C.  The Term "Initially" Means That Step (a) is the First Step of the
        Enumerated Method Steps and Occurs Before Step (b).......................19

    D.  Walmart.com Performs the Step of Creating a Search Filter as
        Required by Claim 1, Step (c)........................................................22

Case No. 06-CV-07336-PJH

SPEEDTRACK, INC.'S OPPOSITION TO DEFENDANTS'
SUMMARY JUDGMENT MOTION

1

**TABLE OF CONTENTS (CONT.)**

2

**Page**

3

III.   WALMART.COM'S AND ENDECA'S REMAINING DIRECT AND

4

INDIRECT INFRINGEMENT ISSUES .......................................................... 24

5

IV.    CONCLUSION ......................................................................................... 25

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

HENNIGAN DORMAN LLP
LAWYERS
LOS ANGELES, CALIFORNIA

Case No. 06-CV-07336-PJH                                    SPEEDTRACK, INC.'S OPPOSITION TO DEFENDANTS'
                                                                              SUMMARY JUDGMENT MOTION

1

**TABLE OF AUTHORITIES**

2                                                                                    **Page**

**Cases**

3

*Advanced Software Design Corp. v. Fiserv, Inc.*,
4       ___ F.3d ___, 2011 U.S. App. LEXIS 11411 (Fed. Cir. 2011) ..................................23

5    *Global Patent Holdings, LLC, v. Panthers BRHC*,
          586 F. Supp. 2d 1331 (S.D. Fla. 2008) ...........................................................................23
6

*Global-Tech Appliances, Inc. et al. v. SEB S.A.*,
7       131 S. Ct. 2060, 179 L.Ed. 2d 1167 U.S. Lexis 4022 (May 31, 2011) ......................24

8    *Helmsderfer v. Bobrick Washroom Equip., Inc.*,
          527 F.3d 1379 (Fed. Cir. 2008) ......................................................................................18
9

*Invitrogen Corp. v. Clontech Labs., Inc.*,
10      429 F.3d 1052 (Fed. Cir. 2005) .........................................................................................7

11   *Lucent Technologies, Inc. v. Gateway, Inc.*,
          580 F.3d 1301 (Fed. Cir. 2009) ......................................................................................24
12

*Omega Eng'g, Inc. v. Raytek Corp.*,
13      334 F.3d 1314 (Fed. Cir. 2003) ......................................................................................10

14   *Rissetto v. Plumbers & Steamfitters Local 343*,
          94 F.3d 597 (9th Cir. Cal. 1996) ....................................................................................16
15

*Salazar v. Proctor & Gamble Co.*,
16      414 F.3d 1342` (Fed. Cir. 2005) ......................................................................................21

17   *State of New Hampshire v. State of Maine*,
          532 U.S. 742 (2001) ...............................................................................................15, 16
18

*Uniloc USA, Inc. v. Microsoft Corp.*,
19      632 F.3d 1292 (Fed. Cir. 2011) ......................................................................................23

20   *Zamora Radio, LLC v. Last.fm, Ltd.*,
          758 F. Supp. 2d 1242 (S.D. Fla. 2010) ..........................................................................23
21

22   **Other Authorities**

23   Manual of Patent Examining Procedure ("MPEP"),
          § 1302.14, 8th Ed., Rev. No. 8 (2010) ...........................................................................21
24

25   **Rules**

26   Fed.R.Civ.P. 56(c)(1) .............................................................................................................25

27   Fed.R.Civ.P. 56(d)(2) .....................................................................................................24, 25

28

Case No. 06-CV-07336-PJH                          SPEEDTRACK, INC.'S OPPOSITION TO DEFENDANTS'
                                                                    SUMMARY JUDGMENT MOTION

HENNIGAN DORMAN LLP
LAWYERS
LOS ANGELES, CALIFORNIA

## I. INTRODUCTION

As described in SpeedTrack, Inc.'s pending motion for partial summary judgment, Defendant Walmart.com USA, LLC ("Walmart.com") uses computer software provided by Intervenor Endeca Technologies, Inc. ("Endeca") to practice the methods claimed in the '360 patent in connection with its website. As claimed in the '360 patent, Walmart.com creates terms descriptive of files, associates those terms with files, and its computer system uses those terms to create search filters guaranteed to locate at least one product of interest to its customers.

The motion for summary judgment of non-infringement filed by Walmart.com and Endeca should be denied. Documents and testimonial evidence provided in this litigation by both defendants directly contradict the factual assertions now made by them which are essential to their motion. For example, unambiguous evidence provided by Walmart.com and Endeca establish that Walmart.com's category description table is not a hierarchical structure with a single root. Only through repeated, selective quoting and omission do Walmart.com and Endeca make it appear that their motion is premised on undisputed facts supporting their positions. Notably, this motion for summary judgment brought by Walmart.com and Endeca is not supported at all by expert testimony.

SpeedTrack does not oppose the grant of partial summary judgment to Walmart.com on SpeedTrack's indirect infringement claims against Walmart.com only. Further, because the motion for summary judgment against Endeca for indirect infringement is based on a recent change in law, and because SpeedTrack has not had the opportunity to conduct relevant discovery, the Court should defer ruling on Endeca's request for partial summary judgment on SpeedTrack's inducing infringement claim under Rule 56(d)(2). The limited, additional discovery needed on that issue can be concluded during damage discovery. Finally, the Court should deny partial summary judgment on SpeedTrack's contributory infringement claim and deny Endeca's request for partial summary judgment on its declaratory judgment claim for no direct infringement.

## II. WALMART.COM AND ENDECA HAVE NOT PROVEN THAT THE ACCUSED METHOD DOES NOT INFRINGE THE CLAIMS OF THE '360 PATENT

### A. Walmart.com's Accused System Meets the "Non-Hierarchical" Limitation of Step (a) of Claim 1 and Step (a) of Claim 20

Walmart.com and Endeca contend that the accused Walmart.com method does not infringe

-1-

any asserted claim, because the "non-hierarchical" requirement of independent claims 1 and 20 is not satisfied by the accused method practiced by Walmart.com.  As set forth below, documentary and testimonial evidence provided by Walmart.com and Endeca prove that the accused method satisfies the "non-hierarchical" limitation.

### 1.   The File "walmart.dimensions.xml" is the "Category Description Table" of Claim 1 and the List of Claim 20 in the Walmart.com System

The "non-hierarchical" requirement is found in step (a) of claim 1 and step (a) of claim 20 of the '360 patent.  Step (a) of Claim 1 requires the step of initially creating in the computer system a "category description table" having a plurality of category descriptions, "the category descriptions *having no predefined hierarchical relationship* with such list or each other."  (emphasis added). Step (a) of Claim 20 has the identical hierarchical limitation, except that this step requires "at least one list of category descriptions," rather than a "category description table."

The Court construed the phrase "having no predefined hierarchical relationship" as follows: "The category descriptions have no predefined hierarchical relationship.  A hierarchical relationship is a relationship that pertains to a hierarchy.  A hierarchy is a structure in which components are ranked into levels of subordination; each component has zero, one or more subordinates; and no component has more than one superordinate component."

Three logical consequences flow from this limitation as construed by the Court:  (1) all of the components in a hierarchy must be related in a single structure; (2) there is a unique component to which every other component is ultimately subordinate, which is called the "root element"; and (3) there is a unique; i.e., single, path from any component of the structure to the root element. (Declaration of Professor Richard E. Korf in Support of SpeedTrack's Motion (Doc. No. 326), at Para. 18) (hereinafter "Korf July 6 Decl."[1]) and Declaration of Professor Richard Korf in Support of SpeedTrack's Opposition, filed concurrently herewith, at Para. 22 (hereinafter "Korf July 20 Decl."))  An example of a hierarchy described by Professor Korf is our military command structure, in which the "root" of the hierarchy is the President of the United States to whom all members of the

---

[1] A copy of the Korf July 6 Decl. is attached as Exhibit B to the accompanying Declaration of Alan P. Block, filed concurrently herewith (hereinafter the "Block July 20 Decl.")  Unless stated otherwise, all Exhibits referred to in this brief are attached to the Block July 20 Decl.

