1   Lary Alan Rappaport (SBN 087614)
    Joshua J. Pollack (SBN 215922)
2   PROSKAUER ROSE LLP
    2049 Century Park East, Suite 3200
3   Los Angeles, CA 90067-3206
    Telephone: (310) 557-2900
4   Facsimile: (310) 557-2193
    lrappaport@proskauer.com
5   jpollack@proskauer.com

6
    Steven M. Bauer (Admitted *Pro Hac Vice*)
7   Colin G. Cabral (Admitted *Pro Hac Vice*)
8   PROSKAUER ROSE LLP
    One International Place
9   Boston, MA 02110
    Telephone: (617) 526-9600
10  Facsimile: (617) 526-9899
    sbauer@proskauer.com
11  ccabral@proskauer.com

12
    Attorneys for
13  ENDECA TECHNOLOGIES, INC. and WAL-MART.COM USA, LLC*

14  *Additional Counsel Listed on Signature Block

15              **UNITED STATES DISTRICT COURT**

16            **NORTHERN DISTRICT OF CALIFORNIA**

17                  **OAKLAND DIVISION**

18

19  SPEEDTRACK, INC.                          Case No. C 06-7336 PJH

20              *Plaintiff,*
                                              **DEFENDANTS' NOTICE OF MOTION
21  v.                                        AND MOTION TO STRIKE PORTIONS
                                              OF THE JULY 6, 2011 DECLARATION
    WAL-MART.COM USA, LLC                     OF PROFESSOR RICHARD E. KORF**
22
                *Defendant.*
23                                            Before: Hon. Phyllis J. Hamilton

24  ENDECA TECHNOLOGIES, INC.                 HEARING DATE: August 24, 2011
                                              TIME: 9:00 a.m.
25              *Intervenor,*                 ACTION FILED: November 29, 2006

26  v.
                                              **ORAL ARGUMENT REQUESTED**
27  SPEEDTRACK, INC.

28              *Defendant in Intervention.*

1

### NOTICE OF MOTION AND MOTION

2

PLEASE TAKE NOTICE that on August 24, 2011, at 9:00 a.m., Wal-Mart.com USA,

3

LLC ("Walmart.com") and Endeca Technologies, Inc. ("Endeca") will move this Court

4

pursuant to Fed. R. Civ. P. 37(c)(1) and Local Rule 7-4(b), to strike portions of the July 6,

5

2011 Declaration Of Professor Richard E. Korf ("Korf Declaration").  This Motion is based

6

on this Notice of Motion and Motion, the following Memorandum of Points and Authorities,

7

the Declaration of Colin Cabral ("Cabral Decl.") and the exhibits attached thereto filed

8

herewith, and on such other matters as may have been filed with the Court or will be presented

9

to the Court at the time of the hearing.

10

Walmart.com and Endeca respectfully request that the Court strike paragraphs 5-7, 10,

11

14-15, 18-28, 30, 36-38, 41-52, 54, 56-64, 68-74, 76-84, 86-90, 93-96, and 98-100 of the Korf

12

Declaration.

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

## <u>TABLE OF CONTENTS</u>

2

3   I.     INTRODUCTION ..................................................................................................1

4   II.    FACTUAL BACKGROUND ..................................................................................2

5   III.   ARGUMENT ........................................................................................................3

6           A.    The Korf Declaration Contains Improper New Opinions That Should Be

7                 Stricken Under Fed. R. Civ. P. 37(c)(1). ....................................................3

8                 1.    The New Opinions In The Korf Declaration Are Not Substantially

                        Justified. .........................................................................................3

9                 2.    Allowing The New Opinions Expressed In The Korf Declaration

10                      Into The Record Would Not Be Harmless. .......................................9

11                3.    Analysis Of The Factors In The Ninth Circuit's Balancing Test
                        Demonstrates That The New Opinions Expressed In The Korf

12                      Declaration Should Be Stricken.....................................................11

13          B.    The Korf Declaration Is Impermissibly Laden With Arguments In An

                  Attempt To Circumvent This Court's Page Limit On Briefs.....................12

14   IV.    CONCLUSION....................................................................................................19

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## TABLE OF AUTHORITIES

Page(s)

CASES

*Baker v. Indian Prairie Community Unit*
   No. 96 C 3927, 1999 U.S. Dist. LEXIS 17221 (N.D. Ill. Oct. 26, 1999) ...............................10

*Cortez v. Global Ground Support, LLC*
   No. 09-4138 SC, 2010 U.S. Dist. LEXIS 132772 (N.D. Cal. December 15, 2010)...............18

*Dimension One Spas, Inc. v. CoverPlay, Inc.*
   No 03cv1099-L(CAB), 2008 U.S. Dist. LEXIS 69526 (S.D. Cal. Sept. 5, 2008)....................9

*Goldberg v. Cameron*
   No C-05-03534 RMW, 2011 U.S. Dist. LEXIS 36840 (N.D. Cal. April 4, 2011)................10

*Juarez v. Jani-King of California, Inc.*
   No. 09-3495 SC, 2010 U.S. Dist LEXIS 110939 (N.D. Cal. Sept. 24, 2010..........................18

*Johnson v. Mammoth Recreations, Inc.*
   975 F.2d 604 (9th Cir. 1992) ................................................11

*Ramirez v. The Salvation Army*
   No. C06-0631 TEH, 2008 U.S. Dist. LEXIS 17480 (N.D. Cal. March 6, 2008) ...................18

*Rowe Int'l Corp. v. Ecast, Inc.*
   586 F.Supp.2d 924 (N.D. Ill. 2008) ......................................................8, 10

*Shore v. Brown*
   No. 1:07-CV-01160 OWW SMS,
   2009 U.S. Dist. LEXIS 94828 (E.D. Cal. Oct. 9, 2009) ...................................10, 11

*Wong v. Regents of the Univ. of Cal.*
   410 F.3d 1052 (9th Cir. 2005) ................................................11

