# EXHIBIT D

1   Lary Alan Rappaport (SBN 087614)
    Joshua J. Pollack (SBN 215922)
2   PROSKAUER ROSE LLP
3   2049 Century Park East, Suite 3200
    Los Angeles, CA 90067-3206
4   Telephone: (310) 557-2900
    Facsimile: (310) 557-2193
5   lrappaport@proskauer.com
    jpollack@proskauer.com
6

7   Steven M. Bauer (Admitted *Pro Hac Vice*)
    Colin G. Cabral (Admitted *Pro Hac Vice*)
8   PROSKAUER ROSE LLP
    One International Place
9   Boston, MA 02110
    Telephone: (617) 526-9600
10  Facsimile: (617) 526-9899
11  sbauer@proskauer.com
    ccabral@proskauer.com
12

13  Attorneys for
    ENDECA TECHNOLOGIES, INC. and WAL-MART.COM USA, LLC

14                 UNITED STATES DISTRICT COURT

15              NORTHERN DISTRICT OF CALIFORNIA

16                      OAKLAND DIVISION

17

18  SPEEDTRACK, INC.                          Case No. C06-7336 PJH

19              *Plaintiff*,
                                              **ENDECA TECHNOLOGIES, INC.'S**
20  v.                                        **SECOND SUPPLEMENTAL RESPONSE**
                                              **TO INTERROGATORY NO. 4**
21  WAL-MART.COM USA, LLC

22              *Defendant*.

23

24  ENDECA TECHNOLOGIES, INC.

25              *Intervenor*,

26  v.

27  SPEEDTRACK, INC.

28              *Defendant in Intervention*.

Pursuant to Rules 26 and 33 of the Federal Rules of Civil Procedure and the Local Rules, Endeca Technologies, Inc. ("Endeca") hereby provides its second supplemental response to SpeedTrack, Inc.'s ("SpeedTrack") Interrogatory No. 4.

The following responses and objections are based on records and information reasonably available to Endeca as of the date of this response.  Endeca expressly reserves the right to supplement without prejudice the following responses and objections, and to change any and all answers therein as additional facts are ascertained, analyses are made, legal research is completed, contentions are made, or as a result of the court's legal determination of issues.  Endeca therefore reserves the right, at any time, to revise, amend, correct, supplement, modify or clarify its objections and responses made pursuant thereto, although it does not undertake to do so except to the extent required by the Federal Rules of Civil Procedure.

Endeca's responses and objections are made without in any way waiving or intending to waive, but on the contrary preserving and intending to preserve: all questions as to competency, relevancy, materiality, privilege, and admissibility as evidence for any purpose of the responses or subject matter thereof, in any subsequent proceeding or trial in this or any other action; the right to object on any ground to the use of said responses and objections, or the subject matter thereof, in any subsequent proceeding or trial in this or any other action; and the right to object on any ground at any time to other interrogatories, requests for production, requests for admission, or other discovery procedures involving or relating to the subject matter of these interrogatories.

2

1

**GENERAL OBJECTIONS**

2        Endeca hereby incorporates by reference its General Objections to SpeedTrack's First Set

3   of Interrogatories, as if fully set forth herein.

4        **SPECIFIC RESPONSES AND OBJECTIONS**

5   **INTERROGATORY NO. 4:**

6        Please state all facts which support your contention in Paragraph 12 of your Complaint-In-

7   Intervention that "Wal-Mart's use of the Endeca Information Access Platform does not infringe,

   directly or indirectly, any claim of the '360 Patent."

8   **SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 4 (August 8, 2008):**

9        Endeca objects to this interrogatory to the extent it seeks information protected by the

10  attorney-client privilege and/or the attorney work-product doctrine.  Endeca also objects to this

11  interrogatory to the extent it seeks to reverse the burden of proof on the issue of infringement.

12  SpeedTrack, not Endeca, has the burden to prove infringement.

13       Subject to the specific objections and General Objections set forth above, Endeca responds

14  to this interrogatory as follows: Walmart.com's use of Endeca's technology does not infringe the

15  asserted claims of the '360 Patent for multiple reasons.

16       *First*, the file-searching method described in the '360 Patent does not involve the user

17  typing in search terms.  The patent specification states, in multiple places, that "the user is not

18  required to type the key words to search; instead, the user simply chooses the words from pick

19  lists, making mistyping impossible."  *See* '360 Patent, Col. 4:9-12; Col. 10:24-27.  Indeed, the

20  supposed advantage of the file-searching method described in the '360 Patent is that "the user

21  defines a filter which will always find at least one file, thus avoiding wasting time in searching for

22  data that cannot be matched."  *See* '360 Patent, Col. 4:7-9; Col. 10:22-24.

