UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SPEEDTRACK, INC.,

    Plaintiff,

    v.

WAL-MART STORES, INC., et al.,

    Defendants.
_____/

No. C 06-7336 PJH

**ORDER GRANTING IN PART AND DENYING IN PART MOTIONS FOR SUMMARY JUDGMENT**

    The parties' cross-motions for summary judgment came on for hearing before this court on November 16, 2011. Plaintiff SpeedTrack, Inc. ("plaintiff" or "Speedtrack") appeared through its counsel, Roderick Dorman, Marc Morris, and Alan Block. Defendants Wal-Mart Stores, Inc. ("defendant" or "Wal-Mart") and Endeca Technologies, Inc. ("Endeca")(collectively "defendants") appeared through their counsel, Steven Bauer. Having read the parties' papers and carefully considered their arguments and the relevant legal authority, and good cause appearing, the court hereby GRANTS the cross-motions in part and DENIES them in part.

**BACKGROUND**

    SpeedTrack is the assignee and owner of U.S. Patent No. 5,544,360 (the "'360 patent"), which is directed at systems and methods for accessing computer files and data information in data storage systems. Defendant Wal-Mart is a retail corporation with an online retail website that permits visitors to search for and buy a variety of products. Plaintiff alleges that defendant Wal-Mart's use and maintenance of its website directly and indirectly infringes the '360 patent by permitting visitors to search for products available for sale "by selecting pre-defined categories descriptive of the products" – pursuant to a

process claimed by the '360 patent. See generally Corrected First Amended Complaint for Patent Infringement, Permanent Injunction, and Damages ("Speedtrack I Complaint"), ¶¶ 10-11.

In April 2007, the court allowed Endeca to file a complaint in intervention against Speedtrack. Endeca's complaint arose out of Speedtrack's allegations against defendant Wal-Mart. Wal-Mart is one of Endeca's customers, and utilizes Endeca's Information Access Platform on its Wal-Mart website in order to allow users to search for products online. See Endeca's Complaint in Intervention ("Endeca Complaint"), ¶¶ 7-9. Endeca alleges that an actual controversy exists over whether its Information Access Platform infringes the '360 patent and whether the '360 patent is invalid. See id. at ¶¶ 8-9. To that end, Endeca alleges two claims against Speedtrack: (1) for a declaratory judgment that Endeca's Information Access Platform does not infringe the '360 patent; and (2) for a declaratory judgment that the '360 patent is invalid. See id. at ¶¶ 10-18.

With the inclusion of Endeca, Speedtrack accused defendant Wal-Mart of direct infringement and Endeca of indirect infringement (i.e., inducement of infringement and contributory infringement). See Declaration of Colin Cabral ISO Def. MSJ ("Cabral Decl."), Ex. E. As clarified by the parties at the hearing on this matter, however, plaintiff now asserts only direct infringement against Wal-Mart. No claims for indirect infringement are stated against either defendant. To the extent plaintiff's pleadings can be read to state a claim for direct infringement against Endeca, plaintiff has dismissed such a claim.

A.    The Patent Claims

The '360 Patent contains 21 claims, some of which are method claims, and many of which are dependent claims. For purposes of this litigation, Speedtrack asserts independent method claims 1 and 20 against defendants, as well as dependent method claims 2-4, 7, 11-14, and 21. The relevant language of the independent claims, which are at the heart of this litigation, is as follows:

Claim 1:

"a method for accessing files in a data storage system of a computer system having means for reading and writing data from the data storage system, displaying information, and accepting user input, the method comprising the steps of:  (a) initially creating in the computer system a category description table containing a plurality of category descriptions, each category description comprising a descriptive name, the category descriptions having no predefined hierarchical relationship with such list or each other; (b) thereafter creating in the computer system a file information directory comprising at least one entry corresponding to a file on the data storage system, each entry comprising at least a unique file identifier for the corresponding file, and a set of category descriptions selected from the category description table; and (c) thereafter creating in the computer system a search filter comprising a set of category descriptions, wherein for each category description in the search filter there is guaranteed to be at least one entry in the file information directory having a set of category descriptions matching the set of category descriptions of the search filter."

Claim 20:

"a method for accessing files in a data storage system of a computer system having means for reading and writing data from the data storage system, displaying information, and accepting user input, wherein each file located on the data storage system has a file name, the method comprising the steps of:  (a) initially defining in the computer system at least one list having a plurality of category descriptions, each category description comprising a descriptive name, the category descriptions having no predefined hierarchical relationship with such list or each other; (b) thereafter accepting user input associating with a file at least one category description from at least one defined list..."