-2-

SPEEDTRACK, INC.'S OPPOSITION TO DEFENDANTS' SUMMARY JUDGMENT MOTION

HENNIGAN DORMAN LLP
LAWYERS
LOS ANGELES, CALIFORNIA

1  military ultimately report and from whom there is a unique chain of command (i.e., path) to each

2  individual member of the military.  (Korf July 6 Decl., at para. 18).

3         Figure 1 of the '360 patent depicts a hierarchy that is consistent with the Court's construction

4  for a hierarchy:



Figure 1 is a single structure

Figure 1 has a unique component to which every other component is ultimately subordinate.

In Figure 1, there is a unique, i.e., single, path from any component of the structure to the root element.

FIG. 1
(PRIOR ART)

18         As described in SpeedTrack's pending Motion for Partial Summary Judgment (Doc. No.

19  324, at 6:19-11:2) (hereinafter "SpeedTrack's Motion") and in the Korf July 6 Decl. (Paras. 16-23),

20  the Walmart.com system includes a file named "walmart.dimensions.xml," which is a category

21  description table and list required by independent claims 1 and 20 of the '360 patent.[2]  *Id.*

22  "Walmart.dimensions.xml" contains what Endeca refers to as "dimensions."  Each dimension has a

23  dimension name and each dimension includes dimension values.  For example, in

24  "walmart.dimensions.xml," there is a dimension called "Brand," which includes a plurality of

25  dimension values which represent the brand name of products offered for sale by Walmart.com,

26  such as "Braun," "Garmin," "Presto," etc. (Exhibit C). There are numerous other dimensions and

27  _____

28  [2]  The file "walmart.dimensions.xml" is also the list of category descriptions required by claim
    20.  (Korf July 20 Decl., at Para. 4).

SPEEDTRACK, INC.'S OPPOSITION TO DEFENDANTS'
SUMMARY JUDGMENT MOTION

HENNIGAN DORMAN LLP
LAWYERS
LOS ANGELES, CALIFORNIA

1   dimension values within the different dimensions in "walmart.dimensions.xml."

2       In the Walmart.com system, the "dimension values" that are descriptive of the Walmart.com

3   products (e.g., "Braun" and "Garmin") are the category descriptions[3] required by the '360 patent and

4   the "dimension names" (e.g., "Brand"), which are not descriptive of the files and which are used to

5   group together dimension values, correspond to "category types" in the '360 patent.[4]   (Korf July 20

6   Decl., at Para. 6).  Category types are depicted in Figure 3 of the '360 patent as column headings

7   under which category descriptions can be organized:



FIG. 3

2.   **Endeca's Employees Admit That, in the Walmart.com System, There is
     no Hierarchy Between Dimension Values (i.e., Category Descriptions) in
     Different Dimensions (i.e., Category Types)**

17      Through attorney argument only, Walmart.com and Endeca now contend that the dimension

18   values in the Walmart.com system have a predefined hierarchical relationship; that is, the accused

19   category descriptions in the Walmart.com system are organized into "hierarchical tree structures

20   containing other 'category descriptions.'"  (Motion, at 10:1-12:17).  Argument is no substitute for

21   evidence.  The category descriptions in the file "walmart.dimensions.xml" are not organized into a

22   single structure having a single superordinate component (or "root"), which is a necessary

23   component of any hierarchy.  (SpeedTrack's Motion, at 6:19-11:2 and Korf July 6 Decl., at Paras.

24   _____

25   [3] In step (a) of claim 1 and in step (a) of claim 20, the "category description" is described as
   "comprising a descriptive name."  Consistent with this language, the Court construed "category
26   description" to be "information that includes a name that is descriptive of something about a stored
   file."

27   [4] As taught in the '360 patent, a term that is not descriptive, but that is used to group together
   category descriptions that are related to one another, is described as being a "category type."  ('360
28   patent, at 5:32-35; 8:16-25; Korf July 20 Decl., at Para. 5).

Case No. 06-CV-07336-PJH                                    SPEEDTRACK, INC.'S OPPOSITION TO DEFENDANTS'
                                                                      SUMMARY JUDGMENT MOTION

HENNIGAN DORMAN LLP
LAWYERS
LOS ANGELES, CALIFORNIA

1    16-23).

2         Walmart.com and Endeca provide no expert testimony to support their contention that the

3    accused category descriptions in the Walmart.com system are organized into "hierarchical tree

4    structures containing other 'category descriptions'," even though their designated technical expert,

5    Dr. Turnbull, earlier opined on these issues.  Instead, Walmart.com and Endeca misrepresent the

6    testimony of  SpeedTrack's expert, Professor Korf,  claiming that he "acknowledged that the

7    'category descriptions' in the Walmart.com system have predefined hierarchical relationships."

8    (Motion, at 10:3-11).  Professor Korf provided no such testimony.  To the contrary, in testimony

9    omitted by Walmart.com and Endeca, Professor Korf unequivocally stated that the dimension values

10   in the Endeca system "do not have a predefined hierarchical relationship with such list or each

11   other."  (Korf Depo., at 120:1-121:3; Exhibit D)

12        Although, as selectively quoted by Walmart.com and Endeca at 10:5-11, Professor Korf did

13   testify that only *some* of the separate dimension structures in the Walmart.com system are

14   structurally organized  hierarchically , he made it crystal clear that there is no "global" hierarchy in

15   "walmart.dimensions.xml" and that there is no hierarchical relationship between any category

16   description in one dimension and any other category description in any other dimension:

17            The fact that, in walmart.dimensions.xml, there may be some individual
             dimension structures within which the dimension values may be hierarchical
18           (e.g., the "Price" dimension) is irrelevant, because there is ***never*** a hierarchical
             relationship between any category description in one dimension and any other
19           category description in any other dimension.  Furthermore, no dimension
             value is superordinate to all of the other dimension values in
20           walmart.dimensions.xml.

21   (Korf July 6 Decl., at Para. 23; emphasis in original).  Endeca's employees agree.

22        Endeca's technically trained employees agree with Professor Korf's conclusions.  Endeca's

23   Chief Technical Officer, Dr. Ferrarri, confirmed that Walmart.com's category descriptions

24   ("dimension values") in different dimensions (e.g., "Camcorder Type" and "Brand") have no

25   hierarchical relationship to one another:

26            Q:    In Exhibit 515 ["walmart dimensions.xml"] there is no hierarchical
                   relationship—dimension values living in different—living in different
27                 dimensions, correct?

28

HENNIGAN DORMAN LLP
LAWYERS
LOS ANGELES, CALIFORNIA

1    A:    *A given dimension value can only have one parent and because of that a dimension value – two dimension values pulled from two separate dimensions couldn't have a hierarchical relationship.*

3    (Ferrari Depo., at 187:8-17; emphasis added; Exhibit E; Korf July 6 Decl., at Para. 19).

4    Likewise, Mr. Fitzgerald, an Endeca senior software engineer, also admitted the absence of any

5    relationship, hierarchical or otherwise, between and among dimension values (i.e., category

6    descriptions) in the different dimensions in "walmart.dimensions.xml." (Fitzgerald Depo., at 131:5-

7    132:4; Exhibit F).

8    ### 3.    Attorney Argument is Not Evidence and Cannot Support Summary Judgment

10    Not only does Walmart.com's and Endeca's motion fail to provide any expert opinion

11    support, the Walmart.com and Endeca attorney argument only relies upon hypothetical structures

12    that are not present in the Walmart.com system or methods.  That argument does not address the

13    actual structure of the accused instrumentality or methods practiced by Walmart.com.  Walmart.com

14    and Endeca do not submit "walmart.dimensions.xml" or any part of it with their motion.  They offer

15    no *evidence* demonstrating the structure of any dimension(s) and dimension values that are actually

16    part of the accused method.  (Motion, at 10:12-11:25).