*Yetti by Molly, Ltd. v. Deckers Outdoor Corp.*
   259 F.3d 1101 (9th Cir. 2001) ................................................10

1    **OTHER AUTHORITIES**

2    Fed. R. Civ. P. 26.........................................................................................1, 8, 9, 10

3    Fed. R. Civ. P. 37............................................................................................3, 9, 10

4    Fed. R. Civ. P. 56.....................................................................................................18

5    Local Rule 7-4(b).....................................................................................................18

6    Local Rule 7-5(b).....................................................................................................18

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

In support of its motion for partial summary judgment filed on July 6, 2011, SpeedTrack, Inc. ("SpeedTrack") submitted a 30-page declaration from its expert, Prof. Richard Korf. Whole sections of the Korf Declaration contain new expert opinions never before disclosed in any expert report, despite the fact that expert discovery has been closed for years.[1] These new opinions in the Korf Declaration, submitted well after the close of expert discovery, run afoul of Fed. R. Civ. P. 26(e) and should not be permitted at this late stage.[2] They include paragraphs 24-27 and 41-51.

Additionally, much of the Korf Declaration consists of conclusory statements and lengthy argument submitted to circumvent the Court's 25-page limit for dispositive motions. As just one example of how SpeedTrack has used the Korf Declaration to circumvent the 25-page limit, SpeedTrack has moved for summary judgment on Endeca's and Walmart's invalidity defenses under Section 102 with but a *single* paragraph in its motion for each of six prior art references at issue. However, SpeedTrack refers the Court to *15 pages* of argument in the Korf Declaration on this issue. The paragraphs that should be stricken so that the record conforms to the Court's page

---

[1]     One example of a previously undisclosed opinion is Professor Korf's discussion in his declaration regarding the "primary dimension." Professor Korf intentionally did not address this feature in his expert report on the issue of infringement. *See*, *e.g.*, Ex. D, Korf Tr., at 132:21-24* ("Q. Were you aware of this Endeca primary dimension at the time you rendered your infringement analysis? A. Yes, I was."); *id.* at 133:3-6 ("Q. I'm asking. Is it true that you didn't mention [the primary dimension] in your report? A. I don't have a specific recollection that I did, but I'm not certain that I didn't.").

*     All exhibits are attached to the Declaration of Colin Cabral, dated July 20, 2011 ("Cabral Decl."), filed concurrently with this motion.

[2]     Prof. Korf has submitted three expert reports in this case:  1) an expert report on infringement served on August 29, 2008 (*see* Ex. A, Korf Expert Report);  2) a rebuttal expert report on the issue of validity served on September 19, 2008 (*see* Ex. B, Korf Rebuttal Report); and 3) a second rebuttal expert report on the re-examination proceedings served on June 6, 2011 (*see* Ex. C, Korf Re-Exam Rebuttal Report).  There was no discussion about the "primary dimension" or a step-by-step walkthrough of a demonstration of screenshots from theWalmart.com website in any of these reports.

limit include nos. 5-7, 10, 14-15, 18-28, 30, 36-38, 41-42, 44-52, 54, 56-64, 68-74, 76-84, 86-90, 93-96, and 98-100.

For the reasons set forth above, Wal-Mart.com and Endeca respectfully move to strike paragraphs 5-7, 10, 14-15, 18- 28, 30, 36-38, 41-52, 54, 56-64, 68-74, 76-84, 86-90, 93-96, and 98-100 of the Korf Declaration.

## II.     FACTUAL BACKGROUND

In support of its motion for partial summary judgment, SpeedTrack argues that Walmart.com infringes because the Endeca technology does not provide Walmart.com with a "single" hierarchical data structure, but rather, provides a number of hierarchical structures.  In support of this argument, Speedtrack filed a 30-page "Declaration of Richard E. Korf in Support of SpeedTrack, Inc.'s Motion for Partial Summary Judgment Pursuant to Rule 56(a)" ("Korf Declaration").  *See* Dkt. No. 326.  In the Korf Declaration, Professor Korf provides new opinions that were not previously disclosed in his expert reports.  *See, e.g., id.*, at ¶¶ 24-27, 41-51. Specifically, when opining that the Walmart.com system practices Step (a) of Claim 1 of the '360 Patent, Professor Korf argues -- as he never has before -- that the "primary dimension" in the Walmart.com system is not a single root of the hierarchy in the "category description table." *See id.*, at ¶¶ 24-27.  Further, the Korf Declaration expresses opinions never before provided by him regarding a series of screen shots of the Walmart.com website.  *See id.*, at ¶¶ 41-51.

In its motion, SpeedTrack also moves for partial summary judgment on a number of patent infringement and validity issues.  In support of these requests, SpeedTrack repeatedly relies on and cites to conclusory statements and lengthy arguments contained in the Korf Declaration, many of which are not even based on Prof. Korf's personal knowledge or factual citations from the record. *See id.*, at ¶¶ 5-7, 10, 14-15, 18-28, 30, 36-38, 41-42, 44-52, 54, 56-64, 68-74, 76-84, 86-90, 93-96, and 98-100.

III.    ARGUMENT

    A.    **The Korf Declaration Contains Improper New Opinions That Should Be Stricken Under Fed. R. Civ. P. 37(c)(1).**

    The Korf Declaration contains opinions of Prof. Korf that were not previously disclosed to the Defendants.  In effect, SpeedTrack is seeking to use this summary judgment proceeding as an unauthorized and untimely supplemental expert report.

    1.    **The New Opinions In The Korf Declaration Are Not Substantially Justified.**

    SpeedTrack has provided no justification, and never sought leave of court, for its untimely expert opinions.  There is no reason why SpeedTrack could not have disclosed Prof. Korf's newest opinions and analyses prior to his deposition on December 3, 2008, and within the deadline for expert discovery, also December 3, 2008.