23       Endeca's technology powers the search engine on the Walmart.com website, which allows

24  end users to type and enter search terms that may direct them to a "No Results Found" page.

25  Customers on the Walmart.com website search for products by typing search terms into a text box

26  and clicking the "Find" button.  Customers can enter the search term "Harry Potter," for example,

27  and view the most relevant matching items, along with a list of refinement options (*e.g.*, "Books,"

28                                             3

ENDECA'S SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 4
Case No. C06 7336

"Movies," "Toys," etc.).  While Endeca's technology includes several features to correct misspellings and account for poorly constructed search terms, keyword searches on Walmart.com often direct customers to a "No Results Found" page.  *See*, *e.g.*, Walmart.com Project Requirements, WMT 30676, at 31; "Endeca – no results found," WMT 31724.  Such a result (or lack thereof) is not permitted by the asserted claims of the '360 Patent.  *See*, *e.g.*, '360 Patent, Claim 1(c) ("thereafter creating in the computer system a search filter comprising a set of category descriptions, wherein for each category description in the search filter there is *guaranteed* to be at least one entry in the file information directory having a set of category descriptions matching the set of category descriptions in the search filter.") (emphasis added).

*Second*, the asserted claims in the '360 Patent exclude *any* hierarchical relationship among the category descriptions.  In particular, Claims 1 and 20 require that "the category descriptions hav[e] no predefined hierarchical relationship with . . . each other."  SpeedTrack contends that Endeca dimension values are "category descriptions," as that term is used in the '360 Patent.  *See* SpeedTrack's Response to Interrogatory No. 1, Exhibit A, at 2 ("Endeca's so-called 'dimension values' are the '360 patent's 'category descriptions.'").

Contrary to the plain language of the asserted claims, the descriptive keywords on the Walmart.com website have predefined hierarchical relationships with each other.  Endeca dimensions are collections of related dimension values organized hierarchically into logical tree structures.  The top-most dimension value in each Endeca dimension is the dimension root.  The root dimension value represents the semantic parent of the dimension values below it in the tree structure.  In the "Brand" dimension, for example, the root dimension value "Brand" is the parent of its subordinate dimension values, such as "Canon," "Garmin," "Sony," etc.  The root dimension values are not insignificant features made available only for the convenience of the user, such as the "category types" described in the '360 Patent.  *See* '360 Patent, Col. 8:16-30.  To the contrary, each root dimension value has a direct semantic relationship with its child dimension values.  Indeed, every Endeca dimension value has a predefined hierarchical relationship with at least one other Endeca dimension value.  Moreover, each dimension value has zero, one or more child

4

dimension values (*i.e.*, subordinates), and no dimension value has more than one parent (*i.e.*, superordinate component).  These predefined hierarchical relationships between the Endeca dimension values are central to operation and utility of Endeca's technology.

Endeca dimensions may also be structured as multi-level hierarchies of dimension values, *i.e.*, structures having more than two levels of subordination.  An example of a multi-level hiearchical dimension is shown below:



**Hierarchical Dimension**

Endeca Concepts Guide, WMT 875, at 36.  A multi-level hierarchy, such as the example shown above, is referred to internally at Endeca as a "dimension hierarchy" or a "hierarchical dimension."  The Endeca Concepts Guide highlights the advantages of using "dimension hiearchies:"

> Using hierarchical dimensions reduces . . . information overload and provides for an easier, more intuitive navigation experience.  A second, and equally compelling reason to use dimension hierarchy is that, by limiting the number of refinement queries, you decrease the amount of time it takes for the Navigation Engine to return its results.

*Id.* at 40-41.

Endeca's technology avoids infringement of the asserted claims of the '360 Patent because predefined hierarchical relationships exist between the Endeca dimension values.  Independent Claims 1 and 20 require that "the category descriptions hav[e] no predefined hierarchical relationship with . . . each other."  Thus, *any* hierarchical relationship among or between the category descriptions falls outside of the asserted claims.  The method described in the patent cannot operate as intended if even one category description is subordinate to another.  *See*, *e.g.*, '360 Patent, Col. 10:49-50 ("The category descriptions may be selected in any order.").  Moreover, the patent does not explain or contemplate a situation where one category description is

5

ENDECA'S SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 4
Case No. C06 7336

subordinate to another or where some (but not all) of the category descriptions have hierarchical relationships with each other.