See Declaration of Alan P. Block ISO Pl. MSJ ("Block Decl."), Ex. 2 ('360 patent).

B.  Procedural History

A claim construction hearing was held in March 2008, and an order construing the claims issued on June 19, 2008.  See Order Construing Claims.

In January 2009, while the parties' original summary judgment motions were pending, and at Endeca's request, the Patent and Trademark Office ("PTO") granted reexamination of the '360 Patent – specifically, claims 1-4, 7, 11-14, and 20-21.  The court stayed the action pending reexamination, and the summary judgment motions were taken off calendar.

On March 3, 2011, the PTO issued its decision in the reexamination proceedings.  It confirmed the patentability of each and every claim challenged by Endeca, and allowed an

additional independent claim.

The parties have now submitted new cross-motions for summary judgment. Specifically, plaintiff seeks summary judgment with respect to the questions of infringement and invalidity, while defendants, who have jointly filed their motion, limit their motion for summary judgment to the question of infringement alone.  The defendants have also filed a motion to strike the testimony of plaintiff's expert, Dr. Richard Korf.[1]

**DISCUSSION**

A.   Legal Standards

    1.   <u>Summary Judgment</u>

Summary judgment is generally appropriate when the evidence shows there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); <u>Anderson v. Liberty Lobby, Inc</u>., 477 U.S. 242 (1986).

    2.   <u>Motion to Strike</u>

Rule 26 of the Federal Rules of Civil Procedure requires the parties to disclose the identities of each expert and, for retained experts, requires the disclosure to include the experts' written reports.  Fed. R. Civ. P. 26(a)(2).  Parties must make these expert disclosures at the times and in the sequence that the court orders.  <u>Id</u>.  Rule 37 "gives teeth" to Rule 26's disclosure requirements by forbidding the use at trial of any information that is not properly disclosed. <u>Yeti by Molly Ltd</u>., 259 F.3d 1101, 1106 (9th Cir. 2001)(citing Fed. R. Civ. P. 37(c)(1)).  Rule 37(c)(1) is a "self-executing," "automatic" sanction designed to provide a strong inducement for disclosure.  <u>Id</u>. (quoting Fed. R. Civ. P. 37 advisory committee's note (1993)).  The only exceptions to Rule 37(c)(1)'s exclusion sanction apply if the failure to disclose is substantially justified or harmless.  Fed. R. Civ. P. 37(c)(1).  <u>See</u> <u>Goodman v. Staples The Office Superstore, LLC</u>, 644 F.3d 817, 827 (9th Cir. 2011).

---

[1] Following the hearing on the cross-motions for summary judgment, and in light of the parties' arguments made therein, the court issued on order requiring further briefing with respect to the proper and potentially revised construction to be given the claim term "category description."  On December 2, 2011, the parties duly submitted further briefing on the matter, and that briefing is additionally before the court.

4

B.  Cross-Motions for Summary Judgment

The parties' cross-motions for summary judgment raise two overriding issues that must be resolved: (1) whether summary judgment is appropriate on invalidity issues; and (2) whether summary judgment is appropriate as to infringement.  Only plaintiff seeks summary judgment as to the former, while both parties move as to the latter.

1.  <u>Invalidity</u>

Plaintiff seeks a ruling that the '360 patent is not invalid, by reason of any of the following affirmative defenses invoked by defendants: (a) the existence of an invalidating offer for sale pursuant to 35 U.S.C. § 102(b); and (b) anticipation pursuant to 35 U.S.C. § 102, by reason of six specific prior art references.[2]

a.  invalidating offer for sale

Section 102(b) of the Patent Act bars the patentability of inventions that were on sale in this country more than one year prior to the date of the application for the patent. See 35 U.S.C. § 102(b)("A person shall be entitled to a patent unless the invention was . . . on sale in this country, more than one year prior to the date of the application for patent in the United States."); see also Cargill, Inc. v. Canbra Foods, Ltd., 476 F.3d 1359, 1368 (Fed. Cir. 2007)(any attempt to commercialize the patented invention more than one year prior to filing the patent application creates an "on-sale bar" that invalidates a subsequently-issued patent).  The on-sale bar rule generally applies when two conditions are satisfied:  the product embodying the asserted claims must be the subject of a commercial offer for sale; and the invention must be ready for patenting. Pfaff v. Wells Elecs., Inc., 525 U.S. 55, 67 (1998).  Defendants invoke the on-sale bar defense here, asserting that an October 29, 1991 MacWeek article entitled "Paragon Caters to PowerBook Buyers with Slimmed Down Nisus Compact" is an invalidating offer for sale pursuant to 35 U.S.C. § 102(b), since the