17    One hypothetical structure depicted by Walmat.com and Endeca is the "Wine Type"

18    dimension, having dimension values (category descriptions), such as "Merlot" and "Chianti," which

19    is taken from Endeca's "Concept Guide," not from "walmart.dimensions.xml."  (Motion, at 10:24-

20    27; See, Exhibit G to Cabral Decl.; Korf July 20 Decl., at Para. 11).  The other hypothetical is the

21    "Electronics" dimension, having dimension values (category descriptions), such as "LCD

22    Televisions" and "Plasma Televisions," which was made up by Mr. Fitzgerald at his deposition, but

23    it, too, is not part of "walmart.dimensions.xml."  ((Motion, at 11:16-23; See, Exhibit H to Cabral

24    Decl.; Korf July 20 Decl., at Para. 11).

25    There is no evidence that these hypothetical examples show how Walmart.com's accused

26    method works or that it operates in accordance with these examples.  As a matter of law,

27    "[u]nsubstantiated attorney argument regarding the meaning of technical evidence is no substitute

28    for competent, substantiated expert testimony.  It does not, and cannot, support [Walmart.com's and

Case No. 06-CV-07336-PJH

SPEEDTRACK, INC.'S OPPOSITION TO DEFENDANTS'
SUMMARY JUDGMENT MOTION

HENNIGAN DORMAN LLP
LAWYERS
LOS ANGELES, CALIFORNIA

1   Endeca's] burden on summary judgment." *Invitrogen Corp. v. Clontech Labs., Inc.*, 429 F.3d 1052,

2   1068 (Fed. Cir. 2005).

3   Walmart.com and Endeca use the "Wine Type" and "Electronics" examples to purportedly

4   illustrate the alleged single tree structure of separate, individual Endeca "hierarchical dimensions."

5   They contend that these dimensions violate the negative claim limitation providing that the category

6   descriptions cannot be hierarchcal.  (Motion, at 11:1-3).  Even if these hypothetical structures are

7   relevant, this is simply not true.

8   Pursuant to the claims, the negative, hierarchical limitation only applies to category

9   descriptions.[5]  "Wine Type" is not a "category description" at all, because it is not descriptive, and

10  therefore it cannot be a root of a "hierarchical" structure of category descriptions.  (Korf July 20

11  Decl., at Paras. 6 and 10).  Focusing on *only* the category descriptions in this dimension, as the

12  claims require, "Wine Type" is not a single hierarchical structure, but rather consists of three

13  separate structures with "Red," "White," and "Sparkling" as the roots of the category descriptions in

14  the respective structures.  (*See*, Korf July 20 Decl., at Para. 10). These structures are depicted below:



20  There being no common "root" between "Red," "White," and "Sparkling," there is no

21  hierarchical relationship between them and no hierarchical relationship between the subordinate

22  category descriptions "Merlot"/"Chianti" and "Chardonnay"/"Pinot Grigio" and

23  "Champagne"/"Spumante."  (Korf July 20 Decl., at Para. 10).  The second hypothetical example

24  provided by Walmart.com and Endeca relating to "Electronics" similarly consists of wholly separate

26  _____

27  [5]  The claims require that "the category descriptions [have] no predefined hierarchical
    relationship …" and the first sentence of the Court's construction for the "non-hierarchical"
28  limitation is "The *category descriptions* have no predefined hierarchical relationship."  (emphasis
    added).

HENNIGAN DORMAN LLP
LAWYERS
LOS ANGELES, CALIFORNIA

Case No. 06-CV-07336-PJH                                SPEEDTRACK, INC.'S OPPOSITION TO DEFENDANTS'
                                                        SUMMARY JUDGMENT MOTION

1   structures with category descriptions in different category types which also have no relationship,

2   hierarchical or otherwise, to one another.

### 4.    The Court's Construction Defining Hierarchy as a Single Structure is Fully Supported by the Specification

5   Walmart.com's and Endeca's attorneys argue that the Court's construction broadly prohibits

6   **any** subordinate/superordinate relationship between any two category descriptions.  (Motion, at

7   11:26-12:17).  In other words, according to Walmart.com and Endeca, if a system has a category

8   description table with one million unrelated category descriptions contained in non-hierarchical, flat

9   dimensions[6] and includes a single hierarchical dimension, containing a pair of category descriptions,

10  one being subordinate to the other, then the negative claim limitation prohibiting hierarchy would

11  not be met.  The Court's construction, however, requires much more: the category descriptions

12  cannot be organized into a hierarchy, which is "a structure in which components are ranked into

13  levels of subordination; each component has zero, one or more subordinates; and no component has

14  more than one superordinate component."  The category description table with one million unrelated

15  category descriptions and the two category descriptions in the subordinate/superordinate relationship

16  is not a hierarchical structure as defined by the '360 patent, as properly construed by the Court.

17  Walmart.com and Endeca argue that there is "no support in the patent for SpeedTrack's

18  narrow reading [of the Court's construction]" as requiring a single structure.  (Motion, at 12:5).

19  This Court's construction expressly refers in the singular to "a structure," which the '360 patent

20  specification repeatedly teaches.  (See, SpeedTrack's Motion, at 7:15-8:21 and Korf July 6 Decl., at

21  Para. 22).  Moreover, the '360 patent expressly contemplates the use of some

22  superordinate/subordinate structure within the category description table (and list of category

23  descriptions) as long as they are not organized in a single structure.  (Korf July 6 Decl., at Para. 22;

24  See, '360 patent, Col. 9:56 – Col. 10: 3).  According to the inventors: "This kind of 'multi-level'

25  categorization can be carried to any depth needed.  In essence, this approach is another way of

---

[6] Flat dimensions are dimensions that have one level of hierarchy beneath the dimension root and they are not hierarchical.  (Korf July 20 Decl., at 7-8; Fitzgerald 97:13-16; 123:19-25; Exhibit H).  The Walmart.com system includes a number of "flat dimensions."  (*See*, Korf July 20 Decl., at Paras. 12-16).

HENNIGAN DORMAN LLP
LAWYERS
LOS ANGELES, CALIFORNIA

1   organizing lists of category descriptions of the type contemplated by the present invention, adding

2   back some flavor of a hierarchical structure but with the added benefits of precision of input and

3   certainty of existence." ('360 patent, Col. 10:4-9).

4          The '360 patent also describes linking different category descriptions at Col. 15, lines 39-55,

5   which adds some superordinate/subordinate structure, but does not result in a single hierarchy.

6   (Korf July 6 Decl., at Para. 22; Korf July 20 Decl., at Para. 21).  For example, if a file is associated

7   with a category description called "E-Mail," the user could be asked to associate additional category

8   descriptions with that file, such as "Sent," "Received," "Action,""Urgent," and "Reply." *Id.*  This

9   establishes a type of predefined hierarchical relationship solely between the "E-Mail" category

10  description and the others, but it does not result in a single hierarchical structure, as prohibited in

11  step 1(a) of claim 1 of the '360 patent, and as shown by the Figure in Paragraph 21 of the Korf July

12  20 Decl.  Figure 2 of the '360 patent, which is an embodiment of the invention, shows many such

13  relationships among directories.  *Id.*

14         Ignoring the patent specification, Walmart.com and Endeca argue that remarks made by the

15  patentees during the prosecution of the '360 patent show that the patentees were "excluding *any*

16  hierarchical relationships by distinguishing prior art on the grounds that it showed a 'hierarchical'

17  relationship between just *two* 'category descriptions' (e.g., 'Language' → 'French')."  (Motion, at

18  12:6-8; emphasis in original).  Walmart.com and Endeca contend that the patentees "told the Patent

19  Office that the prior art did not apply because the relationship between the field ('Language') and

20  field type ('French') *alone* was hierarchical, without reference to the other 'category descriptions' in

21  the system."  (Motion, at 12:11-14; emphasis in original).  These assertions are just not true.