    For example, Professor Korf's declaration includes new opinions regarding the "primary dimension" in the Walmart.com system:

        24. The so-called "primary dimension" called "Endeca" is not the single root of walmart.dimensions.xml.

        25. First, "Endeca" is not a category description because it is not descriptive of anything about a product. In fact, every product in the Walmart.com system is tagged with "Endeca."

        26. Second, walmart.dimensions.xml, which I identified as the category description table, shows that "Endeca" is not the root of a hierarchical structure. Every hierarchical structure must have a single, common root which is the ancestor of all the elements in the hierarchy. The structure of the walmart.dimensions.xml file clearly shows that "Endeca" is not the single common root of a single hierarchical structure. For one thing, the "Endeca" dimension name is defined on lines 475,776-475,790, instead of at the beginning. In order to be the root of this structure, "Endeca" would have to be defined at the very beginning of this file, which it is not. Furthermore, in order to be the root, all of the other dimensions would have to appear subordinate to the "Endeca" dimension. Instead, all of the dimensions, including the "Endeca" dimension, appear at the same level in the file walmart.dimensions.xml. In order

1
2

to be the root, "Endeca" would have to be by itself at the highest level, which it is not.

3
4
5
6
7
8
9
10
11
12

27. Third, Dr. Ferrari testified that every dimension has a dimension root and that the dimension root is a dimension value that has no parent. (See, e.g., Ferrari Depo., at 177:7-22; Exhibit 17, Tab A). Endeca's Mr. Fitzgerald further explained that there is no relationship defined between the "Endeca" dimension and all of the other dimensions, the "Endeca" dimension is treated the same as all other dimensions, and the "Endeca" dimension has no hierarchical relationship to any other dimensions. (Fitzgerald Depo., at 103:13 – 104:12; Exhibit 17, Tab B; Fitzgerald Depo., at 102:1-104:12 and 131:5-132:4; Exhibit 17, Tab C). Finally, based on the testimony of Endeca's witnesses, including Dr. Ferrari and Mr. Fitzgerald, and documents describing the Endeca software I have reviewed, nowhere is there any indication that the "Endeca" dimension is used as the root of a single hierarchical structure. (See, Deposition Exhibit 528, page 47; Exhibit 17, Tab D; and Deposition Exhibit 530; Exhibit 17, Tab E; See also, Ferrari Depo. At 211:9-212:15; Exhibit 17, Tab F; Fitzgerald Depo., at 101:1-25; Exhibit 17, Tab G).

13
14
15
16
17
18
19
20

Dkt. No. 326, Korf Declaration, at ¶¶ 24-27.  But Professor Korf -- *intentionally*-- did not address this feature in his expert report on the issue of infringement, and this is the first time his opinion on the primary dimension issue has been presented to Defendants.  *See, e.g.*, Ex. D, Korf Tr., at 132:21-24 ("Q. Were you aware of this Endeca primary dimension at the time you rendered your infringement analysis?  A. Yes, I was."); *id.* at 133:3-6 ("Q.  I'm asking.  Is it true that you didn't mention [the primary dimension] in your report?  A.  I don't have a specific recollection that I did, but I'm not certain that I didn't.").

21
22
23
24
25

In providing a step-by-step walkthrough of a series of screenshots demonstrating the Walmart.com website, the Korf Declaration also presents an entirely new argument concerning the accused practice by Walmart.com of Claim 1, Step (c) of the '360 Patent.  These new opinions comprise a lengthy narrative not provided in his previous reports:

26
27
28

41. There are at least three different ways that a customer can access products using the Walmart.com website. The first is by typing in keywords. The second is by selecting keywords from the Walmart.com catalog. The third is by selecting category descriptions using the Endeca software. To the user, the second and third methods

appear very similar, however, they are implemented differently. A user may use two or even all three of these methods in combination in looking for a particular product. SpeedTrack only alleges infringement of claim 1 of the '360 patent by the third method, using the Endeca software, whether or not other methods are also employed. I address that method below.

42. Following the creation in the computer system of the "category description table," "walmart.dimensions.xml," and file information directory, "walmart-sgmt0.records.binary," Walmart.com presents to a customer category descriptions (dimension values) which the customer can select from, and from which Walmart.com constructs a search filter in its computer system. Under normal operation, the Walmart.com system only presents the customer with category descriptions (dimension values) that correspond to at least one file (product) in the file information directory (walmart-sgmt0.records.binary), thus guaranteeing a result, as described by Endeca in its Concepts Guide:

> A navigation query, in its most basic form, is a combination of one or more dimension values…. A navigation query instructs the Navigation Engine to return the set of records that represents the intersection of all the dimension values that it contains…. When an intersection doesn't exist between all of the dimension values in a navigation query, that query is considered a dead end…. The Navigation Engine automatically eliminates such dead end queries by virtue of the way it structures the follow-on query information that it returns in its query results. This is the essence of Guided Navigation…

("Endeca Navigation Platform: Concepts Guide," at 46-47 ; See also, 49 and 50-51; Exhibit 25; emphasis in original).

43. A demonstration of screen shots showing the creation by Walmart.com of two typical search filters in the Walmart.com computer system used to search for entries in the file information directory so that the file for the JVC camcorder is accessed from the Walmart.com database is depicted in Paragraphs 59-71 of the accompanying declaration of Alan P. Block.

44. For example, Paragraph 59 of the Block Declaration shows the Walmart.com home page. A customer, who is interested in purchasing the "JVC Camcorder," may first input the term "camcorders" into the text box. This step is not a part of the "search filter" of step 1(c), because a category description has not been selected. The resulting screen is shown in Paragraph 60, which shows

on the left side of the screen a list of category descriptions associated with the term "camcorders." Each of these category descriptions has an accompanying number in parentheses, e.g., the category description for the Brand "JVC" has the number 18, which means that, if that category description is selected as the first member of the search filter, there would be 18 camcorder products which are associated in the file information directory "walmart-sgmt0.records.binary" with the category description "JVC."