Further, the Endeca dimensions are organized in a single hierarchical structure. In fact, the dimensions created for Walmart.com include one primary dimension and numerous secondary dimensions. *See* 06/03/08 Deposition of Jim Fitzgerald, 99:5-14; 100:12-25. Put simply, the dimensions are organized into levels of subordination, and the dimension values comprising those dimensions have predefined hierarchical relationships with each other, as described above.

*Third*, the method described in the '360 Patent allows a user to locate a file by clicking on *any* of the descriptive keywords associated with that file, *in any order. See, e.g.*, '360 Patent, Col. 10:49-50 ("The category descriptions may be selected in any order."). At the outset of the search, the asserted claims of the '360 Patent require the display of all category descriptions associated with at least one file on the computer system. *See* '360 Patent, Claim 20(d) ("displaying from each defined list, as selectable items, only those category descriptions associated with at least one file"). Thereafter, the claims describe the steps of accepting user input and disabling those category descriptions whose selection would not result in a matching file. *See* Claim 20(e) ("accepting user positional input defining a search filter of at least one category description selected from at least one displayed defined list"); Claim 20(f) ("automatically disabling, in the computer system, the selectability of all other category descriptions in each displayed list that do not have associated files which are also associated with the category descriptions of the defined search filter"). Because the category descriptions described in the patent have no hierarchical relationship with each other, every available category description *must* be displayed to the user at the outset of the search.

The Walmart.com website does not initially display every descriptive keyword available for selection by the end user. In fact, the Walmart.com website only displays department names (*e.g.*, "Electronics") on its homepage. In addition, Walmart.com strictly controls which descriptive words are presented to customers through the use of "precedence rules." Precedence rules allow Endeca customers, such as Walmart.com, to delay the display of dimension values

6

1  until they become useful refinements for the end user's search or browse.  For example,

2  Walmart.com established a precedence rule whereby the dimension value "Director" will not

3  appear until the end user selects the dimension value "Movies."  *See* Walmart.com Project

4  Requirements, WMT 30676, at 16.  Such precedence rules – along with the hierarchical

5  organization of dimension values described above – are necessary to avoid displaying thousands

6  of dimension values for selection at the outset of the search and overloading the end users with

7  information.

8       *Fourth*, the asserted claims each describe a "method for accessing files."  Walmart.com's

9  customers do not search for "files," as that term is used in the '360 Patent.

10       SpeedTrack alleges that Walmart.com stores "files" in an Oracle database.  *See*

11  SpeedTrack's Response to Interrogatory No. 1, Exhibit A, at 4 ("There is a 'file' (i.e., 'a collection

12  of data or information') stored in the Wal-Mart data storage system (e.g., the Oracle database

13  described above) . . ."); *see also* July 10, 2008 letter from R. Dorman to J. Spero, at 4 ("Wal-Mart

14  stores files corresponding to products for sale on its website www.walmart.com on [sic] an Oracle

15  database which is part of Wal-Mart's computer system.").  Endeca's technology, however, does

16  not search for or locate product information in Walmart.com's Oracle database.  Rather, Endeca's

17  technology only searches the indexed Endeca records.  Notably, SpeedTrack does not contend that

18  the Endeca records are "files," as that term is used by the '360 Patent.  In sum, the asserted claims

19  of the '360 Patent describe a method for accessing "files," and Endeca's technology does not

20  search for, locate, or access the "files" identified by SpeedTrack in its infringement contentions.

21       SpeedTrack's contention – that each row in Walmart.com's Oracle database is a "file" –

22  directly conflicts with statements made to the Patent Office during the prosecution of the '360

23  Patent.  In fact, SpeedTrack's prosecuting attorney told the Patent Office that the invention did not

24  relate to generating queries for a database:

25          "[*T]he present invention is not directed to generating queries or data sets for a database*, but is a method for accessing <u>files</u> in a data storage system."

26  '360 Prosecution History, Amendment, May 9, 1994, at 14 (italics added, underlined emphasis in

27  original).

28

ENDECA'S SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 4
Case No. C06 7336

1    *Fifth*, Claim 1 and its dependent claims require the "creat[ion] in the computer system [of]

2    a file information directory."  The Court construed the term "file information directory" to mean

3    "a directory comprising information corresponding to at least one file."  *See* Claim Construction

4    Order, at 13.   SpeedTrack contends that the "walmart-sgmt0.records.binary" file "contains a 'file

5    information directory.'"  *See* SpeedTrack's Response to Interrogatory No. 1, Exhibit A, at 4.