---

[2] Defendants originally asserted lack of enablement and written description pursuant to 35 U.S.C. § 112, ¶ 1, and non-statutory subject matter under § 101, as affirmative defenses.  However, defendants clarified at the hearing that they are withdrawing these affirmative defenses.

5

Nisus Compact software commercially disclosed in the article incorporated the method described in the '360 Patent.[3]

Plaintiff asserts that summary judgment as to this on-sale bar defense is appropriate because the MacWeek article does not, by clear and convincing proof, constitute a qualifying offer for sale; rather, it merely notes the future release of a new product and the expected price of that product – a disclosure that falls short of the "commercial offer for sale" standard applicable to a viable on-sale bar defense. Defendants, in response, contend that the MacWeek article, when considered collectively with evidence related to the beta testing and software distribution of the Nisus Compact product discussed in the MacWeek article, creates a triable issue of material fact as to the existence of an invalidating offer for sale.

The question whether an invention is the subject of a commercial offer is a matter of Federal Circuit law, analyzed under the law of contracts as generally understood. Group One, Ltd. v. Hallmark Cards, Inc., 254 F.3d 1041, 1047 (Fed. Cir. 2001). To prove that an invention was the subject of a commercial sale, a defendant must demonstrate by clear and convincing evidence that there was a definite sale or offer to sell more than one year prior to the application for the patent, and that the subject matter of the offer to sell fully anticipated the claimed invention or would have rendered the claimed invention obvious by its addition to the prior art. STX, LLC v. Brine, Inc., 211 F.3d 588, 590 (Fed. Cir. 2000). A communication "that fails to constitute a definite offer to sell the product and to include material terms is not an 'offer' in the contract sense." See Elan Corp., PLC v. Andrx Pharms., Inc., 366 F.3d 1336, 1341 (Fed. Cir. 2004).

As applied here, plaintiff has the more persuasive argument. A review of the MacWeek article reveals the following disclosures therein: that Paragon had recently announced the Nisus Compact as a new product coming down the pipeline; that the Nisus

---

[3] Paragon Concepts, Inc., was plaintiff's predecessor company, and was the entity offering the Nisus Compact disclosed in the article.

6

Compact was being "priced at $150," and that the Nisus Compact was "due to ship this year." See Declaration of Colin Cabral ISO Def. Opp. MSJ ("Cabral Opp. Decl."), Ex. 9. The remainder of the article is devoted to a description of the forthcoming Nisus Compact's features and highlights. See id. Reasonably construed, this fails to satisfy the "clear and convincing" evidence that defendants would need in order to demonstrate a "definite offer to sell the product," as such an offer would be understood in contractual terms. It evidences only that the Nisus Compact – and its underlying software – was the subject of an article announcing the future availability of the new product. This is not enough to establish a triable issue of fact as to the applicability of the on-sale bar defense.

   To the extent defendants attempt to avoid this conclusion by suggesting that the MacWeek article should be considered in totality with deposition testimony regarding the existence of both beta testing and software distributors for the Nisus Compact prior to January 1992 in order to discern a clear commercial offer for sale, such a suggestion is unpersuasive. To begin with, the deposition testimony that defendants rely on states only that the deponent in question *did not know* whether the Nisus Compact was beta tested prior to January 1992 and *did not know* whether distributors were lined up prior to that time. See Cabral Opp. Decl., Ex. 10 at 95:11-20; 101:11-14. The testimony thus cannot support the existence of a commercial offer for sale related to the Nisus Compact software prior to January 1992. Furthermore, even if the deposition testimony were favorable to defendants, it is dubious whether a commercial offer for sale, as understood pursuant to Federal Circuit precedent, may be premised upon an amalgamation of various pieces of evidence. Indeed, it is difficult to imagine how such an amalgamation, by its very nature, could ever constitute a definite offer to sell, in a contractual sense.