22         During prosecution of the '360 patent, the patentees merely stated that, unlike the cited prior

23  art, only descriptive names (i.e., category descriptions) are descriptors of files.  When the patentees

24  made these remarks, they had amended their pending independent claims to require that the

25  "category descriptions" comprise "a descriptive name."  As stated by the patentees: "the invention is

26  essentially 'fieldless'.  [C]ategory descriptions are not fields; they are directly applied descriptors of

27  files."  (March 17, 1995 Remarks, at 15; Exhibit J).  Therefore, in contrast to the prior art, non-

28  descriptive "fields," such as "Language," need not be associated with files.  Thus, in the prior art

HENNIGAN DORMAN LLP
LAWYERS
LOS ANGELES, CALIFORNIA

-9-

SPEEDTRACK, INC.'S OPPOSITION TO DEFENDANTS'
                                                        SUMMARY JUDGMENT MOTION

1   example, the field, "Language" is not descriptive, but it must be associated with the descriptive term

2   "French."  In the claims, however, "Language" would not be a "category description," because it is

3   not descriptive (it could be a category type), and therefore it is not required to be associated with the

4   descriptive term "French" and it is not required to be assigned to the file.

5        Other remarks in the same Patent Office filing, conveniently ignored by Walmart.com and

6   Endeca, show that the patentees explicitly informed the Patent Office that their invention

7   contemplated some hierarchical relationships between category descriptions:

> Unlike prior art hierarchical filing systems, the present invention does not
> require the 2-part hierarchical relationship between fields or attributes, and
> associated values for such fields or attributes.  At the most basic level, the
> present invention is a non-hierarchical filing system that allows essentially
> "free-form" association of category descriptions to files without regard to
> rigid definitions of distinct fields containing values (note that, at a next level
> of organization above this basic level, ***some hierarchical relationships
> are contemplated by the present invention by using category descriptions to
> categorize a lower level of category descriptions***; see, e.g., p. 19, ll. 8-22
> ['360 patent, at 9:56 – 10:9]).

14  (March 17, 1995 Remarks, at 13; Exhibit J; emphasis added).

15       Finally, Walmart.com and Endeca do not and cannot claim that the patentee's statements in

16  the prosecution history rise to the level of a "disavowal" such that the claims cannot cover a

17  category description table having category descriptions that are not organized into a hierarchical

18  structure, but in which only two of the category descriptions are in a subordinate/superordinate

19  relationship.  Not only do the patent and file history clearly contemplate the existence of some

20  hierarchical relationships between category descriptions, but there is no clear and unmistakable

21  disavowal of such claim scope, as is required under the law.  *See*, *Omega Eng'g, Inc. v. Raytek*

22  *Corp.*, 334 F.3d 1314, 1325-1326 (Fed. Cir. 2003) ("for prosecution disclaimer to attach, our

23  precedent requires that the alleged disavowing actions or statements made during prosecution be

24  both clear and unmistakable.")

25       **5.    There is no Single, Global Hierarchy Structure of Category Descriptions
                 in Walmart.com Having the So-Called "Endeca" Dimension as the Root**

27       Walmart.com and Endeca further contend, again without any supporting expert testimony,

28  that the category descriptions in the category description table, "walmart.dimensions.xml," do not

HENNIGAN DORMAN LLP
LAWYERS
LOS ANGELES, CALIFORNIA

-10-

1   meet the "non-hierarchical" limitations of the claims because, "all dimension values in the

2   Walmart.com system are organized into a global hierarchy starting with a 'primary dimension,'

3   named 'Endeca,' at the top of the hierarchical tree structure." (Motion, at 12:23-25).  Shorn of

4   attorney argument, the undisputed evidence is that there is no "global hierarchy" and that the

5   "Endeca" dimension is not the root (most superordinate) dimension in walmart.dimensions.xml

6   (Korf July 6 Decl., at Paras. 24-27; Korf July 20 Decl., at Para. 18).  Not only does a review of the

7   physical file show that "Endeca" is not the root of a single tree structure, but senior employees of

8   Walmart.com and Endeca uniformly testified that it was not the root.

9         Dr. Ferrari's and Mr. Fitzgerald's clear and unambiguous testimony establishes that

10   dimension values from different dimensions in "walmart.dimensions.xml" do not have a hierarchical

11   relationship to one another[7] and that, while each dimension in "walmart.dimensions.xml" has a

12   dimension root, there are no parents to the roots of the dimensions.[8]  Stated differently, there is no

13   single root superordinate to the numerous dimensions (e.g., Brand, Price, etc.) in the file.  (*See also*,

14   Fitzgerald Depo., at 102:1-104:12; 103:13 – 104:12; and 131:5-132:4; Exhibit N; Korf July 6 Decl.,

15   at Para. 27).  Mr. Yakkanti, Walmart.com's Software Engineering Manager, also admitted that there

16   was ***no relationship*** whatsoever between the "primary dimension," "Endeca," and the "secondary

17   dimension," "Price" in "walmart.dimensions.xml."  (Yakkanti Depo., at 93:4-10; Exhibit O).  That

18   relationship would have to exist if "Endeca" was the root of the entire table.

19         In fact, the reason "Endeca" is referred to as the "primary dimension" has nothing

20   whatsoever to do with the organization or structure of "walmart.dimensions.xml," but is the result of

21   the application of so-called "precedence rules."[9]  Precedence rules merely dictate which category

22   descriptions are displayed to the end user at any particular time, without regard to the structure of

23   "walmart.dimensions.xml."  *Id.*  While Walmart.com and Endeca try to make it appear that Mr.

---

24   [7] Ferrari Depo., at 187:8-17; emphasis added; Exhibit E; See also, Fitzgerald Depo., at 131:5-
25   132:4; Exhibit F; Korf July 6 Decl., at Para. 19.

26   [8] Ferrari depo., at 177:17-22; Exhibit L; See also, Fitzgerald depo., at 131:5-24; Exhibit F; Korf
     July 6 Decl., at Para. 21.

27   [9] "Precedence rule" is defined by Endeca to mean "a trigger that causes dimension values that
28   were not previously displayed to become available."  (Exhibit M).

-11-

HENNIGAN DORMAN LLP
LAWYERS
LOS ANGELES, CALIFORNIA

Fitzgerald testified that the "Endeca" dimension is superordinate to all of the dimensions in walmart.dimensions.xml, he provided no such testimony. Here, again, Walmart.com and Endeca omit crucial testimony wherein Mr. Fitzgerald acknowledged that he could not identify any physical structure in the Endeca system in which the "Endeca" dimension is superordinate to all of the other dimensions:

> Q. As implemented by Wal-Mart, is there any physical data structure in which the Endeca dimension is hierarchical to any of the other dimensions in the system?
>
> A. The Endeca dimension would be used in a hierarchical relationship with other dimensions *via precedence rules* once the Endeca dimension is established as a primary dimension.
>
> Q. Okay. So you'd agree with me that there's no single physical structure -- data structure in the Endeca system in which the Endeca dimension's hierarchical to any other dimension, correct?
>
> A. *I don't know*.

(Fitzgerald Depo., at 105:21-106:14; Exhibit P; emphasis added).

There are other reasons why Walmart.com's and Endeca's contention that "Endeca" is the root of a single structure of *category descriptions* in "walmart.dimensions.xml" is wrong. First, "Endeca" is not descriptive of anything about a product, and, therefore, it is not a category description subject to the hierarchical limitation. (Korf July 6 Decl., at Para. 25; Korf July 20 Decl., at Para. 18). As such, it should not be considered when determining whether "[t]he *category descriptions* have no predefined hierarchical relationship," as required by the Court's construction, which only imposes the limitation on category descriptions. (emphasis added). The same is true of the dimension names, e.g., "Price," "Actor," and "Brand," shown in the figure on page 14 of the Motion, which are not descriptive and, therefore, are also not category descriptions. Because the "Endeca," "Price," "Actor," and "Brand" dimension names are not category descriptions, there is no single, hierarchical structure of category descriptions in the page 14 figure.