45. In the next screen shot shown in Paragraph 61, the customer has selected "JVC" and the Walmart.com computer has searched for all matching "JVC" camcorders. The Walmart.com screen shows the 18 products in the middle portion of the screen and shows all category descriptions which remain for the matching 18 JVC camcorders on the left side of the screen. For example, if the "JVC Camcorder" that the customer is interested in is a "Mini DV" type of camcorder, the customer can select the category description "Mini DV," for which there is guaranteed to be three such products, as indicated by the number 3 in parentheses next to the "Mini DV" category description.

46. Paragraph 62 shows the screen shown by the Walmart.com computer system after having accepted the customer's selection of the category description "Mini DV," adding it to the previously selected category description "JVC" so the Walmart.com computer system created a search filter comprised of the category descriptions "JVC" and "Mini DV," and searched for all matching camcorders in the file information directory "walmart-sgmt0.records.binary" associated with the category descriptions "JVC" and "Mini DV." The previous screen showed that three camcorders were guaranteed to be found, and in the next screen, three camcorders were found and displayed, along with the remaining category descriptions associated with those three camcorders.

47. If the customer wishes to spend between $150-$200 for a camcorder, the customer may next select the category description "$150-$200," for which there is guaranteed to be one matching camcorder, as indicated by the number 1 in the parentheses next to this category description. Paragraph 63 depicts the "JVC Camcorder" product information from the "file" for this product that, after the search filter for "JVC," "Mini DV," and "$150-$200" was created in the Walmart.com computer system, was accessed from the Walmart.com database using the product identification "7811281," as shown in the URL for this page: "http://www.walmart.com/catalog/product.do?product_id=7811281".

48. This search using the category descriptions guaranteed a result, as demonstrated by the fact that Walmart.com indicated for

each category description the number of matching products (always one or more), and by the Endeca documentation which states that searches are guaranteed a result (Exhibit 25).

49. The second search also starts from the Walmart.com home page, shown in Paragraph 64 of the Block Declaration, using the Walmart.com catalog. If the customer were to pass his or her cursor over the keyword "Electronics," the customer will see a number of keyword selections, including "Cameras." Selecting the keyword "Cameras" causes the screen shown in Paragraph 65 to be displayed. On the left side are some possible selections, one of which is the keyword "Camcorders." Selecting the keyword "Camcorders" causes the screen shown in Paragraph 66 to be displayed. Here, the customer may select a brand, such as "JVC." After selecting "JVC," Walmart.com displays to the customer a number of options by which the customer may "Narrow your results by:," as shown in the middle of the screen shown in Paragraph 67.

50. At this point, the customer is using the Endeca software and can select category descriptions from which the Walmart.com computer system can create a search filter. For example, as shown in Paragraph 68 under the term "Camcorder Type," the Walmart.com system displays four available category descriptions pertaining to the types of JVC camcorders that are available, one of which is "Mini DV," for which three matching camcorders are guaranteed to exist. Selecting "Mini DV" causes a search filter comprising "Mini DV" and "JVC" to be created and return a screen showing the search results of the three JVC Mini DV camcorders and the category descriptions associated with those three camcorders in Paragraph 69. The customer can next select a price under the "Price" pull-down menu to add that category description to the search filter, as depicted in Paragraph 70. There is guaranteed to be one matching JVC, Mini DV camcorder matching the price "$150-$200," and selecting that category description causes the Walmart.com computer system to add the category description "$150-$200" to the search filter and locate the one matching camcorder, the "JVC Camcorder," having product identification "7811281," as shown in Paragraph 71. Again, as in the first search, the search using the category descriptions guaranteed a result, as demonstrated by the fact that Walmart.com indicated for each category description the number of matching products (always one or more), and by the Endeca documentation describing that searches are guaranteed a result (Exhibit 25).

51. In both the '360 patent and the Walmart.com system, the search filter is a data structure created by the computer system software which includes one or more unique identifiers for category descriptions. The customer selects category descriptions displayed by the computer system by name, which are then input to the computer

> system. The computer system then accepts those inputs and software in the computer system translates those inputs to their corresponding unique identifiers, and uses those unique identifiers together with logical operators, to create a data structure which is the actual search filter. (See, e.g., Ferrari Depo., at 126:22-132:3; Exhibit 26). The Endeca search engine used in the Walmart.com system only recognizes queries formulated in a specific format, which is the format of the search filter created by the computer system.

Dkt. No. 326, Korf Declaration, at ¶¶ 41-51.  By comparison, Prof. Korf's expert report on infringement only contained the following discussion of Claim 1, Step (c):

> The category description table, 'walmart.dimensions.xml', and file information directory, 'walmart-sgmt0.records.binary', are part of the Walmart.com implementation of the Endeca system, and are built prior to the use of the system by a Walmart.com customer.  A customer can select category descriptions (dimension values) presented to him or her, from which Walmart.com constructs a search filter in its computer system.  Under normal operation, the Endeca system only presents the customer with category descriptions (dimension values) that correspond to at least one file (product) in the file information directory (walmart-sgmt0.records.binary), thus guaranteeing a result (Exhibit 523, Endeca Navigation Platform Concepts Guide, pp. 46-51).

Ex. A, Korf Expert Report, at p. 11.

The rules of this Court do not allow a party to wait until after expert discovery has closed to provide new expert opinions and analyses.  Infringement has been a key issue in the case since its inception, and there is no reason that Prof. Korf could not have provided his opinions in compliance with the time limitations set forth in the Court's scheduling orders.  *Rowe Int'l Corp. v. Ecast, Inc.*, 586 F.Supp.2d 924, 935 (N.D. Ill. 2008) (striking portions of expert's untimely declaration that were new because, *inter alia*, defendants' expert could have formulated and defendants could have disclosed the opinions prior to the agreed upon deadline).