6    Endeca's technology does not create a "file information directory," as that term is used in

7    the '360 Patent.  SpeedTrack contends that Walmart.com stores "files" are stored in its Oracle

8    database.  *See id.* at 4 ("There is a 'file' (i.e., 'a collection of data or information') stored in the

9    Wal-Mart data storage system (e.g., the Oracle database described above) . . ."); *see also* July 10,

10   2008 letter from R. Dorman to J. Spero, at 4 ("Wal-Mart stores files corresponding to products for

11   sale on its website www.walmart.com on an Oracle database which is part of Wal-Mart's

12   computer system.").  The "walmart-sgmt0.records.binary" file comprises information

13   corresponding to Endeca records and does not link or correspond to the entries in the

14   Walmart.com database.  In fact, Endeca records may include information that is not contained in

15   the Walmart.com database, such as any dimension values created with the Endeca Developer

16   Studio.

17   *Sixth*, the asserted claims of the '360 Patent do not extend to the Internet and retail

18   websites, such as Walmart.com.  While the patent specification acknowledges that the preferred

19   (and only) embodiment described in the '360 Patent relates to a single computer system, the

20   specification also states that the disclosed file-searching method can be modified to operate in

21   "distributed data storage environments, such as networked computers."  *See* '360 Patent, Col.

22   16:44-47 ("[A]lthough the above description has been made with respect to a single computer

23   system, that term is meant to include distributed data storage environments, such as networked

24   computers.").  More specifically, the specification refers to the use of the disclosed method in a

25   "large office" or "public or private electronic network."  *See id.* at Col. 16:12-15.

26   SpeedTrack's revised infringement contentions define the Walmart.com "computer

27   system" as follows:

28
                                                          8

> The Wal-Mart "computer system" operates in a distributed environment and comprises at least: (1) the Wal-Mart web servers, (2) the Wal-Mart computers or servers running the Endeca software (e.g., the Developer Studio and Web Studio, Forge, Dgidx, and the Endeca Navigation Engine (aka the MDEX engine), and (3) the Wal-Mart data storage system.

SpeedTrack's Response to Interrogatory No. 1, Exhibit A, at 2. Notably, the "computer system" identified by SpeedTrack does not include the computers of any Walmart.com customers. Instead, SpeedTrack contends that Walmart.com customers access the Walmart.com "computer system" via the Internet. The '360 Patent, however, does not explain how its file-searching method would operate in a global environment. Indeed, the patent does not make any reference at all to the Internet.

Individual computer networks, such as those commonly employed in office environments, for example, are designed to meet the internal needs of an organization and were well known by November 23, 1991, the priority date of the '360 Patent. *See, e.g.*, IBM Dictionary of Computing, 8th ed. (1987), at 287 ("network" - "A configuration of data processing devices and software connected for information interchange."). By contrast, the Internet was not well known to persons of ordinary skill in 1991. In fact, neither the IBM Computer Dictionary, published in 1987, nor the IEEE Computer Dictionary, published in 1991, contain definitions for the term "Internet." A more recent computer dictionary, published in 2003, defines the term to mean, "[a]n enormous and rapidly growing system of linked computer networks, worldwide in scope, that facilitates data communication services such as remote login, file transfer, electronic mail, the World Wide Web, and newsgroups." Webster's New World Computer Dictionary (10th ed. 2003), at 193.

*Seventh*, Walmart.com does not infringe because Walmart.com does not perform every step of the asserted claims. The step of creating the search filter in Claim 1(c), for example, is performed by Walmart.com's customers, not Walmart.com.

Direct infringement requires a single party to perform every step of a claimed method. *See BMC Resources, Inc. v. Paymenthech, L.P.*, 498 F.3d 1373, 1380 (Fed. Cir. 2007) (concluding this requirement is derived from 35 U.S.C. § 271). Indeed, "where the actions of multiple parties combine to perform every step of a claimed method, the claim is directly infringed only if one

9

1   party exercises 'control or direction' over the entire process such that every step is attributable to

2   the controlling party, i.e., the 'mastermind.'" *Muniauction, Inc. v. Thomson Corp.*, 2007-1485,

3   Slip Op., at 16 (Fed. Cir., July 14, 2008).  The control or direction standard is satisfied in

4   situations where the law would hold the accused infringer vicariously liable for acts committed by

5   another party that are required to complete performance of the claimed method.  *Id.* at 18.