   Regardless, and in sum, the court agrees with plaintiffs that defendants have failed to introduce a triable issue of fact as to the applicability of the on-sale bar defense. Accordingly, the court GRANTS plaintiff's motion for summary judgment as to this affirmative defense.

b.  anticipation

Plaintiff also moves for summary judgment with respect to defendants' anticipation defense. Defendants have asserted that six prior art references anticipate the asserted claims of the '360 patent: (i) U.S. Patent No. 4,879,648 ("Cochran patent"); (ii) Godin '89; (iii) Japanese Patent App. No. S64-1030 ("Suzuki patent application"); (iv) U.S. Patent No. 5,062,074 ("Kleinberger patent"); (v) Schneiderman; and (vi) Lotus Agenda. See Block Decl., Exs. 31-36.

Plaintiff contends that, since all six of these prior art references came before the PTO during reexamination and were found not to anticipate the '360 patent claims, defendants now not only have the burden of proving anticipation by clear and convincing evidence, but they also must demonstrate that the PTO was wrong – a hurdle which defendants' evidence cannot overcome. Defendants counter this assertion with two arguments: first, that plaintiff relies in overly conclusory fashion on the improper declaration of its expert, Dr. Richard E. Korf, in making its anticipation arguments; and second, that defendants' own expert has at any rate provided detailed expert opinions concerning whether each element of the asserted claims can be found in the six prior art references at issue.

As a preliminary matter, and since the court denies defendants' motion to strike the testimony of plaintiff's expert Dr. Korf (as discussed in more detail below), defendants' argument that plaintiff has improperly relied on Dr. Korf's declaration testimony lacks merit. With respect to defendants' remaining argument that their expert, Dr. Don Turnbull, opines in sufficiently detailed fashion so as to introduce a triable issue of fact as to anticipation via the foregoing prior art references, plaintiff correctly notes that defendants have failed to come forward with any evidence or argument addressing how or why the PTO's decision on reexamination – which found that Schneiderman and Lotus Agenda did not present a substantial new question of patentability, and confirmed that the remaining prior art references do not anticipate claims 1 and 20 – was wrong. See Block Decl., Exs. 37-38;

see also PowerOasis, Inc. v. T-Mobile USA, Inc., 522 F.3d 1299, 1304 (Fed. Cir. 2008)("When no prior art other than that which was considered by the PTO examiner is relied on by the attacker, he has the added burden of overcoming the deference that is due to a qualified government agency presumed to have properly done its job").

Without such evidence or argument, defendants cannot overcome their burden to prove anticipation in light of a PTO reexamination proceeding that has affirmed the validity of claims over the prior art references asserted by defendants.

As such, and for the reasons stated by the court at the hearing on the parties' summary judgment motions, plaintiff's motion for summary judgment as to anticipation, based on the six aforementioned prior art references, is GRANTED.

2. Infringement

Both parties move for summary judgment on the infringement issue. Neither party disputes that the focus of the infringement analysis is on independent claims 1 and 20, since the remaining claims at issue are all dependent on these two. Accordingly, the issue before the court is whether summary judgment should be granted as to Wal-Mart's infringement or non-infringement of claims 1 and 20.

a. governing legal standards

The court engages in a two-step process in evaluating infringement. First, the court determines the scope and meaning of the claims via claim construction; then, the court compares that construction of the patent against the accused products. See, e.g., Business Objects, S.A. v. Microstrategy, Inc., 398 F.3d 1366, 1371 (Fed. Cir. 2004) (citations omitted).

While claim construction is a matter of law, infringement itself is a question of fact. See, e.g., Frank's Casing Crew and Rental Tools, Inc. v. Weatherford International, Inc., 389 F.3d 1370, 1376 (Fed. Cir. 2004) (citations omitted). Therefore, a plaintiff is only entitled to summary judgment on the question of infringement "if the facts and inferences, when viewed in the light most favorable to [defendant], would not persuade a reasonable

9

jury to return a verdict in favor of . . . the non-moving party." Business Objects, 398 F.3d at 1371.