When properly drawn to reflect the fact that "Endeca" is not superordinate to the other dimensions and is treated just like the other dimensions, the figure on page 14 of Walmart.com's and Endeca's moving brief would look like this:

HENNIGAN DORMAN LLP
LAWYERS
LOS ANGELES, CALIFORNIA



Second, if the dimension "Endeca" was the root of a single global structure in walmart.dimensions.xml, it would be readily apparent from a review of the file, because it would be defined at the top of the list of dimensions in "walmart.dimensions.xml." However, it does not appear until line 475,776 of that file. (Korf July 6 Decl., at Para. 23). Moreover, as Professsor Korf details, the "syntax" of walmart.dimensions.xml clearly shows that the Endeca dimension is treated identically to the other items in the list and for this reason as well it is not the root of the many category descriptions appearing therein. *Id.*

Third, Walmart.com and Endeca rely on another file than the legally relevant, accused file to argue non-infringement. The file "walmart.dimensions_refs.xml" relied on by Walmart.com and Endeca to show that "Endeca" is the "primary" dimension and that all other dimensions are mere "secondary" dimensions is legally irrelevant to prove whether the legally relevant category description table or list, "walmart.dimensions.xml," is organized hierarchically in a way that is prohibited by the claims. The file "walmart.dimensions_refs.xml" is not a category description table because it does not contain any category descriptions and it is not the relevant category description table or list. (Korf July 20 Decl., at Para. 19; Exhibit Q). "Walmart.dimensions.xml" contains all of the so-called Endeca "dimension values." (Korf July 6 Decl., at Para. 11; Ferrari Depo., at 152:19-25; Exhibit R to Block July 20 Decl.).

Walmart.com and Endeca also wrongly assert that the file "walmart.dimensions_refs.xml" is relevant, because "the claims of the '360 Patent preclude hierarchical relationships between the 'category descriptions,' regardless of how and where such relationships are created." (Motion, at

HENNIGAN DORMAN LLP
LAWYERS
LOS ANGELES, CALIFORNIA

-13-

14:25-15:3).  There is no such requirement in the claims.  The claims of the '360 patent are clear that "**the** category descriptions having no predefined hierarchical relationship with such list or each other" only applies to the "category description table" of claim 1 or the "at least one list having a plurality of category descriptions" in claim 20.  (emphasis added).  The term "the" in the phrase of claims 1 and 20: "**the** category descriptions having no predefined hierarchical relationship. . ." provides antecedent basis and refers to the first mention of "category descriptions" in the phrase of claim 1: "category description table containing a plurality of category descriptions" and in the phrase of claim 20: "at least one list having a plurality of category descriptions."  The patentees' remarks to the Patent Office also clearly state that it is only the list of category descriptions that has no predefined hierarchical relationship:

> Thus, the invention as presently claimed differs from Schwartz in that **a defined list of category descriptions, defined as having "no predefined hierarchical relationship with such list or each other",** must exist in the computer system before accepting user input associating with the file at least one category description selected from the list of category descriptions.

(March 17, 1995 Remarks, at 16; Exhibit J; emphasis added).

The claims are wholly agnostic as to how the category descriptions are related in other places in the system.

**B.     Walmart.Com's File Information Directory Meets the Claim Limitations of Containing Category Descriptions**

      **1.     Walmart.com and Endeca are Judicially Estopped From Contending that Inclusion of a Unique Identifier in the File Information Directory Does Not Meet the Claim Requirements When Endeca Caused the Patent Office to Take Action by Previously Asserting the Opposite Position**

For the first time during this four-and-a-half year litigation, Walmart.com and Endeca argue that the accused method does not meet the requirement of step (b) of claim 1 (and step (c) of claim 20) that the file information directory (and file records) contain a set of category descriptions (and at least one category description), because the accused file information directory includes unique numerical identifiers corresponding to the descriptive names, rather than the descriptive names themselves.  (Motion, at 15:13-16:24).  Although previously required to disclose all non-infringement contentions, Walmart.com and Endeca had **never** disclosed this contention and, in fact

HENNIGAN DORMAN LLP
LAWYERS
LOS ANGELES, CALIFORNIA

-14-

1   had previously contended the exact opposite with respect to a prior art reference which they asserted

2   anticipated claim 1.

3        Walmart.com and Endeca previously argued to this Court[10] and to the United States Patent

4   and Trademark Office[11] that the Kleinberger prior art reference anticipated claim 1 of the '360 patent

5   and rendered it obvious when combined with other references.  In advancing these invalidity

6   arguments, Walmart.com and Endeca asserted that the use of numerical identifiers in the alleged file

7   information directory (and the file records), rather than a corresponding descriptive name, satisfied

8   the claim limitations requiring that file information directory include category descriptions.

9        Walmart.com and Endeca should be judicially estopped from changing their position.

10   Judicial estoppel is "an equitable doctrine invoked by a court at its discretion."  *State of New*

11   *Hampshire v. State of Maine*, 532 U.S. 742, 750 (2001) (*quoting, Russell v. Rolfs*, 893 F.2d 1033,

12   1037 (9th Cir. 1990)).  Under the judicial estoppel doctrine, where a party assumes a certain position

13   in a legal proceeding, and succeeds in maintaining that position, he may not thereafter, simply

14   because his interests have changed, assume a contrary position, especially if it be to the prejudice of

15   the party who has acquiesced in the position formerly taken by him.  *State of New Hampshire*, 532

16   U.S. at 749.

17        Several factors typically inform the decision whether to apply the doctrine in a particular

18   case:  First, a party's later position must be clearly inconsistent with its earlier position.  *State of*

19   *New Hampshire*, 532 U.S. at 750.  Walmart.com's and Endeca's position that the claims require the

20   name of the category description in the file information directory, which cannot be represented by a

21   unique identifier, is completely inconsistent with their earlier position.

22        Second, courts regularly inquire whether the party has succeeded in persuading a court (or

23   administrative agency[12]) to accept that party's earlier position, so that judicial acceptance of an

---

[10] *See*, Motion for Summary Judgment (Doc. No. 219), at 23:18-26 (Exhibit S); and Cabral Decl. (Doc. No. 220-20), Exhibit 19, at 1-3 (Exhibit T)

[11] *See*, Request for *Ex Parte* Reexamination of U.S. Patent No. 5,544,360, at 24, 74-78, and Appendix CC-D, at 2-6; Exhibit U.

[12] The doctrine of judicial estoppel applies to positions taken in administrative proceedings: "[t]his rule [judicial estoppel] has been justified on the ground that 'the truth is no less important to an administrative body acting in a quasi-judicial capacity than it is to a court of law.'"  *Rissetto v.*

Case No. 06-CV-07336-PJH                     SPEEDTRACK, INC.'S OPPOSITION TO DEFENDANTS'
SUMMARY JUDGMENT MOTION

HENNIGAN DORMAN LLP
LAWYERS
LOS ANGELES, CALIFORNIA

1   inconsistent position in a later proceeding would create the perception that either the first or the

2   second court was misled.  *State of New Hampshire*, 532 U.S. at 750.  In persuading the Patent Office

3   to grant reexamination of the '360 patent in view of Kleinberger, Endeca succeeded in having the

4   Patent Office initially accept its position that having a numerical identifier that corresponds to a

5   descriptive name in the file information directory meets the claim requirements.[13]  The Patent Office

6   relied on Endeca's representations in finding: (1) that Kleinberger presented a "substantial new

7   question of patentabililty" for the purpose of going forward with the reexamination in view of

8   Kleinberger; and (2) that Kleinberger teaches the category description table and the file information

9   directory of the claims and that these teachings, in combination with teachings from other prior art

10  references, were sufficient for the Patent Office to twice reject the claims of the '360 patent as being

11  obvious over Kleinberger.  (Exhibits V and W).