SpeedTrack had ample opportunity to disclose these expert opinions prior to the close of expert discovery, but chose not to do so.  SpeedTrack has disregarded its obligations under Rule 26

and has attempted to slide the new opinions into the record by burying them in Dr. Korf's 30-page

declaration.  This is in violation of this Court's rules, and it is not justified.

### 2. Allowing The New Opinions Expressed In The Korf Declaration Into The Record Would Not Be Harmless.

SpeedTrack's filing of these new opinions now significantly prejudices Defendants.  By

providing new expert opinions and analyses after the close of discovery, and after Prof. Korf's

deposition, SpeedTrack now relies on unchallenged testimony in moving for summary judgment.  It

also will prejudice the Defendants at trial if Prof. Korf is allowed to testify on issues about which

he was never questioned during discovery.  Certainly, Defendants had no duty to inquire about

opinions and analyses that were not included in Prof. Korf's prior expert reports.  Defendants have

pressed their defenses and structured their motion for summary judgment of non-infringement

based on the expert opinions provided to them in Prof. Korf's three prior expert reports.  It is unfair

for Defendants to now be confronted with new opinions.

Under Fed. R. Civ. P. 26(a)(2)(B), expert reports must contain "a complete statement of all

opinions the witness will express . . . ."  *Dimension One Spas, Inc. v. CoverPlay, Inc.*, No

03cv1099-L(CAB), 2008 U.S. Dist. LEXIS 69526, at * 34 (S.D. Cal. Sept. 5, 2008).  Further, under

Rule 26(e), a party who has made a disclosure under Rule 26(a) must supplement its disclosure or

response in a timely manner if the party learns that in some material respect the disclosure or

response is incomplete or incorrect, and if the additional or corrective information has not

otherwise been made known to the other parties during the discovery process or in writing.  *Id.* at

*35.

Exclusion of evidence is an appropriate sanction for a party who fails to comply with Rule

26(a).  *Id.*  Under Fed. R. Civ. P. 37(c)(1), "[i]f a party fails to provide information or identify a

witness as required by Rule 26(a) or 26(e), the party is not allowed to use that information or

witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was

substantially justified or is harmless."  Accordingly, the only exceptions to the exclusion rule are if

the failure to timely disclose information was either substantially justified or harmless.  *Shore v.*

*Brown*, No. 1:07-CV-01160 OWW SMS, 2009 U.S. Dist. LEXIS 94828, at *7 (E.D. Cal. Oct. 9,

2009) (citing *Yeti by Molly, Ltd. v. Deckers Outdoor Corp.*, 259 F.3d 1101, 1106 (9th Cir. 2001)).

If a party's failure to timely disclose is found to be neither substantially justified nor harmless, the

Ninth Circuit applies a balancing test in determining whether exclusion is the appropriate remedy.

*Shore*, U.S. Dist. LEXIS 94828, at *8 (citations omitted).

      Here, the new opinions expressed in the Korf Declaration were neither substantially

justified nor harmless.  Further, applying the Ninth Circuit's balancing test on exclusion, the proper

remedy is striking the offending paragraphs from the record under Fed. R. Civ. P. 37(c)(1).

      Courts have frequently found that, where, as here, a declaration is filed after the close of

expert discovery and in support of a motion for summary judgment, it should be stricken.  *See*

*Rowe Int'l Corp. v. Ecast, Inc.*, 586 F.Supp.2d 924, 935 (N.D. Ill. 2008) (striking the majority of an

expert's untimely declaration because, *inter alia*, defendants' expert could have formulated and

defendants could have disclosed the opinions prior to the agreed upon deadline); *Baker v. Indian*

*Prairie Community Unit*, No. 96 C 3927, 1999 U.S. Dist. LEXIS 17221, at *14-15 (N.D. Ill. Oct.

26, 1999) (striking untimely portions of expert opinion and stating, "[o]ne of the primary goals of

the federal civil discovery rules and Rule 26(a) is to 'eliminate surprise.'  The Court will not allow

the [Plaintiffs] to ambush Defendants with new expert opinions after the expert opinion disclosure

deadline and after they filed for summary judgment.").  This Court too has found untimely expert

opinions containing new theories and information that are filed at summary judgment to violate the

Fed. R. Civ. P., and has refused to consider such opinions.  *See Goldberg v. Cameron*, No C-05-

03534 RMW, 2011 U.S. Dist. LEXIS 36840, at * 17-18 (N.D. Cal. April 4, 2011).

Because SpeedTrack has not provided any justification, let alone a substantial justification, for providing additional expert opinions and analyses after the close of expert discovery, and because SpeedTrack's failure to abide by the court-approved discovery deadlines was not harmless, those portions of the Korf Declaration containing new opinions on the "primary dimension" and screen shots of the Walmart.com website should be stricken.

### 3. Analysis Of The Factors In The Ninth Circuit's Balancing Test Demonstrates That The New Opinions Expressed In The Korf Declaration Should Be Stricken.

If a party's failure to timely disclose is found to be neither substantially justified nor harmless, the Ninth Circuit instructs district courts to consider the following factors in determining whether the exclusion sanction is appropriate: "1) the public's interest in expeditious resolution of litigation; 2) the court's need to manage its docket; 3) the risk of prejudice to the defendants; 4) the public policy favoring disposition of cases on their merits; [and] 5) the availability of less drastic sanctions." *Shore*, U.S. Dist. LEXIS 94828, at *8 (citations omitted).

In looking to the first and second factors of the balancing test, allowing Prof. Korf's untimely new opinions would serve to cause undue complications moving the case forward and impose on the management of the Court's docket. *Shore*, 2009 U.S. Dist. LEXIS 94828, at *9 (citing *Wong v. Regents of the Univ. of Cal.*, 410 F.3d 1052, 1060 (9th Cir. 2005) ("In these days of heavy caseloads, trial courts … set scheduled and establish deadlines to foster the efficient treatment and resolution of cases."); *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 611 (9th Cir. 1992) ("Disregard[ing] the [scheduling] order would undermine the court's ability to control its docket, disrupt the agreed-upon course of the litigation, and reward the indolent and the cavalier.")).