6         In this case, neither Walmart.com, nor Walmart.com's customers perform every step of the

7   claimed method.  Moreover, Walmart.com does not sufficiently control or direct its customers

8   such that Walmart.com can be said to perform every step of the asserted claims.  *See Muniaction*,

9   Slip Op., at 17-18 ("Muniauction has identified no legal theory under which Thomson might be

10  vicariously liable for the actions of the bidders.").  Thus, Walmart.com does not infringe Claim 1

11  or any of its dependent claims.

12        *Eighth*, the method described in Claim 20 accepts user input that associates files with at

13  least one category description.  *See*, '360 Patent, Claim 20(b) ("thereafter accepting user input

14  associating with a file at least one category description form at least one defined list").  In

15  addition, the method described in Claim 20 accepts user input that defines a search filter of at least

16  one category description selected from a displayed list.  *See*, '360 Patent, Claim 20(e) ("accepting

17  user positional input defining a search filter of at least one category description selected from at

18  least one displayed defined list").

19        SpeedTrack's contends that input is accepted from at least two different users – the

20  Walmart.com employee(s) and the Walmart.com customer.   In particular, SpeedTrack contends

21  that "the Wal-Mart employee(s) provides 'user' input in the creation of the Endeca data pipeline."

22  *See* SpeedTrack's Response to Interrogatory No. 1, Exhibit A, at 31.  SpeedTrack further contends

23  that "Wal-Mart's 'computer system' accepts positional input from the customer or potential

24  customer."  *See id.* at 33.

25        Claim 20 does not allow for multiple users.  The Court construed the term "user" to mean

26  "*one that uses* – may be *a person* or another computer."   *See* Claim Construction Order, at 24

27

28

                                     10

1   (emphasis added).  The Court's construction is clear that the user may be "a person" and not

2   multiple people.

3         Walmart.com cannot infringe Claim 20 and its dependent claim because Walmart.com's

4   retail customers do not associate "category descriptions" with "files" or anything else.  Moreover,

5   Walmart.com employees do not define a "search filter" by selecting "category descriptions" from

6   a defined list.  Because Claim 20 does not allow for multiple users, Walmart.com does not and

7   cannot infringe Claims 20 and 21.

8   **SECOND SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 4 (June 23, 2011)**

9         *Ninth*, Endeca does not infringe the '360 Patent indirectly under 35 U.S.C. § 271(b)

10  because Endeca had no knowledge that it induced acts that constitute patent infringement.     In

11  *Global-Tech Appliances, Inc., et al. v. SEB S.A.*, __ U.S. __ (2011), the Supreme Court held that

12  "induced infringement under §271(b) requires knowledge that the induced acts constitute patent

13  infringement."  Slip. Op. at 10.  Prior to the Supreme Court's decision in *Global-Tech*, the Federal

14  Circuit had held that "[t]he plaintiff has the burden of showing that the alleged infringer's actions

15  induced infringing acts and that he knew or should have known his actions would induce actual

16  infringements." *DSU Med. Corp. v. JMS Co.,* 471 F.3d 1293, 1304 (Fed.Cir.2006) (*en banc* )

17  (citations and quotations omitted).  Endeca was not aware of the '360 Patent prior to SpeedTrack

18  bringing this suit against Walmart.com.

19        *Tenth*, Endeca does not infringe the '360 Patent indirectly under 35 U.S.C. § 271(c)

20  because its software was not especially made or adapted for use in an infringement of the '360

21  Patent.  Moreover, Endeca lacked the requisite knowledge "that the combination for which [its]

22  component was [allegedly] especially designed was both patented and infringing."  *Aro Mfg. Co.*

23  *v. Convertible Top Replacement Co.*, 377 U.S. 476 (1964).  Endeca was not aware of the '360

24  Patent prior to SpeedTrack bringing this suit against Walmart.com.

25        *Eleventh*, Walmart.com does not directly infringe the '360 Patent because the accused

26  "category description table" and "list having a plurality of category descriptions" identified by

27  SpeedTrack are not created "initially" in the Walmart.com system.  The Patent Office was clear

28

11

1    during the reexamination proceedings that simply because step (a) occurs *before* step (b), this does

2    not mean that step (a) happens "initially" in the computer system.  Indeed, under the Patent

3    Office's interpretation, the accused "category description table" and "list having a plurality of

4    category descriptions" are not created *initially* in the Walmart.com system because the "category

5    descriptions" within them are derived from preexisting source data stored in at least one Oracle

6    database maintained by Walmart.com.