Infringement may be proven by literal infringement, or under the doctrine of equivalents. A claim is "literally infringed" if each properly construed claim element directly reads on the accused product or process. See Jeneric/Pentron Inc. v. Dillon Co., 205 F.3d 1377, 1382 (Fed. Cir. 2000). As for the doctrine of equivalents, equivalence is a question of fact, and it is determined as of the time the infringement takes place. See generally Warner-Jenkinson Co. v. Hilton Davis Chem. Co., 520 U.S. 17 (1997); Graver Tank & Mfg. Co. v. Linde Air Prod. Co., 339 U.S. 605 (1950). The test for whether an element in the alleged infringer's product or process is equivalent to a claimed element is whether the differences between the two are insubstantial to one of ordinary skill in the art. KJC Corp. v. Kinetic Concepts, 223 F.3d 1351, 1359 (Fed. Cir. 2000).

   b.  infringement of claims 1 and 20

Because claim 20 is substantially similar to claim 1 and differs from it in only minor respects, and because the limitations disputed by the parties apply to both claims equally, the parties have centered their arguments primarily on claim 1. As noted at the outset, claim 1 covers, in relevant part, "a method for accessing files in a data storage system of a computer system...", the method comprising three different steps related to the creation of "category description tables," "category descriptions," "file information directories," and "search filters." See Block Decl., Ex. 2.

Plaintiff contends that Wal-Mart's computer system reads upon each of the limitations set forth in claim 1, including the limitations set forth in each of the three steps covered by claim 1. Defendants, however, counter that no infringement can be demonstrated, because Wal-Mart's accused system lacks the following critical elements required by claim 1: (i) Wal-Mart's system does not have "category descriptions" with "no predefined hierarchical relationships"; (ii) Wal-Mart's system does not have a "category description table" that is "initially created" in the system; (iii) Wal-Mart's system does not

have a "file information directory" with "information that includes a name that is descriptive of a stored file;" (iv) Wal-Mart's system requires action by a remote user in order to create a "search filter," unlike the "search filter" contemplated by claim 1; and (v) Wal-Mart's system does not operate on a single "computer system," as required by claim 1.

As a preliminary matter, there is an issue of claim construction that the court must resolve. The court previously construed the parties' disputed claim terms in connection with the claim construction hearing held in March 2008. However, at the hearing on the parties' summary judgment motions, the parties raised new arguments in connection with the "file information directory" limitation that suggested to the court the need for a further, and revised, construction of the term "category description." The court accordingly instructed the parties to submit further briefing as to this issue, and the parties did so on November 18, 2011.

By way of that supplemental briefing, plaintiff now posits that "category description" should be construed to mean "information that is descriptive of something about a stored file." See Pl. Br. re Further Briefing at 9:7-8. Defendants, by contrast, assert that the court's existing claim construction should stand, which construction defined "category description" to mean: "information that includes a name that is descriptive of something about a stored file." See generally Def. Br. re Further Briefing.

Having read and evaluated the parties' competing positions, the court is persuaded by defendants' argument that the existing construction of "category description" remains the correct one. As was made apparent during the hearing on summary judgment, the parties' dispute over the construction to be given the term "category description" boils down to the following: whether "category description," as used in the claim language, requires "information" that contains an alphabetic descriptive name, or whether it requires "information" that may include an alphabetic descriptive name or numerical identifiers.

As the court noted in its claim construction order, the language of independent claims 1 and 20 defines the term "category description" with specific reference to a

"descriptive name." See Block Decl., Ex. 2 at 16:55-65 ("each category description comprising a descriptive name"); 20:1-11 (same). The specification is consistent with this claim language. It makes clear that the claimed invention allows for access to files using predefined categories that are "descriptive of the contents of the files," and further states that in the preferred embodiment, a category description "is a descriptive name...". See id. at 5:10-11. The prosecution history evidences the same understanding that category descriptions are comprised of "descriptive names." See Def. Br. re Further Briefing, Ex C at SPEED 000184 ("Category descriptions are descriptive names defined by a user"). This requires that a proper construction of "category description" must define the term not only with reference to "information that is descriptive of something about a stored file," – as plaintiff now posits – but rather, as the court previously held, "information that includes a name that is descriptive of something about a stored file."