12          Third, courts ask whether the party seeking to assert an inconsistent position would derive an

13  unfair advantage or impose an unfair detriment on the opposing party if not estopped.  *State of New*

14  *Hampshire*, 532 U.S. at 750.  Allowing Walmart.com and Endeca to change their position at this

15  stage of the proceedings would give Walmart.com and Endeca an unfair advantage and impose an

16  unfair detriment on SpeedTrack.  SpeedTrack has litigated this case with the understanding that

17  Walmart.com and Endeca agree that presence of a unique numerical identifier that corresponds to a

18  descriptive name in the file information directory meets step (b) of claim 1 and step (c) of claim 20.

19  As a result, SpeedTrack did not conduct any discovery or develop its case in view of the opposite

20  contention that Walmart.com and Endeca now make.  Fact and expert discovery on the liability

21  issues in this case have been closed for three years and SpeedTrack cannot go back and take

22  discovery in light of this new contention.

23          Further, had Walmart.com and Endeca contended from the beginning of this case that having

24  _____

    *Plumbers & Steamfitters Local 343*, 94 F.3d 597, 604 (9th Cir. Cal. 1996).

25

26  [13] The fact that it was only Endeca who brought the Reexamination proceeding, and not
    Walmart.com, is irrelevant.  Endeca is indemnifying Walmart.com and the same counsel is
    representing both Endeca and Walmart.com in this proceeding and in the Reexamination.

27  Walmart.com and Endeca both previously took the same position before this Court that Endeca took
    before the Patent Office.  Thus, there is no reason to believe that Endeca was not also speaking on

28  Walmart.com's behalf when it alone filed the Request for Reexamination.

HENNIGAN DORMAN LLP
LAWYERS
LOS ANGELES, CALIFORNIA

1   the numerical identifier in the file information directory is insufficient to meet the requirements of

2   step (b) of claim 1, then they could not have argued to the Patent Office that Kleinberger raised a

3   substantial new question of patentability or that it anticipated or rendered obvious claim 1 or any of

4   its dependent claims.  Without having to address Kleinberger, the Patent Office would have

5   concluded the Reexamination proceedings with the its September 21, 2010 Office Action, when the

6   only remaining rejections included the Kleinberger reference.  (Exhibit W).

7         Lastly, Walmart.com's and Endeca's change of position is inexcusable.  There is no

8   legitimate intervening event, such as a change in the law or discovery of a new fact that prompted

9   their change of position.  Endeca cannot argue that its reexamination arguments were made

10  according to a different claim construction, because Endeca informed the Patent Office that: "For

11  purposes of this Request, the Requestor will construe all claim language as adopted by the Court in

12  the SpeedTrack litigation."  (Exhibit U, at 18).

13         **2.    In the Walmart.com System the Numeric Identifier and the Descriptive Name Mean the Same Thing.  A Unique Numerical Identifier is the Category Description in the File Information Directory in a Preferred Embodiment**

16        Putting issues of judicial estoppel completely aside, Walmart.com and Endeca cannot avoid

17  infringement of the asserted claims because their file information directory contains a unique

18  numeric identifier corresponding and assigned to the descriptive name, rather than the descriptive

19  name itself.  As Professor Korf states, once the descriptive name and the number are associated in

20  the category description table (or list of category descriptions), the number and the name mean

21  exactly the same thing to the computer system:

22         [T]he unique category description identifiers in the file information directory
           are defined in the category description table to represent the descriptive
23         names of the category descriptions (e.g. the number "429296053" is defined
           in the category description table to uniquely represent the brand "JVC").
24         Once the descriptive name (e.g., "JVC") and unique identifier number (e.g.,
           "429296053") have been defined and associated in the file
25         "walmart.dimensions.xml," ***the computer system interprets the number as***
           ***representing the name, i.e., the number and the name mean the same***
26         ***thing***.

27  (Korf July 20 Decl., at Para. 23; *See also*, Korf July 6 Decl., at Paras. 34-37).

28        That the number and the name mean the same thing is taught in the specification of the '360

-17-

SPEEDTRACK, INC.'S OPPOSITION TO DEFENDANTS'
                                                                      SUMMARY JUDGMENT MOTION

HENNIGAN DORMAN LLP
LAWYERS
LOS ANGELES, CALIFORNIA

1  patent.  For example, the patent teaches that "each category description is preferably associated with

2  a unique identifier (preferably a number, but other identifiers could be used)." ('360 patent, at 5:12-

3  14).  In a preferred embodiment of the invention, the file information directory includes "the

4  identifier of the categories associated with each file…," not the descriptive name. ('360 patent, at

5  6:17-23).

6        Figure 4 of the '360 patent, reproduced below, shows the file information directory of the

7  '360 patent and shows, in the column entitled "CATEGORY_ARRAY," that only the numeric

8  unique identifiers are included in the file information directory, not the descriptive names (for

9  example, as shown in Figure 3, which is the category description table, "008" is the same as

10  "Memos," "300" is the same as "Jones"). (Korf July 20 Decl., at Para. 23; Korf July 6 Decl., at Para.

11  37).  This is precisely the embodiment of the patent that Walmart.com and Endeca now belatedly

12  claim does not meet the file information directory requirement.  *Id.*  It is axiomatic that a patent

13  claim should not be interpreted wherever possible to exclude the preferred embodiment.  *See,*

14  *Helmsderfer v. Bobrick Washroom Equip., Inc.*, 527 F.3d 1379, 1383 (Fed. Cir. 2008).

| FILE_NAME | FILE_LOC | DATE/TIME | NO_CATEGORIES | CATEGORY_ARRAY |
|---|---|---|---|---|
| jones.mem | c:\memos | 01-01-80 01:30 | 2 | 008, 300 |
| minutes.1 | f:\wpdocs | 10-10-90 10:10 | 3 | 009, 103, 109 |
| • | • | • | • | • |
| • | • | • | • | • |
| • | • | • | • | • |

FIG. 4

20        Even Walmart.com's and Endeca's expert admitted that a unique numerical identifier

21  appearing in the file information directory satisfied the requirements of the claims of the '360 patent.

22  (Exhibit X).  In his invalidity expert report dated August 29, 2008, Dr. Turnbull provided his expert

23  opinion that, in Kleinberger, the keyword *numbers* that are included in the alleged file information

24  directory "*correspond*" to the *keywords* and therefore Kleinberger contains a "file information

25  directory" that meets step (b) of claim 1:

HENNIGAN DORMAN LLP
LAWYERS
LOS ANGELES, CALIFORNIA

Case No. 06-CV-07336-PJH

161.    Kleinberger also contains a "file information directory" in the form of an "index," as shown in Figure 3D.  The index contains a unique identifier for each text (*i.e.*, the text number) and the keyword numbers corresponding to the keywords associated with each text. *See id.* at Col. 8:13-19 ("This file contains a variable-size record 48a for each text in the textbase, the entries being in the form of the number of the text being referred to, followed by a list of the keynumbers of the keywords associated with that text, followed by an end marker to indicate the end of that list and then the entry for the next text.").  Figure 3D is shown below:



## C.    The Term "Initially" Means That Step (a) is the First Step of the Enumerated Method Steps and Occurs Before Step (b)

For the first time in this litigation, Walmart.com and Endeca argue that the claim term "initially" in the first step of the claims does not simply mean that this step occurs before the succeeding method steps, but means that the "category description table" (claim 1) and the "at least one list having a plurality of category descriptions" (claim 20) must be created before any files are stored in the system.  (Motion, at 19:13-17).  That is, they now assert that they do not infringe the asserted claims, because "the Endeca dimension values are derived from pre-existing source data in the Walmart.com system."  (Motion, at 19:13-15).

Prior to the Patent Office confirming the validity of the asserted claims over the prior art submitted by Endeca in the Reexamination proceeding, Walmart.com and Endeca never contended or disclosed that "initially" had this new meaning or that there was no infringement because the dimension values are derived from pre-existing source data.  No party sought construction of this term because the meaning of this term was not disputed and Walmart.com and Endeca never contended that this was a disputed matter affecting infringement determinations.  Walmart.com's and Endeca's expert, Dr. Turnbull, testified in conformity with SpeedTrack's understanding.  He testified that "initially" in claims 1 and 20 means that step (a) would be the first step in the claims and would occur before step (b), and he even admitted that the Walmart.com "category description table," "walmart.dimensions.xml," is created initially in the computer system as required by the claims of the '360 patent.  (Turnbull Depo., at 61:25-62:9; 63:10-17; and 207:23-208:20; Exhibit Y).