With regard to the third factor, Defendants would be prejudiced by allowing the new opinions to stand as they have relied on SpeedTrack's previous representations in formulating their

case strategy to this point and in drafting their motion for summary judgment.  Additionally, Defendants would likely need to seek a further deposition of Prof. Korf, and submit a further expert report rebutting Korf's new opinions if they are allowed into the record.  Therefore, each of the first three factors weighs in favor of exclusion.

The fourth factor also weighs in favor of exclusion because exclusion would not be tantamount to dismissal, and the case will still be decided on the merits.  Given that, as described herein, the new opinions in the Korf Declaration are mere personal opinions reliant on other facts already on record, the case will still be decided based on those existing facts.

Lastly, regarding the fifth factor, it is not clear what a less drastic sanction might be. Anything less would hardly be a sanction at all -- it would encourage this type of gamesmanship and require the court to reopen discovery.  And, this sanction is not all that drastic -- it does not preclude the expert from testifying about any issue fairly disclosed during discovery.  It only prevents new undisclosed and late opinions from being offered now.

Taken together, the factors weigh in favor of exclusion, and Defendants respectfully request that the Court grant its motion to strike as untimely paragraphs 24-27 and 41-51 of the Korf Declaration.

**B.     The Korf Declaration Is Impermissibly Laden With Arguments In An Attempt To Circumvent This Court's Page Limit On Briefs.**

SpeedTrack has also used the Korf Declaration to circumvent the 25-page limit for its motion for summary judgment.  For example, SpeedTrack moved for summary judgment of no anticipation under Section 102 regarding six prior art references.  Yet, it devotes only a *single* paragraph in its motion with regard to each prior art reference at issue, referring the Court instead to *fifteen pages* of additional argument in the Korf Declaration.

Below are the threadbare arguments contained in SpeedTrack's motion as to why each of the references cited by the Defendants does not anticipate the '360 Patent:

### 1. Cochran Does Not Anticipate Claims 1 and 20 of the '360 Patent

Cochran lacks all of the required method steps of claim 1 and most of claim 20. In particular, Cochran does not have steps 1(a); 1(b); and 1(c) of claim 1 of the '360 patent. Korf Decl. ¶¶ 57-60. With respect to claim 20, Cochran does not include steps 20(a); 20(b); 20(c); 20(g); and 20(h). Korf Decl. ¶¶ 57 and 61-64.

### 2. Godin Does Not Anticipate Claims 1 and 20 of the '360 Patent

Godin does not include many of the steps of claims 1 and 20. Godin lacks steps 1(a) and 1(b) of claim 1 of the '360 patent. Korf Decl. ¶¶ 68-70. It also does not have method steps 20(a); 20(b); 20(c); 20(g); and 20(h) of claim 20 of the '360 patent. Korf Decl. ¶¶ 68-69 and 71-74.

### 3. Suzuki Does Not Anticipate Claims 1 and 20 of the '360 Patent

Suzuki lacks all of the required steps of claim 1. Korf Decl. ¶¶ 78-81. Further, steps 20(a); 20(b); 20(c); 20(f); 20(g); and 20(h) of claim 20 of the '360 patent are not disclosed in Suzuki. Korf Decl. ¶¶ 78 and 82-84.

### 4. Kleinberger Does Not Anticipate Claim 1 of the '360 Patent

Walmart.com and Endeca contend that Kleinberger anticipates claim 1 of the '360 patent. Walmart.com and Endeca are wrong. Kleinberger lacks steps 1(a); 1(b); and 1(c) of claim 1 of the'360 patent. Korf Decl. ¶¶ 87-90.

### 5. Schneiderman And Lotus Agenda Do Not Anticipate Claim 1 of the '360 Patent

Walmart.com and Endeca contend that Schneiderman and Lotus Agenda anticipate claim 1 of the '360 patent. Neither Schneiderman, nor Lotus Agenda teaches any of the steps of claim 1 (Korf Decl. ¶¶ 93-96 and 98-100), and they do not anticipate it. Notably, Endeca made this same contention in its Request for Reexamination; however, the Patent Office held that the Schneiderman and Lotus Agenda references did not even raise a "substantial new question of patentability" Block Decl. Exh. 36; i.e., neither even warranted reexamination of claim 1 on this ground.

Dkt. No. 324, Motion For Partial Summary Judgment, at pp. 22-23. By comparison, in discussing the Cochran reference alone, for example, the Korf Declaration provides the following additional detailed argument and analysis:

53. I have reviewed U.S. Patent No. 4,879,648 ("Cochran '648"). Block Decl. Exh. 31. Cochran '648 differs from the '360 patent in a number of ways, which are described below.

54. The Cochran patent is designed to access records in a traditional relational database. In such a database, each individual record consists of a set of values for a set of predefined attributes, which are common to the database. For example, a database of hotels might have attributes such as city, chain, name, price range, size, etc. Such a database can be conveniently viewed as a two-dimensional table, where each row represents a different record, each column represents a different attribute, and the value stored at a particular row and column is the corresponding value of the attribute for that record. The Cochran system is designed to allow the user to specify the values of specific attributes, and the system will then return the set of records that match those attribute values. For example, the user might specify a city and chain, and the system will return the hotels belonging to that chain in that city.

55. In Cochran '648, there are two types of lists which may be presented to the user for searching: (1) static lists, which are predefined terms, but which are not guaranteed to appear in any records, and therefore cannot guarantee a search result; and (2) dynamic lists, which are generated from the database records themselves during the search. (Cochran, Column 9, line 47 –Column 10, line 60).