7         *Twelfth*, Walmart.com does not directly infringe the '360 Patent because there is no

8    guarantee that the first instance of the accused "category description table" contains a plurality of

9    "category descriptions."  During the reexamination proceedings, the Patent Office reasoned that

10   "[t]here is no guarantee that the initial creation of the keyword file 46 [in Kleinberger] would

11   contain a plurality of keywords since the first text file might have only a single keyword."  The

12   same logic applies to the Walmart.com system to the extent the accused "category descriptions"

13   are derived from multiple databases containing Walmart.com's product information.  There is no

14   guarantee that the first instance of the accused "category description table" would contain a

15   plurality of "category descriptions" because the first Walmart.com database might have only a

16   single keyword.

17        *Thirteenth*, Walmart.com does not directly infringe the '360 Patent because the accused

18   "file information directory" (claim 1) and "file records" (claim 20) do not contain "category

19   descriptions," as that term has been construed by the Court.  The Court construed the term

20   "category description" to mean "information that includes a name that is descriptive of something

21   about a stored file."  Yet, the accused "file information directory" and "file records" – allegedly

22   located in the "walmart-sgmt0.records.binary" file – do not contain any descriptive names.  To the

23   contrary, the "walmart-sgmt0.records.binary" file only contains numerical identifiers, which do

24   not satisfy the Court's definition of "category description."

25        *Fourteenth*, Walmart.com does not indirectly infringe the '360 Patent.  Despite accusing

26   Walmart.com of indirect infringement in its Complaint, SpeedTrack has not advanced any theory

27

28

12

of indirect infringement by Walmart.com in its infringement contentions, its interrogatory responses, or anywhere else.

DATED: June 23, 2011                          PROSKAUER ROSE LLP
                                              Lary Alan Rappaport
                                              Joshua J. Pollack
                                              Steven M. Bauer (admitted *pro hac vice*)
                                              Colin G. Cabral (admitted *pro hac vice*)


                                     By:     /s/ Colin Cabral
                                              Colin Cabral

                                              Attorneys for Defendants
                                              ENDECA TECHNOLOGIES, INC.
                                              and WAL-MART.COM USA, LLC

13

**PROOF OF SERVICE**

I declare that: I am employed in the county of Suffolk, Massachusetts.  I am over the age of eighteen years and not a party to the within cause; my business address is: PROSKAUER ROSE LLP, One International Place, Boston, MA 02110.

On June 23, 2011, I served the forgoing document, described as:

ENDECA TECHNOLOGIES, INC.'S SECOND SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 4

| | |
|---|---|
| ☐ | By placing ☐ the original ☐ a true copy thereof enclosed in sealed envelopes addressed as follows: PLEASE SEE ATTACHED SERVICE LIST |
| ☒ | (By Email) By transmitting a true and correct copy in PDF format thereof via email transmission, by agreement of counsel |
| ☐ | (By Mail) I am "readily familiar" with the Firm's practice of collection and processing correspondence for mailing.   Under that practice, it would be deposited with U.S. postal service on that same day with postage thereon fully prepaid at Los Angeles, California, in the ordinary course of business.  I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit. |
| ☐ | (By Personal Service) By personally delivering such envelope to the addressee. |
| ☐ | By causing such envelope to be delivered by the office of the addressee by OVERNIGHT DELIVERY via Federal Express or by other similar overnight delivery service. |
| ☐ | (State) I declare under penalty of perjury under the laws of the State of California that the above is true and correct. |
| ☒ | (Federal) I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made. |

Executed on June 23, 2011, at Boston, MA.


   /s/ Colin Cabral

14

ENDECA'S SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 4
Case No. C06 7336

1

**SERVICE LIST**

2

3

HENNIGAN, BENNETT & DORMAN LLP
RODERICK G. DORMAN (dormanr@hbdlawyers.com)
ALAN P. BLOCK (blocka@hbdlawyers.com)
865 South Figueroa Street, Suite 2900
Los Angeles, CA 90017
Telephone: (213) 694-1200
Facsimile: (213) 694-1234

Attorneys for Plaintiff,
SPEEDTRACK, INC.

4

5

6

FARELLA BRAUN &MARTEL LLP
RODERICK M. THOMPSON (rthompson@fbm.com)
ANDREW LEIBNITZ (aleibnitz@fbm.com)
235 Montgomery Street, 17th Floor
San Francisco, CA 94104
Telephone: (415) 954-4400
Facsimile: (415) 954-4480

Attorneys for Defendant,
WAL-MART.COM USA,
LLC

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

15