As to whether "name" is in turn construed with sole reference to an alphabetic name specifically, or whether it may include reference to a numeric designation in addition to an alphabetic one, the court is convinced that the language found in the '360 patent specification and claims compels the conclusion that only the former is true. The specification teaches that the descriptive "name" that is included in the definition of a "category description" is best understood in the context of a descriptive alphabetic name. See Block Decl., Ex. 2 at 5:4-10 (examples of descriptive names include the words "AGREEMENTS, E-MAIL, MEMOS, NEWSLETTER, etc."). The specification further demonstrates this understanding by distinguishing between "category descriptions" and "identifiers" that can be associated with the category descriptions. The identifiers, which are used to help manage the category descriptions in the preferred embodiment, are preferably numeric identifiers, are independently associated with the category descriptions, and do not change regardless whether the "name" of a category description changes. See, e.g., Block Decl., Ex. 2 at 5:12-14 ("each category description is preferably associated with a unique identifier (preferably a number, but other identifiers could be used)"); 5:15-16 ("If a

user changes the name of a category description, the associated identifier is not changed."). The claimed invention can also be implemented without using "identifiers," although the claimed invention must include "category descriptions." Id. at 5:17-20. All of which suggests that a "category description" – which must be construed to include information that includes a descriptive "name" – does not incorporate identifiers (numerical or otherwise) as part of the descriptive "name" itself.

The claim language reaffirms this understanding. It differentiates between "category descriptions" and "category description identifiers." Dependent claim 4, for example, covers a method for accessing files, wherein the step of creating a category description table comprises, in part, the steps of: "(3) creating a unique category description identifier associated with the new category description; and (4) storing the new category description and unique category description identifier in the category description table." See id. at 17:19-30. Since the claim language distinguishes between "category description" and "category description identifier," the court must presume a difference in meaning and scope between the two. See Comarck Comm'ns, Inc. v. Harris Corp., 156 F.3d 1182, 1187 (Fed. Cir. 1998)(doctrine of claim differentiation creates presumption that each claim in a patent has a different scope). Specifically, the court reads these differences to support the conclusion that a category description "identifier" – numerical or otherwise – must necessarily be distinct from the "descriptive name" that pertains to a "category description."

To the extent that plaintiff seeks to avoid the foregoing construction by suggesting that neither the claim language nor specification require that a "category description" be construed with reference to a "human readable name," and furthermore affirmatively disclose that a category description may, in fact, be construed with reference to a numeric identifier, the court is unconvinced. Thus, and based on the parties' further briefing provided to the court, the court hereby reaffirms and clarifies its prior construction of the term "category description," and construes that term to mean: "information that includes a name that is descriptive of something about a stored file."

With the foregoing in mind, the court turns to its analysis of the parties' infringement arguments. It finds, however, that having thus ruled upon the parties' revised arguments in connection with the proper construction to be given the term "category description," resolution of the parties' cross-motions requires analysis of only one of the limitations disputed by the parties: whether Wal-Mart's accused system contains a "file information directory" with "information that includes a name that is descriptive of a stored file," as required by claims 1 and 20.

As noted at the outset, Step (b) of claim 1 covers a method for accessing computer files, which method requires the creation of "a file information directory comprising at least one entry corresponding to a file on the data storage system, each entry comprising at least a unique file identifier for the corresponding file, and a set of category descriptions selected from the category description table...". See Block Decl., Ex. 2 a 16:66-17:4. Step (c) of claim 20 similarly requires "storing in the data storage system a file record containing at least the file name, file location information, and the associated category descriptions for the file." See id. at 20:15-17. Thus, the "file information directory" of claim 1 (which has been construed to mean "directory comprising information corresponding to at least one file") must comprise a set of "category descriptions." The "file record" of claim 20 must contain at least a file name and location information, as well as associated "category descriptions" for the file.

Plaintiff argues that the "walmart-sgmt0.records.binary" file in Wal-Mart's system contains the "file information directory" of claim 1, since it is comprised of entries that each correspond to a product offered for sale on Wal-Mart's site, which entries each consist of a unique identifier. See Korf Decl., ¶ 31; see also Block Decl., Ex. 18. Each product that corresponds to an entry also has a corresponding "file" that includes information about that product that is stored on the Walmart.com database. Korf Decl., ¶ 31. All entries in the "walmart-sgmt0.records.binary" file also purportedly include – as does the "file information directory of claim 1 – a set of "category descriptions" which correspond to each product,

14

which look something like the following: <DVAL_ID DIMENSION_ID="500569" ID="4293426806"/>. See Korf Decl., ¶ 34. Plaintiff also identifies several associated category descriptions for products, (e.g., a JVC Camcorder), in numerical format. Id., ¶ 35.