-19-

HENNIGAN DORMAN LLP
LAWYERS
LOS ANGELES, CALIFORNIA

1    The parties' understanding of the meaning of "initially is consistent with the specification

2    and file history of the '360 patent.  In the specification, for example, the patentees summarized the

3    order of the steps in categorizing a file as:  first, defining a list a category descriptions; second,

4    associating one or more category descriptions with a file; and, third, storing a file record containing

5    file identity information, file location information, and the associated category description(s) for the

6    file (Korf July 6 Decl., at Para. 14; *See,* '360 patent, at 10:10-18).  There is no step in any of the

7    asserted claims describing the storing the source data files.  In fact, according to the claims

8    themselves, the data files are presumed to already be stored in the computer system prior to the

9    commencement of step (a), i.e., the "initially created" step.  The preamble of claims 1 and 20 state:

10   "A method for accessing ***files in a data storage system*** of a computer system …" (emphasis added).

11   Further, when the patentees added the term "initially" to step 1(a) of claim 1, and at the same

12   time added the term "thereafter" to step 1(b) of claim 1, the patentees made clear in their remarks to

13   the Patent Office that they only meant to express that step 1(a) is performed before step 1(b):

14   "Importantly, the invention constrains a user to first define category descriptions, and then associate

15   one or more defined category descriptions with a file.  This constraint ensures that the system

16   always 'knows' the set of possible descriptors before a file is linked to them."  (Korf July 6 Decl., at

17   Para. 14; August 7, 1995 Remarks, at 7, Exhibit Z).   The patentees further explained that: "Category

18   descriptions must be defined <u>before</u> associating them with a file, meaning that they are 'pre-defined'

19   or 'pre-existing.'"  (August 7, 1995 Remarks, at 6, Exhibit Z; emphasis in original).   Nowhere in

20   the specification or the prosecution history did the patentees state that "initially" means that the

21   category description table must be created at the beginning of the accused process and be in

22   existence before any of the files are stored in the system, or that the invention is to be practiced in

23   this manner.

24   Contrary to Walmart.com's and Endeca's arguments, the Patent Office did not construe any

25   claim limitation in the Reexamination proceedings.  While the Examiners did observe, with

26   reference to a discussion about a prior art reference, that the reference disclosed creating category

27   descriptions from source data and that this reference did not disclose step (a) of claim 1, the

28   Examiners did not affirmatively construe any of the claim language and, as was their right, chose not

-20-

1    to disclose their reasoning or the basis for their conclusion.  *See,* Manual of Patent Examining

2    Procedure ("MPEP"), § 1302.14, 8th Ed., Rev. No. 8 (2010) ("It should be noted that the setting

3    forth of reasons for allowance is not mandatory on the examiner's part … The statement is not

4    intended to necessarily state all the reasons for allowance or all the details why claims are allowed

5    and should not be written to impliedly state that all reasons for allowance are set forth.").

6           Further, SpeedTrack did not argue during the Reexamination that the reference did not teach

7    step (a) because category descriptions were derived from existing source data, and, as a matter of

8    law, neither SpeedTrack, nor the Court is bound by the Examiner's unilateral statements. *See,*

9    *Salazar v. Proctor & Gamble Co.*, 414 F.3d 1342, 1345 (Fed. Cir. 2005) ("[A]n applicant's silence

10   regarding statements made by the examiner during prosecution, without more, cannot amount to a

11   'clear and unmistakable disavowal' … After all, the applicant has disavowed nothing."); MPEP

12   § 1302.14 ("The examiner's statement should not create an *estoppel*.  Only applicant's statements

13   should create an *estoppel*.") (emphasis in original).

14          Walmart.com's and Endeca's new construction makes no sense.  According to claims 1 and

15   20, it is the category description table and the list of category descriptions that must be "initially"

16   created or defined.  If "initially" connotes "the beginning," as Walmart.com and Endeca contend,

17   whether something occurs "initially" or at the "beginning" can only be determined by reference to

18   something else.  Here, the something else is clearly the steps that follow and there is no indication

19   that "initially" requires that the category description table be created before any of the source data is

20   stored.  Indeed, using their logic, the patent is only infringed if the table and list are created at the

21   beginning of time.

22          Lastly, Walmart.com and Endeca argue that "the accused 'category descriptions' in this case

23   are derived from pre-existing source data."  (Motion, at 18:22-23).  Not true, and not supported by

24   any evidence.  There are dimension values that do not originate in the source data in the

25   Walmart.com system.  For example, the Price range dimension values (e.g., "$100-$150") do not

26   originate in the source data, because the Walmart.com source data contains only the specific prices

27   of products.  (Korf July 20 Decl., at Para. 25).

28

Case No. 06-CV-07336-PJH                                    SPEEDTRACK, INC.'S OPPOSITION TO DEFENDANTS'
                                                                              SUMMARY JUDGMENT MOTION

HENNIGAN DORMAN LLP
LAWYERS
LOS ANGELES, CALIFORNIA

D.     **Walmart.com Performs the Step of Creating a Search Filter as Required by Claim 1, Step (c)**

Walmart.com and Endeca argue that they do not infringe claims 1-4, 7, and 11-14 of the '360 patent, because they contend that the accused method does not meet step (c) of claim 1, which requires "thereafter creating in the computer system a search filter comprising a set of category descriptions ..." Walmart.com and Endeca argue that the end user creates the search filter and therefore Walmart.com is not performing this step. That lawyer argument is wrong. The evidence shows that the Walmart.com computer system creates the search filter.

As Professor Korf explains, the search filter is a data structure created by the computer software in the Walmart.com computer system that produces a search query in a format that can be used by the Endeca search engine. (Korf July 20 Decl, ¶ 26). After the end user selects category descriptions presented by the computer system, Walmart.com's software, among other things, converts those category descriptions into unique identifiers together with logical operators to create the actual search filter. *Id*. These identifiers and operators can then be used by the computer system to produce a search query (i.e., search filter) that can be used and understood by the system. *Id.* Since the query must be in a specified Endeca format, without the creation of the search filter by the computer, the Endeca search engine could not use the user category descriptions to do anything. (*Id*.; See also, Ferrari Depo., at 126:22-132:3, Exhibit AA).

Method step 1 (c) only requires that a search filter be created in the computer system. There is no requirement in claim 1 that the user creates the filter. The fact that the user may provide input which is used by the computer to create the search filter is irrelevant to the claimed method. Even claim 20, which addresses similar topics and is narrower than claim 1, only requires that the computer system "accept user input" as part of the claimed method; similarly, the preamble of claim 1 requires that the computer system in which the search filter is created must include means for accepting user input. Neither claim 1 nor claim 20 make the act of inputting an element of the claimed method. As is the case often with patented methods, the source of the raw materials used by the method is irrelevant to the method claimed in the '360 patent.

In contrast to the present case, the authorities cited by Walmart.com and Endeca each

Case No. 06-CV-07336-PJH

1   involved situations in which a third party performed one of the claimed method steps *as defined and*

2   *required by the claims*.  For example, in *Global Patent Holdings, LLC, v. Panthers BRHC*, 586 F.

3   Supp. 2d 1331 (S.D. Fla. 2008), the patent claim expressly required the "input" of a query, and it

4   was undisputed that this method step was performed by a remote user's computer and it was not

5   performed by the accused infringer.  Not surprisingly, the court held that where the patent claim

6   expressly requires the performance of an act by a third party, the accused infringer is not performing

7   all of the claimed method steps.  Similarly, in *Zamora Radio, LLC v. Last.fm, Ltd.*, 758 F. Supp. 2d

8   1242, 1256 (S.D. Fla. 2010), the court held that the claims at issue have steps that are required to

9   occur at the user's computer.