56. Furthermore, the Cochran patent requires a single common structure for the relational database, and the values used to search for the records must be the actual values stored in the records. The '360 patent, however, allows the files to be arbitrary collections of information, and allows the category descriptions to be arbitrary terms describing the files, independent of the contents or structure of those files.

57. Cochran '648 does not disclose the step of "initially creating in the computer system a category description table" as required by claim 1(a), or the step of "initially defining in the computer system at least one list having a plurality of category descriptions" as required by claim 20(a). Figure 4 of Cochran '648 is not a category description table, because it is constructed and displayed during user searches, and therefore is not initially created in the computer system as required by claim 1(a). A separate list of keywords is neither required nor necessary for the Cochran '648 system to operate as intended, but rather it can operate directly from the database records themselves.

58. Cochran '648 does not disclose the step of claim 1(b) of "thereafter creating in the computer system a file information directory comprising at least one entry corresponding to a file on the data storage system, each entry comprising at least a unique file identifier for the corresponding file, and a set of category descriptions selected from the category description table." Cochran '648 does not meet this limitation, because, as described above, there is no category description table that is initially defined in the computer system from which keywords are selected. There is another reason why Cochran '648 does not disclose the file information directory of claim 1(b). Claim 1(b) requires a file information directory with entries for files comprising at least a unique file identifier for the corresponding files, and thus a file information directory contains records corresponding to individual files. Figure 14 of Cochran '648 cannot be the file information directory of claim 1(b), because Figure 14 in Cochran shows the inverse of the structure claimed in 1(b). For each search term in Cochran, it lists the database records that contain that term and not the terms included in each database record as required by the claim. Even if Figure 14 did represent a file information directory, it would not meet limitation (b) of Claim 1 of the '360 patent, because it is not created after the category description table using category descriptions selected from the previously created category description table as required by the claim. As explained above, there is no such category description table in Cochran '648. There is no reason for a file information directory at all in Cochran '648. Each database record in Cochran corresponds to a "file" in the '360 patent, and each such record already contains the search terms that make up that record.

60. Cochran '648 does not disclose the step of claim 1(c) of "thereafter creating in the computer system a search filter comprising a set of category descriptions, wherein for each category description in the search filter there is guaranteed to be at least one entry in the file information directory having a set of category descriptions matching the set of category descriptions of the search filter." As discussed above, in Paragraphs 58-59, there is no file information directory in Cochran '648 and therefore this limitation of claim 1(c) cannot be met in Cochran '648.

61. Cochran '648 does not disclose the step of claim 20(b) of "thereafter accepting user input associating a file with at least one category description from at least one defined list." As discussed above, Cochran '648 does not disclose the list of category descriptions of claim 20(a), and therefore Cochran '648 does not meet this limitation either. Furthermore, in the Cochran patent, there is no need for any user input to associate search terms with database records, since the search terms are already stored in the records themselves.

62. Cochran '648 does not disclose the step of claim 20(c) of "storing in the data storage system a file record containing at least the file name, the file location information, and the associated category descriptions for the file." Figure 14 of Cochran '648 does not meet this limitation for the reasons described above in Paragraphs 58-59.

63. Cochran '648 does not disclose the step of claim 20(g), which requires "searching in the computer system the category descriptions of each stored file record for a logical match to the category descriptions of the defined search filter." Because Cochran '648 does not disclose such file records, it cannot meet claim 20(g).

64. Cochran '648 does not disclose the step of claim 20(h), which requires "displaying the file names of all file records having category descriptions that logically match each category description of the defined search filter." Cochran '648 does not disclose displaying file names; Cochran only discloses displaying the contents of the record once the record has been selected. (Cochran '648, at 9:26-30).

Dkt. No. 326, Korf Declaration, at ¶¶ 53-64.  The Korf Declaration similarly expands upon the argument and analysis for the Godin reference (*Id.*, ¶¶65-74), the Suzuki reference (*Id.*, ¶¶ 75-84), the Kleinberger reference (*Id.*, ¶¶85-90), the Schneiderman reference (*Id.*, ¶¶91-96), and the Lotus Agenda reference (*Id.*, ¶¶ 97-100), for a total of fifteen additional pages of argument that should have been in the brief.  For each of these references, Prof. Korf's analysis repeatedly states in conclusory fashion that "[prior art reference X] does not disclose the step of [step from '360 Patent claim]," and follows this statement with extended argument in an attempt to validate that conclusion.  *See, e.g.*, Dkt. No. 326, Korf Declaration, at ¶¶ 57, 58, 60-64, 68, 70-74, 78, 79, 81-84, 87-89, 93, 95, 96, and 98-100.

Likewise, the infringement portions of the Korf Declaration contain similar extended analysis and argument aimed at supplementing the arguments contained in the brief.  *See, e.g., id.*, at ¶ 5 (stating the conclusion that "Walmart.com's computer system is described by the preamble, and is capable of performing the method of claim 1," followed by a detailed analysis);  ¶ 7 (stating the conclusion that "[a]ll of the requirements of a 'computer system' as construed by the Court are

also present in Walmart.com's computer system that performs the claimed methods," followed by a detailed analysis);  ¶ 10 (stating the conclusion that "[i]n the Walmart.com system, a file called 'walmart.dimensions.xml' meets the Court's construction of category description table," followed by a detailed analysis);  ¶ 14 (stating the conclusion that "[a]ccording to the plain meaning of 'initially' in step (a) and the description in the specification and file history, 'initially' in claim 1 only requires that the category description table be created before the file information directory of step (b) and the search filter of step (c) of claim 1," followed by a detailed analysis);  ¶ 18 (stating the conclusion that "[t]here are a number of logical consequences of the phrase, 'A hierarchy is a structure in which components are ranked into levels of subordination; each component has zero, one or more subordinates; and no component has more than one superordinate component,'" followed by a detailed analysis lacking a single citation to the record);  ¶ 19 (stating the conclusion that "[t]he category description table in the Walmart.com system does not have a single hierarchical structure, but rather is composed of multiple, independent dimensions with no hierarchical relationship between them," followed by a detailed analysis);  ¶ 20 (stating the bare conclusion that "Dr. Ferrari's and Mr. Fitzgerald's testimony that there is no hierarchical relationship between dimensions or between dimension values (i.e., category descriptions) in different dimensions confirms that the dimension values (category descriptions) of 'walmart.dimensions.xml' are not configured into a single hierarchical structure, but rather are configured into multiple, independent dimension structures with no hierarchical relationship between or among them");  ¶ 36 (stating the conclusion that "Step (b) of claim 1 requires that the category descriptions of the file information directory be selected from the category description table previously created in step (a) of claim 1. This part of step (b) of claim 1 is met by the Walmart.com file information directory," followed by a detailed analysis);  and, ¶ 37 (stating the conclusion that "[t]he unique category description identifiers in the file information directory are defined in the category description table to represent