Defendants respond that no infringement of the "file information directory" limitation results, because it is not disputed that the entries within the "walmart-sgmt0.records.binary" file consist only of a series of numerical identifiers, and include no descriptive alphabetic names, as required in order to read upon the "category descriptions" limitation that forms a part of the "file information directory" and "file record." Since these claim requirements are unambiguous, and plaintiff cannot proffer any evidence to demonstrate that any descriptive alphabetic names exist within the "walmart-sgmt0.records.binary" file, defendants contend that entry of summary judgment as to non-infringement is appropriate.

Defendants are correct. As the court construes the "category description" limitation that pertains to both the "file information directory" of claim 1 and the "file record" of claim 20, plaintiff must demonstrate that the "walmart-sgmt0.records.binary" file in Wal-Mart's system contains entries that are comprised of alphabetic descriptive names, if it is to prove that defendants' accused system infringes. And since it is undisputed that plaintiff has not come forward with evidence that "walmart-sgmt0.records.binary" includes alphabetic descriptive names, plaintiff cannot demonstrate that the accused system infringes.

Nor can plaintiff's reliance on the doctrine of judicial estoppel avoid this conclusion. Plaintiff seeks to judicially estop defendants from making the argument that numeric identifiers do not satisfy the foregoing claim requirements, primarily on grounds that defendants' invalidity arguments – namely, in connection with the Kleinberger reference – are contradictory to the position taken by defendants here. However, the court does not consider defendants' invalidity arguments to be sufficiently "clearly inconsistent" with its infringement arguments, so as to present a basis for application of judicial estoppel. See, New Hampshire v. Maine, 532 U.S. 742, 750-51 (2001). Furthermore, although the parties' arguments on summary judgment may very well have been modified in view of the

reexamination proceedings that culminated in the PTO's March 3, 2011 decision, the court finds nothing surprising or improper about such an occurrence. Indeed, it would be strange if the parties' arguments were not updated in order to reflect a revised understanding of the parties' arguments post-reexamination.

In sum, and based on the foregoing, the court concludes that summary judgment as to whether defendants' accused system meets the "file information directory" limitation of claim 1 and the "file record" limitation of claim 20 is appropriate. Accordingly, defendants' motion for summary judgment of non-infringement on this ground is GRANTED, plaintiff's cross-motion on this ground is DENIED.

C.  Motion to Strike

Last, defendants seek to strike portions of the July 6 Korf Declaration. Specifically, they seek to strike paragraphs 5-7, 10, 14-15, 18-28, 30, 36-38, 41-52, 54, 56-64, 68-74, 76-84, 86-90, 93-96, and 98-100. Defendants contend that the Korf declaration contains "new" opinions that were never previously disclosed to defendants, and that improperly bolster plaintiff's summary judgment motion by relying on this evidence. Defendants claim that these new opinions – which specifically go to the issues of infringement and anticipation – prejudice defendants in their ability to defend against plaintiff's motion. Furthermore, the arguments are also an improper attempt to circumvent the court's 25-page limit on briefs. Thus, the court should exclude the foregoing paragraphs under Rule 37, which provides an exclusion remedy for plaintiff's improper inclusion of expert testimony that was not properly disclosed under Rule 26.

The court DENIES the motion to strike. Although Dr. Korf's opinions are presented in more detail than they were previously, the subjects upon which defendants issue their challenge to Dr. Korf's testimony – namely, Dr. Korf's view that the "primary Endeca dimension" does not disclose a hierarchical structure – were not only covered by Dr. Korf's prior expert reports, but they were also a subject upon which Dr. Korf was extensively examined at his deposition. Similarly, Dr. Korf's purportedly "new" opinion that provides a

step by step walkthrough of a series of screen shots from the Wal-Mart website, is ultimately within the scope of Dr. Korf's expert report describing the Wal-Mart website, and the results that occur as Dr. Korf conducts a series of searches. Accordingly, the court declines to strike these matters from Dr. Korf's declaration.

## CONCLUSION

For the foregoing reasons, the court hereby GRANTS plaintiff's motion for summary judgment that the '360 patent is not invalid on the grounds raised by defendants, GRANTS defendants' motion for summary judgment as to non-infringement, and DENIES defendants' motion to strike.

No later than March 1, 2012, the parties shall advise the court in a joint status statement as to how they wish to proceed as to issues remaining in the complaint and counterclaims.

**IT IS SO ORDERED.**

Dated: February 22, 2012

PHYLLIS J. HAMILTON
United States District Judge