10       The present case presents a very different set of circumstances.  Here, the patent does not

11   claim a step (like "inputting" or "accessing") performed by a third party.  Step (c) of claim 1 only

12   requires the step of creating a search filter, a step that is inarguably performed by Walmart.com's

13   computer system.  The act of inputting information which may be used by the computer system is

14   not claimed and not required to infringe method claim 1.  The claim requires "creating in the

15   computer system a search filter," which is an act that Walmart.com performs.

16       The present case is similar to that of *Uniloc USA, Inc. v. Microsoft Corp.*, 632 F.3d 1292,

17   1309 (Fed. Cir. 2011).  In *Uniloc*, the Federal Circuit held that joint infringement did not apply

18   because the claim at issue, which required a "remote registration station incorporating remote

19   licensing unique id generating means," was directed to the actions of a single party and therefore

20   was directly infringed by Microsoft alone:

21           That other parties are necessary to complete the environment in which the
             claimed element functions does not necessarily divide the infringement
22           between the necessary parties.  For example, a claim that reads "An
             algorithm incorporating means for receiving e-mails" may require two
23           parties to function, but could nevertheless be infringed by the single party
             who uses an algorithm that receives e-mails.
24

25   *Uniloc*, 632 F.3d at 1309; *See also*, *Advanced Software Design Corp. v. Fiserv, Inc.*, ___ F.3d ___,

26   2011 U.S. App. LEXIS 11411 (Fed. Cir. 2011).

27

28

HENNIGAN DORMAN LLP
LAWYERS
LOS ANGELES, CALIFORNIA

1

2

III.   **WALMART.COM'S AND ENDECA'S REMAINING DIRECT AND INDIRECT INFRINGEMENT ISSUES**

3

In the final three sections of its Motion, Walmart.com and Endeca contend that they are

4

entitled to summary judgment on various direct and indirect infringement claims.

5

*First*, Walmart.com contends that it is entitled to summary judgment on SpeedTrack's claim

6

for indirect infringement against Walmart.com, because SpeedTrack no longer accuses

7

Walmart.com of indirect infringement.  (Motion, at 21:17-22:3).  As to that issue alone, SpeedTrack

8

agrees.

9

*Second*, Endeca contends that it is entitled to summary judgment on SpeedTrack's claims for

10

inducing and contributory infringement against Endeca. (Motion, at 22:4-24:20).  Endeca relies

11

upon the Supreme Court's decision in *Global-Tech Appliances, Inc. et al. v. SEB S.A.*, 131 S. Ct.

12

2060, 179 L.Ed. 2d 1167, 2011 U.S. Lexis 4022 (May 31, 2011), which substantially changed the

13

standard for proving inducing infringement to require "knowledge that the induced acts constitute

14

patent infringement," which can be proved by showing, among other things, that the accused

15

infringer acted with "willful blindness."  *Global-Tech*, 131 S.Ct. at 2068-2071.  The Supreme Court

16

articulated this new standard in May 2011, well after the close of liability discovery.  (Block Decl.,

17

Paras. 29-31).  Therefore, SpeedTrack respectfully requests, pursuant to Fed.R.Civ.P. 56(d)(2), that

18

the Court allow SpeedTrack time to take limited discovery on the knowledge issue, including

19

"willful blindness," which could occur during the damages phases of this case without causing any

20

delay to the trial date, as no trial date has been set.

21

Further, Endeca is not entitled to partial summary judgment on SpeedTrack's claim for

22

contributory infringement against Endeca.  Endeca contends that there is no evidence that "Endeca

23

had knowledge that the alleged combination for which Endeca's software was especially designed

24

was both patented and infringed."  (Motion, at 24:11-12).  However, in *Lucent Technologies, Inc. v.*

25

*Gateway, Inc.*, 580 F.3d 1301, 1321 (Fed. Cir. 2009), the court affirmed the denial of a JMOL

26

motion where the jury found contributory infringement stating: "the jury could reasonably conclude,

27

based on the evidence presented, that Microsoft intended computer users to use the tool – perhaps

28

not frequently – and the only intended use of the tool infringed the Day patent."  Here, as described

HENNIGAN DORMAN LLP
LAWYERS
LOS ANGELES, CALIFORNIA

-24-

1    in detail in SpeedTrack's Motion for Partial Summary Judgment, the intended use of the guided

2    navigation feature of the Endeca software infringes claim 1 of the '360 patent, and it is indisputable

3    that Endeca intended that Walmart.com would use the guided navigation feature of that software in

4    this manner.  (*See,* Exhibit I).

5        *Third*, Endeca contends that it is entitled to summary judgment on its declaratory judgment

6    claim for no direct infringement.  (Motion, at 24:21-25:2).  As support for its contention, Endeca

7    states only that SpeedTrack has not accused Endeca of direct infringement and has not provided any

8    direct infringement contentions (but SpeedTrack was not required to provide such infringement

9    contentions (L.R. 3-1)).  *Id.*  Endeca's motion should be denied, because it does not comply with

10   Fed.R.Civ.P. 56(c)(1), as Endeca has not cited to any part of the record showing why it has not

11   directly infringed any claim of the '360 patent and it has not shown or even asserted that

12   SpeedTrack cannot produce admissible evidence of direct infringement by Endeca.

13   **IV.    CONCLUSION**

14       For the foregoing reasons and authorities, SpeedTrack respectfully requests that the Court:

15   (1) deny Walmart.com's and Endeca's Motion for Summary Judgment of Non-Infringement; (2)

16   grant partial summary judgment to Walmart.com on SpeedTrack's indirect infringement claims

17   against Walmart.com only; (3) defer ruling on Endeca's request for partial summary judgment on

18   SpeedTrack's inducing infringement claim against Endeca under Rule 56(d)(2); (4) deny partial

19   summary judgment on SpeedTrack's contributory infringement claim against Endeca; and (5) deny

20   Endeca's request for partial summary judgment of no direct infringement on its declaratory

21   judgment claim.

22

23   DATED:  July 20, 2011                    HENNIGAN DORMAN LLP

24

25                                            By_____/S/ Roderick G. Dorman_____
                                                      Roderick G. Dorman

26                                            Attorneys for Plaintiff, SPEEDTRACK, INC.,

27

28   1756362.5

Case No. 06-CV-07336-PJH                          SPEEDTRACK, INC.'S OPPOSITION TO DEFENDANTS'
                                                                SUMMARY JUDGMENT MOTION

HENNIGAN DORMAN LLP
LAWYERS
LOS ANGELES, CALIFORNIA

1

## PROOF OF SERVICE

2

3          I am employed in the County of Los Angeles, State of California.  I am over the age of 18
years and not a party to the within action; my business address is 865 South Figueroa Street, Suite
4    2900, Los Angeles, California  90017.

5          On July 20, 2011, all counsel of record who are registered ECF users are being served with a
copy of the foregoing document described as **PLAINTIFF SPEEDTRACK, INC.'S**
6    **OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT OF NON-**
**INFRINGEMENT OF U.S. PATENT NO. 5,544,360** via the Electronic Case Filing Program of
7    the United States District Court for the Northern District of California per Local Rule 5-3.3.

8          I caused the document listed above to be transmitted by **FedEx** to the individual on the
service list as set forth below only:

9

10

11              Chambers of the Hon. Phyllis J. Hamilton
United Stated District Court, Oakland Division
12              *Attn*:  Regarding SpeedTrack Litigation
1301 Clay Street
13              3rd Floor, Courtroom 3
Oakland, CA 94612-5212

14

15          I declare under penalty of perjury under the laws of the United States of America that the
foregoing is true and correct.
16

17          Executed on July 20, 2011, at Los Angeles, California.

18

19                                              _____
/S/ Carol Yuson
20                                              Carol Yuson

21

22

23

24

25

26

27

28

-1-