the descriptive names of the category descriptions (e.g. the number '429296053' is defined in the category description table to uniquely represent the brand 'JVC'). This is precisely what is taught in the specification of the '360 patent . . .," followed by a detailed analysis).

Put simply, SpeedTrack has used the Korf Declaration as a means of circumventing this Court's 25-page limit on briefs, as stated in Local Rule 7-4(b).[3]  *See Juarez v. Jani-King of California, Inc.*, No. 09-3495 SC, 2010 U.S. Dist LEXIS 110939, at *6 (N.D. Cal. Sept. 24, 2010) (stating, "[declarant] lacks personal knowledge of the statements in Paragraphs 3 to 78 of her Declaration, which are nothing more than endnotes to Plaintiff's Motion.  Plaintiff's practice is an impermissible end-run around the page limits on briefs.");  *Ramirez v. The Salvation Army*, No. C06-0631 TEH, 2008 U.S. Dist. LEXIS 17480, at * 44 (N.D. Cal. March 6, 2008) (sustaining objections to a declaration filed in support of summary judgment because, *inter alia*, "[m]uch of the declaration restates other evidence, offering argument in the disguise of expert opinion . . .").

Accordingly, because they contain impermissible argument and conclusions aimed at circumventing this Court's rules on page limits in briefs under Local Rule 7-4(b), Defendants respectfully request that the Court strike paragraphs 5-7, 10, 14-15, 18-28, 30, 36-38, 41-42, 44-52, 54, 56-64, 68-74, 76-84, 86-90, 93-96, and 98-100 of the Korf Declaration.

---

[3]     Additionally, Defendants note that most of the statements in the Korf Declaration are in violation of Local Rule 7-5(b), which clearly states "[a]n affidavit or declarations may contain only facts, must conform as much as possible to the requirements of FRCivP 56(e), *and must avoid conclusions and argument*. Any statement made upon information or belief must specify the basis therefor. An affidavit or declaration not in compliance with this rule may be stricken in whole or in part." (emphasis added).  *See Cortez v. Global Ground Support, LLC*, No. 09-4138 SC, 2010 U.S. Dist. LEXIS 132772, at * 17-18 (N.D. Cal. December 15, 2010).  In *Cortez*, the court refused to rely on statements in three declarations filed in support of summary judgment, *inter alia*, because they were conclusory statements of fact.  In citing one example, the Court found, "[f]or instance, [declarant's] statement, 'The Cabin Service Vehicle was being misused by Flying Food Group and by Jesus Cortez at the time of the accident,' [Declarant's] Decl. ¶ 19, is clearly a conclusory statement of fact. As such, the Court does not rely on these statements in making its determination. The Court also warns Defendants that the multiple argumentative statements in their declarations violate *Civil Local Rule 7-5(b)*'s requirement that declarations must contain only facts and conform as much as possible to the requirements of Rule 56(e) of the Federal Rules of Civil Procedure.)"

---

1

## IV.    CONCLUSION

2

3   For all of the foregoing reasons, the Court should grant Defendants' Motion to Strike

4   paragraphs 5-7, 10, 14-15, 18-28, 30, 36-38, 41-52, 54, 56-64, 68-74, 76-84, 86-90, 93-96, and 98-

5   100 of the Declaration of Professor Richard E. Korf in Support of SpeedTrack, Inc.'s Motion for

6   Partial Summary Judgment Pursuant to Rule 56(a).

7

DATED: July 20, 2011                          PROSKAUER ROSE LLP
8                                              Lary Alan Rappaport
                                               Joshua J. Pollack
9                                              Steven M. Bauer (admitted *pro hac vice*)
                                               Colin G. Cabral (admitted *pro hac vice*)
10

11
                                        By:   /s/ Steven M. Bauer
12                                             Steven M. Bauer

13                                             Attorneys for Defendants
                                               ENDECA TECHNOLOGIES, INC.
14                                             and WAL-MART.COM USA, LLC

15

16                                             FARELLA BRAUN & MARTEL LLP
                                               Roderick M. Thompson
17                                             Andrew Leibnitz

18                                             Attorneys for Defendant,
                                               WAL-MART.COM USA, LLC
19

20

21

22

23

24

25

26

27

28

---

**PROOF OF SERVICE**

STATE OF MASSACHUSETTS, COUNTY OF SUFFOLK

      I declare that: I am employed in the county of Suffolk, Massachusetts.  I am over the age of eighteen years and not a party to the within cause; my business address is Proskauer Rose LLP, One International Place, Boston, MA 02110.

      On July 20, 2011, I served the forgoing document, described as DEFENDANTS' NOTICE OF MOTION AND MOTION TO STRIKE PORTIONS OF THE JULY 6, 2011 DECLARATION OF PROFESSOR RICHARD E. KORF, on the interested parties in this action by transmitting via United States District Court for the Northern District of California Electronic Case Filing Program the document(s) listed above by uploading the electronic files for each of the above-listed documents on this date.


                           __/s/ Colin Cabral___
                              Colin Cabral